Pages 1-26

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson,
United States Magistrate Judge

IN RE:                            )
                                  )
SOCIAL MEDIA ADOLESCENT           )
ADDICTION/PERSONAL INJURY         )    **Case No. 22-MD-03047-YGR**
PRODUCTS LIABILITY                )
LITIGATION.                       )
_____ )

San Francisco, California
Thursday, July 6, 2023


**<u>TRANSCRIPT OF REMOTE PROCEEDINGS</u>**



APPEARANCES ON NEXT PAGE.



TRANSCRIPTION SERVICE BY:
                    Dipti Patel, CET-997
                    Liberty Transcripts
                    7306 Danwood Drive
                    Austin, Texas 78759
                    (847) 848-4907

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For the Plaintiffs:

>                    MOTLEY RICE LLC
>                    401 9th Street NW, Suite 630
>                    Washington, DC 20004
>            **BY: PREVIN WARREN, ATTORNEY AT LAW**
>
>                    SEEGER WEISS LLP
>                    55 Challenger Road
>                    Ridgefield Park, New Jersey 07660
>            **BY: JENNIFER SCULLION, ATTORNEY AT LAW**
>            **CHRISTOPHER AYERS, ATTORNEY AT LAW**
>
>                    SEEGER WEISS LLP
>                    100 Church Street
>                    New York, New York 10007
>            **BY: ERICA KUBLY, ATTORNEY AT LAW**
>
>                    LIEFF CABRASER HEIMANN & BERNSTEIN
>                    275 Battery Street, Suite 2900
>                    San Francisco, California 94111
>            **BY: LEXI J. HAZAM, ATTORNEY AT LAW**
>
>                    LIEFF CABRASER HEIMANN & BERNSTEIN
>                    250 Hudson Street, 8th Floor
>                    New York, New York 10013
>            **BY: JASON LICHTMAN, ATTORNEY AT LAW**

For Defendants Meta Platforms, Inc. f/k/a Facebook Holdings,
LLC, Facebook Operations, LLC, Facebook Payments, Inc.,
Facebook Technologies, LLC, Instagram, LLC, Siculus, Inc., and
Mark Elliot Zuckerburg:

>                    COVINGTON & BURLING, LLP
>                    1999 Avenue of the Stars
>                    Los Angeles, California 90067
>            **BY: ASHLEY M. SIMONSEN, ATTORNEY AT LAW**

For Defendants TikTok, Inc. and ByteDance, Inc.:

>                    FAEGRE DRINKER BIDDLE & REATH LLP
>                    2200 Wells Fargo Center
>                    90 South Seventh Street
>                    Minneapolis, Minnesota 55402
>            **BY: AMY R. FITERMAN, ATTORNEY AT LAW**

3

**APPEARANCES VIA ZOOM VIDEOCONFERENCE (CONTINUED):**

For Defendants YouTube, LLC, Google, LLC, and Alphabet, Inc.:

> WILSON SONSINI GOODRICH & ROSATI
> 12235 El Camino Real
> San Diego, California 92130
> **BY: SAMANTHA MACHOCK, ATTORNEY AT LAW**

For Defendant Snap, Inc.:

> MUNGER, TOLLES & OLSON LLP
> 601 Massachusetts Avenue NW
> Suite 500 E
> Washington, D.C. 20001
> **BY: LAUREN BELL, ATTORNEY AT LAW**

4

| | |
|---|---|
| **Thursday - July 6, 2023** | **1:08 p.m.** |

1    **Thursday - July 6, 2023**                                    **1:08 p.m.**

2                              **P R O C E E D I N G S**

3                                   ---oOo---

4        **THE CLERK:**  Good afternoon.  We are here in Civil Action

5    22-3047, In re Social Media Adolescent Addiction/Personal

6    Injury Products Liability Litigation; the Honorable Thomas S.

7    Hixson presiding.

8        Let's start with plaintiffs' counsel, and then we'll go

9    down the line from there.

10       **MR. AYERS:**  Good afternoon, Your Honor.

11       Chris Ayers of Seeger Weiss on behalf of plaintiffs.

12       **MS. KUBLY:**  Good afternoon, Your Honor.  Erica Kubly with

13   Seeger Weiss on behalf of plaintiffs.

14       **MS. SCULLION:**  And Jennifer Scullion from Seeger Weiss on

15   behalf of plaintiffs.

16       **MS. HAZAM:**  Good afternoon, Your Honor.

