*ORIGINAL*
*REVISED*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/ PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | ) ) ) ) **Further Case Management** ) ) NO. C 22-03047 YGR ) |
| ALL ACTIONS | ) Pages 1 - 34 ) |
| _____ | ) Oakland, California Wednesday, December 13, 2023 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:          Lieff, Cabraser, Heimann &
                         Bernstein
                         275 Battery Street, 30th Floor
                         San Francisco, California  94111
                 BY:  LEXI J. HAZAM,
                      KELLY K. MCNABB,
                      PATRICK ANDREWS, ATTORNEYS AT LAW

                         Seeger Weiss LLP
                         55 Challenger Road, Sixth Floor
                         Ridgefield Park, New Jersey  07660
                 BY:  CHRISTOPHER A. SEEGER, ATTORNEY AT LAW


                     (Appearances continued next page)


Reported By:          Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

## A P P E A R A N C E S (CONT'D.)

```
For Plaintiffs:        Motley Rice LLC
                       401 9th Street NW Suite 630
                       Washington, DC  20004
                  BY:  PREVIN WARREN,
                       JESSICA CARROLL, ATTORNEYS AT LAW


                       Social Media Victims Law Center
                       821 Second Avenue, Suite 2100
                       Seattle, Washington  98104
                  BY:  MATTHEW BERGMAN,
                       GLENN DRAPER, ATTORNEY AT LAW



For the Meta           Covington & Burling LLP
Defendants:            One City Center
                       850 Tenth Street, NW
                       Washington, DC  20001-4956
                  BY:  PAUL SCHMIDT,
                       ASHLEY SIMONSEN, ATTORNEYS AT LAW


                       Gibson, Dunn & Crutcher
                       620 Eighth Avenue
                       New York, New York  10018
                  BY:  GREGORY L. HALPERIN, ATTORNEY AT LAW

For Defendant Snap     Munger, Tolles & Olson
Inc.:                  560 Mission Street, 27th Floor
                       San Francisco, California  94105
                  BY:  JONATHAN H. BLAVIN, ATTORNEY AT LAW


For Defendant TikTok   King & Spalding LLP
Inc.; ByteDance, Inc.: 1180 Peachtree Street, N.E.
                       Suite 1600
                       Atlanta, Georgia  30309-3521
                  BY:  GEOFFREY M. DRAKE, ATTORNEY AT LAW


                       Faegre Drinker Biddle & Reath LLP
                       90 S. 7th Street, Suite 2200
                       Minneapolis, Minnesota  55402
                  BY:  TARIFA B. LADDON, ATTORNEY AT LAW
```

## **A P P E A R A N C E S (CONT'D.)**


```
For Defendant Alphabet    Wilson, Sonsini, Goodrich & Rosati
Inc.; Google, LLC;        One Market Plaza
YouTube, Inc.:            Spear Tower, Suite 3300
                          San Francisco, California  94105
                    BY:   LAUREN GALLO WHITE, ATTORNEY AT LAW



For Defendant Roblox:     Wilson, Sonsini, Goodrich & Rosati
                          650 Page Mill Road
                          Palo Alto, California  94304-1050
                    BY:   ANTHONY J. WEIBELL, ATTORNEY AT LAW


ALSO PRESENT:

Victoria Butler, Director, Consumer Protection (FL)

Christian Lewis, Commissioner, Consumer & Sr. Protection (KY)

Bianca Miyata, Sr. Assistant Attorney General (CO)

Megan O'Neill, Deputy Attorney General (CA)

Michael Weikowitz, Levin Sedran & Berman, LLP

Melissa L. Yeates, Kessler Topaz Meltzer & Check, LLP



                          --oOo--
```

```
 1   Wednesday, December 13, 2023                    10:31  a.m.
 2                        P R O C E E D I N G S
 3                            --o0o--
 4
 5        THE COURT:  This is in MDL number 22-3047.
 6        As we've done in the past, there will be no -- there won't
 7   be some global set of appearances.  We have your attorney
 8   sign-in sheet for efficiency purposes.
 9        And to the extent you're speaking, then you can state your
10   appearance when you come to the mic.
11        All right.  So who is going to lead for each side today?
12        Ms. Hazam, I see you rising.
13        MS. HAZAM:  Your Honor, Lexie Hazam for plaintiffs.
14        I'm happy to tee things up.  I may have colleagues who
15   speak to particular issues.
16        THE COURT:  Of course.
17        MS. SIMONSEN:  Good morning, Your Honor.  Ashley
18   Simonsen, Covington & Burling, for the Meta defendants.
19        I may have a couple of colleagues also jump in on a few
20   points, but otherwise, I'll be leading.
21        THE COURT:  Sure.  Good morning.
22        So as I understand it, we're all trying to get coordinated
23   here.  You're meeting with Judge Kang tomorrow, correct?
24        And you've already met with Judge Kuhl, so things are
25   proceeding along.
```

```
 1          I did read your statement I received while I was on the
 2     bench this morning.  I guess you have a stipulation that I'm
 3     assuming is consistent with the statement that I'd received.
 4          Is that right?
 5              MS. SIMONSEN:  It is -- it is, Your Honor.
 6          There is one modification to that stipulation that the
 7     parties have discussed and would like to propose to Your
 8     Honor.
 9              THE COURT:  Okay.  Go ahead.
10              MS. SIMONSEN:  So --
11              THE COURT:  I'm looking at Docket 477.
12              MS. SIMONSEN:  That's correct, Your Honor.
13              THE COURT:  Okay.
14              MS. SIMONSEN:  The final paragraph of that
15     stipulation, which is numbered Paragraph 8.
16              THE COURT:  Um-hmm, yes.
17              MS. SIMONSEN:  The parties would like to add to the
18     end of that paragraph language stating that the deadline for
19     the track one, two, and four motions to dismiss shall be
20     extended to December 22nd.
21          And I'm happy to provide background on that for Your Honor
22     if it would be helpful.
23              THE COURT:  Okay.  So currently, you want to move the
24     deadline of December 18th to December 22nd.
25              MS. SIMONSEN:  Correct.
```

