UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-3047-YGR<br><br>MDL No. 3047<br><br>**CASE MANAGEMENT ORDER NO. 11**<br><br>*Upcoming Case Management Conferences:*<br>March 22, 2024 at 2:30 p.m.<br>April 19, 2024 at 9:30 a.m.<br>May 10, 2024 at 9:30 a.m.<br>June 21, 2024 at 9:30 a.m.<br>July 19, 2024 at 9:30 a.m. |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

The Court held a further case management conference in the above-captioned matter on February 23, 2024. This order memorializes and expands upon the deadlines set and findings made by the Court during that conference.

**I.    MARK ZUCKERBERG'S MOTION TO DISMISS**

The Court heard argument on defendant Mark Zuckerberg's motion to dismiss (Dkt. No. 518) and took the motion under submission.

As explained in the Court's February 20, 2024 order (Dkt. No. 621) and as discussed at argument, the Court requires supplemental briefing on two issues: (i) state-law standards for claims of negligent misrepresentation, in particular negligent misrepresentation by omission where available, and (ii) state-law standards for corporate officer responsibility.  Supplemental briefing should include a simple list of 1–2 cases per state implicated[1] for each issue, and the briefing should not contain argument.  The parties are **ORDERED** to provide briefing by this Friday, March 1, 2024.

---

[1] As discussed at argument, Mr. Zuckerberg's motion implicates at most the laws of Arizona, California, Colorado, Connecticut, Georgia, Maryland, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, and Wisconsin.  The parties correctly pointed out that California law likely should not apply here, but the Court wishes to review California in the first instance.

While the Court appreciates the parties' agreement that, of those states implicated by Mr. Zuckerberg's motion, all states recognizing a negligent misrepresentation by omission claim require a duty to disclose, the Court must itself verify the parties' understanding of the law.[2] Similarly, the Court appreciates the parties' admonition that the states generally set forth the same standard with respect to imputing the liability of a corporation to its officers but must independently confirm the parties' assessment.

## II. BELLWETHER SELECTION CRITERIA

On February 10, 2024, the Court preliminarily adopted plaintiffs' proposed selection criteria for the bellwether discovery pools, permitting defendants to make any contrary proposals in advance of the February 23, 2024, Case Management Conference. (*See* Dkt. No. 604, Case Management Order No. 10 at 4.) The parties dispute what selection criteria is appropriate for the personal injury bellwether discovery pool, but the parties agree on the school district selection criteria. (*See* Dkt. No. 618, Agenda and Joint Statement for February 23, 2024, Case Management Conference at 7–13.)

The parties agree that plaintiffs alleging an eating disorder (defined to include generalized eating disorder, anorexia, bulimia, and binge eating disorder), and self-harm (defined to include self-harm, suicidality, and suicide attempt(s)) should be included in the selection criteria. (Dkt. No. 618 at 8.) However, the parties disagree on whether the criteria should include (1) non-addiction cases, (2) suicide cases, and (3) plaintiffs who allege either body dysmorphia or sleep disorders alone. The parties also disagree as to whether the selection criteria should contemplate a plaintiff's age at time of filing and gender.

The parties presented statistics as to the proportion of personal injury cases each of these criteria represents, with nominal variation between the parties, given the set of plaintiffs remains in flux. According to defendants' statistics, 13% of plaintiffs allege suicide (29 cases), 2% allege wrongful death (5 cases), 23% allege body dysmorphia (53 cases), 22% allege sleep disorders (50

---

[2] The Court recognizes that plaintiffs have provided some case law to this effect in Tables 3 and 4 of its opposition to defendants' Track 1 motion to dismiss. (*See* Dkt. No. 600 at 32–36.)

2

cases), and 13% do not allege addiction or compulsive use (28 cases). Plaintiffs present similar but slightly lower figures. Plaintiffs clarified at argument that, according to information received that morning, at least 20 of the cases not alleging addiction or compulsive will be amended to allege addiction, leaving at most four cases not alleging addiction or compulsive use by plaintiffs' count. Defendants also present statistics as to two characteristics: 46% of plaintiffs are 18 years or older, and based on defendants' own assessment and investigation, 23% of plaintiffs appear to be male and 77% female, although plaintiffs do not disclose gender identification in the Short-Form Complaints ("SFCs").

