**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

```
IN RE:   SOCIAL MEDIA              )
ADOLESCENT ADDICTION/PERSONAL      )
INJURY PRODUCTS LIABILITY          )
LITIGATION                         )
                                   )  NO. 22-MD-03047 YGR (PHK)
_____)
```

                                    San Francisco, California
                                    Thursday, May 16, 2024

**APPEARANCES:**

For Plaintiffs:
            SEEGER WEISS LLP
            55 Challenger Road, Floor 6
            Ridgefield, New Jersey 07660
    **BY:  AUDREY SIEGEL, ATTORNEY AT LAW**

            LIEFF, CABRASER, HEIMANN
              & BERNSTEIN LLP
            275 Battery Street, 29th Floor
            San Francisco, California 94111
    **BY:  LEXI J. HAZAM, ATTORNEY AT LAW**
         **PATRICK I. ANDREWS, ATTORNEY AT LAW**
         **MICHAEL LEVIN-GESUNDHEIT, ATTORNEY AT LAW**

            MOTLEY RICE LLC
            401 9th Street NW, Suite 630
            Washington, D.C. 20004
    **BY:  PREVIN WARREN, ATTORNEY AT LAW**

           **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Plaintiffs:
                         MOTLEY RICE LLC
 3                       28 Bridgeside Boulevard
                         Mount Pleasant, South Carolina 29464
 4               BY:     JADE HAILESELASSIE, ATTORNEY AT LAW

 5   For Plaintiff State of Colorado:
                         COLORADO DEPARTMENT OF LAW
 6                       1300 Broadway, 6th floor
                         Denver, Colorado 80203
 7               BY:     BIANCA MIYATA
                         SENIOR ASSISTANT ATTORNEY GENERAL
 8                       ELIZABETH OREM
                         ASSISTANT ATTORNEY GENERAL
 9

10   For Plaintiff State of California:
                         CALIFORNIA DEPARTMENT OF JUSTICE
11                       OFFICE OF THE ATTORNEY GENERAL
                         1515 Clay Street, Suite 2000
12                       Oakland, California 94612
                 BY:     JOSHUA OLSZEWSKI-JUBELIRER
13                       DEPUTY ATTORNEY GENERAL
                         NAYHA ARORA, DEPUTY ATTORNEY GENERAL
14

15   For Plaintiff Commonwealth of Kentucky:
                         KENTUCKY OFFICE OF THE
16                         ATTORNEY GENERAL
                         Office of Consumer Protection
17                       1024 Capital Center Drive, Suite 200
                         Frankfort, Kentucky 40601
18               BY:     CHRISTIAN LEWIS, COMMISSIONER
                         DANIEL KEISER
19                       ASSISTANT ATTORNEY GENERAL

20   For Defendant Meta Platforms, Inc.:
                         COVINGTON & BURLING LLP
21                       1999 Avenue of the Stars, Suite 3500
                         Los Angeles, California 90025
22               BY:     ASHLEY M. SIMONSEN, ATTORNEY AT LAW

23

24          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant Meta Platforms, Inc.:
                    COVINGTON & BURLING LLP
 3                  Sales Force Tower
                    415 Mission Street, Suite 5400
 4                  San Francisco, California 94105-2533
              BY:   ISAAC D. CHAPUT, ATTORNEY AT LAW
 5

 6   For Defendant Snap Inc.:
                    MUNGER, TOLLES & OLSON LLP
 7                  560 Mission Street, 27th Floor
                    San Francisco, California  94105
 8            BY:   NATALIE G. MOYCE, ATTORNEY AT LAW

 9                  MUNGER, TOLLES & OLSON LLP
                    355 South Grand Avenue, 35th Floor
10                  Los Angeles, California 90071
              BY:   FAYE PAUL TELLER, ATTORNEY AT LAW
11

12   For Defendant TikTok Inc.:
                    FAEGRE DRINKER BIDDLE & REATH LLP
13                  300 North Meridian Street, Suite 2500
                    Indianapolis, Indiana 46204
14            BY:   ANDREA PIERSON, ATTORNEY AT LAW

15                  KING & SPALDING LLP
                    1180 Peachtree St.
16                  Atlanta, Georgia 30309
              BY:   GEOFFREY DRAKE, ATTORNEY AT LAW
17
                    KING & SPALDING LLP
18                  1700 Pennsylvania Avenue NW
                    Washington, D.C. 20006
19            BY:   DAVID P. MATTERN, ATTORNEY AT LAW