17       Lexi Hazam of Lieff Cabraser on behalf of plaintiffs.  I

18   believe Jason Lichtman of my office is in the waiting room.

19   If he could please be admitted.

20       **THE CLERK:**  Okay.  Let me see.  Oh, there he is.  Thank

21   you.

22       **MS. HAZAM:**  Thank you.

23       **MR. WARREN:**  In the meantime, Previn Warren with Motley

24   Rice for the plaintiffs.

25       **THE CLERK:**  Ms. Okay.  So Mr. Lichtman's there.  Okay,

1    Mr. Lichtman, can you state your name, please?

2        **MR. LICHTMAN:**  Good morning.  Jason Lichtman, Lieff

3    Cabraser Heimann & Bernstein, on behalf of plaintiffs.

4        **THE CLERK:**  All right.  Now I need the Meta defendants,

5    please.

6        **MS. SIMONSEN:**  Good afternoon, Your Honor.

7        Ashley Simonsen with Covington & Burling for the Meta

8    defendants.

9        **MS. CHAPUT:**  Good afternoon, Your Honor.

10       Isaac Chaput, also with Covington, on behalf of the Meta

11   defendants.

12       **THE CLERK:**  Okay.  And Snap.

13       **MS. BELL:**  Good afternoon.

14       Lauren Bell from Munger, Tulles & Olson on behalf of

15   Snap.

16       **THE CLERK:**  And TikTok?

17       **MS. FITERMAN:**  Good afternoon.

18       Amy Fiterman, Fagre Drinker, on behalf of TikTok.

19       **THE CLERK:**  And YouTube.

20       **MS. MACHOCK:**  Good afternoon.

21       Samantha Machok from Wilson Sonsini on behalf of the

22   Google/YouTube defendants.

23       **THE CLERK:**  Thank you.  That's it, Judge.

24       **THE COURT:**  All right.  Good afternoon, everyone.

25       We're here to discuss the parties' proposed preservation

6

1    orders.  And I'll give you my reactions to each side's orders,

2    and then I want to talk with the parties about what would be a

3    productive way to go forward.

4        The defendants' proposed order I'm not prepared to enter.

5    It sharply limits the defendants' preservation obligations in

6    a number of ways, and without explaining to me why that would

7    be appropriate.  And I don't understand what the implications

8    would necessarily be if I were to agree with defendants'

9    limitations.

10       I'm not saying that to say the filing was somehow

11   improper.  You submitted a proposed order, and so it doesn't

12   have a lot of explanation for what it was advocating for.

13   Maybe that's what we need to get into in some sort of motion.

14   But it seemed like I would need more explanation about why

15   those limitations would be appropriate before I could just go

16   ahead and order that those items don't need to be preserved.

17       Conversely, but the plaintiffs' order I don't know what

18   it would accomplish.  It has a long list of potentially

19   relevant topics, and then the operative paragraph purports to

20   order the defendants to use reasonable and proportional

21   methods to preserve those items.  And it seems like the

22   problem is that there's a disagreement about what is

23   reasonable and proportional.

24       And I feel like if I just signed off on an order that

25   said do what is reasonable and proportional, I wouldn't in my

1    own mind have an understanding of what exactly I'm ordering.

2    The order wouldn't really say, and we would just be kicking

3    the can down the road so that later if the defendants failed

4    to preserve something, at that point we'd have a debate about

5    whether it was reasonable and proportional.

6        In other words, I don't see the plaintiffs' order as

7    really deciding anything and the defendants wouldn't know what

8    to do with that order.  But I gathered that the two sides

9    would like to have some form of preservation order.

10       So let me first turn to plaintiffs.  And I'm not willing

11   to enter the order that you've submitted because it has this

12   vagueness problem.  But what are your goals that you're trying

13   to achieve, and how can we move toward those goals?  I realize

14   that's a pretty broad and open-ended question, but that's the

15   issue that I'm struggling with.  So why don't you go ahead.

16       **MR. AYERS:**  Sure.  Thank you, Your Honor.  This is Chris

17   Ayers on behalf of plaintiffs.

18       The order is trying to help guide the parties by

19   identifying the and by delineating the various topics and

20   issues that we believe are relevant, potentially relevant

21   information that the parties can go particularly with respect

22   to the list of itemized topics for the defendants that they

23   could use to help guide themselves to identify the relevant

24   sources that contain such information to make sure that that

25   information is then preserved.