1    **THE COURT:**  Okay.

2        That's fine with me.

3        **MS. SIMONSEN:**  Thank you, Your Honor.

4        **THE COURT:**  All right.

5        So in terms of the stip, like I said, I was on the bench

6    when it came in.  Let's just go through them.  So I'm going to

7    read them with you.  In case I have any questions, we can deal

8    with it then.

9        So you've agreed -- you've stipulated that the plaintiffs

10    shall file a second amended master complaint withdrawing the

11    identified counts, which are count six, count eleven, count

12    thirteen, and count fifteen as to all defendants, count twelve

13    and count fourteen as to all defendants except Meta, by no

14    later than Friday February -- I mean, Friday, December 15th.

15        Once that is filed, the counts asserted -- those same

16    counts are deemed withdrawn by definition in the short-form

17    complaints.  And if there are any plaintiffs who want to

18    reassert those, they must do so by no later than Tuesday,

19    January 2nd.  Okay.

20        All of that's fine so far.

21        Now, with respect to number four, it says the parties

22    shall submit a revised proposed short-form complaint that

23    removes the identifying counts from the list of counts

24    plaintiffs may select when completing short-form complaints

25    along with a revised proposed short-form complaint

```
 1    implementation order no later than January 2nd.

 2        Does that mean that they all have to refile short-form

 3    complaints?  Or let's say you've got a plaintiff who isn't

 4    going to reassert those claims.  Can they just stand on their

 5    complaint?

 6            MS. SIMONSEN:  Yes, that's --

 7            MS. HAZAM:  Yes.

 8            MS. SIMONSEN:  -- our understanding.

 9            MS. HAZAM:  Yes.

10            THE COURT:  Okay.  So they can stand on their

11    complaint.  Okay.

12        So if not reasserting, those individual plaintiffs can

13    stand on prior short-form complaint.

14        Correct?

15            MS. HAZAM:  Yes.

16            MS. SIMONSEN:  Correct.

17            THE COURT:  I'm sorry.  I have someone new at the

18    mic.

19            MS. O'NEILL:  Thank you, Your Honor.  Megan O'Neill

20    on behalf of the states.

21        If I may we just wanted to clarify whether the deadline

22    for the State Attorney General motion to dismiss would also be

23    moved.  We were not part of these discussions between the

24    private plaintiffs and defendants, so just wanted to clarify

25    that.
```

```
 1              THE COURT:  So -- so -- hold on.  You need speak
 2     louder.
 3              MS. O'NEILL:  Sure.
 4              THE COURT:  And you can fix that mic, if that helps.
 5              MS. O'NEILL:  Thank you, Your Honor.
 6              THE COURT:  That's much better.  Thank you.
 7         So as I understand it, the deadline extension to
 8     December 22nd was for tracks one, two, and four, which are
 9     defined as the State AG complaint is track one.
10              MS. O'NEILL:  That is my understanding regarding
11     track one including the State Attorney General claims.  But we
12     were not involved in these discussions regarding the
13     stipulation or the changes to the dates so just --
14              THE COURT:  Do you want to extra days?
15              MS. O'NEILL:  We would -- if the deadline for the
16     defendants motion to dismiss is moved four days, we would also
17     seek four extra days for our response.
18              THE COURT:  Well, I'm not going to change the reply
19     date.
20         So what is your view on that?
21              MS. SIMONSEN:  I believe we only have two weeks for a
22     reply as it stands.  I would submit, Your Honor, that the
23     States do have until February -- I believe it's 5th or 6th --
24     yeah, 5th to file their opposition, which is quite a long
25     period of time.  The -- but, you know, we -- perhaps we could
```

1    extend the reply deadlines by two days or four days to -- to

2    match the requested extension.

3        We are asking for the extension of the motion to dismiss

4    deadline, Your Honor, to accommodate plaintiffs' request to

5    incorporate allegations from other State Attorney General

6    complaints.  That was a request that was just made yesterday.

7        And since they won't be filing their amended complaint

8    until Friday, we simply --

9                    (Simultaneous colloquy.)

10           MS. SIMONSEN:  -- the time.

11           THE COURT:  -- but the State AG's complaint isn't

12    changing, is it?

13           MS. SIMONSEN:  It isn't.  But the motion to dismiss

14    the State AG complaint also moves to dismiss counts seven

15    through nine of the personal injury plaintiffs' master

16    complaint and the allegations against Mark Zuckerberg if I'm

17    recalling correctly.