*First*, defendants argue that if the Court will exclude the 13% of plaintiffs' so-called "outlier" cases not alleging addiction or compulsive use (which plaintiffs have updated to roughly 5%), the Court should in fairness exclude the 13% of "outlier" cases alleging suicide. Defendants also argue that development of cases alleging attempted suicide only are an appropriate and less prejudicial stand-in for cases alleging suicide. The Court determines that both plaintiffs alleging suicide and not alleging addiction or compulsive use will be included in the selection eligibility criteria.[3] 13% of cases alleging suicide is not a nominal amount, and it may be appropriate that at least one of the 12 cases selected as part of the personal injury bellwether discovery pool contains allegations of suicide. On the other hand, given the apparent state of flux of the personal injury cases, the Court is unwilling to exclude plaintiffs not alleging addiction or compulsive use. The parties are advised, however, that the Court retains its discretion to exclude as unrepresentative any case proposed by the parties in their briefing on representativeness due April 15, 2024.

*Second*, defendants next propose to include body dysmorphia and sleep disorders as eligible conditions for inclusion in the bellwether discovery pool. The Court agrees. Plaintiffs point out that these claims overlap "almost uniformly" with other already-qualifying injuries, and the few which do not overlap would not be representative. These arguments are better suited for

---

[3] Parties are admonished that they should be careful which cases they choose to present as part of their representative proposal—*i.e.*, cases alleging wrongful death or not alleging addiction may ultimately not be considered by the Court to be representative or appropriate for further development.

3

the parties' briefing on representativeness due April 15, 2024.

*Third*, defendants argue that the gender and age of plaintiffs should be considered to ensure that the bellwether discovery pool is representative. The Court agrees in principle, although these characteristics should not be included as part of the selection criteria, which concerns eligibility rather than representativeness.

Consistent with the above, the selection criteria are **MODIFIED** to the following:

> Any Personal Injury Plaintiff who 1) has named Meta as a Defendant; 2) alleges a) an eating disorder (anorexia, bulimia, or binge eating disorder), b) body dysmorphia, c) sleeping disorder(s), and/or d) self-harm (self-harm, suicide attempt(s), or suicide); and 3) whose case was filed in or transferred to this Court and who has submitted a Plaintiff Fact Sheet (PFS) by the deadline for already-filed cases under the Personal Injury PFS Implementation Order will be included in the Personal Injury Plaintiff Bellwether Selection Pool.
>
> Any School District Plaintiff, excluding those alleging RICO claims, whose case was filed in or transferred to this Court and who has submitted a School District Plaintiff Fact Sheet by the deadline for already-filed cases under the Personal Injury PFS Implementation Order will be included in the School District Plaintiff Bellwether Selection Pool.

## III. STATE ATTORNEYS GENERAL CLAIMS: RIGHT TO JURY TRIAL

The state Attorneys General (the "States") do not demand a trial by jury and contend "these civil law enforcement actions" should be tried by the Court. The parties dispute whether defendants are entitled to a jury trial as to any of the States' claims. Defendants argue that they have a right to a jury trial for all claims under the Seventh Amendment to the U.S. Constitution per *Tull v. United States*, 481 U.S. 412 (1987), and the States respond that their actions as well as requested relief are equitable in nature.

The parties are **ORDERED** as follows: the States will identify in an editable chart under which statutory provisions (or otherwise) they seek (i) liability, and (ii) remedy, breaking out the kind of remedy on separate lines (injunctive, statutory, restitution, disgorgement, etc.), and whether a jury or non-jury trial is permitted for a given request for a finding of liability or relief. The States will send that chart to defendants, who can note on each line whether they agree or disagree with the States' articulation of the jury entitlement.

The parties are further **ORDERED** to meet and confer as to their understanding of *Tull v.*

4

*United States*, 481 U.S. 412 (1987). To the extent the parties disagree, they must submit to the Court their understanding of *Tull* and how it applies in this proceeding, by March 15, 2024, one week prior to the next Case Management Conference.

### IV. SCHEDULING UPDATES

The Court will hear **ARGUMENT** on the motion to remand in *Youngers v. Meta Platforms, Inc.*, No. 22-md-03047 (N.D. Cal. Feb. 15, 2024), Dkt. No. 64, at the March 22, 2024, case management conference.

The Court will hear **ARGUMENT** on the motion to dismiss the multistate Attorneys General complaint, the Florida Attorney General's complaint, and the personal injury consumer protection and misrepresentation claims (Track 1) at the April 19, 2024, case management conference.

Given the parties argument on Mr. Zuckerberg's motion to dismiss, the Court **GRANTED** defendants' request to move the due date for their reply brief on the Track 1 motion to dismiss (Dkt. No. 517) to this Friday, March 1, 2024.

The parties advised the court they have resolved issues with respect to the school district Plaintiff Fact Sheets and will submit a stipulated implementation order to the Court.

**IT IS SO ORDERED.**

Dated: February 27, 2024

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

5