20   For Defendant YouTube, Inc.:
                    WILSON, SONSINI, GOODRICH & ROSATI
21                  633 West Fifth Street, 15th Floor
                    Los Angeles, California 90071
22            BY:   MATTHEW K. DONOHUE, ATTORNEY AT LAW

23


24   Also Present:      David S. Vaughn
                        Beasley Allen Law Firm
25
```

|   |   |   |
|---|---|---|
| 1 | **Thursday - May 16, 2024** | **1:11 p.m.** |

2        **P R O C E E D I N G S**

3                    ---o0o---

4        **THE CLERK:** Please remain seated and come to order.
5   Court is now in session. The Honorable Peter H. Kang
6   presiding.
7        Now calling 22-md-3047, In Re: Social Media Adolescent
8   Addiction and Personal Injury Products Liability Litigation.
9        Counsel, when speaking, please approach the podiums and
10  state appearances for the record, and please try to talk slowly
11  for the court reporter.
12       **THE COURT:** Good afternoon.
13       **ALL:** Good afternoon, Your Honor.
14       **THE COURT:** Okay. Shall we do the march through the
15  joint status report and just take it in order that way, unless
16  there's a priority issue somebody wants to talk about first?
17       Okay. So the first issue I see that's for me is both
18  parties' request that the Court impose a May 31st, 2024,
19  deadline by which the parties shall finalize the ongoing search
20  term negotiations or submit disputes regarding the terms should
21  the parties not reach agreement.
22       Since the parties agree on this, so ordered.
23       Next issue I see that requires discussion -- tell me if I
24  skipped something -- I don't -- unripe discovery disputes.  I
25  don't see anything from that section to ripe discovery

disputes.  Again, if I skipped something you want to talk about, go ahead.

        **MS. SIMONSEN:**  If I may, Your Honor.

        **THE COURT:**  Yes, of course.

        **MS. SIMONSEN:**  Ashley Simonsen, Covington & Burling, for the Meta defendants.

   Just one minor point, Your Honor.

        **THE COURT:**  Right.

        **MS. SIMONSEN:**  We did note in the discovery management conference statement that the parties had agreed to a 30-day extension of Meta's deadline to produce custodial files for the first 15 anticipated deponents.

   I simply wanted to ask that Your Honor so order that agreement, in light of the Court order.  I do understand that other defendants have reached similar agreements with plaintiffs and that those would be so ordered as well.

        **THE COURT:**  Any objection to that?

        **MR. WARREN:**  No objection.

   Previn Warren for the plaintiffs.

        **THE COURT:**  So ordered.

        **MS. SIMONSEN:**  Thank you, Your Honor.

        **THE COURT:**  Okay.  So on ripe discovery disputes -- let me just make sure.  I'll start there.  All right.

   Okay.  Well, the first one, we're going to be talking about next week.  So unless there's something we need to talk

1  about today on that, we should move to Number 2.
2      So cross-noticing the depositions.  So I re-reviewed the
3  deposition protocol order, and my sense is it's pretty clear
4  that if it's time spent on the record by, call it, the
5  non-party attorney who's not involved in the MDL or the JCCP,
6  that doesn't count against anyone's time here.  But if any
7  lawyer who's involved in the MDL or JCCP spends time on the
8  record asking questions, then it does count against that
9  respective party's time, both for cumulative and per-deposition
10 time.
11     I am cognizant of the issue -- or I shouldn't say
12 "cognizant."  I'm sensitive to the issue raised by the
13 defendants that in this particular instance, that presumably
14 the concern is there may have been or there has been
15 cooperation between the plaintiffs in this case and that
16 particular non-party Attorney General's Office.  And,
17 therefore, I take it the argument is it feels like there's an
18 unfairness there because essentially the plaintiffs are getting
19 some extra deposition time, it feels like, if they're
20 coordinating too closely.
21     I don't -- first of all, I don't -- well, you all tell me.
22 Is this a problem that requires a blanket ruling, or is this
23 just a one-off that is not going to repeat itself very often?
24         **MS. SIMONSEN:**  Your Honor, Ashley Simonsen again for
25 the Meta defendants.

1  I think it will recur.  The Tennessee Attorney General has
2  noticed, I believe, 36 depositions that the MDL plaintiffs have
3  now cross-noticed.  It is an issue where, you know, we believe
4  it would be unfair and it wouldn't incentivize the parties to
5  be efficient if the time spent by the Tennessee
6  Attorney General questioning did not count against these
7  plaintiffs' limit.
8       And the reason is, there would be no reason for these
9  plaintiffs to spend any time questioning because, just as they
10 together led the investigation that led to this lawsuit -- and,