8

1      With respect to reasonable and proportionate, we

2  understand that proportionality is obviously a fundamental

3  part of the Federal Rules and the litigation process.

4  However, the proportionality is also something that is to be

5  decided through a meet-and-confer process, through a

6  demonstration of going through the six factors that are

7  outlined in both the Federal Rules as well as the Court's --

8  this district's ESI guidelines.

9      And so the plaintiffs' order tried to kind of -- tried to

10  actually articulate what proportionality would and defined

11  proportionality as a process in which the parties would meet

12  and confer to actually have the proportionality be

13  demonstrated rather than unilateral determinations of what is

14  reasonable and proportional.

15      So we tried to address that vagueness by defining what

16  proportionality would mean and making sure that the parties

17  would meet and confer and have a demonstration of

18  proportionality.

19      But our focus was really at this stage of litigation is

20  to make sure the parties are guided by what they believe is

21  relevant to this litigation by specifying specific and

22  delineated issues to help guide the parties with respect to

23  that issue rather than try to specify the limited information

24  that would be preserved while carving out undelineated

25  potential topics and categories of information and

9

1    repositories without obviously proper disclosure and meet and

2    confer about that information that would not be subject to

3    preservation.

4         **THE COURT:**  Okay, thank you.  That's helpful.

5         One thing I think that the plaintiffs' proposed order did

6    a good job of doing is describing what you think the

7    potentially relevant information is.  You lay that out in some

8    detail, so I think that was a step forward.

9         But let me ask plaintiffs since I'm not going to enter

10   either side's proposed orders, what do you think is the right

11   next step?  What should the parties do to move this forward?

12   What do you think?

13        **MS. AYERS:**  I think if the Court would direct the parties

14   to conduct the detailed and informative meet and confers that

15   would be on the record and documented in a memorialized

16   fashion pursuant to the ESI guidelines of this district and as

17   well as a checklist to go through a meet-and-confer process to

18   specific delineate and spell out areas of which the parties

19   believe are overly burdensome or disproportionate to the needs

20   of the case, going through the various factors and

21   demonstrating that need, rather than having a unilateral

22   determination of those.

23        So if the parties were to meet and confer and actually

24   have true conferral process that would be documented, not

25   informal, not off the record, I believe that would be very

1    helpful to specifying and understanding where the parties

2    stand with respect to proportionality, where the documents and

3    relevant information as spelled out in the plaintiffs'

4    proposed order, where those documents reside, what systems

5    hold those, which systems would be accessible, and which

6    systems the defendants believe are not reasonably accessible

7    but may be searched -- excuse me, may be preserved but not

8    necessarily searched and collected at this time.

9        So those types of detailed conferrals that are spelled

10   out in the guidelines as well as the Federal Rules of 26 and

11   Rule 16, that would be helpful in moving the ball forward.

12       **THE COURT:**  Okay.  So you would like an on-the-record

13   meet and confer.  Is that right?

14       **MR. AYERS:**  Yeah.  I think it would also be beneficial to

15   also include technical experts so it's not just

16   attorney-to-attorney conferrals but actually have

17   representatives from the defendants who have technical

18   expertise.  These are very complex and sophisticated data

19   repositories and data sources.

20       And so even on these off-the-record attorney-to-attorney

21   informal conferrals, numerous times there's been by no -- by

22   all good faith intended, there have been various things that

23   they needed to correct, various statements they needed to

24   correct because the information was updated or wrong because

25   of certain information they received from their client.

1      It's common that oftentimes it's very difficult to get

2   your hands wrapped around these complex systems.  So having

3   those personnel available and participate would be very

4   helpful.  I know that it was done, for instance, in the 3M

5   litigation where they had in-person face-to-face conferrals

6   with the technical experts from the entities present.

7      **THE COURT:**  It doesn't surprise me at all that defense

8   counsel might need to update or correct information they have

9   because their clients have such complicated systems that have

10  so much information.  So, yes, I understand what plaintiffs'

11  counsel are saying.

12      Let me turn to defendants.  Your objectives were easier

13  to figure out from the proposed order.  I think you're trying

14  to limit the burden that each of your clients is facing, and I

15  understand why you want and need to do that.

16      But then in terms of next steps, why don't I hear your

17  thoughts and you might have different thoughts.  So whoever

18  wants to go first for the defendants, please go ahead.