18           THE COURT:  Well, that's a separate motion.

19           MS. SIMONSEN:  And the reason -- the reason that I

20    mention that, Your Honor, is that the allegations that the

21    plaintiffs are proposing to incorporate by reference into

22    their master complaint are pertinent to counts seven through

23    nine of the master complaint and the alleged misrepresentation

24    claim against Mr. Zuckerberg.

25        And so if we do not receive that master complaint until

1    Friday, we will need additional time beyond the 18th to

2    prepare our motion to dismiss and to adapt it as necessary in

3    light of any new allegations in the master complaint.

4        We are only asking for four days and, again, would submit

5    with a February 6th or 5th deadline to file the opposition, we

6    think that does provide the State -- the States with plenty of

7    time to respond.

8            **THE COURT:**  A response?

9        **MS. O'NEILL:**  Your Honor, we don't object in any way

10   to the defendants having the additional time to incorporate

11   anything they need to incorporate.  We would just ask that we

12   be given a commensurate amount of time to reply.

13           **THE COURT:**  So why can't you respond between

14   December 22nd and February 5th?

15       **MS. O'NEILL:**  Your Honor, if that is what the Court

16   desires, we can respond.  We would just request that the dates

17   be moved, particularly given that we were not part of these

18   discussions.

19       But, Your Honor, we would -- we will be able to respond if

20   necessary.

21           **THE COURT:**  Mr. Warren.

22       **MR. WARREN:**  Good morning, Your Honor.

23       Just wanted to say that the only reason the States weren't

24   involved in these discussions is 'cause they transpired about

25   six minutes ago, so we really did mean to include them and

1    don't mean to ever leave them out of these conversations.

2         We -- the -- we have yet to receive an unredacted version

3    of the -- the complaint filed by the State of New Mexico,

4    which leaves us in a bit of a time crunch to meet the deadline

5    of Friday for filing an amended master complaint.

6         But I think we've worked it out such that Meta has agreed

7    to provide that to us later today, which should allow us to

8    file that on Friday.  They've asked for a modest extension and

9    we've said okay to that, so -- I just wanted to provide that

10   additional context.

11             **THE COURT:**  I'm going to -- I'd like you to stay on

12   this schedule.  So if something happens and you are getting to

13   the end of January and you think you can't do it, then let me

14   know.

15        But otherwise, we're going to stick to the schedule.

16             **MS. O'NEILL:**  Understood, Your Honor.  Thank you.

17             **THE COURT:**  Thank you.

18        Okay.

19        Then we get to Paragraph 5, and what this does is then

20   bifurcates the briefing, as I understand it, to allow briefing

21   on those dismissed claims to proceed if any individual -- if

22   any individuals reassert them, right?

23             **MS. SIMONSEN:**  That's correct, Your Honor.

24             **THE COURT:**  Okay.

25        Mr. Warren, do you have any indication that individual

1   defendants are going to -- or individual plaintiffs are going

2   to reassert those claims?

3        **MR. WARREN:**  Yes, Your Honor.  I believe there are

4   some individual plaintiffs that would.

5        **THE COURT:**  Approximately how many?

6        **MR. WARREN:**  I believe there are only -- less than

7   two dozen claims in the entire MDL that at this time reassert

8   any of claims 11 through 15 in combination.  And I -- I can't

9   say which -- which of those plaintiffs would reassert which,

10  but I am under the impression that at least some would

11  reassert some.

12       **THE COURT:**  Okay.  So what I am going to need is --

13  maybe liaison counsel can file a notice on the docket so that

14  I know which of the individual complaints -- which cases have

15  reasserted those claims.

16       And so -- so they've got a deadline of January 2nd, so if

17  I could have liaison counsel file by January 8th just a list

18  of the case numbers identifying the additional claims that are

19  there, because then the question is -- and all of those

20  individual plaintiffs are going to have to coordinate because

21  I am going to need a consolidated opposition, not how -- two

22  dozen oppositions.

23       **MR. WARREN:**  Yes, Your Honor.  That -- that deadline

24  and -- and that process makes perfect sense to us.  I do

25  envision that MDL coleads will remain involved even though

```
 1    these claims will be dropping out of the master complaint.  We
 2    can continue to serve the -- the role of -- of attempting to
 3    centralize in coordinating.
 4              THE COURT:  Okay.
 5         So it's one -- consolidated motion, consolidated
 6    opposition, consolidated reply.
 7              MS. SIMONSEN:  Yes.
 8              MR. WARREN:  Yes, Your Honor.
 9              THE COURT:  Okay.
10         All right.  And then -- and then eight is fine, and we've
11    talked about a change to that.
12         Okay.  All right.  Anything else, then, on this particular
13    briefing?
14              MS. SIMONSEN:  Nothing from the defendants, Your
15    Honor.  Thank you.
16              MR. WARREN:  No, Your Honor.  Thank you.
17              THE COURT:  Okay.
18         The stipulation's accepted, but I'm going to take the --
19    I'll take your language on the proposed order and pop it into
20    my own order with these changes that we've discussed here
21    today.
22              MS. SIMONSEN:  Thank you, Your Honor.
23              THE COURT:  Okay.
24         And then I saw that everyone agrees to an amendment --
25    this is on page 14 of 24 of the statement.
```

1    So the plaintiffs propose to amend the existing master to

2    add a single paragraph incorporating certain unsealed

3    paragraphs of the State Attorneys' General complaint, and Meta

4    consents to the amendment as proposed.