11 in particular, the Colorado Attorney General's Office, which is
12 one of the co-lead states here, co-led the investigation with
13 the Tennessee Attorney General.
14       So it would be possible for the plaintiffs to completely
15 avoid the deposition limits that Your Honor set at the outset
16 of these matters, in order to ensure an efficient progression
17 of these proceedings, to ensure that we aren't overburdening
18 witnesses.  And given the number of depositions noticed, it
19 simply would eviscerate those limits.
20           **THE COURT:**  So is this specific to the Tennessee AG,
21 or is this a larger issue?
22           **MS. SIMONSEN:**  At this point it's not a larger issue.
23 There have not been other Attorneys General that have noticed
24 depositions at this point in time.
25           **MR. KEISER:**  Good afternoon, Your Honor.  Daniel

Keiser, Commonwealth of Kentucky, on behalf of the Attorney Generals.

To note to the counsel's last point there, Massachusetts has also cross-noticed into these depositions. So there is another party involved. They have not originally noticed any depositions, but they are involved.

And if I may respond to some of her other points regarding our coordination with Tennessee. I mean, first of all, due to the language of the deposition protocol and as ordered by this Court, we are, obviously, coordinating with the other parties who we have cross-noticed with regarding any pre-suit coordination. However, there is still definitely distinctions between the claims.

For starters, as noted by Meta in their briefing, there are no COPPA claims brought by the State of Tennessee. They have Tennessee-specific allegations. And as well as Tennessee actually focuses the majority of their complaint on just Instagram; whereas, the complaints before this Court are on Instagram and Facebook. So there are distinctions.

We -- you know, we will be incentivized to not lead to the absurd results of simply having Tennessee or some other non-party ask all of our questions for us. We have our own issues, our own claims, our own facts that we're going to want to get at and ask those questions.

And, you know, if something arises -- you know, there's

1   not a deposition noticed until July at this point.  So if
2   something arises, Meta is, of course, you know, able to protect
3   their own rights, you know, in this court or in others.
4           **THE COURT:**  Is it thirty- -- what is it?  36
5   depositions?  Is that --
6           **MS. SIMONSEN:**  36 depositions that --
7           **THE COURT:**  Have they all been cross-noticed?
8           **MS. SIMONSEN:**  Yes.  And a couple -- well, I think
9   there may be two for which the deadline to cross-notice has not
10  yet come; but so far, all have been cross-noticed, with the
11  exception of one that was noticed and taken before Your Honor
12  entered the deposition protocol.
13          **THE COURT:**  Okay.
14          **MR. KEISER:**  Your Honor --
15          **THE COURT:**  Yeah.
16          **MR. KEISER:**  -- if I may, it's 34 depositions.  It was
17  32 originally, and then Tennessee had noticed two more.
18          **THE COURT:**  All right.  Are the plaintiffs here
19  asserting work product privilege with respect to communications
20  with the Tennessee AG?
21          **MR. KEISER:**  May I have a moment with co-counsel?
22          **THE COURT:**  Sure.
23          **MR. KEISER:**  Thank you, Your Honor.
24                  (Pause in proceedings.)
25          **MR. KEISER:**  So we will be asserting a common interest

protection regarding any pre-suit communications that the Attorney General's Office has.

**THE COURT:** I asked a more pointed question. Are the plaintiffs here asserting common interest or work product protections with regard to any communications relating to preparation for these 32 or 34 depositions?

**MR. KEISER:** Yes, Your Honor.

**THE COURT:** Now, see, if you weren't asserting work product or common interest, then I might treat them as a true third party; but since you are coordinating for purposes of these specific depositions, Meta's concern at least has some merit to it.

Ms. Hazam stood up, so I think she's eager to say something.

**MS. HAZAM:** Your Honor, I would simply note that coordination is in the interest of everyone here and is, in fact, ordered under the deposition protocol and is something that defendants have sought.

I think the specter of somehow us feeding Tennessee questions and then proceeding to use some large amount of additional time is entirely speculative at this point and unwarranted.

And there were very good reasons for the deposition protocol being crafted the way it was. It was negotiated for by the parties. Plaintiffs would never have agreed to a

procedure that would have allowed all of our deposition time to be extinguished.