19      **MS. SIMONSEN:**  Thank you, Your Honor.

20      Ashley Simonsen for the Meta defendants, and I'll be

21  speaking for all of the defendants, of course, subject to

22  their jumping in with anything additional they'd like to add.

23      I think in terms of next steps and maybe I'll start with

24  what we're looking to accomplish here, really from the outset

25  of these cases, I think all parties have been looking to

1    accomplish is with a recognition of the incredible complexity

2    of the data potentially at issue in these cases and the data

3    at each of the defendants setting out some clear guidelines as

4    to what constitutes relevant data that needs to be preserved

5    and the defendants can preserve.

6        Now in the first instance, our proposed preservation

7    order did try to delineate kind of specific categories of

8    information that we would preserve across a number of data

9    sources.  Through the course of our conferral with plaintiffs,

10   we actually narrowed it considerably to really only one data

11   source for which we are spelling out exactly what each

12   defendants' system has and the defendants can therefore

13   preserve.

14       And that's the section detailing what each defendant will

15   preserve as it relates to user account data.  And the reason

16   that we think it's important to be very specific in terms of

17   what we're going to preserve when it comes to user account

18   data is that there is such voluminous data on defendants'

19   systems and only certain of it is going to be probative of the

20   plaintiffs' claims, only certain of it will the

21   proportionality analysis weigh in favor of its preservation.

22       And we've spent a lot of time talking with plaintiffs

23   about exactly what our responsive account capture tools can

24   capture so they understand exactly what is contained in those

25   tools.  That is the only category of information for which we

1    are attempting to delineate what we would preserve.  With the

2    exception of that category, we are committing to take

3    reasonable and proportional steps to preserve potentially

4    relevant information.

5         And just like the plaintiffs, we also have a list like

6    they do, as Your Honor pointed out is helpful, of the types of

7    information that are considered relevant in these cases.  And

8    the plaintiffs and defendants, I don't believe, are that far

9    apart on that list.  We conferred extensively on it, and I

10   think that's one of the goals of this preservation order.  I

11   agree with Mr. Ayers on that point, that having some guidance

12   in a preservation order as to what the categories of relevant

13   information are is going to be helpful to all of the parties

14   down the road to understanding what we all sort of agreed at

15   the outset were general categories of relevant information.

16        The other thing I would say is that I think while I

17   understand Your Honor's point that setting forth that we have

18   an obligation to preserve, to take reasonable and

19   proportionate steps to preserve relevant information, that is

20   a broad standard, but there's a lot of meat that can be put on

21   those bones from the case law in terms of what reasonable and

22   proportional means.

23        And I think it sounds like we are actually in agreement

24   with plaintiffs that setting forth our obligations to preserve

25   relevant information in terms of reasonableness and

1    proportionality does make sense.

2         The only place where we disagree with plaintiffs is

3    they're wanting to define proportionality in a way that is

4    contrary to what existing case law says.  So with that in mind

5    in terms of what we were looking to achieve with this order, I

6    think that what might make the most sense is for Your Honor to

7    order the parties to return to meeting and conferring

8    specifically -- and to really try to specifically hone in on

9    what exactly, what information in this category of user

10   account data do plaintiffs feel defendants aren't preserving

11   but should be preserving or that their concern is not captured

12   by that category so that we can reach some agreement with

13   respect to the account captures that were each taken about

14   what those account captures are going to contain.

15        I do not believe -- and then to come back to Your Honor

16   with some maybe competing proposed language for that section,

17   some maybe competing proposed language for how we explain the

18   reasonable and proportional steps that we'll commit to take

19   with respect to preserving relevant information, and competing

20   language on illustrative categories of relevant information.

21        With respect to plaintiffs' request for an on-the-record

22   meet and confer, it sounds to me that they're jumping straight

23   to Your Honor with a request for essentially discovery on

24   discovery during a time when discovery is stayed.  Defendants

25   have gone above and beyond in terms of the volume of

1    information we've actually shared with plaintiffs,

2    notwithstanding the stay of discovery, notwithstanding the

3    fact that no 26(f) conference has been required.

4    Nevertheless, we've spent over 12 hours sharing detailed

5    information about our systems and data and the limitations on

6    those systems and data.  Exactly the information that

7    Mr. Ayers just said he's looking for, we have supplied.

8         And when they've asked questions, we've gotten the

9    answers and we followed up with them where we've been able to.