5    Is that changed?

6    **MR. WARREN:**  Modestly, it has, in -- insofar as we --

7    the plaintiffs have also proposed to Meta that we incorporate

8    by reference certain allegations of the State of New Mexico's

9    complaint.

10    This is the one that we have yet to see an unredacted copy

11    of, so we're negotiating how to sort that out.  It may be --

12    and I say this before having had an opportunity to even meet

13    and confer with my colleagues on the other side about it --

14    that we also seek to incorporate by reference certain

15    allegations in the State of Utah's complaint against TikTok.

16    We just received a copy that I believe within the last 24

17    hours.

18    And it would be -- you know, I don't want to say anything

19    really to Your Honor, but I did want to flag that that we

20    intend to raise that with counsel for TikTok.

21    **THE COURT:**  Okay.  And where am I going to have on --

22    so what are you going to do in order that I know and that I

23    have in the master docket these allegations?

24    Because if you're stipulating by reference, I don't want

25    to be going all over multiple Dockets looking for the

1   operative language.

2            **MR. WARREN:**  Of course.  Yes, Your Honor.

3       We would attach those as exhibits that -- the complaints

4   that we're referencing.

5       We also intend to include this new paragraph with a -- a

6   special numbering so that it doesn't throw off all the rest of

7   the numbering and, therefore, make Your Honor's prior orders

8   sort of difficult to comprehend.

9       So we would just add the letter "A" after a certain

10  numbered paragraph so that we can just literally insert it in

11  and then add the other complaints to the -- to the back as

12  exhibits and try to make it as easy as possible.

13           **THE COURT:**  Okay.

14           **MS. SIMONSEN:**  Your Honor, and that's acceptable to

15  the defendants.

16       The Meta defendants have consented to the amendment that

17  the plaintiffs wish to make with respect to incorporating by

18  reference allegations from the multi-State AG complaint.  We

19  simply have yet to meet and confer on the allegations they'd

20  like to incorporate from the New Mexico complaint.  But we're

21  prepare to do that promptly so that they can get something on

22  file by Friday that's agreed upon.

23           **THE COURT:**  Okay.

24       And do I have counsel for TikTok?

25           **MR. DRAKE:**  Yes.  Good morning, Your Honor.  Geoffrey

1    Drake, King & Spalding, for TikTok.

2         **THE COURT:**  Good morning.

3         **MR. DRAKE:**  We'll meet and confer with Mr. Warren

4    about that.  It's the first I'm hearing of it, so I'm sure we

5    can talk about it after -- after today's hearing.

6         **THE COURT:**  Okay.  Terrific.

7         **MR. DRAKE:**  Thank you.

8         **THE COURT:**  All right.  So I think those are all of

9    the issues with respect to the master complaint, right?

10        **MS. SIMONSEN:**  Yes, Your Honor.

11        **MR. WARREN:**  Yes.

12        **THE COURT:**  Okay.

13     In terms of the individual fact sheets, I understand

14    you're still coordinating with Judge Kuhl on that issue.

15        **MR. WARREN:**  I'll throw in a friend for that one.

16    Thank you, Your Honor.

17        **MS. McNAB:**  Yes, Your Honor.  Kelly McNab on behalf

18    of the individual plaintiffs.

19     We have recent developments on the -- both plaintiff fact

20    sheet and another -- I will call bucket of orders related to

21    the fact sheet which we're calling user account information

22    forms.

23     It's a series of -- of processes so that both parties

24    understand which accounts we're referring to for each

25    plaintiff.

1        Those have -- Judge Kuhl just recently issued an order on

2    the one dispute that was on the user account information form.

3    So as of I believe it was yesterday, those have been submitted

4    for Judge Kuhl's review.  And once they are entered in the

5    JCCP, we intend to adopt in the MDL making the necessary

6    changes, changing captions, things likes that.

7        There -- there are no substantive issues, and we've

8    already exchanged drafts of those orders with each other so we

9    will be ready to file those as soon as Judge Kuhl enters them

10   in the JCCP.

11       **MR. HALPERIN:**  Good morning, Your Honor.  Greg

12   Halperin from Covington & Burling for the Meta defendants.

13   That's correct from the defendant's perspective.  The one

14   outstanding issue is to convert things like the California

15   Code of Civil Procedure into the federal rules and things like

16   that, but I suspect the parties can work that out pretty

17   promptly upon issuance in the JCCP.

18       **THE COURT:**  Okay.

19       All right.

20       So it sounds like at this point, there's nothing for me to

21   do on the fact sheets, right?

22       **MS. McNAB:**  Correct, Your Honor.

23       **THE COURT:**  Okay.  Terrific.  Thanks for the update.

24   Thank you, Mr. Halperin.

25       Okay.  There are a number of issues with respect to

1   discovery that it seems have disappeared and/or are in a sense

2   kind of morphed in light of my conference with Judge Kuhl

3   and -- and current developments.