So we could all come to you today with a parade of horribles, speculating as to what's going to ensue. But we would submit that the protocol, as negotiated, entered by this Court, is very fair and balanced on its face. It has language in it that admonishes the parties not to engage in these kinds of abusive practices, to maximize efficiency, minimize burden on deponents, not engage in repetitive questioning. We're very mindful of those, and we simply don't think that there is an issue for Your Honor to determine today.

This isn't an issue of interpretation, frankly, in our view. It's Meta seeking a new protocol in light of a party that we can't control and this Court can't control having rushed to notice depositions first.

**THE COURT:** Okay. So --

**MS. SIMONSEN:** May I --

**THE COURT:** -- when is the first of these depositions coming in?

**MS. HAZAM:** July 7th, I believe, as currently noticed. Obviously, the parties are, pursuant to the Court's order, going to try to coordinate on dates, but it's unlikely to happen before then.

**THE COURT:** Okay. Is it the parties' intention to take those depositions kind of *seriatim* in close proximity to

each other or to stretch them out between now and the fact discovery deadline?  What's the -- what's the consensus here?

**MS. HAZAM:**  As noticed, they are spread out across a number of months; and they likely are to remain so, at least to some extent.  So we'll have some initial depositions that we can come back to Your Honor about if you'd like us to report as to how they're going.

**THE COURT:**  So that's what I'm going to do.  So after the first deposition -- I'm not ruling in favor or against anybody on this issue for purposes of today -- Meta or the defendants are certainly free to file another motion or file an official motion on it if you see a basis for some need for relief.

Otherwise, you can file a joint status report or just wait -- depending on the timing, just wait for the next DMC status report.  Presumably, hopefully, everything goes okay.

I will admonish the plaintiffs as a group, obviously, no repetitive or unnecessarily duplicative questioning and certainly no extending the deposition unreasonably with kind of taking an extra 12 hours when it's absolutely not needed.  That would be harassing to the witnesses.

And overall, there shouldn't be any gamesmanship with regard to.  These are essentially depositions that are spurred by a third party and you're cross-noticing them for your purposes, but make sure you're not giving your colleagues here

an opportunity to argue that you're engaging in gamesmanship because I will look unfavorably upon that if they raise it with me next time. Understood?

**MS. HAZAM:** Understood, Your Honor.

**MS. SIMONSEN:** Thank you, Your Honor. And we appreciate kind of deferring a resolution of this issue.

I do just want to note for the record that we did understand the language in the deposition protocol that says "If plaintiffs cross-notice such a deposition, the individual and cumulative time limits for depositions apply to that cross-noticed deposition" to mean that the time spent in that deposition, not just the time spent questioning by the MDL plaintiffs, would count. Now, that was based on a ruling that Your Honor made, I believe, at a prior DMC that was then implemented in writing in this order.

And, again, I think going into these depositions, from our perspective, it's helpful for the plaintiffs to understand that there is a time limit; that the time limits here do apply, particularly because they are coordinating with the Tennessee Attorney General.

And just to briefly respond to a point that the Kentucky Attorney General's Office made, you know, I think the only supposed difference is he was able to point to were the fact that he says they're bringing a COPPA claim that -- excuse me -- that the plaintiffs here are bringing a COPPA claim. You

know, that's one claim. And, furthermore, there are allegations throughout the Tennessee Attorney General complaint that relate to the very same types of issues that are raised through the COPPA claim here.

And the only other difference I heard was that the complaint focuses on Instagram in Tennessee; whereas, here it covers Instagram and Facebook, which isn't a difference. And we've outlined in detail in our briefing for Your Honor just how closely analogous these allegations are. And, again, it's not surprising because Tennessee co-led the investigation that led to both of these lawsuits, with the Colorado Attorney General's Office.

**THE COURT:** Hopefully, this won't be a source of further dispute after you take the first deposition, but come back to me if your fears are realized.

**MS. SIMONSEN:** Thank you, Your Honor.

**THE COURT:** Okay.

**MR. KEISER:** Thank you, Your Honor.

**THE COURT:** Thank you.

Okay. The next several disputes are all going to be heard next week. On a number of these -- I'm not going to recite all the docket numbers but -- there is a sealing -- I forgot what she called it -- there's an order of protocol for sealing documents in this case in the docket, and there's also something in at least one of my standing orders.