10   And those discussions I would submit have been quite

11   productive.  They've resulted in at least on defendants' side

12   we've made modifications to our proposed order in light of

13   discussions that we've had with plaintiffs.  I already alluded

14   to one of them, limiting the categories of information for

15   which we're proposing to only need exactly what we need to

16   preserve.  That's just one example.

17        I don't think at this time it's appropriate for -- to the

18   extent Mr. Ayers is suggesting that this needs to be on the

19   record meet and confers in the sense of some kind of

20   deposition or written responses, I don't think that's

21   appropriate this time.  We are accomplishing all that we need

22   to accomplish with these meet and confers in an informal

23   manner.

24        And more importantly than anything, as I'm sure

25   plaintiffs know, before they would ever be entitled to

1    discovery on discovery, they would have to show a need, they

2    would have to show a reason to believe the defendants are not

3    preserving information that needs to be preserved in the

4    cases.  And we've been fully transparent with them about what

5    we are preserving.  We've also been fully transparent with

6    them about certain types of data that we aren't preserving so

7    that they know that and so that they can come to Your Honor at

8    some point if that's appropriate and ask that it be preserved

9    and, to Your Honor's point, have motion practice on it.

10        So I would submit that having the parties return to a

11    meet and confer with the goal of delineating user account data

12    that we're going to preserve and trying to agree on more

13    language to define our general preservation obligations beyond

14    that would probably be the most productive, but I welcome

15    other defendants' thoughts if they have something to add.

16        **THE COURT:**  Anyone else want to chime in for the defense?

17        **MS. MACHOK:**  Yes,  Samantha Machok for YouTube.  I just

18    want to, in response to Your Honor's question about what are

19    we trying to accomplish and you expressed concern that you

20    didn't understand what might be omitted from our version or

21    what you would be ordering if you entered our order.

22        And just to try to provide a little more color around

23    that in this category of user data, we really want to define

24    and have clarity, at least speaking from YouTube's

25    perspective, about what the scope of our preservation

1    obligations are with respect to user data.  Because to give

2    you one concrete example, plaintiffs have taken the position

3    that every single bit of data that might affect a

4    personalization algorithm is relevant to this case and must be

5    preserved.

6    That is an immense immense amount of data that is

7    transient in many cases and that doesn't exist for the

8    historical time periods that would be relevant to plaintiffs'

9    claims.  For example, if plaintiff has a claim that they were

10   harmed because they watched a video that led them to take a

11   dangerous action two or three years ago.

12   That random snapshot of that data at the current moment

13   in time, for example, would not be at all probative of what

14   was shown to that plaintiff in the weeks leading up to that

15   event.  So we have been very transparent with plaintiffs about

16   what we can preserve, what exists, what doesn't exist.

17   And we have invited them repeatedly to come back to us

18   and say we think this -- based on what you've told us, we

19   think this information is really important and we want you to

20   create a new -- and let me back up.  Preserving much of this

21   information would require us to create new tools.

22   And so we have said to plaintiffs if you need us to

23   preserve information, you need to identify what you want us to

24   preserve.  Simply saying everything is not workable, so come

25   back to us and we will engage with you specific categories of

1    data, of user data.

2         And so that's -- we have not received that reciprocity.

3    We haven't received that.  In terms of what would be useful

4    next steps, it would be having an actual meet and confer that

5    is a two-way street and then being able to tee up -- hopefully

6    reach agreement as to what is a reasonable and proportional

7    step to take to preserve categories that plaintiffs think will

8    actually be probative of their claims.

9         And to the extent the parties can't agree that a

10   particular category of user data is relevant or would be

11   reasonable and proportionate to preserve, we could tee that up

12   to Your Honor in the context of a specific motion supported by

13   declarations.  And we would actually present Your Honor with

14   the context and information you need to decide that dispute

15   and would give everyone a lot more clarity going forward and

16   would permit -- would avoid having that dispute two years,

17   three years down the road when it's too late because the data

18   no longer exists.

19        So that's what -- speaking on behalf of YouTube, that's

20   what we are trying to accomplish.

21        **THE COURT:**  Okay.  Thank you.  That's helpful.

22        I noticed that the defendants, it looks like you want to

23   cabin information or information that's preserved to user

24   account information.  I'm not prepared today to say that

25   that's the proper universe.  Maybe it is.  But I am not

1    prepared to say that today.

2         I think what you should do at meet and confer is also

3    identify for plaintiffs things that are not user account

4    information that might have what plaintiffs consider to be

5    potentially relevant.  And then if you think it's not

6    proportional or reasonable to preserve that, tell them why

7    that's the case.  But they're entitled to know what's outside

8    of the box of user account information even if you disagree

9    about whether it ought to be preserved.

10         Basically, I think in meet and confer, the defendants

11   should identify every system or data source that has the

12   potentially relevant information, just tell the plaintiffs

13   what that is and then tell them what you think is reasonable

14   and proportional for you to preserve and what you think isn't.

15   And even if they disagree -- let's just go ahead and assume

16   that the parties are likely to disagree, I think that's likely

17   and that's fine -- then that can be teed up for me.

18         But I don't like the idea of entering an order that says

19   do what is reasonable and proportional because I feel like

20   that just kicks the disputes down the road.  I would like the

21   parties to fight in front of me about specific systems where

22   plaintiffs say we want X, Y, and Z, and you'll say we'll do X

23   but we won't do Y and Z but there's specificity and so people

24   know what's at stake and what's not at stake.

25         So I think I should send you back to meeting and

20

1    conferring.  But I also want to -- I take Ms. Simonsen's

2    admonition correct that this should not be formal.  I don't

3    think it should be on the record.  I think just regular

4    meeting and conferring in the way that you've been doing

5    should be sufficient.

6        But I also want to impose a deadline for when the parties

7    have done what they can and then should bring a dispute to me.

8    And I'm wondering if rather than today deciding how you want

9    to raise the disputes with me, because maybe you just don't

10   know, you have to do this additional meeting and conferring,

11   maybe we should set another date -- this is just a thought

12   that I'm throwing out there for you all to take aim at --

13   another hearing 30 days from now.  In the meantime, I'll tell

14   you to meet and confer.  And at that hearing, we could discuss

15   the form in which you raise disputes with me, whether it's

16   some letter briefs or motions or exactly how you want to tee

17   up those disputes because you might have a better sense then

18   about what the disputes are and how long you need to brief

19   them.

20       But first, let me turn to plaintiffs.  What do you think

21   about this idea I've now thrown out?

22       **MR. AYERS:**  I think it's important for the parties to

23   meet and confer, as you suggested, to have a better

24   understanding of the systems that they wish to carve out based

25   upon proportionality.

1          And the order that potentially we could submit may be

2     something rather than listing everything could just list --

3     could identify and specify those systems that the parties

4     believe would be not reasonably proportionate to preserve and

5     where there's been adequate showing and discussion by the

6     parties with respect to those systems.  But that's I think

7     where the parties should meet and confer on.

8          With respect to the 30 days, just given that there's --

9     the number of parties, it may make -- we may need more time,

10    but starting with 30 days would be adequate.  And if we need

11    to move it, we can always ask the Court.  But I think a tight

12    deadline is probably best.

13        **THE COURT:**  Okay.  And to be clear, just as I'm not

14    prepared today to say that user account information is the

15    only information, I'm not prepared today to bind to the way

16    that you've described things, Mr. Ayers, as carveouts.

17        I think what I want the parties to get to is the

18    defendants are preserving A, B, and C but not X, Y, and Z.  I

19    don't want it to be they're preserving everything except

20    certain things because I don't think that gives them

21    appropriate guidance.  And it doesn't give plaintiffs guidance

22    either because you don't know affirmatively what falls within,

23    whatever everything is if they just list exceptions.

24        So I would want specificity A, B, and C and not X, Y, and

25    Z.  And, of course, those will likely be different for each of

1    the defendants depending on their technical needs.

2        Let me turn to defense counsel.  What do you think about

3    we just right now schedule another hearing 30 days out and

4    then we can talk I guess at that point about whether the

5    parties need more time to meet and confer or if it's time to

6    start briefing preservation issues?  What are your thoughts on

7    that?

8        **MS. SIMONSEN:**  Speaking for the Meta defendants, I think

9    that makes very good sense.  And I appreciate the opportunity

10   to consider further what additional types of briefing we might

11   need to do on this.  For instance, it may be that we need to

12   put in declarations to support burden arguments as just one

13   example.

14       And so I appreciate the opportunity to re-vist this in 30

15   days to see what disputes remain outstanding and what kind of

16   submissions we might need to make to support our burden or

17   proportionality arguments.

18       **THE COURT:**  Okay.  Any other defendants?

19       Mr. Ayers, it looked like you wanted to say something.

20       **MR. AYERS:**  I did, Your Honor.  I was just going to add

21   that it might -- granted, I know Your Honor wants to give us

22   time to discuss, but I was just responding to something that

23   Ms. Simonsen was suggesting with respect to declarations.

24       If we get there and there needs to -- and I think

25   declarations of burden or proportionality would probably make

1    sense if we need to go there.  And it also may make sense for

2    those declarations to be shared with plaintiffs ahead of

3    filing so we would have the opportunity to obviously meet and

4    confer related to everything in there and have the benefit of

5    seeing those before they're submitted to the Court.

6        **THE COURT:**  Thanks for the comment.

7        I think now we're getting a little bit ahead of ourselves

8    because first we need to figure out exactly how these disputes

9    will be teed up.  But we can talk about that issue further at

10   the next hearing.

11       So I think -- well, today is July 6th.  I'm going to look

12   --

13       **THE CLERK:**  Thirty days out, Judge, would be around

14   August 7th.

15       **THE COURT:**  Okay.  I think --

16       **THE CLERK:**  That's a Monday.

17       **THE COURT:**  I'm thinking we come back on Monday, August

18   7th at 1:00 p.m.  Probably not everybody can make that, but if

19   you can all quickly look at your calendars to see if people

20   who need to be here are available on that day.

21       **MS. SIMONSEN:**  That works for the Meta defendants, Your

22   Honor.

23       **MR. AYERS:**  This was September -- no.

24       **THE COURT:**  August.

25       **THE CLERK:**  August 7th.

1          **MR. AYERS:**  August 7th?

2          **THE CLERK:**  Yes.

3          **MR. AYERS:**  I can say that works for me.  Would that work

4     for the rest of plaintiffs?

5          **MR. WARREN:**  It works for me.

6          **MS. HAZAM:**  Yes, also.  Thank you.

7          **THE COURT:**  How about the Google defendants?

8          **MS. MACHOK:**  Yes, that should work.  Thank you,

9     Your Honor.

10          **THE COURT:**  And TikTok?

11          **MS. FITERMAN:**  Yes, Your Honor.

12          **THE COURT:**  And how about Snap?

13          **MS. BELL:**  Yes, Your Honor.

14          **THE COURT:**  Did I miss any other defendant?  No?

15          Okay, that's all of them.

16          Okay.  Well, great.  Then I order you to meet and confer

17     further about preservation issues along the lines that we've

18     discussed at this hearing today.  And then we're going to have

19     a further hearing on August 7th at 1:00 p.m., and we'll talk

20     about the state of the meeting and conferring.  And if you're

21     at the point where it's ripe to brief preservation issues,

22     then we'll discuss further at that time what the briefing

23     should be.

24          And so before we end things for today, let me just ask

25     plaintiffs anything else that you wanted to raise at this

1    hearing today?

2         **MR. AYERS:**  No, Your Honor.  We've covered it.  Thank

3    you.

4         **THE COURT:**  And how about for the defendants?

5         **MS. SIMONSEN:**  Nothing further from the defendants, Your

6    Honor.

7         **THE COURT:**  All right.  Thank you, counsel.  Good luck

8    with the meeting and conferring, and I will see you on Monday,

9    August 7th at 1:00 p.m.  Have a good afternoon.

10        **MR. AYERS:**  Thank you, Your Honor.

11        **MS. SIMONSEN:**  Thank you, Your Honor.

12        **THE CLERK:**  Thank you, everyone.  We're off the record in

13    this matter.  Court is in recess.

14        (Proceedings adjourned at 1:39 p.m.)

15                            ---O0O---

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF TRANSCRIBER

1

2          I, DIPTI PATEL, certify that the foregoing is a true and

3     correct transcript, to the best of my ability, of the above

4     pages of the official electronic sound recording provided to

5     me by the U.S. District Court for the Northern District of

6     California of the proceedings take on the date and time

7     previously stated in the above-entitled matter.

8          I further certify that I am neither counsel for, related

9     to, nor employed by any of the parties to the action in which

10    this hearing was taken.

11         I further certify that I am not financially nor otherwise

12    interested in the outcome of the action.

13

14    *Dipti Patel*

15    _____

16    DIPTI PATEL, CET-997

17    LIBERTY TRANSCRIPTS                    Date: July 11, 2023

18

19

20

21

22

23

24

25