4       I understand that you are all meeting with Judge Kang

5   tomorrow, and so I'm just going to leave it to him to address

6   everything in the first instance.  And then if there are

7   issues, you can come back to me.  But he's incredibly capable,

8   and we're incredibly lucky to have him working with us on this

9   MDL.

10      He -- I've introduced him to Judge Kuhl, so there's line

11  of communication with him and Judge Kuhl as well, so the three

12  of us will be working -- I would say we all have our own

13  realms, and so we'd like to operate in our own realms and just

14  coordinate with each other.

15      I think we're all capable of doing these things, so -- is

16  there anything that you want to raise right now?

17              **MS. SIMONSEN:**  No, Your Honor.

18              **MS. HAZAM:**  Not on behalf of plaintiffs, Your Honor.

19              **THE COURT:**  That's -- so just remember this moment.

20      Thank you.  Okay.

21      One thing that he would like for you to do, though, in

22  light of recent developments, have you -- have you sent him or

23  filed an annotated agenda or CMC statement so he knows where

24  everything is?

25              **MS. SIMONSEN:**  We did send him -- or at he at least

1    referred to in his first order a letter that we had previously

2    prepared for Magistrate Judge Cisneros outlining the status of

3    all outstanding orders and disputes.

4        And then since that time, just on Monday, we submitted an

5    update regarding the preservation order negotiations between

6    the parties.

7        We have not submitted an annotated version of any case

8    management statements submitted in this MDL but would be glad

9    to do so.

10        THE COURT:  I think that to the extent that you can

11    all meet and confer today and just have -- if it's nothing

12    else, a short agenda, or you could even take the case

13    management statement that you had for me where -- where you

14    indicated that there were all these things that needed to

15    happen but the landscape's changed and send him something

16    that's updated so he can prepare for tomorrow and be in a

17    better position to address your issues.

18        I think he would find that very helpful so if you will do

19    that.

20        MS. HAZAM:  We'd be pleased to do so, Your Honor.

21        There was also one additional issues that the parties

22    alerted to him -- him to in a filing on Monday, so we'll

23    include that as part of the agenda also.

24        THE COURT:  Okay.  Great.

25        Okay.  So then there's -- there are just -- seems to me on

```
 1   my list, there are a couple of motion practice issues to deal
 2   with that are left here, defendants' request on causation.
 3   And then I understand -- I haven't looked at it; it's been a
 4   very busy week -- defendants filed a motion for certification
 5   of interlocutory appeal.  So let's talk about briefing on
 6   those two issues.
 7        Okay.  And -- all right.  I have -- go ahead.  Ms. Hazam I
 8   have for the plaintiffs.
 9            MR. SEEGER:  Chris Seeger for plaintiffs.
10            THE COURT:  And Mr. Seeger.
11        And then for the defense.
12            MR. SCHMIDT:  Good morning.  Paul Schmidt for Meta.
13            THE COURT:  Mr. Schmidt, good morning.
14            MR. SCHMIDT:  Good morning.
15            THE COURT:  Mr. Schmidt, let's start with you.
16            MR. SCHMIDT:  Okay.  Think on the causation -- let me
17   start actually with the interlocutory brief.  We did try to be
18   targeted in that brief in the issues we presented.
19        Obviously plaintiffs will respond to those issues subject
20   to Your Honor's guidance.
21        We have not requested hearing -- what Your Honor set the
22   last hearing a stay of discovery in that brief.  We think
23   we've identified issues that are subject for -- that are
24   appropriate for interlocutory review in terms of being
25   susceptible to different outcomes subject to reasonable
```

1    disagreement and obviously integral to how the case proceeds.

2        But we did make the judgment not to seek a stay of

3    discovery having Your Honor's guidance.  If the Ninth Circuit

4    were to take it up, we would want to look at that question at

5    that point.  But we made the decision at this point not to do

6    that and to focus on just justifying what we believe is a --

7    is really strong case for interlocutory review.

8        **THE COURT:**  So can I ask -- and, again, I've not yet

9    looked at it at all.

10       Would you address the issue that we still have, you know,

11   three more different rounds of briefing in this action.  And I

12   don't know how I'm going to rule, but if you lose on any of

13   those rounds, isn't it inefficient for you -- because you may

14   want interlocutory appeal on those, too.

15       Isn't it more efficient to wait the six or nine months to

16   figure out where the legal landscape is in the context of the

17   whole case before you seek such a review?

18       **MR. SCHMIDT:**  We have seen it the opposite way in

19   terms of obviously as we brief issues in the future, we'll be

20   guided by what Your Honor's already addressed, including on

21   Section 230.

22       We'll preserve issues where we lost, but we're obviously

23   going to tailor arguments to how Your Honor's ruled.  So given

24   the length of time that interlocutory review can take, we

25   thought it made sense to file it sooner rather than later.

```
 1           And we also see the issues on which we're seeking review
 2     as issues that the Court has pretty clearly spoken on that we
 3     would expect, subject to us making different arguments in the
 4     different cases, would carry forward.
 5           That was our thinking, that it's not going to be -- the
 6     issues we flagged are not going to be substantially impacted
 7     by future rulings Your Honor issues, unless Your Honor sees
 8     new things that causes the Court to rethink or they just apply
 9     differently in the context of the different settings.
10           But as to the personal injury cases, we think they're ripe
11     fully, and that's what we focused on, the issues that are
12     ripe.
13                MS. HAZAM:  Your Honor, if I may.
14           Your Honor has articulated a concern that we have with
15     regards to this matter being heard now.  There are additional
16     rounds of challenges to the pleadings.  They may involve
17     additional parties -- the school district plaintiffs, the
18     State AG's -- that raise similar issues.
19           We do not believe that it is at all efficient to be having
20     this request for an interlocutory appeal heard now and believe
21     that it should be held in abeyance until the pleadings are
22     settled.
23                MS. O'NEILL:  Your Honor, Megan O'Neill again on
24     behalf of the States.
25           I don't have much to add beyond stating that we do support
```

1    this position that Ms. Hazam has just --

2            **THE COURT:**  Okay.

3            **MS. O'NEILL:**  -- just stated.

4            **THE COURT:**  I'm sorry, but I am going to have -- you

5    going to have to speak with a little more --

6            **MS. O'NEILL:**  I'm sorry.

7            **THE COURT:**  How about we say a little more

8    confidence?

9            **MS. O'NEILL:**  Thank you, Your Honor.

10       Again, Megan O'Neill on behalf of the States.

11       I don't have much to say beyond just reiterating what

12   Ms. Hazam has just said.  The States join in in that position.

13           **THE COURT:**  Okay.

14           **MR. SCHMIDT:**  May I say one more thing on it just to

15   make it a little more concrete on our side?

16           **THE COURT:**  Sure.

17           **MR. SCHMIDT:**  We -- as I said at the beginning, we

18   tried to focus on issues that we think are squarely presented

19   by Your Honor's rulings.  And where we think there's the most

20   grounds for -- for disagreement, the most grounds for meeting

21   the interlocutory review standard.

22       To take of those examples, we focused on the Court's

23   ruling on whether they can proceed on a failure to warn claim.

24   That's right now in terms of the Court's ruling, the Court

25   spoke to that at the last hearing, that's something that we

1    think will impact discovery where future -- where early

2    guidance on that issue rather than later guidance on that

3    issue is really, really meaningful.

4        We're not freezing the rest of the case as we go through

5    this motions practice.  The plaintiffs have now started

6    serving targeted discovery.  In those circumstances, we think

7    it does make sense to pursue interlocutory review on that

8    issue now.

9        A similar example is we've -- we've raised the product

10   liability issue, whether these services can be treated as

11   products, an issue I think that the Court's decision

12   recognizes is somewhat novel in terms of the case law out

13   there.

14       That's an issue that I don't know if it's going to be

15   radically reshaped by subsequent briefing.  It could have a

16   material impact on how the cases progressed when we find

17   ourselves now in a -- in a context where discovery can

18   progress.

19           MS. HAZAM:  Your Honor, to respond to that,

20   defendants' request for certification is wide-ranging.  It

21   covers essentially the entire scope of Your Honor's order, so

22   it is not limited to failure to warn.

23       It essentially seeks certification of Your Honor's rulings

24   regards -- with regards to Section 230 across the board.  The

25   same as to the First Amendment rulings and the same as to the

```
 1    product liability rulings.

 2        These are issues that will come up in the future briefing

 3    through plaintiffs who are raising different causes of action

 4    than the causes of action raised by the personal injury

 5    plaintiffs.

 6        These are plaintiffs who haven't been heard yet on those

 7    issues.  Defendants are not seeking to have discovery stayed.

 8    We agree on that much.  We do not believe it should be.  But

 9    if discovery is proceeding as of now, then we think it would

10    be efficient for these issues to be considered for

11    certification once the pleadings are settled and all others

12    have weighed in.

13            MS. O'NEILL:  Nothing further to add, Your Honor.

14            THE COURT:  All right.

15        Okay.  So you filed yesterday --

16            MR. SCHMIDT:  Yes, Your Honor.

17            THE COURT:  So if you filed yesterday, then the

18    opposition is due on the 26th and the reply on the 2nd?

19            MS. HAZAM:  That would be the default rule, Your

20    Honor.

21            THE COURT:  And do you all want to change that?

22            MS. HAZAM:  If we are going to proceed with briefing

23    we would like that, so plaintiffs would request a deadline for

24    an opposition that would fall after the holidays.

25            THE COURT:  Is there an objection?
```

```
 1           MR. SCHMIDT:  There's no objection, Your Honor.

 2           THE COURT:  Okay.

 3       When would you like --

 4           MS. HAZAM:  If Your Honor wished us to have this

 5   matter heard at the January status conference, then our

 6   suggestion would be for the opposition to be due on

 7   January 9th, and we would suggest that any reply from

 8   defendants be due ten days later, the 19th, which would have

 9   the briefing completed a week prior to that hearing.

10       If Your Honor wants this to be heard on an alternative

11   date, we can adjust accordingly.

12           THE COURT:  Well, I don't know that I'll be ready to

13   rule, but certainly -- I mean, if -- if that schedule's

14   agreeable, I certainly will have time to read the briefs.

15       I will be in trial so, like I said, I'm not sure that I'll

16   have anything ready for you, but I certainly could take

17   argument.

18           MR. SCHMIDT:  Recognizing the holidays, that schedule

19   is agreeable to us, Your Honor.

20           THE COURT:  Okay.

21           MS. O'NEILL:  And, Your Honor, excuse me.

22       If I may, the States would like to reserve the right to

23   respond to the motion as well to the extent that it could

24   affect our claims procedurally.  And we'd be amenable to

25   responding simultaneously with plaintiffs.
```

```
 1              THE COURT:  That's fine.

 2              MS. O'NEILL:  Thank you.

 3              THE COURT:  Okay.

 4         So oppositions on the 9th, reply on the 19th, and it will

 5    be set for hearing on the 26th.

 6         Okay.  And then there's an issue with respect -- that was

 7    raised with respect to causation?

 8              MR. SCHMIDT:  Yes, Your Honor.

 9         This is a little bit of an odd issue.  We had a good bit

10    of conferral leading up to the CMC statement on this issue,

11    including -- in terms of how much we would address this issue

12    in the CMC statement in terms of the parties having time to

13    address the issue.  It ultimately resulted in, I think,

14    productive alignment between the parties in terms of --

15    obviously subject to Your Honor's questions, we wanted to put

16    this issue in front of Your Honor in just the most general way

17    possible but having fleshed out the issues between the sides,

18    so that if it's agreeable again to the Court, we could brief

19    it on January 15th in simultaneous briefs.

20              THE COURT:  And what do you mean by that?

21              MR. SCHMIDT:  In terms of the briefing or in terms of

22    issue?

23              THE COURT:  Both.

24              MR. SCHMIDT:  In terms of the briefing, it would

25    be -- we have already given details -- position to the
```

1    plaintiffs on what we're seeking and what our rationale for it

2    is.  And we would obviously update that, but both parties

3    would simultaneously submit a brief to the Court on the 15th

4    that would contain our proposal and plaintiffs' opposition to

5    that proposal.

6         Our proposal, which, again, the parties have agreed that

7    subject to Your Honor's questions, we're not going to dive

8    into it in terms of arguing it now, but our proposal, which

9    they oppose, is that we don't limit discovery now, but we find

10   a way to get an early resolution of the question as to whether

11   they can introduce under rule 702 reliable expert testimony

12   supporting the general causation element of their claims.

13        And what we were guided by was -- was hearing Your Honor

14   at the last hearing saying discovery will be before Judge

15   Kang.  Your Honor will address legal issues.  We're not

16   seeking to limit discovery on this basis.  We're seeking to

17   put a legal issue in front of the Court at an earlier time.

18        **THE COURT:**  So I don't even have pleadings settled

19   and you want to bring what's effectively a *Daubert* motion

20   without any plaintiff expert reports?

21        **MR. SCHMIDT:**  No, it would -- it would set forth the

22   schedule for that where that would just occur earlier in the

23   litigation than if we went fully through the individual cases

24   to the point of trial, but it would --

25        **THE COURT:**  -- said to me just a moment ago that you

1    believe that they would be precluded to -- precluded in

2    introducing testimony under 702.  And 702 concerns expert

3    testimony.

4        MR. SCHMIDT:  Yes, so what we would be proposing

5    would be an early extra schedule on this one issue following

6    the chance for them to conduct discovery.  And then we would

7    be able to present that to the Court on an earlier track than

8    if we lumped it in with everything else in the context of case

9    moving towards trial.

10        THE COURT:  So typically, expert discovery doesn't

11    start until we have fact discovery.

12        MR. SCHMIDT:  Um-hmm.

13        THE COURT:  And you want them to -- to provide expert

14    reports before fact discovery is even closed?

15        MR. SCHMIDT:  Before fact discovery potentially is

16    closed but with the opportunity to conduct fact discovery on

17    the issues relevant to general causation.  This is something

18    that a number of other courts have done actually in a more

19    phased way with limited initial discovery, which is not what

20    we're proposing.

21      But that's -- that's what we'd like the opportunity to set

22    forth for Your Honor in a brief to be filed on the 15th.

23        THE COURT:  Mr. Seeger.

24        MR. SEEGER:  Yeah.  Judge, Mr. Schmidt is right, that

25    we agreed not to try to debate this -- we want to answer your

 1    questions.  I can assure you, you will get a full-throated

 2    response in opposition to that proposal.

 3        I don't think it's true that most courts -- I think there

 4    are a handful of courts that might have gone this way for

 5    various reasons.  But we don't think it would be appropriate

 6    here.

 7        But, again, in the interest of not debating it right now

 8    unless you have specific questions, we'd like to just I guess

 9    ask the Court for a briefing schedule on it.  And we've agreed

10    to simultaneous briefing.

11        I don't know if we discussed -- and I don't want to put

12    Mr. Schmidt in a bad position here -- a reply, which I would

13    also propose would be maybe briefly after you get simultaneous

14    briefing, we would do that simultaneous as well.

15            **MR. SCHMIDT:**  We would not oppose that.

16            **THE COURT:**  Well, I have a lot going on in January,

17    and you've added the interlocutory appeal issues.  It doesn't

18    seem to me that this is overly urgent.  I've got a criminal

19    trial, and then I have a Google trial.

20        So my preference -- I'm happy to have you brief it, but,

21    frankly, I'm going to want some time to think about it.  And

22    it may not make sense to -- unless there's some reason to

23    discuss it, my preference is to deal with this in February as

24    opposed January.

25            **MR. SCHMIDT:**  What I would request on that is there's

 1    probably no deep magic to doing it in January versus February.

 2    Our concern is we are now into discovery on -- thinking about

 3    how the litigation is going to progress in terms of discovery,

 4    this is relevant to that question.

 5        If we can brief it on the timetable the parties have

 6    proposed, and if that doesn't work for the Court in terms of

 7    resolving it, it can roll to February, is what we would

 8    propose.

 9            **MR. SEEGER:**  We could also ask you to just deny this

10    bad idea right from the bench, Judge.

11            **MR. SCHMIDT:**  Now we're arguing it, Your Honor.

12            **THE COURT:**  Let's do this.

13        And how many pages do you want to file?

14            **MR. SCHMIDT:**  I think we could actually be pretty

15    terse in -- in what we file.  I think we had talked about five

16    single-spaced pages.  We could be pretty focused in what we

17    file.

18            **THE COURT:**  Okay.

19        Five single-spaced pages due January 15th.

20        You can have the two-page rebuttal.  It's due noon on the

21    19th.

22            **MR. SEEGER:**  Okay.

23            **MR. SCHMIDT:**  Is that also single-spaced, Your Honor?

24            **THE COURT:**  Yes.

25            **MR. SCHMIDT:**  Okay.  Thank you.

1      **THE COURT:**  Okay.  Standing order, any footnotes must

2    truly be footnotes and not additional argument on all things

3    and must be 12-point font.

4      If I have to get glasses to read it, which is anything

5    smaller than 12-point, I won't read it.

6      **MR. SCHMIDT:**  Understood, Your Honor.  Thank you.

7      **THE COURT:**  You're on notice.

8    Sir?

9      **MR. LEWIS:**  Your Honor, Chris Lewis for the States.

10     We -- we would as -- as far as this goes -- both

11   plaintiffs and defendants have been at this before we joined

12   the case.  But to the extent that these agreements keep, you

13   know, potentially affecting claims that are our cases, we'd

14   like to be more involved in these.

15     And as far as this particular one goes, we would like some

16   time to respond to the extent that any of it does affect our

17   claims.

18     We would ask for three weeks.  If this is being pushed

19   into February for our response from the 15th, which I think

20   would put it the 9th of February?

21     **MR. SCHMIDT:**  May I speak to that, Your Honor?

22     We're absolutely open to conferring with the States.  We

23   viewed this issue as affecting just the personal injury cases

24   because those are the only cases where we've been through the

25   first round of briefing and where we have discovery open.

```
 1        But, of course, we're willing to confer with the States
 2   it.  It would not be reasonable from our point of view that
 3   there's kind of this additional "me too" briefing on things
 4   that won't impact them down road and that we'd have to come
 5   back -- until down the road and that we'd have to come back to
 6   Your Honor on -- in order for it to impact them.
 7        But maybe that's something we could confer with the States
 8   on and figure out a way to --
 9            THE COURT:  Why don't you confer.  I'm going to see
10   you on the 26th.
11        If you feel like you need to respond, then you should
12   start your response after you get it on the 15th.  And then
13   I'll give you a deadline.
14            MR. LEWIS:  Understood, Your Honor.
15            THE COURT:  But it sounds like they've got some
16   analysis that they've shared.  I'm sure they'll share it with
17   you, too.  And you can let me know on the 26th whether you
18   think you need to respond in writing.
19            MR. LEWIS:  Will do.  Thanks, Your Honor.
20            THE COURT:  Sure.
21            MR. SCHMIDT:  Thank you, Your Honor.
22            MR. SEEGER:  Thank you.
23            THE COURT:  Someone said "actually"?  No?
24            MR. SEEGER:  No.
25            THE COURT:  Okay.
```

```
 1          All right.  That's all I had on my agenda.
 2          What -- did anybody have other things on their agenda?
 3              MR. SCHMIDT:  Not on the defense side, Your Honor.
 4              MS. HAZAM:  Not for plaintiffs, Your Honor.
 5              THE COURT:  Excellent.  Again, remember this moment.
 6          Okay.  Let's -- then I will wish everybody a wonderful
 7      holiday.
 8          We'll get an order out.  Have fun with Judge Kang tomorrow
 9      and be safe and enjoy your families during the holidays,
10      right?
11              MR. SCHMIDT:  Thank you, Your Honor.
12              MS. HAZAM:  Thank you, Your Honor.
13              MR. SCHMIDT:  Happy holidays.
14              MS. HAZAM:  Thank you.
15              THE CLERK:  Court is adjourned.
16              (Proceedings were concluded at 11:14 A.M.)
17                              --o0o--
18
19
20
21
22
23
24
25
```

1

2

3              **<u>CERTIFICATE OF REPORTER</u>**

4

5              I certify that the foregoing is a correct transcript

6       from the record of proceedings in the above-entitled matter.

7       I further certify that I am neither counsel for, related to,

8       nor employed by any of the parties to the action in which this

9       hearing was taken, and further that I am not financially nor

10      otherwise interested in the outcome of the action.

11

12      _____

13              Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

14                      Monday, December 18, 2023

15

16

17

18

19

20

21

22

23

24

25