1  And I just want to make clear here:  If the document -- if
2  a brief or something is filed under seal -- it may only be in
3  my civil standing order, but I'm going to order it implemented
4  here.  If it's filed under seal, e-mail an unredacted version
5  to phkpo, which is the protective order proposed order e-mail
6  address, and it will get to me on the same day that it's filed.
7  That way -- it doesn't help the Court if it's something
8  addressed to me and it's redacted and there is no unredacted
9  version yet in the docket.  All right?  So just make sure your
10 teams know to send an unredacted version to the phkpo e-mail
11 address on the same day filed.
12 And going back, I think, to at least ECF 798 and maybe
13 even before that, there were several of the discovery motions
14 that were filed under seal that either we didn't get an
15 unredacted version or there was no administrative motion to
16 seal or the administrative motion to seal didn't attach the
17 unredacted version.  So in one form or another, I didn't get
18 the unredacted briefs, and that makes it very hard for
19 the Court to understand what the issues are.
20 So if you can go back and double-check everything and
21 either, certainly, e-mail the unredacted ones to our team here
22 and then also fix any filings for administrative motions to
23 seal -- okay? -- because some of them -- some of them were
24 incomplete.  Anyway, you know what I'm talking about, so just
25 get that done.

1    Okay. Yesterday we got -- I'm looking at the Dispute
2 Number 2 under YouTube -- we got the letter brief, Docket 828,
3 for the YouTube custodian issue. I don't know if there's going
4 to be time to get to that next week. I haven't set a hearing
5 for that yet, and so don't be surprised if it's set for hearing
6 later in the next week, again, unless somebody wants to stand
7 up and say it's so urgent that it must be resolved next week.
8    No? Okay.
9    All right. And then now I'm on unripe issues, again,
10 unless I skipped something that somebody thinks we need to talk
11 about.
12    All right. So since they're unripe, I'm not really going
13 to talk about them voluntarily unless somebody needs guidance
14 or they've suddenly ripened.
15    I will give a little bit of guidance. This is Meta's
16 Dispute Number 1 under -- Number 2, the disputes over the
17 plaintiffs' RFPs. That's, like, a dispute concerning more than
18 12 or 15 RFPs. That's a lot. So I assume it's because they
19 all relate to -- they're all grouped together because they
20 relate to a specific subject matter or topic because I don't
21 know how you're going to brief 15 RFPs in a joint letter brief.
22    **MS. SIMONSEN:** Your Honor, I think the issue has been
23 mooted.
24    **THE COURT:** Great.
25    **MS. SIMONSEN:** We've -- I think we've actually

1  resolved all of them at this point through the conferral
2  process, and we are not at this point planning to brief
3  anything close to that number of RFPs, if any.
4        **MR. WARREN:**  Previn Warren for the personal injury
5  School District plaintiff.
6     I'm not sure if we've resolved all of them, but we've
7  certainly made a ton of progress; and to the extent we have
8  anything left, it will -- it will comfortably fit within the
9  five-page letter.
10        **THE COURT:**  Okay.  Well, hopefully, you can reach a
11 deal on the remaining ones and it won't be an issue at all.
12        **MR. WARREN:**  Yes, sir.
13        **THE COURT:**  Okay.  Generally, one question on -- since
14 I have you here.  For the hearing next week, I was just going
15 to take the motions in order like we did kind of today; but,
16 again, if there's something urgent that you want to prioritize,
17 now's your chance to tell me.
18        **MR. WARREN:**  Not from the plaintiffs' perspective,
19 Your Honor.
20        **MS. SIMONSEN:**  Not from the defendants' perspective
21 either.  Thank you.
22        **THE COURT:**  All right.  Any other unripe issues
23 anybody wants to touch upon?
24        **MR. WARREN:**  Not at this time.  They're unripe.
25        **MS. SIMONSEN:**  Not at this time.

1  **THE COURT:** This is our shortest DMC so far. It means
2  the process is working.
3      Okay. Any other issues anybody -- discovery issues
4  generally anybody needs to talk about? No? Nothing,
5  plaintiffs? Nothing --
6      **MS. SIMONSEN:** Nothing from defendants. Thank you,
7  Your Honor.
8      **THE COURT:** All right. We're adjourned till the next
9  hearing.
10     **MS. SIMONSEN:** Thank you, Your Honor.
11     **THE COURT:** See some of you next week.
12     **THE CLERK:** We're off the record in this matter.
13  Court is in recess.
14              (Proceedings adjourned at 1:31 p.m.)
15                          ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Monday, May 20, 2024

*Ana Dub*
_____

Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter