```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN FRANCISCO DIVISION

 4

 5    IN RE: SOCIAL MEDIA ADOLESCENT   )  22-MD-03047 YGR-PHK
      ADDICTION/PERSONAL INJURY        )
 6    PRODUCTS LIABILITY LITIGATION,   )  SAN FRANCISCO, CALIFORNIA
      _____  )
 7                                      )  MAY 23, 2024
      THIS FILING RELATES TO:          )
 8                                      )  PAGES 1-122
      ALL ACTIONS.                     )
 9                                      )
      _____  )
10

11

12                   TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE PETER H. KANG
13                UNITED STATES MAGISTRATE JUDGE

14

15    A P P E A R A N C E S :

16    FOR THE PLAINTIFFS:    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                             BY:  LEXI J. HAZAM
17                           275 BATTERY STREET, 29TH FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
18
                             GIBBS LAW GROUP
19                           BY:  ANDRE M. MURA
                             1111 BROADWAY, SUITE 2100
20                           OAKLAND, CALIFORNIA  94607

21

22              APPEARANCES CONTINUED ON THE NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1    APPEARANCES (CONTINUED)

2    FOR THE PLAINTIFFS:    SIMMONS HANLY CONROY
                          BY:  AN TRUONG
3                         112 MADISON AVENUE, 7TH FLOOR
                          NEW YORK, NEW YORK  10016

4

5                         WALSH LAW
                          BY:  ALEXANDRA WALSH
6                         1050 CONNECTICUT AVENUE, NW, SUITE 500
                          WASHINGTON, D.C.  20036

7

8                         WEITZ & LUXENBERG, PC
                          BY:  JAMES J. BILSBORROW
9                         700 BROADWAY
                          NEW YORK, NEW YORK  10003

10

11   FOR DEFENDANT          COVINGTON & BURLING
     META PLATFORMS,        BY:  ASHLEY M. SIMONSEN
12   INC.:                  1999 AVENUE OF THE STARS, SUITE 3500
                          LOS ANGELES, CALIFORNIA  90025

13

14                        COVINGTON & BURLING
                          BY:  ISAAC D. CHAPUT
15                        415 MISSION STREET, SUITE 5400
                          SAN FRANCISCO, CALIFORNIA  94105

16

17   FOR DEFENDANT          MUNGER TOLLES & OLSEN LLP
     SNAP, INC.:            BY:  VICTORIA A. DEGTYAREVA
18                              ROWLEY J. RICE
                          350 SOUTH GRAND AVENUE, 50TH FLOOR
19                        LOS ANGELES, CALIFORNIA  90071

20   FOR DEFENDANT          KING & SPALDING
     TIKTOK, INC.:          BY:  GEOFFREY DRAKE
21                              MARK SENTENAC
                          1180 PEACHTREE STREET
22                        ATLANTA, GEORGIA  30309

23

24              APPEARANCES CONTINUED ON THE NEXT PAGE

25

```
 1      APPEARANCES (CONTINUED)

 2      FOR DEFENDANT              FAEGRE DRINKER BIDDLE & REATH LLP
        TIKTOK, INC.:             BY:  AMY R. FITERMAN
 3                                90 SOUTH SEVENTH STREET
                                  MINNEAPOLIS, MINNESOTA  55402
 4

 5      FOR DEFENDANT             WILSON, SONSINI, GOODRICH & ROSATI
        YOUTUBE/GOOGLE:           BY:  SAMANTHA ALEXANDRA-BOOTH MACHOCK
 6                                12235 EL CAMINO REAL
                                  SAN DIEGO, CALIFORNIA  92130
 7
                                  WILSON, SONSINI, GOODRICH & ROSATI
 8                                BY:  ANDREW KRAMER
                                  650 PAGE MILL ROAD
 9                                PALO ALTO, CALIFORNIA  94304

10

11      ALSO PRESENT:   ERICA KUBLY

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1     SAN FRANCISCO, CALIFORNIA              MAY 23, 2024

2                      P R O C E E D I N G S

3          (COURT CONVENED AT 1:09 P.M.)

4              THE CLERK:  NOW CALLING 22-MD-3047, IN RE: SOCIAL

5      MEDIA LITIGATION.

6          COUNSEL, WHEN SPEAKING, PLEASE APPROACH THE PODIUMS AND

7      STATE APPEARANCES FOR THE RECORD.

8          (PAUSE IN PROCEEDINGS.)

9              THE COURT:  GOOD AFTERNOON.

10             ALL:  GOOD AFTERNOON.

11             THE COURT:  ALL RIGHT.  WE'RE HERE ON, I THINK I

12     COUNT, SIX DISCOVERY MOTIONS.  I BELIEVE -- I'M GOING TO GROUP

13     THEM.  THE FIRST THREE I WILL HEAR IN ORDER BECAUSE THEY'RE

14     ALL, CONCEPTUALLY AT LEAST, THE SAME.  I'LL GIVE YOU THE DOCKET

15     NUMBERS.  DOCKET 800, 824, AND -- YEAH, THOSE TWO, 800 AND 824,

16     WHICH BOTH CONCEPTUALLY DEAL WITH SCOPE OF DISCOVERY ON FOREIGN

17     VERSIONS OF SERVICES.

18         SO LET'S START WITH -- BEFORE I START THERE, JUST SO YOU

19     ALL KNOW, I'M HOPING WE END, YOU KNOW, RELATIVELY EARLY, BUT

20     THERE'S A HARD CUTOFF AT ABOUT 3:30.  SO ALLOCATE YOUR TIME

21     AMONG YOUR COLLEAGUES AND YOURSELVES AND, YOU KNOW, BE

22     SUCCINCT.

23         AND THERE'S NO NEED TO REPEAT ARGUMENTS THAT WERE MADE IN

24     THE BRIEFS.  I ASSURE YOU THE COURT HAS HAD AMPLE TIME TO

25     REVIEW THE BRIEFING.
```

```
 1              SO WHO'S GOING TO ARGUE -- LET'S START WITH 800.  TIKTOK

 2       PLATFORM, 800.

 3                   MR. MURA:  GOOD AFTERNOON, YOUR HONOR.

 4              ANDRE MURA FOR THE PLAINTIFFS.

 5                   THE COURT:  GOOD AFTERNOON.

 6                   MR. DRAKE:  GOOD AFTERNOON, JUDGE.

 7              GEOFFREY DRAKE, KING & SPALDING, FOR THE TIKTOK

 8        DEFENDANTS.

 9                   THE COURT:  GOOD AFTERNOON.

10              SO IT SEEMS TO ME -- THE FIRST QUESTION I HAVE IS, UNLIKE

11       SOME OF THE OTHER MOTIONS, IT WASN'T ENTIRELY CLEAR TO ME, AND

12       I THINK TIKTOK RAISED IT, WHAT DOCUMENT REQUESTS ARE AT ISSUE

13       IN THIS MOTION.

14                   MR. DRAKE:  THERE ARE NONE, YOUR HONOR.

15                   MR. MURA:  YOUR HONOR, THIS WAS A CROSS-CUTTING

16       GLOBAL ISSUE WITH RESPECT TO -- TIKTOK TOOK THE POSITION THAT

17       THERE COULD BE NO DISCOVERY WITH RESPECT TO CERTAIN PLATFORMS

18       OUTSIDE OF THE U.S., AND OUR POSITION WAS THAT THE PLATFORM,

19       TIKTOK, WAS NOT LAUNCHED IN 2017, BUT WAS DEVELOPED, BOTH IN

20       TERMS OF ITS TECHNOLOGY AND ITS MARKETING, BEFORE THAT, AND

21       THAT IMPLICATED TOUTIAO AND DOUYIN AND MUSICAL.LY, WHICH WERE

22       THREE DIFFERENT APPS THAT ARE DISCUSSED IN THE MASTER COMPLAINT

23       AND AT LENGTH IN --

24                   THE COURT:  BUT YOU DIDN'T REALLY ANSWER MY QUESTION.

25       AS I UNDERSTAND THE BRIEFING, YOU'RE FOCUSSED ON TECHNICAL
```

```
 1        FEATURES, MARKETING, AND I THINK HEALTH AND SAFETY ISSUES.

 2              MR. MURA:  YES.

 3              THE COURT:  THERE MUST BE SPECIFIC DOCUMENT REQUESTS

 4        THAT GO TO THOSE.

 5              MR. MURA:  THERE ARE, YOUR HONOR.

 6              THE COURT:  I MEAN, YOU SAW THEIR BRIEFING WHEN YOU

 7        PUT TOGETHER THE JOINT LETTER.  WHY DIDN'T -- WHY HAVEN'T YOU

 8        IDENTIFIED AT LEAST WHICH DOCKET REQUESTS ARE AT ISSUE IN EACH

 9        OF THOSE BUCKETS?

10              MR. MURA:  WE CAN, YOUR HONOR.

11           BUT I THINK IT GOES BEYOND JUST THE RFP'S, WHICH I HAVE A

12        LIST HERE THAT I CAN READ OR I CAN PROVIDE TO DEFENDANTS.

13           BUT WE DID NOT DO IT IN OUR BRIEF BECAUSE WE VIEWED IT AS

14        MORE OF A CROSS-CUTTING ISSUE THAT INVOLVED WITH -- THE

15        RESPONSE FROM TIKTOK WAS, WE WON'T AGREE EVEN AS TO ALTERNATIVE

16        DESIGN, KNOWLEDGE, NOTICE.

17           SO WE DIDN'T GO THROUGH THE PROCESS OF IDENTIFYING THE

18        SPECIFIC RFP'S FOR THAT PURPOSE.

19              THE COURT:  ALL RIGHT.  OKAY.

20           WELL -- SO I'LL GIVE YOU A CHANCE, BUT BASED ON THE

21        MATERIAL SUBMITTED TO ME -- I DON'T THINK IT IS CONFIDENTIAL,

22        BUT YOU ALL TELL ME IF I SAY SOMETHING THAT'S CONFIDENTIAL --

23        THERE'S EVIDENCE OF SAFETY FEATURES IN THE FRENCH VERSION.

24        THERE'S EVIDENCE OF SOME SAFETY FEATURES IN THE CHINESE VERSION

25        THAT ARE CURRENTLY NOT IMPLEMENTED IN THE UNITED STATES.
```

```
1              AND PLAINTIFFS MAKE THE POINT THAT SAFETY FEATURES THAT

2      ARE IMPLEMENTED IN OTHER VERSIONS GO TO, AS FAR AS DISCOVERY

3      GOES -- I'M NOT TALKING ABOUT THE MARKET -- GO TO AVAILABILITY

4      OF ALTERNATIVE FEATURES, FEASIBILITY OF ALTERNATIVE SAFETY

5      FEATURES, AND NOTICE; RIGHT?

6              MR. MURA:  YES, YOUR HONOR.

7              THE COURT:  AND I DIDN'T SEE A STRONG REBUTTAL TO

8      THOSE SPECIFIC EXAMPLES, OTHER THAN A GENERALIZED ARGUMENT THAT

9      THIS WASN'T RELEVANT.

10          AND SO I'LL TELL YOU, I'M NOT CONVINCED BY THE GENERALIZED

11     ARGUMENT THAT THIS ISN'T RELEVANT, SO I'LL GIVE YOU A SHOT.

12             MR. DRAKE:  SURE.  I APPRECIATE THE OPPORTUNITY TO BE

13     HEARD ON THAT.

14          FIRST OF ALL, YOUR HONOR, I THINK YOU HIT THE NAIL ON THE

15     HEAD IN TERMS OF THE PROCEDURAL POSTURE THAT WE'RE HERE FOR.

16          I KNOW YOUR HONOR HAS DEALT WITH NUMEROUS DIFFERENT

17     DISCOVERY DISPUTES, INCLUDING MOST RECENTLY IN THE CROCS CLASS

18     ACTION LITIGATION INVOLVING REQUESTS BY PLAINTIFFS TO SEEK

19     DISCOVERY OF NOT JUST THE PRODUCT THAT'S AT ISSUE IN THE

20     LITIGATION, BUT OF OTHER PRODUCTS.

21          AND I KNOW YOUR HONOR IS VERY FAMILIAR WITH THE CASE LAW

22     THAT UNDERSCORES THAT LINE OF REASONING AND THE SHOWING THAT A

23     PLAINTIFF MUST MAKE TO GET DISCOVERY INTO OTHER PRODUCTS.

24          THERE'S REALLY NO DISPUTE HERE THAT WHETHER WE'RE TALKING

25     ABOUT TOUTIAO, DOUYIN, OR PRODUCTS OR SERVICES THAT ARE TIKTOK
```

1    BRANDED IN OTHER COUNTRIES IN 150 REGIONS AND COUNTRIES AROUND

2    THE WORLD, THAT THOSE ARE DIFFERENT PRODUCTS THAN THE TIKTOK

3    PLATFORM IN THE UNITED STATES.

4        THE PLAINTIFFS HAVE NOT MADE A SHOWING THAT THEY ARE THE

5    SAME PRODUCT, AND THEY CAN'T MAKE THAT SHOWING BECAUSE THEY'RE

6    NOT THE SAME.  INDEED, AT PARAGRAPH 560 OF THEIR MASTER

7    COMPLAINT, THEY PLEAD THAT TIKTOK IS PROFOUNDLY DIFFERENT FROM

8    THOSE OTHER SERVICES.

9        SO THAT'S THE FRAMEWORK IN WHICH WE APPROACH THE ISSUE TO

10   START WITH.

11       AND YOUR HONOR IS AWARE, JUST LIKE IN THE VALENTINE CASE

12   AND OTHERS, THAT WHEN A PLAINTIFF WANTS DISCOVERY INTO OTHER

13   PRODUCTS, AS YOU HINTED TO EARLIER, THEY TYPICALLY SERVE A

14   SERIES OF TARGETED DOCUMENT REQUESTS ABOUT THAT PRODUCT.

15       HERE THEY HAVE NOT DONE THAT.  THEY'VE TAKEN THE APPROACH

16   THAT ALL 300 OF THEIR DOCUMENT REQUESTS RELATE NOT JUST TO

17   TIKTOK IN THE UNITED STATES, BUT TO ALL OF THE OTHER PLATFORMS

18   THAT I JUST MENTIONED, NOT JUST THE 150 OTHER VERSIONS OF

19   TIKTOK AROUND THE WORLD, BUT DIFFERENT PRODUCTS THAT ARE

20   AVAILABLE ONLY IN CHINA, ONLY TO CHINESE INDIVIDUALS THAT THE

21   PLAINTIFFS HERE DID NOT USE AND HAVE NO ALLEGATION THAT THEY

22   USED.

23       SO THE BURDEN IS ON THE PLAINTIFF THEN TO ESTABLISH

24   SUBSTANTIAL SIMILARITY BETWEEN THE TIKTOK PLATFORM IN THE

25   UNITED STATES AND THESE OTHER SERVICES, AND RESPECTFULLY, YOUR

1    HONOR, THEY HAVE NOT MADE THAT SHOWING.  THEY HAVE NOT OFFERED

2    ANY AFFIDAVITS.  THERE ARE NO EXPERT REPORTS.  ALL THEY DID WAS

3    ATTACH THE LOGOS AND PASTE THEM INTO THEIR BRIEFS, WHICH WE

4    ADDRESSED.

5              THE COURT:  WELL, THEY CITED DOCUMENTS.  THERE'S,

6    WHAT, THERE'S A -- THE TIKTOK BOOM ARTICLE AND THIS INTERNET

7    POLICY ARTICLE WHICH IS -- STATED THAT THE DEVELOPMENT IS -- I

8    THINK ONE OF THEM SAYS IT'S A ONE-SIZE-FITS-ALL FOR WORLDWIDE

9    DISTRIBUTION OF IT, AND THERE'S REFERENCE TO -- I WON'T USE THE

10   NAME -- BUT THERE'S REFERENCE TO AN OFFICE IN BEIJING THAT'S

11   USED FOR WORLDWIDE CROSS-PLATFORM DISTRIBUTION OF DIFFERENT

12   VERSIONS --

13             MR. DRAKE:  SURE.

14             THE COURT:  -- AND DIFFERENT SERVICES.

15        AND SO THE ARGUMENT THAT THEY HAVEN'T MADE ANY SHOWING I

16   THINK ARGUES TOO MUCH BECAUSE THEY -- AGAIN, YOU DIDN'T REALLY

17   ADDRESS THOSE SPECIFIC ARTICLES THAT THEY CITED AND THE

18   EVIDENCE THEY PROVIDED.

19             MR. DRAKE:  WELL, RESPECTFULLY, YOUR HONOR, I THINK

20   WE DID ADDRESS THOSE DOCUMENTS IN THE TWO AND A HALF PAGES THAT

21   WE HAD.

22        I KNOW YOUR HONOR DOESN'T HAVE THE UNDERLYING DOCUMENTS

23   THEMSELVES.  WE'RE HAPPY TO FURNISH THEM TO THE COURT BECAUSE

24   THEY, FRANKLY, DON'T SAY WHAT THE PLAINTIFFS CLAIM THEY SAY.

25             FOR EXAMPLE, THE ONE DOCUMENT THAT THEY CITE -- THIS IS AT

1    BATES, ENDING IN BATES 9828, WHICH IS AN EXCERPT OF THE CEO OF

2    TIKTOK, INC.'S TESTIMONY BEFORE CONGRESS, THEY ONLY CITE THE

3    FIRST HALF OF THE QUOTATION.

4        THE SECOND HALF OF THE QUOTATION SAYS, "TIKTOK'S BUSINESS

5    LOGIC ALGORITHM, INTEGRATION, AND DEVELOPMENT OF SYSTEMS IS

6    SPECIFIC TO THE TIKTOK APPLICATION AND SEPARATE FROM DOUYIN."

7        AS TO THE ARTICLE THAT YOUR HONOR MENTIONED AS WELL, AND I

8    DON'T WANT TO PRESUME THAT YOUR HONOR DIDN'T HAVE A CHANCE TO

9    FIND THAT ARTICLE SOMEWHERE ON THE INTERNET, BUT IT TALKS ABOUT

10   ONE OF THE STUDIES' FINDINGS IS THAT THE DOUYIN APP HAS SEVERAL

11   DIFFERENT FEATURES THAT ARE PARTICULAR TO THE CHINESE MARKET

12   AND REGULATION, AND IT SAYS THE CHINESE, DOMESTIC AND

13   INTERNATIONAL VERSIONS OF THE SAME APP VARY IN DATA PRIVACY

14   PROTECTION STANDARDS AND IN OTHER WAYS.

15       SO WE OBVIOUSLY, IN OUR BRIEFING, ADDRESSED SOME OF THAT.

16   WE DIDN'T ADDRESS EVERY SINGLE DOCUMENT THAT THEY CITED.

17       WE CAN DO SO, YOUR HONOR, AND WE -- IN FACT, I HAVE A

18   CHART WITH ME IN WHICH WE'VE GONE THROUGH EVERY SINGLE DOCUMENT

19   THAT THEY CITED IN THEIR BRIEF AND WE'VE ARTICULATED, FOR OUR

20   OWN WORK PRODUCT, WHY THAT DOCUMENT DOESN'T ACTUALLY REPRESENT

21   AND STAND FOR THE PROPOSITION THAT THE PLAINTIFFS CLAIM THAT

22   THEY DO.

23       I THINK THE FUNDAMENTAL PROBLEM HERE, YOUR HONOR, IS THAT

24   THE PLAINTIFFS WANT TO TRY TO GET INTO DISCOVERY OF OTHER

25   PRODUCTS, OTHER SERVICES OTHER THAN THE TIKTOK PRODUCT.

1        AT MINIMUM THEY SHOULD HAVE TO SERVE SPECIFIC, TAILORED

2   DOCUMENT REQUESTS THAT IDENTIFY WHAT IT IS THAT THEY'RE LOOKING

3   FOR, WHAT IS IT ABOUT DOUYIN --

4        THE COURT:  SO HAVE YOU SERVED DOCUMENT REQUESTS THAT

5   ARE SPECIFIC TO THE 14 OR SO NAMED FEATURES THAT YOU IDENTIFY

6   IN THE BRIEF?

7        MR. MURA:  WE HAVE, YOUR HONOR.

8        THE COURT:  FOR EACH -- HAVE THEY SERVED DOCUMENT

9   REQUESTS SAYING THIS IS THE -- LIKE, NAMED FEATURE, LIKE AGE

10  VERIFICATION.

11       MR. MURA:  WE'VE SERVED DOCUMENT REQUESTS RELATED TO

12  THE NAMED FEATURES.  THEY'RE NOT BROKEN DOWN BY THE COMPANIES,

13  WHICH IS WHAT I TAKE THE SUGGESTION TO BE.

14       BUT IF WE HAD DONE THAT, I BELIEVE THAT THE RESPONSE WOULD

15  HAVE BEEN, WE WON'T AGREE TO DISCOVERY ON THAT.

16       I DON'T THINK IT WAS A FOOT FAULT ON OUR PART BY NOT

17  SERVING A DISCOVERY REQUEST THAT SPECIFICALLY NAMED THESE

18  COMPANIES.  IF THAT'S THE HURDLE, WE CAN CERTAINLY DO THAT.

19  BUT I THINK WE'LL BE RIGHT BACK HERE ARGUING IT.

20       THE COURT:  NOT ON THAT.

21       DO THE DOCUMENT REQUESTS SAY -- GIVE ME A NAMED FEATURE, I

22  BELIEVE --

23       MR. DRAKE:  AGE VERIFICATION.

24       THE COURT:  IS THERE A DOCUMENT THAT SAYS, WE WANT

25  TECHNICAL DOCUMENTS, HOWEVER YOU DESCRIBE IT, ON AGE

```
 1        VERIFICATION?
 2                MR. MURA:  YES.  THE WAY THE DOCUMENT REQUESTS WORK
 3        IS THEY HAVE NAMED FEATURES AS A DEFINED TERM, AND THEY INCLUDE
 4        A LIST OF THEM, AND THEN THEY REQUEST INFORMATION ABOUT NAMED
 5        FEATURES.
 6            SO RFP 160 TO 166 IS ABOUT BYTEDANCE'S RESEARCH,
 7        DEVELOPMENT, AND DESIGN AND IMPLEMENTATION OF ANY ALTERNATIVE
 8        SAFER DESIGNS FOR NAMED FEATURES.
 9            SO THAT WOULD CAPTURE THE INFORMATION THAT WE'RE
10        DISCUSSING TODAY.
11                MR. DRAKE:  BUT, YOUR HONOR, EVEN IF THE COURT WERE
12        TO PERMIT DISCOVERY INTO OTHER PRODUCTS, FOR EACH OF THOSE
13        DOCUMENT REQUESTS, THERE WOULD HAVE TO BE A SHOWING OF
14        SUBSTANTIAL SIMILARITY AS TO WHY THE NAMED FEATURE, IN THIS
15        CASE I'LL SAY AGE VERIFICATION, IS SIMILAR ENOUGH BETWEEN THE
16        DOUYIN PLATFORM OR THE TOUTIAO PLATFORM AND TIKTOK IN THE
17        UNITED STATES.
18            AND WE WOULD SUBMIT THAT SIMPLY CITING A HALF OF A
19        SENTENCE WHERE THEY'VE SAID THEY HAVE THE BASIC UNDERLYING
20        ARCHITECTURE IS INSUFFICIENT.
21            TWO TIRES, BOTH ARE MADE OF RUBBER, BUT THAT DOESN'T MEAN
22        THAT IN A CASE INVOLVING A DEFECTIVE TIRE, ONE HAS AN
23        OPPORTUNITY TO TAKE FULL SCALE DISCOVERY INTO ANOTHER TIRE.  IN
24        FACT, WE CITE CASES THAT STAND FOR THAT PROPOSITION IN OUR
25        PAPERS.
```

```
1          THE POINT IS THAT THIS IS A WILD OVERREACH IN A CASE WHERE
2    WE HAVE SEVEN MONTHS LEFT TO CONDUCT DISCOVERY.  WE'RE ONLY
3    JUST STARTING THIS DISCOVERY AS TO ONE PLATFORM, TIKTOK IN THE
4    UNITED STATES.  THAT'S WHAT THESE PLAINTIFFS USED.  THAT'S
5    WHAT'S ALLEGEDLY DEFECTIVE.  THAT'S WHAT GIVES RISE TO THEIR
6    CLAIMS.
7          THE PLAINTIFFS NOW WANT TO APPLY, I THINK, ALL OF THEIR
8    DOCUMENT REQUESTS, AT LEAST THOSE THAT RELATE TO SPECIFIC
9    FEATURES, ALTHOUGH THAT HAS NOT BEEN NARROWED OR ARTICULATED AS
10   TO WHICH EXACT ONES THOSE ARE, TO ALL OF THE OTHER PLATFORMS.
11   THAT WOULD BE A MONUMENTAL UNDERTAKING, A TREMENDOUS TASK THAT
12   I DON'T BELIEVE WE HAVE TIME TO DO, AND I DON'T --
13             THE COURT:  YOU'RE MOVING ON TO RELEVANCE FROM
14   BURDEN.  SO LET ME STICK TO RELEVANCE.
15         SO I'M PRIMARILY FOCUSSED ON -- HELP ME PRONOUNCE IT.
16   TOUTIAO?
17             MR. MURA:  TOUTIAO.
18             MR. DRAKE:  IT IS PRONOUNCED TOUTIAO.
19             THE COURT:  YOU BOTH SAID IT DIFFERENTLY.
20             MR. DRAKE:  I BELIEVE IT'S PRONOUNCED TOUTIAO.
21             THE COURT:  ALL RIGHT.  SO I'M PRIMARILY, FOR PRESENT
22   PURPOSES, FOCUSSED ON TOUTIAO AND -- DOUYIN?
23             MR. DRAKE:  DOUYIN.
24             THE COURT:  ALL RIGHT.  I DO -- SO IF -- GIVEN THAT
25   THERE ARE DOCUMENT REQUESTS SPECIFIC TO THE TECHNICAL REQUESTS
```

1    FOR IMPLEMENTATION OF NAMED FEATURES OR ALTERNATIVES TO THEM, I

2    DO THINK, A, THAT'S SPECIFIC ENOUGH AND IT'S NOT SO WIDE

3    RANGING AS TO BE OUT OF BOUNDS IN TERMS OF RELEVANCE AND

4    PROPORTIONALITY.

5         YOU'RE ARGUING A LITTLE BIT TOO MUCH ABOUT THE DIFFERENCE

6    BETWEEN THE PRODUCTS, BECAUSE I THINK PART OF PLAINTIFFS'

7    THEORY IS THAT SOME OF THOSE DIFFERENCES MAKE A DIFFERENCE HERE

8    SUBSTANTIVELY, RIGHT, AND IF YOU KEEP HARPING ON THE

9    DIFFERENCES BETWEEN THE PRODUCTS, THEY -- AT SOME LEVEL IT

10   EMPHASIZES THEIR POINT, THAT THERE ARE FEATURES IN THE OTHER

11   PLATFORMS THAT COULD HAVE BEEN IMPLEMENTED IN THE U.S., BUT

12   WEREN'T; RIGHT?

13              MR. DRAKE:  THAT'S TRUE.  BUT, OF COURSE, THEY

14   ALREADY ARE ALLEGING THAT AND THEY ALREADY ARE CLAIMING THEY

15   KNOW THAT.  WHAT DO THEY NEED TO GO INTO VAST DISCOVERY INTO

16   OTHER PRODUCTS?

17              THE COURT:  BUT THERE ARE LOTS OF THINGS THAT

18   PLAINTIFFS KNOW FROM THEIR OWN INVESTIGATION THEY'RE ENTITLED

19   TO.  JUST BECAUSE THEY DID THEIR OWN INVESTIGATION DOESN'T MEAN

20   THEY DON'T GET DISCOVERY INTO IT.

21              MR. DRAKE:  SURE.

22        WE ALSO SUBMIT THAT'S A LEGALLY FAR ARGUMENT, YOUR HONOR,

23   THAT YOU CAN BASE A DESIGN DEFECT CLAIM BASED ON THE DESIGN OF

24   ANOTHER PRODUCT.  WE CITE NUMEROUS CASES, PARTICULARLY FROM THE

25   PHARMACEUTICAL CONTEXT, IN OUR PAPERS THAT REFUTE THAT POINT.

1    PLAINTIFFS HAVEN'T RESPONDED TO THOSE CASES OR ADDRESSED THEM

2    OTHERWISE.

3        SO FOR THOSE TO BE OPENING THE DOOR TO WHAT WE BELIEVE IS

4    PRETTY WIDE RANGING DISCOVERY INTO OTHER ISSUES, WE THINK

5    THAT'S A REAL PROBLEM, YOUR HONOR, AND THAT'S WHY I'M HERE

6    TODAY.

7            THE COURT:  I'LL GIVE YOU A CHANCE TO RESPOND TO THE

8    LEGAL ISSUE.

9            MR. MURA:  YOUR HONOR, THEY CITE MOSTLY SECURITIES

10   CASES THAT ARE INAPPOSITE, AND WE CITED KIRKSEY AGAINST

11   SCHINDLER ELEVATORS, WHICH SAYS ADMISSIBILITY OF FOREIGN

12   DESIGNS IS AN EXTENSION OF THE WIDELY ACCEPTED PREMISE THAT

13   EVIDENCE OF ALTERNATIVE DESIGNS USED IN A MARKETPLACE ARE

14   ADMISSIBLE TO SHOW FEASIBILITY.

15       SO THAT GOES DIRECTLY TO OUR POINT ABOUT IF THERE'S A

16   MARKETPLACE WHERE THEY'RE USING SIMILAR OR DIFFERENT DESIGNS,

17   THAT'S A BASIS FOR EXPLORATION FOR PLAINTIFFS.

18           MR. DRAKE:  EXCEPT FOR THE KIRKSEY CASE INVOLVES I

19   BELIEVE IT WAS AN ESCALATOR, OR ELEVATOR, AND IT'S THE SAME

20   ESCALATOR IN EUROPE AS USED IN THE UNITED STATES AND THERE ARE

21   DIFFERENT SAFETY FEATURES APPLIED TO IT.

22       WE'RE TALKING ABOUT HERE SEVERAL FUNDAMENTALLY DIFFERENT

23   SERVICES.  THEY'RE JUST DIFFERENT PRODUCTS, AND THE PLAINTIFFS

24   HAVEN'T MADE THE FUNDAMENTAL SHOWING THAT ONE NEEDS TO MAKE TO

25   SHOW THEY'RE THE SAME.

1      THAT'S ESPECIALLY TRUE, YOUR HONOR -- THERE SHOULD BE NO

2  DOUBT ABOUT IT AT ALL WITH RESPECT TO TOUTIAO BECAUSE THEY DO

3  ONLY CITE ONE DOCUMENT IN THEIR BRIEF ABOUT TOUTIAO AND THE

4  DOCUMENT DOESN'T SAY ANYTHING ABOUT TOUTIAO.  IT'S NOT IN THE

5  DOCUMENT.

6      THE COURT:  I'M REALLY MORE EMPHASIZING THE CITATION

7  TO THE JIA ARTICLE FROM THE 9 INTERNET POLICY REVIEW,

8  INDEPENDENT ANALYSIS OF SOURCE CODE FOUND THAT DOUYIN IS JUST

9  THE CHINESE VERSION OF TIKTOK.  AND ALSO -- THIS IS THE ONE I

10  REFERENCED EARLIER -- THE ARTICLE BY CHRIS STOKEL-WALKER FROM

11  CANBURY PRESS, TIKTOK BOOM, ET CETERA.  IT SAYS, BYTEDANCE'S

12  "TECHNOLOGIES TRANSCEND GEOGRAPHICAL BOUNDARIES."  BYTEDANCE

13  "DEVELOPS ITS SOFTWARE AS A ONE-SIZE-FITS-ALL PRODUCT TO BE

14  USED AROUND THE WORLD."

15      BASED ON -- THOSE ARE, IN MY MIND, SUFFICIENT BASES TO GET

16  THE DISCOVERY FROM -- ON THE NAMED FEATURES FROM DOUYIN AND --

17      MR. MURA:  TOUTIAO.

18      THE COURT:  -- TOUTIAO.

19      MR. DRAKE:  CAN I MAKE ONE MORE POINT ON THAT, YOUR

20  HONOR, WHICH IS THAT TOUTIAO IS NOT IN THE BOOK OR IN THE QUOTE

21  THAT YOU JUST READ.  TOUTIAO IS NOT INVOLVED.  THAT'S A NEW

22  AGGREGATOR SERVICE.  IT'S NOT WHAT THOSE DOCUMENTS TALK ABOUT.

23      MY PARTNER, MR. SENTENAC, HAS TIKTOK BOOM WITH HIM IF YOUR

24  HONOR WOULD LIKE TO HAVE A COPY OF IT TO READ IT.

25      IT'S NOT DISCUSSED IN THE BOOK.  THEY MISREPRESENTED THE

1    DOCUMENT, YOUR HONOR, AND WE'D LIKE AN OPPORTUNITY AT MINIMUM

2    TO BRIEF THE ISSUE IN A MORE FULSOME WAY BEFORE THIS ISSUE GETS

3    EXPANDED AND WE ENTER INTO A WORLD OF DISCOVERY CONCERNING

4    OTHER PRODUCTS THAT ARE AVAILABLE ONLY IN OTHER COUNTRIES, NOT

5    TO AMERICAN USERS.

6          THE COURT:  AGAIN, THIS IS JUST FOR PURPOSES OF

7    DISCOVERY, NOT FOR THE MERITS.  I MAKE NO PASSING ON WHETHER

8    ANYTHING HERE IS GOING TO TIP THE BALANCE ON THE MERITS.

9          BUT FOR THE -- EVIDENCE THAT'S BEEN PRESENTED TO ME -- AND

10   I'M AVOIDING SPEAKING OF THE CONFIDENTIAL DOCUMENTS -- PROVIDE

11   ENOUGH OF A BASIS TO CONVINCE ME THAT -- HERE'S WHAT I -- THAT

12   THEY'RE ENTITLED TO THE DISCOVERY.

13         HOWEVER, IT DOES BOTHER ME THAT YOU HAVEN'T IDENTIFIED THE

14   EXACT DOCUMENT REQUESTS AT ISSUE, SO YOU'VE GOT TWO DAYS --

15         MR. MURA:  YES, YOUR HONOR.

16         THE COURT:  -- TO MEET AND CONFER WITH OPPOSING

17   COUNSEL AND IDENTIFY THE SPECIFIC DOCUMENT REQUESTS THAT THIS

18   RULING APPLIES TO, AND IT SHOULD ONLY BE DOCUMENT REQUESTS

19   ASKING FOR TECHNICAL, RIGHT, TECHNICAL AND IMPLEMENTATION TYPE

20   DOCUMENTS.  IT'S NOT WIDE RANGING DISCOVERY THAT MAY

21   INTANGENTIALLY TOUCH ON THE FEATURES, BECAUSE YOUR ARGUMENT IS

22   IT'S RELEVANT TO HOW THEY IMPLEMENTED AND WHAT THEY THOUGHT

23   ABOUT HOW THEY'RE IMPLEMENTING THOSE FEATURES, OR NOT,

24   OVERSEAS.  SO IT'S GOT TO BE LIMITED TO THE NAMED FEATURES IN

25   THE CASE.

```
1            ALSO, I TAKE DEFENDANTS' POINT, IN THIS BRIEF AND I THINK

2      IN OTHERS, ALGORITHMS ARE OUT.  OKAY?  SO NO -- IT LOOKS TO ME

3      LIKE A.I. ALGORITHMS FROM THE MOTION TO DISMISS ORDER, ANYTHING

4      THAT TOUCHES ON SECTION 230 AND PUBLICATION, YOU CAN'T TAKE

5      DISCOVERY ON TECHNICAL FEATURES THAT, IN THE MOTION TO DISMISS

6      ORDER, HAVE BEEN RULED OUTSIDE OF THE CASE.

7            MR. DRAKE:  THAT'S RIGHT, YOUR HONOR.

8            THE COURT:  DO I MAKE MYSELF CLEAR ON THAT?

9            MR. MURA:  I BELIEVE YOUR HONOR'S PREVIOUS COUNSEL ON

10     THAT WAS THAT ALGORITHMS WERE IN BECAUSE OF THE COURT'S RULING

11     WITH RESPECT TO FAILURE TO WARN, AND WE CITED THAT ASPECT OF

12     THE TRANSCRIPT TO THE COURT IN ITS LAST ORDER.

13           THE COURT:  THE FAILURE TO WARN IS NOT -- YOU DON'T

14     NEED THE TECHNICAL DOCUMENTS FOR FAILURE TO WARN.

15           I'M FOCUSSED ON THE TECHNICAL DOCUMENTS HERE BECAUSE

16     FAILURE TO WARN IS -- THAT'S FAILURE TO WARN, EXTERNAL

17     COMMUNICATIONS; RIGHT?

18           MR. MURA:  WELL, WE'VE PUT SOURCE CODE TO THE SIDE

19     ANYWAY, SO I THINK THAT'S NOT GOING TO BE AN ISSUE.

20           BUT WE HAVE CERTAINLY -- JUDGE GONZALEZ ROGERS HERSELF HAS

21     SAID THAT THIS IS WITHIN THE SCOPE OF DISCOVERY, AND THE

22     COURT'S STATEMENTS AT THE LAST -- I DON'T KNOW IF IT WAS THE

23     LAST CMC OR BEFORE THAT WHEN THE COURT GAVE GUIDANCE AND LOOKED

24     AT THE MOTION TO DISMISS ORDER, DID SAY THAT THIS WAS IN

25     BECAUSE OF THE FAILURE TO WARN.
```

```
1          THE COURT:  AGAIN, I'M FOCUSSED ON THE TECHNICAL

2     IMPLEMENTATION.  I DON'T UNDERSTAND WHY YOU NEED TECHNICAL

3     IMPLEMENTATION DOCUMENTS FOR A FAILURE TO WARN CLAIM.

4          MR. MURA:  WELL, IT -- IF THAT'S ALL YOU'RE SAYING, I

5     THINK THAT'S DIFFERENT THAN PERHAPS WHAT I HEARD, AND MAYBE I

6     JUST MISHEARD ABOUT THE ALGORITHMS BEING IN OR OUT, BECAUSE THE

7     ALGORITHMS ARE NOT OUT SORT OF ON A GLOBAL LEVEL.

8          BUT I --

9          THE COURT:  THEY'RE OUT FOR PURPOSES OF TECHNICAL

10    IMPLEMENTATION DOCUMENTS, WHICH I WANT YOU TO IDENTIFY THOSE

11    THAT ARE AT ISSUE.  DOCUMENTS THAT GO TO -- BECAUSE YOU'RE --

12    YOU APPEAR TO BE FOCUSSED ON HOW THEY IMPLEMENT THESE FEATURES

13    OR NOT IMPLEMENT THEM, OR FOR IMPLEMENTING WHAT YOU THINK ARE

14    ALTERNATIVES TO FEATURES IN THESE OTHER SERVICES; RIGHT?

15         TO ME, THOSE ARE TECHNICAL DOCUMENTS AND I DON'T SEE HOW

16    THOSE GO TO FAILURE TO WARN.

17         MS. HAZAM:  YOUR HONOR, IF I MAY, LEXI HAZAM FOR

18    PLAINTIFFS.

19         I JUST WANT TO TRY TO CLARIFY YOUR HONOR'S UNDERSTANDING

20    AND HOW IT MATCHES OURS, OR DOES NOT.

21         IT IS OUR UNDERSTANDING THAT BOTH JUDGE GONZALEZ ROGERS

22    AND YOUR HONOR PREVIOUSLY INDICATED THE SCOPE OF DISCOVERY IS

23    NOT LIMITED TO THOSE FEATURES THAT SHE FOUND DID NOT, FOR

24    PURPOSES OF A PRODUCT LIABILITY CLAIM ON ITS OWN, PASS MUSTER

25    UNDER SECTION 230.
```

1          HER OWN RULING STATES THAT A FAILURE TO WARN CLAIM DOES

2     BRING IN THOSE FEATURES, AND YOUR HONOR PREVIOUSLY, IN

3     ADDRESSING A SCOPE OF DISCOVERY ISSUE RAISED BY THE PARTIES,

4     FOUND THE SAME.

5          FAILURE TO WARN TIES VERY CLOSELY TO KNOWLEDGE.  SO

6     DEFENDANTS' KNOWLEDGE OF HOW THEIR PRODUCTS WORKED, HOW THEY'RE

7     DESIGNED, WHY THEY'RE DESIGNED THE WAY THEY ARE, WHAT THEY KNEW

8     WHEN ABOUT THEM GOES VERY MUCH TO FAILURE TO WARN.

9          THE COURT:  SO YOU HAD ME AT HOW THEIR PRODUCTS WORK

10    AND -- BUT HOW THEY'RE DESIGNED GOES TO FAILURE TO WARN?

11    BECAUSE THAT'S AN EXTERNAL -- FAILURE TO WARN IS AN EXTERNAL

12    ACTIVITY.

13          MS. HAZAM:  I DON'T THINK IT IS.  FAILURE TO WARN,

14    WHETHER IT BE A DRUG CASE OR OTHERWISE, HAS TO DO WITH THE

15    KNOWLEDGE ABOUT THE PRODUCT THAT THE DEFENDANT HAD AT THE TIME

16    AND, THEREFORE, ITS OBLIGATION TO WARN REGARDING IT.

17          SO IT IS VERY MUCH PLAINTIFFS' POSITION, IN KEEPING WITH

18    JUDGE GONZALEZ ROGERS'S ORDERS, THAT THE DESIGN AND THE REASONS

19    FOR THE DESIGN ARE HIGHLY RELEVANT TO PLAINTIFFS' FAILURE TO

20    WARN CLAIM.

21          THE COURT:  RESPONSE TO THAT?

22          MR. DRAKE:  WELL, YOUR HONOR, JUDGE GONZALEZ ROGERS

23    SAID AT PAGE 32 OF HER ORDER THAT THE ALGORITHMS ARE BARRED BY

24    230 AND, QUOTE, NO LONGER PART OF THE CASE.

25          IT'S CLEAR, AND YOUR HONOR IS ALREADY ON TOP OF THE FACT,

1    AND THE PLAINTIFFS CAN'T ARTICULATE HOW THE ALGORITHM AT ALL

2    RELATES TO THE FAILURE TO WARN, AND I THINK YOUR HONOR IS

3    CORRECT.

4         THE PROBLEM IS THAT WHEN YOU TAKE THE ALGORITHM AND THE

5    COMPARISONS TO THE ALGORITHM OUT OF THE PLAINTIFFS' BRIEF, THEY

6    DON'T HAVE ANYTHING TO CONNECT DOUYIN TO THE TIKTOK PLATFORM IN

7    THE UNITED STATES.  THERE'S NOTHING SUBSTANTIALLY SIMILAR

8    BETWEEN THE AGE VERIFICATION SYSTEM ON TOUTIAO AND DOUYIN IN

9    CHINA, SUBJECT TO CHINESE LAW, REGULATIONS, STATUTES, PRIVACY

10   CONCERNS, AND CUSTOMS, AND HAVE A SIMILARITY BETWEEN THAT AND

11   WHAT IS USED HERE FOR TIKTOK IN THE UNITED STATES.  THEY'RE

12   SUBSTANTIALLY DIFFERENT.  THEY'RE NOT SUBSTANTIALLY SIMILAR.

13        SO I'M CONCERNED, YOUR HONOR, THAT WHEN THEY GO BACK IN

14   THE NEXT FEW DAYS AND SEND ME THIS LIST OF DOCUMENT REQUESTS,

15   THEY'RE GOING TO BE ALL THE DOCUMENT REQUESTS THAT RELATE TO

16   ALL THE ISSUES ABOUT TIKTOK, AND THEY'RE GOING TO SAY THEY

17   APPLY ACROSS THE BOARD NOW TO THESE OTHER SERVICES.

18        THERE'S NO PROPORTIONALITY TO THAT, AND WE'RE

19   SIGNIFICANTLY CONCERNED ABOUT WHAT THAT WOULD MEAN TO THE SCOPE

20   OF DISCOVERY AND HOW WE WOULD EVEN GO ABOUT TRYING TO COMPLY

21   WITH THAT PARTICULAR REQUIREMENT.

22        THE COURT:  SO LET ME ADDRESS BURDEN.

23        ARE PLAINTIFFS VERY CLEAR -- I'LL BE VERY, VERY CLEAR TO

24   ADDRESS THIS -- IT SHOULD NOT APPLY ACROSS THE BOARD.  IF YOU

25   SEND THEM A LIST OF EVERY SINGLE DOCUMENT REQUEST, OR 90

1    PERCENT OF THE DOCUMENT REQUESTS YOU'VE SERVED, TO ME THAT'S

2    NOT PROPORTIONAL; RIGHT?

3        BECAUSE WHAT I'M HEARING, AND WHAT YOU BRIEFED, IS THAT

4    YOU NEED TECHNICAL DISCOVERY ON HOW THESE FEATURES WERE

5    IMPLEMENTED OR NOT IMPLEMENTED, AND THEIR ALTERNATIVES; RIGHT?

6        AND TO ME THAT'S A LIMITED SET.  IT'S PROBABLY AT LEAST

7    ONE, MAYBE -- IT'S EITHER 1 OR 14 DOCUMENT REQUESTS; RIGHT?

8    YOU EITHER WANT ALL THE NAMED FEATURES IN ONE DOCUMENT REQUEST,

9    OR YOU BROKE THEM OUT; RIGHT?  SO IT SHOULD BE A LIMITED

10   UNIVERSE OF DOCUMENT REQUESTS YOU ARE COMMUNICATING TO THE

11   OTHER SIDE.

12        MS. HAZAM:  YOUR HONOR, THAT'S UNDERSTOOD AND THAT'S

13   OUR INTENT.

14        I THINK THE QUESTION AROSE WHEN YOUR HONOR REFERENCED THE

15   ALGORITHM.  IT IS A NAMED FEATURE.

16        AND WHILE COUNSEL SELECTIVELY CITED FROM

17   JUDGE GONZALEZ ROGERS'S ORDER, THERE IS ANOTHER SECTION OF HER

18   ORDER THAT WE QUOTED TO THIS COURT BEFORE, AND THIS COURT

19   INVOKED BEFORE WHEN WE DISCUSSED SCOPE OF DISCOVERY, THAT SAYS

20   THAT THE FAILURE TO WARN GOES TO ALL THE NAMED FEATURES.  THE

21   ALGORITHM IS ONE OF THEM.

22        SO IT WASN'T A MATTER OF YOUR HONOR'S DIRECTIVE TO US TO

23   SELECT THE RFP'S THAT MATCH YOUR HONOR'S, YOU KNOW,

24   UNDERSTANDING OF THIS DISPUTE.  WE ARE PREPARED TO DO THAT.  IT

25   WILL NOT BE ALL RFP'S.

1          BUT IT WAS THE NOTE OF THE ALGORITHM THAT RAISED THIS

2     ISSUE FOR US.

3               THE COURT:  ABOUT HOW MANY RFP'S DO YOU THINK IT'S

4     GOING TO BE?  IS IT 1 OR 14?

5               MR. MURA:  IT'S GOING TO BE MORE THAN THAT, YOUR

6     HONOR.

7          AND THERE'S ONE ASPECT OF THE COURT'S RULING THAT I WAS

8     GOING TO ASK ABOUT, BECAUSE YOU FOCUSSED ON TECHNICAL

9     DOCUMENTS, WHICH WE APPRECIATE, BUT THERE WAS ANOTHER ASPECT

10    WHICH DEALT WITH MARKETING, BECAUSE MUSICAL.LY, WHICH WAS TAKEN

11    OVER BY TIKTOK, WAS CENTRAL TO SORT OF THE MARKETING OF YOUTH,

12    AND SO THAT WOULD BE AN IMPORTANT ASPECT OF SORT OF OUR

13    DISCOVERY.

14         SO AS LONG AS WE HAVE BOTH THOSE TECHNICAL RFP'S AND THE

15    MARKETING PIECE, THEN I THINK WE'RE --

16              THE COURT:  IT'S TWO RFP'S.

17              MR. MURA:  I'M SORRY?

18              THE COURT:  IT'S TWO RFP'S, ONE THAT ASKS FOR ALL THE

19    NAMED FEATURES TECHNICALLY, AND ALL THE MARKETING RELATED TO

20    THE NAMED FEATURES.

21              MR. MURA:  NO, I DON'T KNOW THAT THEY'RE BROKEN DOWN

22    AS TO TWO SPECIFIC RFP'S.

23         I'M JUST TALKING ABOUT A DIFFERENT CATEGORY OF INFORMATION

24    THAT THE COURT DIDN'T TALK ABOUT, WHICH WAS THE MARKETING PIECE

25    OF IT.

1    MR. DRAKE:  AND I BELIEVE RELATING TO MUSICAL.LY,

2    WHICH ISN'T EVEN PART OF THIS MOTION, SO IT'S UNCLEAR HOW THIS

3    IS BEING BROUGHT IN NOW.

4        THE COURT:  LET ME CLOSE THE LOOP ON TECHNICAL

5    DOCUMENTS, OKAY?  IS MY RULING CLEAR ON THAT, MY DIRECTIVE ON

6    THAT?

7        MR. DRAKE:  I BELIEVE I UNDERSTAND YOU TO DIRECT TO

8    THE PLAINTIFFS THAT THEY CAN RESERVE OR POINT US IN THE

9    DIRECTION OF --

10        THE COURT:  NOT RESERVE, IDENTIFY FOR YOU

11    SPECIFICALLY WHICH RFP'S CAPTURE THE TECHNICAL DOCUMENTS THEY

12    WANT FOR THE IMPLEMENTATION OF THE NAMED FEATURES FOR TOUTIAO

13    OR DOUYIN -- IF I'M PRONOUNCING THAT INCORRECTLY, I

14    APOLOGIZE -- WITHIN TWO DAYS.  OKAY?

15      AND I EXPECT YOU ALL TO WORK THIS OUT REASONABLY AND

16    FIGURE OUT, RIGHT, AND I ASSUME PLAINTIFFS ARE NOT GOING TO

17    OVERDESIGNATE RFP'S, AND I WILL BE VERY DISAPPOINTED IF YOU ALL

18    COME BACK AND SAY THAT THERE'S A DISPUTE AS TO WHICH RFP'S ARE

19    CAPTURED BY THIS RULING.

20        MR. DRAKE:  ONE POINT OF CLARIFICATION --

21        THE COURT:  SURE.

22        MR. DRAKE:  -- OR PERHAPS CONSIDERATION, YOUR HONOR.

23      OF COURSE THE POSITION THAT WE HAVE TAKEN WITH THE

24    PLAINTIFFS IS THAT THE DOCUMENTS THAT WE'RE OTHERWISE SEARCHING

25    FOR, REVIEWING, AND WILL BE PRODUCING, WHICH IS SUBJECT TO OUR

1    AGREEMENT OF MORE THAN 50 CUSTODIANS JUST HERE RELATING TO

2    TIKTOK, SEARCH TERMS THAT WERE NEAR FINAL -- CLOSING IN ON A

3    FINAL, HOPEFULLY, AGREEMENT ON, BUT HAVE A TIMELINE TO DO THAT

4    AS WELL -- THAT IF THOSE DOCUMENTS, WHICH PRIMARILY WOULD

5    RELATE TO THE TIKTOK PLATFORM IN THE U.S., ALSO DISCUSS,

6    ADDRESS, OR COMPARE THEMSELVES TO DOUYIN OR TOUTIAO, ET CETERA,

7    THOSE DOCUMENTS WILL BE SWEPT IN AND WE'LL PRODUCE THOSE

8    DOCUMENTS TO THE PLAINTIFFS.

9        WE WILL STILL DO SO, AND I THINK WE TAKE THE POSITION,

10   WITH YOUR HONOR'S GUIDANCE, THAT THAT WILL BE THE APPROPRIATE

11   WAY TO GO ABOUT RESPONDING TO THESE PARTICULAR REQUESTS, NOT TO

12   OPEN THE DOOR ON ANOTHER SET OF CUSTODIANS, ON ANOTHER SET OF

13   SEARCH TERMS IN CHINA THAT RELATE TO THE ADDITIONAL SERVICES

14   AND PRODUCTS, BECAUSE THAT'S THE ISSUE, WHETHER THE COMPANY IN

15   THE UNITED STATES, MAKING THE TIKTOK PLATFORM, WAS AWARE OF

16   WHAT WAS -- OF THE DESIGN OF THE PLATFORM IN CHINA AND HOW THEY

17   IMPLEMENTED IT OR DECIDED NOT TO IMPLEMENT IT.

18       THE COURT:  TO CLARIFY, THIS IS GOING TO IMPLICATE

19   DIFFERENT CUSTODIANS IN CHINA.  I DON'T SEE HOW IT DOESN'T,

20   UNLESS YOU TELL ME THAT ALL THE ENGINEERING FOR ALL THREE

21   PLATFORMS IS DONE IN THE UNITED STATES.

22       MR. DRAKE:  NO, IT'S NOT DONE IN THE UNITED STATES.

23   IT'S DONE BY DIFFERENT PEOPLE ENTIRELY.

24       THE COURT:  RIGHT.  AND I UNDERSTAND THAT'S AT LEAST

25   PART OF THE CRUX OF THE DISPUTE IS THAT IT'S GOING TO IMPLICATE

1          AND OPEN THIS UP TO DISCOVERY FROM MORE CUSTODIANS IN CHINA.

2               THAT'S MY RULING.

3                    MR. DRAKE:  OKAY.  MAY WE AT LEAST PRESERVE, AND

4          DISCUSS DURING OUR MEET AND CONFER, OUR BURDEN OBJECTIONS AND

5          THE LIKE THAT REALLY WEREN'T PART OF THE DISCUSSION TODAY --

6                    THE COURT:  YES.

7                    MR. DRAKE:  -- BUT MAY BE IF WE GET INTO --

8                    THE COURT:  AGAIN, I ENCOURAGE YOU TO WORK OUT THE

9          LOGISTICS OF HOW YOU'RE GOING TO MEET YOUR MUTUAL CONCERNS ON

10         THIS ISSUE IN TERMS OF JUST, LIKE, SCOPE OF NUMBER OF

11         CUSTODIANS, RIGHT, AND NUMBER OF PEOPLE AND HOW YOU'RE GOING TO

12         HANDLE THE SEARCH.  HOPEFULLY YOU'LL USE THE SAME SEARCH TERMS.

13              AND I'M GOING TO BE VERY DISAPPOINTED IF YOU'RE UNABLE TO

14         ESSENTIALLY TAKE WHAT YOU'VE DONE FOR THE TIKTOK CUSTODIANS AND

15         FIGURE OUT A WAY TO NEGOTIATE THIS, YOU KNOW, A SIMILAR WAY TO

16         GET TO A PROPER NUMBER OF CUSTODIANS IN CHINA.  OKAY?

17                   MR. MURA:  THANK YOU, YOUR HONOR.

18              WELL, YOUR HONOR, I WAS JUST GOING TO RETURN TO THE

19         MARKETING PIECE.

20                   THE COURT:  BEFORE WE MOVE ON, WE'RE STILL DOING THE

21         GEOGRAPHIC STUFF.

22              IN THE BRIEFING, THE ONLY EXAMPLE OF A FOREIGN VERSION OF

23         TIKTOK THAT'S BEEN IDENTIFIED FOR THE COURT, AND THE ONLY ONE I

24         HAVE A BASIS FOR, IS THAT FRENCH ONE THAT YOU CITED ABOUT A

25         SAFETY FEATURE THERE.

1        SO I'M NOT OPENING UP, BECAUSE OF THE PROPORTIONALITY AND

2    FAILURE TO REALLY SHOW RELEVANCE, AS TO EVERY OTHER GEOGRAPHIC

3    VERSION OF TIKTOK OUTSIDE THE UNITED STATES.  THE ONLY ONE

4    YOU'VE OPENED THINGS UP TO, THAT YOU'VE MADE A BASIS FOR FOR

5    RELEVANCE, IS THE FRENCH VERSION.

6        MR. MURA:  WELL, YOUR HONOR, THE COMPLAINT ALSO

7    DISCUSSIONS THE CHINESE VERSION, DOUYIN, AND HOW THERE ARE

8    CERTAIN --

9        THE COURT:  I'VE ALREADY RULED ON DOUYIN.

10        MR. MURA:  OKAY.

11        THE COURT:  I'M TALKING ABOUT OTHER GEOGRAPHIC

12    VERSIONS OF TIKTOK OUTSIDE OF CHINA, OUTSIDE OF DOUYIN, OUTSIDE

13    OF TOUTIAO, BECAUSE I ASSUME YOU'VE RAISED, AND I'VE HEARD THIS

14    BURDEN ISSUE, BUT YOUR REQUEST, IF TAKEN LITERALLY, WOULD COVER

15    EVERY VERSION OF TIKTOK THROUGHOUT THE EUROPEAN UNION,

16    THROUGHOUT THE REST OF THE WORLD, EXCLUDING CHINA; CORRECT?

17        MR. MURA:  I DON'T THINK IT'S THAT BROAD.

18      BUT I THINK -- WE DON'T KNOW WHAT WE DON'T KNOW AT THIS

19    POINT, AND WE'VE ONLY SEEN VERY LIMITED DISCOVERY ABOUT IT.

20        THE COURT:  AND THE PROBLEM I HAVE IS YOU HAVEN'T --

21    THE ONLY VERSION OUTSIDE OF THE U.S. AND OUTSIDE OF CHINA THAT

22    YOU'VE IDENTIFIED WITH ANY SPECIFICITY THAT HAS SOMETHING THAT

23    APPEARS TO BE AT LEAST A BASIS FOR RELEVANCE IN THE CASE IS THE

24    FRENCH VERSION.

25        SO WITH REGARD TO ANY OTHER VERSION OF TIKTOK OUTSIDE OF

1   THE U.S., BUT NOT INCLUDING -- AND THIS IS SEPARATE FROM MY

2   RULING ON CHINA, DOUYIN, AND TOUTIAO -- THE ONLY OTHER VERSION

3   THAT GETS OPENED UP FOR DISCOVERY IS THE FRENCH VERSION.  OKAY?

4          MR. MURA:  OKAY.

5          THE COURT:  AND AGAIN, SAME THING.  I ASSUME IT'S THE

6   SAME DOCUMENT REQUESTS THAT YOU'RE GOING TO IDENTIFY FOR

7   TECHNICAL DOCUMENTS TO THE OTHER SIDE, IT WILL BE THE SAME ONES

8   THAT WILL IMPLICATE THE FRENCH VERSION.  BUT MAYBE THERE ARE NO

9   FRENCH DOCUMENTS BECAUSE MAYBE ALL THE ENGINEERING FOR THE

10  FRENCH VERSION FOR TIKTOK IS DONE IN THE U.S.  I DON'T KNOW.

11         MR. DRAKE:  THE DOCUMENT THAT THEY CITED AS TO ONE

12  ASPECT, THE PRIVATE ACCOUNT PROMPT OF THE FRENCH VERSION, IT'S

13  NOT CLEAR TO ME UNDER THE CASE LAW, YOUR HONOR, WHY THAT WOULD

14  OPEN UP THE ENTIRE FRENCH PLATFORM TO DISCOVERY THAT INDICATES

15  THAT ALL THE DIFFERENT --

16         THE COURT:  IT'S NOT OPENING UP THE ENTIRE FRENCH

17  PLATFORM TO DISCOVERY.  IT'S OPENING IT UP TO TECHNICAL

18  DOCUMENTS ONLY ON THE NAMED FEATURES.

19      SO THEY'RE NOT GETTING WIDE RANGING DISCOVERY ON ANY

20  PLATFORM.  IT'S GOT TO BE PROPORTIONAL AND RELEVANT TO THE

21  CASE.

22      THEY'VE AT LEAST PROVIDED A BASIS TO FIND THAT THAT

23  VERSION IS RELEVANT WITHIN THE SCOPE OF DISCOVERY THAT WE HAVE.

24  OKAY?

25         ANY QUESTIONS OR NEED FOR CLARIFICATION ON THAT PART OF

```
1        THE RULING?

2                MR. MURA:  NO, YOUR HONOR.

3                MR. DRAKE:  I SUPPOSE WE UNDERSTAND IT, YOUR HONOR.

4                MR. MURA:  I'M SORRY, TWO DAYS IS SATURDAY?

5                THE COURT:  BUSINESS DAYS.

6                MR. MURA:  TWO BUSINESS DAYS, OKAY.  I WAS GOING TO

7        CALL MR. --

8                THE COURT:  IF YOU HAVE IT NOW, YOU MAY AS WELL GIVE

9        IT TO HIM TODAY.

10            OKAY.  ON NON-TECHNICAL DOCUMENTS, MARKETING, THAT KIND OF

11       THING, I'M NOT SURE -- WELL, LET ME HEAR YOUR ARGUMENT WHY YOU

12       NEED ALL THAT FOR OUTSIDE OF THE U.S.

13               MR. MURA:  WELL, SO MUCH OF -- TIKTOK WAS NOT

14       LAUNCHED IN 2017.  THAT'S THE BIG DISAGREEMENT THAT WE HAVE

15       WITH DEFENDANTS.

16            BYTEDANCE HAD LAUNCHED SEVERAL OF THESE APPS AND TARGETED

17       YOUTH, AND THAT'S AN IMPORTANT PART OF THE ORIGIN STORY OF

18       TIKTOK ITSELF, INCLUDING MUSICAL.LY, WHICH WAS TAKEN OVER BY

19       TIKTOK AND THEN WAS THE SUBJECT OF FTC ACTION RELATED TO YOUTHS

20       UNDER 13 BEING ON THE PLATFORM.

21            AND SO THAT'S AN IMPORTANT PART OF THE STORY IN WHICH

22       TIKTOK AND BYTEDANCE TRIED TO GET MARKET SHARE WITHIN THE

23       UNITED STATES, DID SO THROUGH THESE OTHER APPS, AND WE THINK

24       THAT'S HIGHLY RELEVANT, THAT MARKETING STRATEGY OF TARGETING

25       YOUTHS.
```

1    SO AT LEAST WITH RESPECT TO MUSICAL.LY, WHICH GOES BACK TO

2    2014, WE THINK THAT THAT'S IMPORTANT INFORMATION, IT'S

3    SUBSTANTIATED AND DISCUSSED IN THE COMPLAINT, SO IT OBVIOUSLY

4    MEETS THE RELEVANCY THRESHOLD, AND WE DON'T THINK IT WOULD BE

5    BURDENSOME.

6            MR. DRAKE:  YOUR HONOR --

7            THE COURT:  WHY CAN'T THEY GET MARKETING STUFF FROM

8    MUSICAL.LY?

9            MR. DRAKE:  WELL, FIRST OF ALL, IT'S NOT THE SAME

10   PLATFORM.  IT'S A DIFFERENT PLATFORM.  I UNDERSTAND THEIR

11   ARGUMENT THAT IT WAS A PREDECESSOR OR SOMETHING LIKE THAT, BUT

12   THAT'S NOT THE REALITY.

13           THE REALITY IS THAT TIKTOK LAUNCHED IN THE UNITED STATES

14   IN MAY OF 2017.  IT WAS RELAUNCHED AFTER THE ACQUISITION OF

15   MUSICAL.LY.  SO IT LAUNCHED BEFORE THE ACQUISITION OF

16   MUSICAL.LY, IT ACQUIRED MUSICAL.LY AND RELAUNCHED IN AUGUST OF

17   2018.

18           WE OFFERED TO GO BACK IN DISCOVERY TO BEFORE THE LAUNCH,

19   TO JANUARY 1 OF 2017.  WE BELIEVE THAT WAS A VERY FAIR

20   COMPROMISE.

21           THE PLAINTIFFS, OF COURSE, DIDN'T COMPROMISE AT ALL AND

22   THEY DEMANDED THAT WE GO BACK TO 2012, FIVE YEARS BEFORE THE

23   LAUNCH OF THE PRODUCT HERE IN THE UNITED STATES.

24           SO THAT'S CERTAINLY NUMBER ONE.  THEY HAVEN'T SHOWN, JUST

25   LIKE WITH RESPECT TO DOUYIN AND TOUTIAO AND THE OTHER PLATFORMS

1    ACROSS THE WORLD, THAT MUSICAL.LY IS A SUBSTANTIALLY SIMILAR

2    PRODUCT.  IT'S BEEN CHANGED, IT'S BEEN REBRANDED, ET CETERA.

3        SO THEY HAVEN'T MADE THE REQUISITE SHOWING TO GET BEYOND

4    TIKTOK NOW INTO YET ANOTHER PLATFORM THAT THEY WANT TO TAKE

5    DISCOVERY INTO.

6        SLIGHTLY DIFFERENT QUESTION.  IT WAS A LITTLE BIT -- HE

7    DODGED, I THINK, A LITTLE BIT YOUR QUESTION ABOUT WHETHER THEY

8    SHOULD GET MARKETING MATERIALS AND WENT QUICKLY INTO

9    MUSICAL.LY.

10       SO I WASN'T SURE EXACTLY WHAT YOUR HONOR -- I DON'T KNOW

11   IF YOU GOT THE ANSWER YOU WERE LOOKING FOR FROM MR. MURA ON

12   THAT EXACT POINT OR NOT.

13           THE COURT:  AS I UNDERSTAND IT, THE DISPUTE IS

14   NARROWED DOWN TO THAT THEY WANT MARKETING DOCUMENTS FROM

15   MUSICAL.LY THAT ARE CURRENTLY STILL IN TIKTOK'S POSSESSION.

16       IT'S NOT IN THE MATERIALS.  WHEN DID MUSICAL.LY GET

17   FOUNDED?

18           MR. MURA:  2014, YOUR HONOR.

19           MR. DRAKE:  WE WOULD AT LEAST LIKE THE OPPORTUNITY TO

20   BRIEF THAT ISSUE, YOUR HONOR.  IT HASN'T BEEN BRIEFED.  IT'S IN

21   THE LETTERS, THE LETTER BRIEFING.  THAT WAS ABOUT TWO TOTALLY

22   DIFFERENT ISSUES.  IT WAS ABOUT THE START DATE FOR DISCOVERY AS

23   TO TIKTOK.  MUSICAL.LY WAS HARDLY REFERENCED.

24       AND THEN THE OTHER ONE WAS ABOUT PLATFORMS OUTSIDE THE

25   UNITED STATES, NOT ALLEGED PREDECESSOR PLATFORMS IN THE

```
1      UNITED STATES.

2             THE COURT:  IT WAS BRIEFED IN THE TIMEFRAME FOR

3      BRIEFING.

4             MR. DRAKE:  VERY BRIEFLY.  IT WAS BARELY MENTIONED.

5             THE COURT:  WELL, IT'S NOT THAT COMPLICATED AN ISSUE,

6      I DON'T THINK.  IT WAS FAIRLY PRESENTED TO ME.

7          IT SEEMS TO ME -- AGAIN, HAVE YOU IDENTIFIED WHICH

8      MARKETING RFP'S WOULD TARGET MUSICAL.LY?

9             MR. MURA:  WE CAN DO THAT AS PART OF THIS PROCESS.

10            THE COURT:  HOW MANY IS THAT GOING TO BE?

11            MR. MURA:  I'M NOT SURE THAT I FEEL COMFORTABLE

12     GIVING A NUMBER.

13            THE COURT:  DID YOU BREAK OUT YOUR MARKETING RFP'S BY

14     NAMED FEATURE?

15            MR. MURA:  WE DO HAVE A MARKETING SET THAT I THINK IS

16     WHAT WE WOULD GO TO TO HAVE THIS DISCUSSION.  I'M SURE WE COULD

17     PICK THE TAILORED ASPECT OF IT, JUST AS WE WOULD WITH THE

18     OTHERS.

19            THE COURT:  BECAUSE AS I UNDERSTAND IT, YOUR ARGUMENT

20     IS YOU NEED THOSE MARKETING DOCUMENTS FOCUSSED ON HEALTH AND

21     SAFETY TYPE MARKETING ISSUES; RIGHT?

22            MR. MURA:  YES, YOUR HONOR.

23            THE COURT:  OKAY.  SO, AGAIN, YOU HAVE TWO DAYS TO

24     IDENTIFY A LIMITED SET OF TARGETED RFP'S THAT YOU'VE ALREADY

25     SERVED THAT WOULD CAPTURE MUSICAL.LY MARKETING DOCUMENTS --
```

```
 1       MARKETING DOCUMENTS ONLY -- THAT ARE DIRECTED TO THE NAMED
 2       FEATURES IN THE CASE, NOT WIDE RANGING DISCOVERY ON ALL THEIR
 3       MARKETING AND ALL THEIR MARKETING PLANS AND ALL THAT BECAUSE
 4       THAT'S, THAT'S NOT PROPORTIONAL AND THAT'S NOT RELEVANT.  YOU
 5       HAVEN'T SHOWN THAT.
 6          OKAY?
 7             MR. MURA:  OKAY.
 8             MR. DRAKE:  AND IS THIS ALSO ADDRESSED, YOUR HONOR,
 9       TO THE BRIEFING GENERALLY ON THE RELEVANT TIME PERIOD AND THE
10       START DATE?  OR YOU WANT TO ADDRESS THAT SEPARATELY?
11             THE COURT:  THERE'S A LOT MORE NUANCE TO THAT.  IT
12       ADDRESSES PART OF IT, BUT NOT ALL OF IT.
13             MR. DRAKE:  OKAY.
14             THE COURT:  SO AS I UNDERSTAND IT, THAT COVERS --
15       THAT RESOLVES THIS LETTER BRIEF.  THERE WAS NO OTHER ISSUE.
16          IS THAT RIGHT?
17             MR. MURA:  NOT AT THIS TIME, YOUR HONOR.
18             THE COURT:  OKAY.
19             MR. DRAKE:  I BELIEVE IT RESOLVES IT FOR TODAY, YES,
20       YOUR HONOR.
21             THE COURT:  OKAY.
22          THEN WHO'S ARGUING THE TIKTOK -- I MEAN THE YOUTUBE BRIEF
23       ON THE SIMILAR ISSUE?
24             MS. TRUONG:  GOOD AFTERNOON, YOUR HONOR.
25             AN TRUONG FOR PLAINTIFFS.
```

1      THE COURT:  GOOD AFTERNOON.

2      MS. MACHOCK:  GOOD AFTERNOON, YOUR HONOR.

3   SAMANTHA MACHOCK FROM WILSON, SONSINI FOR YOUTUBE/GOOGLE.

4      THE COURT:  GOOD AFTERNOON.

5   SO YOU HAD THE BENEFIT OF HEARING MY DISCUSSION ON THE

6   PREVIOUS DISCUSSIONS.

7      SO IT SEEMS TO ME, AGAIN, YOU'VE GOT TO -- ACTUALLY, THIS

8   BRIEF ACTUALLY LISTED OUT THE REQUESTS THAT ARE AT ISSUE, AND

9   THERE IS SPECIFIC DISCUSSION OF YOUTUBE, EXAMPLES OF YOUTUBE

10  AGE VERIFICATION FEATURES IN THE E.U. AND AUSTRALIA THAT'S

11  PRESENTED IN THE BRIEFS.

12     SO IN TERMS OF AT LEAST GEOGRAPHIC SCOPE, AGAIN, SIMILAR

13  TO WHAT I SAID BEFORE, I DON'T BELIEVE IT'S PROPORTIONAL OR

14  RELEVANT TO GET WIDE RANGING DISCOVERY ON EVERY VERSION OF

15  YOUTUBE ACROSS THE GLOBE, RIGHT, BECAUSE THERE HASN'T BEEN A

16  BASIS PRESENTED FOR ME TO APPROVE THAT KIND OF DISCOVERY.

17     THIS BRIEF DIDN'T USE THE PHRASE "NAMED FEATURES."  IS

18  THAT BECAUSE THE TERM "NAMED FEATURES" WASN'T USED IN THE

19  DOCUMENT REQUEST, OR WERE YOU JUST -- I KNOW YOU LISTED A BUNCH

20  OF FEATURES, BUT YOU DIDN'T REFER TO THEM AS THE PHRASE "NAMED

21  FEATURES."

22     MS. TRUONG:  I CAN TAKE THAT, YOUR HONOR.

23   THEY ARE LISTED AS NAMED FEATURES IN THE DOCUMENT REQUEST.

24     THE COURT:  OKAY.  SO CONSISTENT WITH MY APPROACH ON

25  THE PREVIOUS MOTION, MY VIEW IS THAT PLAINTIFFS HAVE PROVIDED A

1    SUFFICIENT BASIS TO GET DISCOVERY ON THE NAMED FEATURES

2    TECHNICAL IMPLEMENTATION IN THE E.U. AND AUSTRALIAN VERSIONS OF

3    YOUTUBE ONLY.

4              MS. MACHOCK:  MAY I --

5              THE COURT:  YOUR CHOICE.

6              MS. MACHOCK:  MAY I RESPOND TO SOME OF THAT?  BECAUSE

7    THERE'S A COUPLE OF ASSUMPTIONS BAKED IN THERE THAT I DON'T

8    THINK ARE -- I APPRECIATE YOUR HONOR'S RULING AND

9    CLARIFICATION, BUT THEY'RE NOT QUITE ACCURATE.

10       SO PLAINTIFFS HERE HAVE NOT -- I DO KNOW THEY LIST SOME

11   RFP'S IN THE FOOTNOTE IN THEIR LETTER BRIEF, BUT THEY HAVE NOT

12   AT ANY POINT IN THIS PROCESS WITH LETTER BRIEFING ARTICULATED

13   WHICH RFP'S THEY'RE LOOKING FOR OR LIMITED IN ANY WAY.

14       THEY ARE SIMPLY IDENTIFYING RFP'S FOR WHICH YOUTUBE HAS

15   MADE AN EXPLICIT OBJECTION, WHICH WAS OVER 60 RFP'S.  SO IT'S

16   NOT TAILORED IN ANY WAY.

17       AND OUR UNDERSTANDING FROM CONVERSATIONS WITH PLAINTIFFS

18   HAS BEEN THAT THEY ARE SEEKING A GLOBAL RULING, SUCH THAT ANY

19   FUTURE RFP THEY MIGHT SERVE, ANY EXISTING RFP, THEY COULD SEEK

20   EXTRATERRITORIAL DISCOVERY ON ANY RFP THAT IT DOES NOT HAVE.

21       THAT IS OUR UNDERSTANDING.

22              THE COURT:  I'M NOT IN THE POSITION OF GRANTING -- OF

23   GIVING HYPOTHETICAL RULINGS ON THINGS THAT I HAVEN'T BEEN

24   PRESENTED WITH.  SO AS I SAID, I'M NOT AT THIS POINT GRANTING

25   ANYBODY GLOBAL DISCOVERY ON ANYTHING.

1           MS. MACHOCK:  OKAY.  MAY I RESPOND TO THE NAMED

2     FEATURES POINT AS WELL?

3           THE COURT:  SURE.

4           MS. MACHOCK:  THE OTHER PROBLEM IS THAT EVEN LIMITED

5     TO 14 FEATURES, I THINK THERE'S SOME PROBLEMS WITH THAT BECAUSE

6     THESE FEATURES ARE VERY ILL DEFINED.

7           MANY OF THEM, THERE'S NO CLAIMS AGAINST YOUTUBE RELATED TO

8     THESE FEATURES.  FOR EXAMPLE, LIKE FRIEND RECOMMENDATIONS IS

9     SIMPLY IRRELEVANT TO YOUTUBE.

10          GEOLOCATION, WE HAVE YET TO HEAR PLAINTIFFS ARTICULATE ANY

11    WAY IN WHICH GEOLOCATION IS RELEVANT TO ANY CLAIM AGAINST

12    YOUTUBE.

13          AND AS YOUR HONOR PREVIOUSLY NOTED WITH RESPECT TO MY

14    COLLEAGUE AT TIKTOK, SEVERAL OF THE NAMED FEATURES ARE ALSO

15    OUT:  PERSONALIZATION, ENDLESS SCROLL, ALGORITHMIC

16    RECOMMENDATIONS, NOTIFICATIONS, THOSE ARE BARRED BY SECTION 230

17    OF THE FIRST AMENDMENT.

18          SO THERE'S TWO ISSUES HERE.  THERE'S THAT PLAINTIFFS NEED

19    TO IDENTIFY ACTUALLY, YOU KNOW, WHAT THEY'RE SEEKING, LIKE A

20    SPECIFIC ISSUE, A SPECIFIC FEATURE, AND THE SPECIFIC GEOGRAPHIC

21    REGION FOR WHICH THEY THINK THERE'S SOME REASON TO THINK THAT

22    RELEVANT ALTERNATE DESIGN DISCOVERY WOULD BE -- DISCOVERY WILL

23    LEAD TO RELEVANT ALTERNATIVE DESIGN DOCUMENTS, AND THEY HAVEN'T

24    DONE THAT.

25          THE FIRST TIME THEY'VE EVER ARTICULATED ANY SPECIFIC BASIS

 1     WAS IN THAT FOOTNOTE IN THEIR LETTER BRIEF WHERE THEY VAGUELY

 2     REFERENCED AGE VERIFICATION IN THE E.U.  BUT EVEN THEN, THEY

 3     HAVEN'T ARTICULATED WHY THEY THINK THERE'S AN ALTERNATE DESIGN

 4     THERE.

 5          WHAT THEY REFERENCED IS THAT THERE ARE ADDITIONAL ACCESS

 6     RESTRICTIONS TO MATURE CONTENT.  HOWEVER, THEY'VE SPECIFICALLY

 7     DISCLAIMED THAT THIS CASE IS ABOUT CONTENT.

 8          SO EVEN IF WE DO AGE GATE MATURE CONTENT IN A DIFFERENT

 9     WAY IN THE E.U. OR A.U., AGAIN, IT IS NOT AT ALL CLEAR TO US

10     HOW THAT IS RELEVANT TO ANY CLAIM IN THIS CASE GIVEN THAT THESE

11     PLAINTIFFS ARE NOT ASSERTING ANY CLAIM ABOUT PLAINTIFFS' ACCESS

12     TO MATURE CONTENT IN THE U.S.

13          SO I THINK THIS JUST ILLUSTRATES SORT OF THE PROBLEM HERE.

14     WE HAVEN'T GOTTEN A CHANCE TO REALLY ENGAGE IN ANY MEANINGFUL

15     WAY ON THE RELEVANCE ISSUE OR THE PROPORTIONALITY ISSUE BECAUSE

16     PLAINTIFFS HAVEN'T ARTICULATED SPECIFIC DISCOVERY THAT THEY'RE

17     SEEKING.  WE JUST HAVE THIS, LIKE, BROAD APPROACH WHERE THEY

18     WANT EVERYTHING ABOUT THE YOUTUBE PLATFORM IN OVER 100

19     DIFFERENT COUNTRIES AND EVERY POTENTIAL FEATURE.

20          THE COURT:  SO I'VE ALREADY RULED GEOGRAPHICALLY

21     THEY'RE NOT GETTING DISCOVERY FROM DIFFERENT COUNTRIES.

22          MS. MACHOCK:  RIGHT, BUT WE HAVEN'T HAD A CHANCE TO

23     ARTICULATE OR ENGAGE ON THE RELEVANCE ISSUE OR THE

24     PROPORTIONALITY ISSUE BECAUSE THEY HAVEN'T COME TO US WITH ANY

25     REQUESTS THAT ARE SPECIFIC, SUFFICIENTLY TAILORED THAT WE CAN

1    ACTUALLY HAVE A MEANINGFUL DISCUSSION WITH THEM.

2              MS. TRUONG:  YOUR HONOR, MAY I RESPOND?

3              THE COURT:  YEAH, GO AHEAD.

4              MS. TRUONG:  OUR BRIEFING HERE IS IN RESPONSE TO

5    YOUTUBE'S OBJECTIONS RAISED IN THESE VERY SPECIFIC REQUESTS

6    WHICH WE'VE LISTED IN FOOTNOTE 2, AND IN RESPONSE TO THAT

7    OBJECTION, WE WENT TO THEM AND SAID, LET'S HAVE A DISCUSSION,

8    WE CAN NARROW IT TO NAMED FEATURES, WHICH WE IDENTIFIED.

9         AND THEN WE FURTHER SAID, IF YOU WANT TO HAVE A CONTINUED

10   DISCUSSION, WHY DON'T YOU TELL US WHAT FEATURES EXIST AND WE

11   CAN FURTHER NARROW THAT LIST?  WE CAN HAVE A CONVERSATION ABOUT

12   SOURCES, ABOUT CUSTODIANS, AND ABOUT HOW WE CAN TAKE THIS DOWN

13   TO A MORE FEASIBLE AND APPROACHABLE RESOLUTION OF THOSE

14   PARTIES.

15        YOUTUBE'S RESPONSE TO THAT WAS, NO, IT'S JUST TOO HARD.

16        THEY DID NOT ENGAGE WITH US ON BURDEN.  THEY DID NOT

17   PRESENT ANYTHING IN THEIR BRIEFING TO DEMONSTRATE OR ILLUSTRATE

18   WHAT EXACTLY IS AT ISSUE.

19        AND SO I THINK THIS IS WHY WE'RE AT IMPASSE ON THIS

20   BRIEFING OF THIS POINT.

21        AND I HEARD THE PRIOR ARGUMENTS, SO I DON'T WANT TO

22   BELABOR ANY OF THE POINTS WITH RESPECT TO WHY THE NAMED

23   FEATURES WE HAVE LISTED REMAIN IN THE CASE, BUT I WOULD ECHO

24   WHAT HAS BEEN SAID BY MY CO-COUNSEL ON THAT.

25              THE COURT:  OKAY.  SO THIS GOES TO A BROADER POINT.

 1    I AM, I WOULD SAY, DISAPPOINTED GENERALLY WITH THE LACK OF

 2    PRODUCTIVE MEET AND CONFERS THROUGHOUT THESE DISCOVERY MOTIONS.

 3    YOU KNOW, IT -- THERE ARE ISSUES BURIED IN HERE ON WHICH I

 4    ASSUME REASONABLE LAWYERS, OF COURSE, CAN DISAGREE.

 5         BUT SOME OF THESE, LIKE WHEN YOU COME TO ME WITH A BRIEF

 6    THAT SAYS THEY DIDN'T MEET AND CONFER ADEQUATELY ON THIS AND WE

 7    TRIED AND THEN WE GAVE UP, THAT'S FINE.

 8         BUT YOU ALL KNOW YOUR CASES BETTER THAN I DO, YOU KNOW

 9    YOUR DOCUMENTS AND YOUR CUSTODIANS BETTER THAN I DO, AND YOU'RE

10    ASKING ME TO DRAW LINES, RIGHT, WHERE I HAVE LESS PERFECT

11    INFORMATION THAN YOU ALL HAVE.

12         SO THE RISK YOU'RE RUNNING IS I'M GOING TO DRAW LINES IN

13    WAYS THAT YOU COULD HAVE NEGOTIATED AROUND.  SO I JUST WANT TO

14    MAKE CLEAR TO YOU ALL THAT YOU BRING DISPUTES TO ME, I'M GOING

15    TO RULE ON THEM, RIGHT, AND YOU'RE GOING TO BE DISAPPOINTED ON

16    SOME OF IT, BUT THAT'S THE RISK YOU RUN WHEN YOU BRING IT TO ME

17    AND YOU DON'T, AS I'VE SEEN -- I'VE HEARD AND I'VE SEEN IN SOME

18    OF THESE BRIEFS WHAT I CONSIDER TO BE FAIRLY INADEQUATE AT THE

19    END OF THE DAY MEET AND CONFERS; RIGHT?

20         YOU REALLY -- I THINK I SAID THIS AT DMC'S REPEATEDLY.

21    YOU NEED TO TALK TO EACH OTHER; RIGHT?  AND SIMPLY SAYING,

22    WELL, WE OBJECT AND WE'RE NOT GOING TO DO THAT AND WE'RE NOT

23    GOING TO DO THIS OR WHATEVER IS JUST NOT SUFFICIENT, AND THERE

24    ARE WAYS TO NARROW THESE DISPUTES.

25         THE PROPOSAL THAT YOUTUBE IDENTIFY THE FEATURES THAT ARE

1    RELEVANT I THINK PUTS -- THAT ACTUALLY PUTS THE BURDEN ON THE

2    WRONG PARTY BECAUSE YOU'RE THE ONE SEEKING THE DISCOVERY, AND

3    PRESUMABLY YOU'VE DONE SOME INVESTIGATION AS TO WHAT PUBLIC

4    FACING FEATURES THEY HAVE, AND YOU SHOULD BE ABLE TO IDENTIFY,

5    YOU KNOW, WHAT THOSE FEATURES ARE.

6        CONVERSELY, RIGHT, IF THEY JUST GIVE YOU A LIST OF

7    FEATURES AND SAY, THESE ARE THE FEATURES, AND YOU DON'T HAVE

8    THEM, THAT MAKES YOUR JOB AS DEFENSE COUNSEL EASY.  JUST SAY,

9    WE DON'T HAVE ANY RESPONSIVE DOCUMENTS.

10        YOU DON'T HAVE TO THROW UP YOUR HANDS AND SAY, WE DON'T

11    UNDERSTAND, BECAUSE IF YOU READ IT AND YOU SAY, FOR EXAMPLE, WE

12    DON'T HAVE -- I THINK YOU SAID YOU HAVE IT, SO JUST

13    HYPOTHETICALLY -- WE DON'T HAVE GEOLOCATION, IF YOU JUST DON'T

14    HAVE IT, THAT'S AN EASY RESPONSE AND THERE'S NO NEED TO MEET

15    AND CONFER ON THAT AND CLAIM THAT IT'S CONFUSING OR WHATEVER.

16    YOU SHOULD RESPOND THAT WAY.  OKAY?

17        ALL RIGHT.  SO I'M GOING TO STICK WITH MY, MY RULING HERE.

18    OKAY?  SO -- BUT I'M GOING TO MODIFY IT.

19        FOR YOUTUBE, YOU NEED TO IDENTIFY THE SPECIFIC DOCUMENT

20    REQUESTS, AS I DID WITH TIKTOK, THE SPECIFIC DOCUMENT REQUESTS

21    THAT GO TO TECHNICAL IMPLEMENTATION DOCUMENTS FOR THE NAMED

22    FEATURES, RIGHT, THAT YOU'RE GOING AFTER.  BECAUSE I PRESUME

23    IT'S -- I DIDN'T COUNT ALL OF THEM, BUT IT'S DEFINITELY MORE

24    THAN 20 DOCUMENT REQUESTS, AND I DON'T THINK YOU NEED ALL 20 TO

25    GET AT THAT.

1          ALL RIGHT?

2              MS. TRUONG:  UNDERSTOOD, YOUR HONOR.

3              THE COURT:  SO YOU HAVE TWO DAYS TO IDENTIFY THE

4     DOCUMENT REQUESTS.  SAME INSTRUCTIONS AS THE PREVIOUS RULING.

5     THEY BETTER BE NARROWLY TAILORED AND THEY BETTER BE DIRECTED TO

6     TECHNICAL IMPLEMENTATION OF THE NAMED FEATURES.  OKAY?

7              AND THEN I DON'T -- I'M GOING TO BE VERY, VERY

8     DISAPPOINTED IF YOU COME BACK TO ME AND SAY YOU CAN'T EVEN

9     AGREE ON WHICH DOCUMENT REQUESTS ARE ENCOMPASSED BY THIS.

10             FOR THOSE DOCUMENT REQUESTS, DISCOVERY EXTENDS TO THE

11    EUROPEAN VERSION AND THE AUSTRALIAN VERSION OF YOUTUBE ONLY.

12    SO NOTHING OUTSIDE OF THOSE REGIONS.

13             WHEN I SAY "EUROPEAN," BECAUSE OF WHAT THE U.K. HAS DONE,

14    I'M INCLUDING THE U.K. IN EUROPEAN UNION, ALTHOUGH THEY'RE NOT

15    TECHNICALLY IN.  SO IT'S CALLED NATO PLUS E.U., OKAY?

16             SO THAT -- SO GEOGRAPHIC LIMITS I THINK ARE CLEAR, UNLESS

17    ANYBODY IS UNCLEAR.

18             MS. TRUONG:  YOUR HONOR, MAY I BE HEARD ON GEOGRAPHIC

19    LIMITS JUST BRIEFLY?

20             I HEAR THE COURT ON, ON WHAT THE POSITIONING IS.  I JUST

21    WANT TO REITERATE THAT IT IS VERY DIFFICULT, WHEN WE DON'T HAVE

22    THE BENEFIT OF THE DOCUMENT PRODUCTION AND THERE IS CLEAR

23    ASYMMETRY IN INFORMATION HERE, FOR US TO BE ABLE TO IDENTIFY

24    EVERY SINGLE FEATURE THAT MAY BE OUT THERE, AND YOUTUBE IS

25    CLEARLY IN A BETTER POSITION TO DO THAT, AND IT WOULD JUST, YOU

1    KNOW, IN TERMS OF JUST FAIRNESS, YOU KNOW, FOR THEM TO COME

2    FORWARD WITH A LIST AND WE CAN HAVE A CONVERSATION ON IT.

3         THE COURT:  IT'S -- IT'S -- CERTAINLY YOU CAN DO

4    WHATEVER YOU CAN OR WANT TO DO IN MEET AND CONFERS TO EXCHANGE

5    INFORMATION.  LIKE I SAID, IF YOU TALK OPENLY WITH EACH OTHER,

6    THAT'S A GOOD THING.

7         BUT IF THEY'RE GOING TO COME TO ME ON A MOTION AND SAY, WE

8    SHOULDN'T BE FORCED TO DO THAT BECAUSE YOU'RE MAKING US DO YOUR

9    WORK FOR YOU, AT A FUNDAMENTAL LEVEL, THEY'RE PROBABLY RIGHT.

10        NOW, THERE'S A LOT OF THINGS THAT PARTIES CAN DO

11   COOPERATIVELY, AND I WOULD ENCOURAGE THAT.  BUT IF YOU'RE GOING

12   TO INSIST ON FILING THE BRIEF AND STANDING ON YOUR LEGAL

13   RIGHTS, THAT'S MY RULING.

14        HAVING SAID THAT, I DON'T WANT TO DO YOUR JOB FOR YOU, BUT

15   THERE ARE WAYS TO GET AT THAT INFORMATION THAT DON'T REQUIRE

16   DOCUMENT REQUESTS.  YOU CAN SERVE INTERROGATORIES THAT SAY --

17   OR YOU CAN SERVE REQUESTS FOR ADMISSION, PLEASE ADMIT YOU HAVE

18   GEOLOCATION.  PLEASE ADMIT YOU HAVE IT IN THIS VERSION IN THIS

19   COUNTRY.

20        AND THERE ARE MANY, MANY DIFFERENT WAYS TO GET AT THE

21   INFORMATION YOU'RE GOING FOR OTHER THAN ASKING THEM TO PROVIDE

22   YOU A VOLUNTARY LIST.  ALL RIGHT?

23        SO DISCOVERY HAS BEEN OPEN FOR AWHILE.  THERE'S NOTHING

24   STOPPING YOU FROM DOING THAT.

25        MS. TRUONG:  UNDERSTOOD, YOUR HONOR.

```
1              THE COURT:  ALSO -- LET ME FINISH.

2         WHEN I WAS A YOUNG LAWYER, I WAS ALWAYS TAUGHT, WHEN THE

3    COURT'S MOUTH OPENS, YOUR MOUTH CLOSES; RIGHT?

4         SO YOU HAVE THE CHANCE TO INVEST -- THE VERSIONS OF

5    YOUTUBE OUT THERE, THERE'S NOTHING STOPPING YOU FROM GOING OUT

6    AND INSPECTING THEM AND INVESTIGATING THEM ON YOUR OWN AS TO

7    WHAT THE PUBLIC FACING FEATURES ARE; RIGHT?

8         AND SO YOU COULD HAVE CHOSEN, YOU DIDN'T HAVE TO GO -- YOU

9    COULD HAVE CHOSEN FIVE OF THE MAJOR MARKETS IN THE WORLD AND

10   LOOKED AT THEIR VERSIONS.  IT'S 14 FEATURES.  I DON'T THINK

11   IT'S THAT BURDENSOME TO DO YOUR OWN INVESTIGATION TO FIGURE OUT

12   WHAT THOSE FEATURES ARE IN OVERSEAS VERSIONS SINCE IT'S

13   TARGETED TO THOSE NAMED FEATURES.

14        ALL RIGHT.  SO I DON'T WANT TO TELL YOU HOW TO DO YOUR OWN

15   INVESTIGATION AND YOUR OWN JOB, BUT THE ARGUMENT THAT THEY

16   SHOULD HAVE BEEN REQUIRED TO FALLS FLAT IN LIGHT OF ALL THAT.

17   OKAY?

18             MS. TRUONG:  I JUST WANT TO SAY, I HEAR YOU ON THAT,

19   YOUR HONOR, AND WE WILL TAKE THAT FORWARD SPECIFICALLY WITH

20   RESPECT TO THE RFP'S THAT YOU WANT US TO IDENTIFY WITHIN THE

21   NEXT TWO DAYS.

22             THE COURT:  RIGHT.  OKAY.  SO THAT COVERS -- I THINK

23   THAT COVERS MOST OF THE DISPUTE HERE, BUT LET ME KNOW IF YOU

24   NEED MORE CLARIFICATION OR IF THERE'S OPEN DISPUTES.

25             MS. MACHOCK:  MAY I SEEK CLARIFICATION?  BECAUSE I
```

```
1         THINK THERE'S TWO ISSUES, RELEVANCE AND PROPORTIONALITY.

2             YOU HAVE MADE A RULING ON RELEVANCE AS TO AGE VERIFICATION

3     IN AUSTRALIA AND E.U., RIGHT.  BUT THAT'S ONE NAMED FEATURE,

4     AND THAT IS THE ONLY ARGUMENT PLAINTIFFS HAVE MADE FOR WHY

5     EXTRATERRITORIAL DISCOVERY IS RELEVANT.

6             THERE'S -- THEY HAVEN'T MADE ANY SHOWING WHATSOEVER ON ANY

7     OTHER NAMED FEATURE, SO MAY I CLARIFY THAT YOUR RULING IS

8     LIMITED TO AGE VERIFICATION?

9             THE COURT:  IT IS NOT LIMITED TO AGE VERIFICATION.

10    IT INCLUDES ALL THE NAMED FEATURES IN THE DOCUMENT REQUESTS.

11            MS. MACHOCK:  EVEN THE NAMED FEATURES THAT DON'T

12    APPLY -- THAT'S WHY I'M SAYING IT'S A PROBLEM --

13            THE COURT:  TALK TO THEM.

14            MS. MACHOCK:  WE DO --

15            THE COURT:  AH, AH.

16            MS. MACHOCK:  SORRY.

17            THE COURT:  IF YOU DON'T HAVE THE FEATURE, THEN THE

18    RESPONSE IS EASY AND IT'S -- THERE'S NO BURDEN ON YOU; RIGHT?

19    I MEAN, I DON'T UNDERSTAND THE CONCERN THERE.

20            MS. MACHOCK:  WELL, YOU JUST ARTICULATED THAT SOME OF

21    THE NAMED FEATURES HAVE BEEN RULED BARRED BY THE FIRST

22    AMENDMENT AND SECTION 230, AND WE AGREE WITH YOU.

23            AND SO I WAS TRYING TO REFER TO THE RULING YOU MADE

24    PREVIOUSLY IN THIS HEARING WITH THE RULING YOU'RE MAKING NOW.

25    SOME OF THE NAMED FEATURES PLAINTIFFS ARE NOT ENTITLED TO
```

1    EXTRATERRITORIAL DISCOVERY, AND I WAS JUST IDENTIFYING THOSE.

2            THE COURT:  AGAIN, AS I DID WITH THE PREVIOUS ONE, I

3    WAS FOCUSSED ON TECHNICAL DOCUMENTS.

4        AS I SAID EARLIER, MARKETING DOCUMENTS, THEY GET ALL THE

5    NAMED FEATURES, BUT TO ME THAT GOES TO THE FAILURE TO WARN.

6            MS. MACHOCK:  OKAY.  I GUESS BECAUSE THIS HAS NEVER

7    BEEN -- I FEEL LIKE WE HAVE NOT HAD AN OPPORTUNITY TO BE HEARD

8    ON THIS BECAUSE THIS WAS TEED UP IN A GLOBAL SENSE WHERE

9    PLAINTIFFS WERE SEEKING A DEFAULT RULING AND THEY DID NOT EVER

10   COME TO US AND ASK FOR DOCUMENTS IN AUSTRALIA OR THE E.U. ON

11   AGE VERIFICATION.

12       HAD THEY COME TO US WITH THAT REQUEST, IT WOULD HAVE BEEN

13   A VERY DIFFERENT CONVERSATION.

14           THE COURT:  THERE'S NOTHING STOPPING YOU FROM MAKING

15   THAT PROPOSAL YOURSELVES VOLUNTARILY.

16           MS. MACHOCK:  WE CAN'T -- WE CAN'T ANTICIPATE WHAT

17   PLAINTIFFS WANT.  IT'S NOT POSSIBLE FOR US.

18       WE'RE ALREADY LOOKING AT MILLIONS OF DOCUMENTS JUST WHEN

19   WE LIMIT DISCOVERY TO THE UNITED STATES.  THE VOLUMES ARE

20   ALREADY ASTRONOMICAL.  SO TO EXPECT US I THINK TO GO AND

21   INVESTIGATE WHAT WE MAY DO IN ANY OTHER JURISDICTION IN THE

22   WORLD --

23           THE COURT:  SO I'M NOT ASKING YOU TO INVESTIGATE

24   EVERY JURISDICTION IN THE WORLD; RIGHT?  AND YOU'VE HAD THE

25   BRIEF FOR LONGER THAN -- MAYBE LONGER THAN YOU TOOK TO DO THE

1    MEET AND CONFERS, AND YOU SAW IN THE BRIEF THE EVIDENCE ON E.U.

2    AND AUSTRALIA.

3        THERE'S NOTHING STOPPING ANY OF YOU FROM CONTINUING TO

4    NEGOTIATE DISCOVERY DISPUTES BEFORE THE HEARING, BEFORE A

5    RULING, AND YOU COULD -- AGAIN, NOTHING STOPPED YOU FROM, IN

6    LIGHT OF THE BRIEFING, GOING TO YOUTUBE AND SAYING, THE -- THE

7    PLAINTIFFS AND SAYING, LOOK, HOW ABOUT IF WE LIMIT THIS TO JUST

8    E.U. AND AUSTRALIA?

9        SO, AGAIN, THIS IS REALLY ONLY DEALING WITH DISCOVERY

10   ISSUES AT THIS POINT.  I'M NOT GOING TO HAVE YOU GO TO THE

11   ISSUE IN TERMS OF EXTRA BRIEFING AND EXTRA HEARINGS.  IT'S

12   TAKING TOO LONG TO GET TO THIS POINT.

13       SO THAT'S MY RULING ON THAT.

14       MS. HAZAM WANTS TO TALK.

15        MS. HAZAM:  JUST BRIEFLY, YOUR HONOR.

16       JUST FOR THE PURPOSE OF CLARITY AS WE MOVE FORWARD HERE,

17   SO WE'RE LESS LIKELY TO COME BACK TO THE COURT, COUNSEL

18   REFERRED A FEW MOMENTS AGO TO A RULING MADE EARLIER DURING THE

19   HEARING.  I WANT TO CLARIFY THAT.  I DON'T BELIEVE SUCH A

20   RULING WAS MADE.

21       WE HAVE DEFINED NAMED FEATURES FOR PURPOSES OF ALL OF

22   THESE DOCUMENT REQUESTS.  THOSE NAMED FEATURES INCLUDE THE

23   ALGORITHM, AS WELL AS NOTIFICATIONS, AS WELL AS AGE

24   VERIFICATION.

25       THE COURT, IN HER RULING ON SECTION 230, STATED THAT

1    DEFENDANTS COULD MEET THEIR DUTY WITHOUT MAKING ANY CHANGES TO

2    HOW THEY PUBLISH CONTENT BY PROVIDING WARNINGS FOR ANY AND ALL

3    OF THE ALLEGED DEFECTS.

4         WHEN THIS WAS THEN DISCUSSED WITH THE COURT THEREAFTER AT

5    A HEARING, I STATED TO THE COURT THAT THE COURT'S RULING

6    INDICATED THE FAILURE TO WARN COULD EXTEND TO FEATURES BEYOND

7    THOSE THAT YOUR HONOR PUT IN THE INITIAL LIST OF FEATURES

8    PRECLUDED UNDER SECTION 230.

9         THE COURT SAID PLAINTIFFS ARE CORRECT.

10        AND THEN FINALLY, IN THE STATUS CONFERENCE WE HAD BEFORE

11   YOUR HONOR ON THE 21ST OF MARCH, YOUR HONOR INDICATED THAT THE

12   WAY YOU READ THE ORDER MEANT THAT ALL THE ALLEGED DEFECTS IN

13   THE COMPLAINT WERE IN THE CASE FOR PURPOSES OF DISCOVERY.

14        SO I JUST WANT IT TO BE CLEAR THAT WE ARE NARROWING OUR

15   LIST OF RFP'S IN KEEPING WITH WHAT YOUR HONOR HAS ORDERED,

16   TECHNICAL IMPLEMENTATION AND MARKETING, BUT WE ARE NOT

17   NARROWING THEM IN TERMS OF THE NAMED FEATURES IN THE DOCUMENT

18   REQUESTS.

19        THE COURT:  WELL, I WILL SAY, IN TERMS OF -- YOU ARE

20   LIMITING THEM TO ALL THE NAMED FEATURES.

21        MS. HAZAM:  YES, THAT'S THE WAY WE'RE LIMITING THEM,

22   BUT NOT FURTHER, BECAUSE I THINK COUNSEL WAS SUGGESTING THERE

23   WOULD BE FURTHER LIMITATIONS THERE.

24        THE COURT:  THAT'S CORRECT.

25        MS. HAZAM:  THANK YOU.

```
1              THE COURT:  ANY OTHER CLARIFICATION NEEDED ON YOUTUBE

2      ISSUES?

3              MR. DRAKE:  WELL, CAN I BE HEARD ON THAT, YOUR HONOR?

4      BECAUSE IT APPEARS THAT MS. HAZAM HAS REOPENED MY MOTION.

5              THE COURT:  I DON'T THINK SO, BUT GO AHEAD.

6              MR. DRAKE:  I THOUGHT YOUR HONOR WAS VERY CLEAR ABOUT

7      THE SCOPE OF THE FEATURES AND WHETHER IT INCLUDED THE ALGORITHM

8      OR NOT, AND YOUR HONOR SAID THAT IT DIDN'T, WHICH IS IN KEEPING

9      WITH JUDGE GONZALEZ ROGERS'S ORDER.  IT COULDN'T BE MORE CLEAR

10     ON THAT.

11         AND MS. HAZAM KEEPS BRINGING UP DIFFERENT QUOTATIONS TO

12     TRY TO REVISIT THE ISSUE.  I THOUGHT MS. MACHOCK UNDERSTOOD

13     YOUR HONOR'S ORDER AND THAT'S WHY SHE SAID WHAT SHE SAID DURING

14     HER PRESENTATION.  I THOUGHT IT WAS VERY CLEAR.

15         AND YOUR HONOR ALSO REITERATED THE POINT THAT THE

16     ALGORITHM, WHY WOULD YOU NEED -- IT'S NOT ONE OF THE FEATURES

17     THAT PASS MUSTER UNDER SECTION 230, POINT BLANK.  THE ORDER

18     COULDN'T BE MORE CLEAR ABOUT THAT.

19         SO REGARDLESS OF ITS OVERALL RELEVANCE TO THE CASE, WHICH

20     IS WHAT YOUR HONOR SAID, AS IT RELATES TO THE SPECIFIC DOCUMENT

21     REQUESTS AS TO DOUYIN AND TOUTIAO OR OTHER FEATURES OR OTHER

22     PLATFORMS AROUND THE WORLD FOR YOUTUBE OR WHATNOT, THAT

23     DOESN'T -- IT DOESN'T HAVE ANYTHING TO DO WITH IT.

24         AND WHAT WE'RE TALKING ABOUT IS WHETHER THE AGE

25     VERIFICATION SYSTEMS ARE THE SAME OR NOT THE SAME AS IN THE
```

1    UNITED STATES, WHETHER THE PARENTAL CONTROLS ARE THE SAME OR

2    NOT THE SAME, NOT WHETHER THE ALGORITHM IS.

3            MS. HAZAM:  YOUR HONOR, RESPECTFULLY, COUNSEL IS

4    MUDDYING THE WATERS AND SEEKING TO RELITIGATE A MATTER THAT WAS

5    SETTLED BY BOTH JUDGE GONZALEZ ROGERS AND THIS COURT SOME TIME

6    AGO.

7            ALL OF THE NAMED FEATURES ARE IN THE CASE FOR PURPOSES OF

8    DISCOVERY BASED UPON THE FAILURE TO WARN CLAIM, WHICH THE COURT

9    FOUND EXTENDED TO ANY AND ALL OF THE FEATURES.

10            AND WHEN WE NOTED THAT IT WAS IMPORTANT TO THE KNOWLEDGE

11    OF THE DEFENDANTS IN THE CASE, THE COURT AGREED.

12            SO WE ARE GOING TO HONOR YOUR COURT'S, YOUR HONOR'S

13    GUIDANCE IN TERMS OF THE RFP'S TO KEEP THEM TO THOSE THAT ARE

14    ABOUT DOUYIN AND TOUTIAO -- IF I'M PRONOUNCING THAT CORRECTLY,

15    I APOLOGIZE IF I'M NOT -- AND AS TO TECHNICAL MATTERS AND AS TO

16    MARKETING IN THE WAY THAT YOUR HONOR HAS DESCRIBED.

17            BUT IT IS NOT OUR UNDERSTANDING THAT WE ARE LIMITING THEM

18    BEYOND THE LIST OF THE NAMED FEATURES IN THE REQUESTS.

19            IF THAT IS AT ISSUE, THAT IS SOMETHING WE WILL NEED TO

20    BRIEF FOR THE COURT.

21            MR. DRAKE:  WE'RE NOT TALKING ABOUT WHETHER THE

22    ALGORITHM IS IN OR OUT OF THE ENTIRE CASE.  THAT'S WHAT YOUR

23    HONOR SAID.

24            WE'RE TALKING ABOUT WHETHER THE ALGORITHM WAS THE SUBJECT

25    OF, APPROPRIATE SUBJECT OF DISCOVERY WHEN VENTURING INTO

1    PRODUCTS OTHER THAN THOSE USED BY THE PLAINTIFFS AND ALLEGED TO

2    BE THE DEFECTIVE PRODUCTS IN THE CASE.

3        THEY ALLEGE THAT TIKTOK IS DEFECTIVE.  ONE OF THE REASONS

4    THEY ALLEGE THAT TIKTOK IS DEFECTIVE IN THEIR COMPLAINT IS

5    BECAUSE OF ITS ALGORITHM.

6        JUDGE GONZALEZ ROGERS SAID THAT'S OUT, IT'S BARRED UNDER

7    SECTION 230 AND, THUS, IT DOESN'T GIVE RISE TO DISCOVERY INTO

8    DEFECTIVE OR OTHER ASPECTS OF THE DESIGN OF THE FEATURES IN

9    OTHER COUNTRIES.

10       WHETHER IT GETS IN AT TRIAL SUBJECT TO THE FAILURE TO WARN

11   CLAIM OR SOMETHING ELSE IS A TOTALLY DIFFERENT ISSUE THAT'S NOT

12   BEFORE THE COURT TODAY.

13       I THINK YOUR HONOR IS SPOT ON IN THE WAY YOU ORIGINALLY

14   WERE TRYING TO ADDRESS THE ISSUE AND THREAD THE NEEDLE ON THAT.

15       MS. HAZAM:  YOUR HONOR, I FUNDAMENTALLY DISAGREE WITH

16   THE CHARACTERIZATION OF JUDGE GONZALEZ ROGERS'S ORDER.

17       SHE DID NOT PUT THESE FEATURES OUTSIDE OF THE CASE.  SHE

18   SAID THAT THEY ARE NOT VIABLE AS PRODUCT LIABILITY CLAIMS UNDER

19   SECTION 230.

20       SHE THEN SAID, AND AFFIRMED AT A LATER HEARING, THAT THEY

21   WERE PART OF THE CASE FOR THE FAILURE TO WARN CLAIM, WHICH IS

22   ABOUT WHAT THE DEFENDANTS KNEW AND WHEN THEY KNEW IT.  SHE SAID

23   ANY AND ALL OF THE ALLEGED DEFECTS, INCLUDING THE ALGORITHM,

24   INCLUDING NOTIFICATIONS, WERE PART OF THE CASE.

25       AND, IN FACT, DEFENDANTS SOUGHT AN INTERLOCUTORY APPEAL OF

```
 1      THAT ORDER, PARTLY ON THE GROUNDS THAT THEY SAID IT WOULD

 2      EXPAND DISCOVERY BEYOND THE FEATURES THAT THEY BELIEVED PASSED

 3      MUSTER UNDER SECTION 230.  SHE DENIED THAT REQUEST FOR

 4      CERTIFICATION.

 5          THIS MATTER HAS BEEN DEALT WITH.  IF WE ARE REOPENING IT,

 6      WE WILL NEED TO REBRIEF IT.

 7              MR. DRAKE:  JUST A FINAL POINT ON THAT, YOUR HONOR.

 8          OF COURSE, WHAT WE'RE HERE ON, OF COURSE, IS A PRODUCT

 9      LIABILITY CLAIM.  YOUR HONOR WAS ANALYZING PRODUCT LIABILITY

10      LAW AS TO WHAT ALLOWS ONE TO GET INTO EVIDENCE ABOUT ANOTHER

11      PRODUCT, AND YOUR HONOR FOUND THAT THE PLAINTIFFS HAVE

12      SATISFIED THEIR BURDEN ON SUBSTANTIAL SIMILARLY OVER OUR

13      OBJECTION.

14          JUDGE GONZALEZ ROGERS'S ORDER ABOUT WHAT CONSTITUTES A

15      PRODUCT IS VERY SPECIFIC, AND IT'S SPECIFIC FEATURES THAT

16      CONSTITUTE PRODUCTS, AGE VERIFICATION, PARENTAL CONTROLS, THE

17      FILTERS.  THAT'S WHAT GIVES RISE TO THE PRODUCT LIABILITY

18      CLAIMS.

19          THOSE ARE THE ONLY CLAIMS THAT HAVE PASSED A MOTION TO

20      DISMISS AT THIS STAGE OF THE LITIGATION, AND THOSE ARE THE

21      FEATURES THAT ARE GIVING RISE TO THE ALLEGED -- TO THE

22      DISCOVERY THAT THE PLAINTIFFS WANT UNDER THEIR DESIGN DEFECT

23      CLAIM.

24          AGAIN, IT HAS NOTHING TO DO WITH WHETHER THE ALGORITHM IS

25      PART OF THE CASE AT SOME POINT OR NOT.  THAT'S NOT WHAT WE'RE
```

1    HERE DEBATING.

2         WE'RE DEBATING A SPECIFIC DISCOVERY DISPUTE THAT'S

3    PREMISED ON PRODUCT LIABILITY LAW, AND JUDGE GONZALEZ ROGERS IN

4    HER ORDER COULDN'T BE MORE CLEAR AS TO WHAT THE FEATURES ARE

5    THAT GIVE RISE AND THAT MAKE THESE SERVICES PRODUCTS.

6         THE COURT:  ENUNCIATE FOR ME CLEARLY WHY -- PUTTING

7    ASIDE BUSINESS DOCUMENTS, BUSINESS PLANNING DOCUMENTS,

8    MARKETING DOCUMENTS -- WHY TECHNICAL DOCUMENTS ON THE

9    ALGORITHMS ARE RELEVANT UNDER FAILURE TO WARN.

10         MS. HAZAM:  THE DECISION TO DESIGN THESE PRODUCTS AND

11    THE FEATURES THAT COMPRISE THEM, INCLUDING THE ALGORITHM, IS

12    INFORMED BY THE INTENDED EFFECT AND THE KNOWLEDGE OF THE EFFECT

13    ON THE USER POPULATION, AND THEN ALTERATIONS OF THE DESIGN ARE

14    SIMILARLY AFFECTED BY THOSE SAME CONCERNS.

15         SO THE IMPACT OF THE DESIGN ON THE USERS, ON THE HEALTH

16    AND WELLBEING OF YOUTH, IS PART OF THE DESIGN DECISIONS.

17         WITHOUT REVEALING CONFIDENTIAL INFORMATION IN ANY WAY, WE

18    KNOW THAT FROM THE DISCOVERY ALREADY PROVIDED IN THIS CASE, AND

19    OUR COMPLAINT, IN FACT, ALLEGES AS MUCH.

20         SO THE DESIGN OF THE PRODUCT VERY MUCH DOES GO TO FAILURE

21    TO WARN BY WAY OF KNOWLEDGE.

22         AND THAT'S TRUE IN A DRUG CASE AS MUCH AS IT WOULD BE IN A

23    CASE ABOUT A PLATFORM, A SOCIAL MEDIA PLATFORM.

24         THE COURT:  OKAY.  SO I'VE HEARD BOTH SIDES.  THANK

25    YOU FOR THAT.

1          I PROBABLY SHOULD HAVE CLARIFIED IT THE FIRST TIME AROUND,

2     BUT I'M CLARIFYING IT NOW.  ALGORITHM IS INCLUDED IN THE LIST

3     OF NAMED FEATURES.  IT'S WITHIN THE SCOPE OF THE DOCUMENT

4     REQUESTS AS PROPOUNDED AND AS BEING IDENTIFIED FOR SPECIFIC --

5     SPECIFICITY FOR THE TECHNICAL DOCUMENTS.

6          MS. HAZAM:  THANK YOU, YOUR HONOR.

7          MS. MACHOCK:  YOUR HONOR, I DON'T MEAN TO BELABOR IT,

8     BUT MAY I MAKE ONE MORE POINT?

9          THE COURT:  OKAY.

10         MS. MACHOCK:  I'M LOOKING AT PLAINTIFFS' CASES, AND

11    EVEN THE CASES THAT GRANTED THE BROADEST EXTRATERRITORIAL

12    DISCOVERY WERE VERY NARROWLY TARGETED TO SPECIFIC -- I KNOW YOU

13    RULED THAT -- BUT TO SPECIFIC MODELS, AND THE COURTS IN THOSE

14    CASES -- PLAINTIFFS WERE REQUIRED TO SHOW, AS THE THRESHOLD

15    MATTER, WHY DISCOVERY INTO A SPECIFIC FOREIGN MODEL WAS

16    RELEVANT TO THE CASE.

17         AFTER THAT THRESHOLD SHOWING, THE COURT THEN CONSIDERED

18    WHETHER PROPORTIONALITY CONSIDERATIONS COUNSELLED FOR ITS

19    FURTHER LIMITING DISCOVERY; RIGHT?

20         IN THIS CASE TODAY, PLAINTIFFS HAVE MADE THAT SHOWING OF

21    RELEVANCE, TO THE EXTENT YOUR HONOR BELIEVES IT'S BEEN SHOWN,

22    ONLY AS TO EACH VERIFICATION.  THERE'S, THERE'S LITERALLY BEEN

23    NO SHOWING WHATSOEVER THAT THERE IS ANY RELEVANT ALTERNATE

24    DESIGNS, NO SPECIFIC MODEL OR THE EQUIVALENT IN THIS

25    CIRCUMSTANCE, NO SPECIFIC FEATURES IN THEIR COUNTRIES, NOTHING

1    HAS BEEN SHOWN.

2          AND AS A MATTER OF LAW, IT IS PLAINTIFFS' BURDEN TO MAKE

3    THAT THRESHOLD SHOWING, AND I THINK THAT'S PART OF THE PROBLEM

4    HERE.

5               THE COURT:  I DON'T THINK --

6               MS. MACHOCK:  THERE'S NO --

7               THE COURT:  I HEAR YOUR ARGUMENT, BUT I DON'T THINK,

8    IN ORDER TO GET THE DISCOVERY THEY'RE AFTER, THEY HAVE TO GO

9    THROUGH EVERY SINGLE NAMED FEATURE AND GIVE EXAMPLES OF EVERY

10   SINGLE NAMED FEATURE IN EVERY SINGLE FOREIGN VERSION THEY WANT

11   TO GO AFTER, BECAUSE IF THEY WENT THAT WAY, THEY PROBABLY WOULD

12   DUMP A CHART OF 50 ADDITIONAL COUNTRIES WHERE THEY THINK

13   FEATURES ARE RELEVANT, WHICH IS WORSE FOR YOU THAN THE WAY THIS

14   IS WORKING OUT.

15         SO I -- BY -- THEY PROVIDED AT LEAST ENOUGH OF A BASIS TO

16   OPEN DISCOVERY TO THE E.U., PLUS U.K., AND AUSTRALIAN VERSIONS

17   FOR THE NAMED FEATURES PLAINTIFFS, AND I THINK BY

18   CIRCUMSCRIBING IT THAT WAY, THAT WILL ADDRESS THE

19   PROPORTIONALITY CONCERN.

20         ARE WE ALL CLEAR ON THIS MOTION?  ANYTHING FURTHER,

21   CLARIFICATION?  ANY OTHER OPEN DISPUTES?

22               MS. TRUONG:  NOTHING FROM ME, YOUR HONOR.

23               THE COURT:  ALL RIGHT.  WHO'S -- OKAY.  NOW WE'RE

24   GOING INTO THE TIME PERIOD, BUT LET'S, FOR THE BENEFIT OF THE

25   COURT REPORTER, TAKE A SHORT BREAK.

```
 1              THE CLERK:  COURT IS IN A SHORT RECESS.

 2         (RECESS FROM 2:12 P.M. UNTIL 2:21 P.M.)

 3              THE CLERK:  RECALLING 22-3047, IN RE: SOCIAL MEDIA

 4    ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY

 5    LITIGATION.

 6              THE COURT:  OKAY.  SO LET'S DO 798, WHICH IS

 7    TIKTOK/BYTEDANCE TIME PERIOD.

 8              MR. DRAKE:  HELLO, YOUR HONOR.

 9              THE COURT:  IDENTIFY YOURSELVES FOR THE RECORD AGAIN,

10    PLEASE.

11              MR. MURA:  YES, YOUR HONOR.

12         ANDRE MURA AGAIN FOR THE PLAINTIFFS.

13              MR. DRAKE:  GEOFFREY DRAKE, KING & SPALDING, FOR

14    TIKTOK DEFENDANTS.

15              THE COURT:  IN SOME WAYS WE'VE ALREADY DISCUSSED THIS

16    MOTION.  MY INCLINATION ON THIS ONE IS SIMILAR TO THE PREVIOUS

17    BYTEDANCE RELATED MOTION, WHICH IS THAT YOU HAVE TWO DAYS TO

18    IDENTIFY THE DOCUMENT REQUESTS THAT WOULD GO TO THIS, AGAIN,

19    LIMITING IT TO NAMED FEATURES.  OKAY?

20         LET ME ASK YOU THIS:  WHY DO YOU REALLY NEED TO GO ALL THE

21    WAY BACK TO 2012?

22              MR. MURA:  WELL, THAT'S WHEN TOUTIAO BEGAN, AND

23    THAT'S WHEN CERTAIN OF THE FEATURES WERE DEVELOPED.

24              THE COURT:  WHICH FEATURES WERE DEVELOPED THAT EARLY?

25              MR. MURA:  INFINITE SCROLL WAS DEVELOPED IN 2012.
```

1        SHORT VIDEOS WERE DEVELOPED IN 2014.

2             THE COURT:  OKAY.  ALL RIGHT.

3        SO YOU ALREADY KIND OF KNOW MY INCLINATION ON THIS MOTION.

4   HERE'S THE CHANCE TO TELL ME WHY I SHOULD CHANGE IT.

5             MR. DRAKE:  SURE, YOUR HONOR.

6        I UNDERSTAND YOU AND HEAR YOU LOUD AND CLEAR ON YOUR

7   FRUSTRATION WITH THE PARTIES ON COMPROMISE.

8        I DON'T KNOW HOW WE CAN COMPROMISE ANY MORE ON THIS

9   PARTICULAR REQUEST THAN WHAT WE OFFERED THEM.  WE OFFERED

10  JANUARY 1, 2017.  THAT'S FIVE MONTHS BEFORE TIKTOK EVER

11  LAUNCHED IN THE UNITED STATES.  IT ENCOMPASSES THE SAME YEAR

12  THAT MUSICAL.LY ACQUIRED TIKTOK, INC. IN THE UNITED STATES.

13            AND WE OFFERED TO GO THROUGH TO FEBRUARY 14TH OF 2023 WHEN

14  THE MASTER COMPLAINT WAS FILED.

15       I'M NOT AWARE OF ANY CASE LAW, INCLUDING YOUR HONOR'S

16  RECENT DECISION IN THE CROCS CASE, THAT WOULD START ALL

17  DISCOVERY FIVE YEARS PRIOR TO LAUNCH OF A PRODUCT BASED SOLELY

18  ON THE FACT THAT ANOTHER PRODUCT -- AND, AGAIN, WITH RESPECT TO

19  TOUTIAO, THE PLAINTIFFS HAVE NOT CITED A SINGLE DOCUMENT THAT

20  ACTUALLY TALKS ABOUT TOUTIAO.  I KNOW YOUR HONOR DOESN'T HAVE

21  THE ACTUAL DOCUMENTS, BUT WE HAVE READ THEM, AND THE ONES THAT

22  ARE CITED IN THE BRIEF DO NOT DISCUSS THAT PLATFORM.

23            SO THE IDEA OF GOING FIVE YEARS PRIOR TO LAUNCH CONCERNING

24  ANOTHER PRODUCT FOR WHICH THEY ARE SPECULATING AND NOT

25  INCLUDING ANY DOCUMENTS -- THAT'S A NEWS AGGREGATOR, YOUR

1    HONOR.  IT'S NOT EVEN A SOCIAL MEDIA APP IN THE SAME SENSE THAT

2    TIKTOK IS.

3        DOUYIN ITSELF WAS STARTED IN 2016.  AT BEST, BASED ON YOUR

4    HONOR'S PRIOR RULING, THAT WOULD BE A START DATE.

5        BUT I DON'T KNOW HOW TO -- I DON'T KNOW HOW TO CONTINUE TO

6    NEGOTIATE AND COMPROMISE.  WE'VE OFFERED A VERY SIGNIFICANT

7    COMPROMISE PRIOR TO LAUNCH THAT WE THOUGHT SHOULD RESOLVE THE

8    ISSUE.  PLAINTIFFS WANT TO GO BACK FIVE MORE YEARS.  IT'S HARD

9    TO SAY WHERE IT STOPS.

10       BUT THAT WAS OUR POSITION, YOUR HONOR, AND WE THINK THAT'S

11   THE WAY TO GO HERE.

12           THE COURT:  SO THERE'S ONLY ONE FEATURE TO TOUTIAO

13   THAT GOES BACK TO 2012?  IS THAT WHAT I'M HEARING?

14           MR. MURA:  WELL, YES, AND THE RECOMMENDATION

15   ALGORITHMS.

16           MR. DRAKE:  OF COURSE, YOUR HONOR, IT'S AN APP.  IT

17   HAS A RECOMMENDATION ALGORITHM.  EVERY APP ON YOUR PHONE HAS AN

18   ALGORITHM.

19       THERE'S BEEN NO SHOWING THAT IT HAS ANYTHING TO DO WITH

20   THE TIKTOK ALGORITHM AS IT EXISTS TODAY 10 YEARS, 15 YEARS

21   LATER, AND I DON'T SEE ANY DOCUMENTS IN THEIR PAPERS THAT

22   RELATE TO IT.

23       SO I DON'T SEE THE CONNECTION THERE, THE SUBSTANTIAL

24   SIMILARITY, THE FINDING THAT THE PLAINTIFFS BEAR THE BURDEN TO

25   SHOW.

1          MR. MURA:  YOUR HONOR, WE DID CITE STUDIES AND WE DID

2     PRESENT THE EVIDENCE THAT WE HAD, AND IF WE HAD TO PRESENT MORE

3     EVIDENCE, WE COULD, AND WE WOULD PROBABLY POINT TO THE RECENT

4     FILINGS OF TIKTOK AND BYTEDANCE BEFORE THE D.C. CIRCUIT WHERE

5     THEY TALK ABOUT THEIR APPS.

6          I MEAN, IN THOSE FILINGS, IN ONE OF THEM IN 2020, I MEAN,

7     THERE'S A DISCUSSION ABOUT TOUTIAO'S RECOMMENDATION ENGINE HAS

8     INFLUENCED THE CORE TECHNOLOGY FOR SEVERAL OF BYTEDANCE'S OTHER

9     APPS, BUILDING ON THE EXPERIENCE FROM TOUTIAO AND ITS

10    RECOMMENDATION ENGINE, AND THEN IT TALKS ABOUT HOW IT FORMED

11    DOUYIN.

12         AND THEN IT ALSO SAYS, WHEN IT LAUNCHED TIKTOK, BYTEDANCE

13    LEVERAGED ITS EXPERIENCE WITH TOUTIAO AND DOUYIN.

14         SO THIS IS NOT JUST SORT OF SOME LAUNCH IN 2017 THAT

15    STARTS A NEW PRODUCT.  IT'S BUILDING ON THE BASIC CORE

16    COMPONENTS AND BUILDING BLOCKS, AND COURTS ROUTINELY ALLOW

17    DISCOVERY INTO THOSE TYPES OF COMPONENT PARTS, BUILDING BLOCKS,

18    WHEN THEY HAVE THE SIMILARITY HERE.

19         THERE ARE, OF COURSE, DIFFERENCES.  THOSE DIFFERENCES ALSO

20    MATTER TO KNOWLEDGE, INTENT, NOTICE, ALTERNATIVE DESIGN.

21         AND THESE ARE THE SAME ARGUMENTS THAT THE COURT HEARD AT

22    THE PRIOR -- AS PART OF THE PRIOR MOTION.  SO CONSISTENT WITH

23    THAT RULING, WE THINK THAT GOING BACK TO 2012 MAKES SENSE.

24         NOW, WE'RE GOING TO BE IDENTIFYING THE RFP'S, WHICH IS

25    GOING TO LIMIT THE BURDEN.

1          I DON'T THINK THE NUMBER OF CUSTODIANS IMPACTED IS THAT

2    GREAT, EITHER.

3          AND GIVEN THE RETENTION POLICY OF THE COMPANY, AGAIN, I

4    THINK A LOT OF THIS IS GOING TO BE RESOLVED AS WE WORK THROUGH

5    THIS IN THE NEXT TWO DAYS, AND IF WE HAVE FURTHER ISSUES, WE

6    CAN COME BACK TO YOU.

7          BUT I THINK THAT'S WHERE I WOULD -- AND WE HOPE NOT TO

8    COME BACK TO YOU, BUT I THINK THAT'S WHERE WE WOULD AIM TO

9    START AND HOPEFULLY END.

10          MR. DRAKE:  YOUR HONOR, THIS ARGUMENT IS LIKE FILING

11    A LAWSUIT INVOLVING A FORD F150 AND ASKING FOR DISCOVERY INTO

12    THE MODEL T BECAUSE IT USED AN INTERNAL COMBUSTION ENGINE.

13          THERE'S VERY LIMITED CASE LAW THAT WOULD SUPPORT THIS

14    PARTICULAR ARGUMENT THAT COUNSEL IS MAKING.  I WON'T BELABOR

15    THE POINT.

16          JANUARY 2017 SEEMS LIKE A VERY REASONABLE DATE TO START

17    DISCOVERY IN A CASE INVOLVING INDIVIDUALS WHO USED AN APP THAT

18    STARTED AND WAS NEVER AVAILABLE PRIOR TO MAY OF 2017.

19          THE COURT:  DO YOU HAVE ANYTHING MORE TO SAY, OR --

20          MR. MURA:  NO, YOUR HONOR, UNLESS YOUR HONOR HAS

21    QUESTIONS.

22          THE COURT:  SO ON THE TIME PERIOD, I AM A LITTLE

23    CONCERNED THAT GOING ALL THE WAY BACK TO 2012 WHERE TOUTIAO,

24    AT LEAST AS AN APP, IS DIFFERENT ENOUGH FROM TIKTOK AND DOUYIN

25    THAT BOTH RELEVANCE AND PROPORTIONALITY STARTS TO GET

 1          IMPLICATED THE FURTHER BACK YOU GET INTO TIME.

 2              THAT'S NOT TO SAY THAT DISCOVERY FROM TOUTIAO ISN'T

 3      APPROPRIATE AT SOME -- SOMEWHERE IN THAT TIMEFRAME.

 4              DOES ANYBODY KNOW WHAT MONTH IN 2016 DOUYIN LAUNCHED?

 5                  MR. DRAKE:  I DON'T KNOW THAT I HAVE IT ON ME, YOUR

 6      HONOR.

 7                  THE COURT:  ANYONE IN THE ROOM?

 8                  MR. MURA:  SEPTEMBER 2016 IS WHAT I THINK IS CORRECT.

 9                  THE COURT:  OKAY.

10                  MR. DRAKE:  AT LEAST IT WAS TOWARD THE END OF THE

11      YEAR.

12                  THE COURT:  RIGHT.  OKAY.  SO BASED ON THE -- SO AT

13      SOME LEVEL THE COURT WILL -- I THINK YOU ALL LOOKED AT MY

14      BIOGRAPHY AND MY BACKGROUND.  GIVEN MY EXPERIENCE, BOTH AS A

15      SOFTWARE DEVELOPER ENGINEER AND HAVING LITIGATED, WE ALL KNOW

16      THAT DEVELOPMENT WORK HAPPENS, AT LEAST FOR SOME PERIOD OF

17      TIME, BEFORE A PRODUCT IS LAUNCHED.

18          SO FOR THE TIME PERIOD HERE, FOR THE LIMITED DISCOVERY,

19      THE DOCUMENT REQUESTS THAT YOU CAN IDENTIFY, THE TIME PERIOD IS

20      GOING TO GO BACK TO JANUARY 1, 2016.  THAT SHOULD COVER BOTH

21      TOUTIAO AND DOUYIN.  IT'LL COVER A PERIOD OF TIME WHILE DOUYIN

22      WAS ORIGINALLY IN DEVELOPMENT BEFORE IT LAUNCHED, AND I THINK

23      THAT'S -- THAT BALANCES RELEVANCE AND PROPORTIONALITY FOR

24      TOUTIAO BECAUSE IT CUTS OFF A LOT OF THE ANCIENT HISTORY OF

25      THAT COMPANY, BUT THEN CAPTURES WHAT I THINK IS A RELEVANT AND

```
 1        PROPORTIONAL TIME PERIOD FOR BOTH THOSE SERVICES GOING FORWARD.

 2             LIKE I SAY, YOU KNOW, YOU DON'T HAVE THE DOCUMENTS YET,

 3        AND SO PRESUMABLY, YOU KNOW, YOU'RE GOING TO BE LOOKING AT THE

 4        DOCUMENTS, AND IF YOU FIND SOMETHING FROM 2016 THAT'S REFERRING

 5        TO SOMETHING BACKWARDS IN TIME EVEN FURTHER, I ASSUME YOU'RE

 6        GOING TO BE REASONABLE AND WORK OUT TARGETED FOLLOW-UP

 7        DISCOVERY IF IT'S WARRANTED BASED ON WHAT'S ACTUALLY PRODUCED.

 8             OKAY.  ANY QUESTION ON TIME PERIOD HERE?

 9                  MR. DRAKE:  NO, YOUR HONOR.

10                  MR. MURA:  I DO HAVE A QUESTION, YOUR HONOR.

11                  THE COURT:  YES.

12                  MR. MURA:  JUST AS IT RELATES TO MUSICAL.LY, WHICH

13        WAS LAUNCHED IN 2014.

14                  THE COURT:  THEY WERE ACQUIRED -- SAME TIME PERIOD.

15                  MR. MURA:  OKAY.  BUT -- OKAY.  I'LL TAKE THE COURT'S

16        CAVEAT THAT IF WE SEE THINGS, WE CAN NEGOTIATE AND COME BACK.

17                  THE COURT:  RIGHT.  AS PRESENTED RIGHT NOW, THAT'S MY

18        RULING.

19                  MR. MURA:  THANK YOU, YOUR HONOR.

20                  MR. DRAKE:  THANK YOU.

21                  THE COURT:  OKAY.  FIRST I'M GOING TO HEAR FROM SNAP.

22        LET'S DO DOCKET 830, THE TIME PERIOD ARGUMENT FOR SNAP.

23                  MR. BILSBORROW:  JAMES BILSBORROW FOR THE PLAINTIFFS.

24                  THE COURT:  GOOD AFTERNOON.

25                  MR. RICE:  ROWLEY RICE FOR SNAP, YOUR HONOR.
```

```
 1              THE COURT:  OKAY.  SO BASED ON THE BRIEFING, IT LOOKS

 2   LIKE YOU ALL ACTUALLY IDENTIFIED -- TELL ME IF I'M MISSING

 3   ANY -- BUT I SEE EPHEMERAL MESSAGING, SNAPSCORE, SNAPKIDZ,

 4   STORIES, THE DISCOVER FEATURE, FILTERS, NOTIFICATIONS TO USERS,

 5   LENSES, TROPHIES, AGE VERIFICATION, AND SAFETY CENTER AS THE

 6   SPECIFIC FEATURES THAT ARE IN DISPUTE HERE KIND OF FOR

 7   TECHNICAL DISCOVERY.

 8      IS THAT RIGHT?

 9              MR. BILSBORROW:  THOSE ARE THE FEATURES THAT WE SAY

10   WERE EITHER RESEARCHED, DEVELOPED, OR COMMERCIALIZED PRIOR TO

11   2015, WHICH IS SNAP'S PROPOSED BEGINNING DATE.

12              THE COURT:  RIGHT.

13              MR. RICE:  YOUR HONOR, MAY I CLARIFY ONE THING, WHICH

14   IS THAT FOR SEVERAL OF THOSE FEATURES, THEY WERE LAUNCHED AFTER

15   2015.  AND SO THE PARTIES DEFER -- THE PLAINTIFFS' POSITION, WE

16   DEFER ON THE RELEVANCE OF THE DISCOVERY GOING BACK BEFORE 2015.

17      BUT THE FEATURES YOU LISTED INCLUDES A MIX OF CERTAIN

18   FEATURES THAT WERE LAUNCHED BEFORE 2015 AND ONES THAT WERE

19   LAUNCHED AFTER.

20              THE COURT:  OKAY.  SO LET ME MAKE SURE I'VE GOT THE

21   DATES CORRECT.  EPHEMERAL MESSAGING AND SNAPSCORE WERE LAUNCHED

22   IN 2011?  IS THAT RIGHT?  JUST AS AN EXAMPLE.

23              MR. BILSBORROW:  THEY WERE AT LEAST DEVELOPED IN

24   2011.

25              THE COURT:  AND LAUNCHED --
```

1          MR. BILSBORROW:  CLOSE IN TIME TO WHEN SNAPCHAT WAS

2     COMMERCIALIZED.

3          THE COURT:  OKAY.

4          MR. RICE:  THEY WERE INCLUDED IN THE SNAPCHAT APP

5     THAT WAS RELEASED IN 2011, YES, YOUR HONOR.

6          THE COURT:  JUST SO I KNOW, SNAPKIDZ AND STORIES WERE

7     LAUNCHED AND/OR DEVELOPED IN 2013?

8          MR. BILSBORROW:  ACCORDING TO THE COMPLAINT, YES, AND

9     THE INFORMATION WE HAVE.

10          THE COURT:  IS THAT CORRECT?

11          MR. RICE:  THAT'S CORRECT, YOUR HONOR.

12          THE COURT:  OKAY.  SO BECAUSE YOU HELPFULLY HAVE

13     PROVIDED ME WITH EXACT DATES FOR EACH OF THE FEATURES THAT ARE

14     AT ISSUE FOR THIS DISCOVERY DISPUTE, I'M NOT GOING TO GRANT

15     ANYONE BLANKET DISCOVERY ACROSS ALL FEATURES FOR ALL TIME, FOR

16     JUST ONE GIANT TIMEFRAME.  I'M GOING TO BASICALLY TRIGGER THE

17     DISCOVERY BASED ON THE DATE THAT THE FEATURE WAS, EACH

18     INDIVIDUAL FEATURE WAS LAUNCHED.  ALL RIGHT?

19          SO, FOR EXAMPLE, THE TIMEFRAME FOR DISCOVERY ON EPHEMERAL

20     MESSAGING AND SNAPSCORE GOES BACK TO 2011, JANUARY 1, 2011;

21     TIMEFRAME FOR SNAPKIDZ AND STORIES GOES BACK TO JANUARY 1,

22     2013; TIMEFRAME FOR DISCOVER FEATURE GOES BACK TO JANUARY 1,

23     2014; TIMEFRAME FOR FILTERS GOES BACK TO JANUARY 1, 2013;

24     TIMEFRAME FOR NOTIFICATION TO USERS GOES BACK TO JANUARY 1,

25     2014; LENSES AND TROPHIES, JANUARY 1, 2015; AGE VERIFICATION,

1    JANUARY 1, 2013; AND SAFETY CENTER, I WAS GIVEN AN EXACT DATE,

2    FEBRUARY 1, 2015.

3              MR. BILSBORROW:  YOUR HONOR, JUST --

4              MR. RICE:  YOUR HONOR, MAY I --

5              MR. BILSBORROW:  I WAS JUST GOING TO MAKE ONE POINT.

6              THE COURT:  SURE.

7              MR. BILSBORROW:  THE LAUNCH DATE IS, OF COURSE, A

8    RELEVANT DATE.

9         BUT PART OF OUR ARGUMENT IS THAT THE LAUNCH DATE -- AS

10   YOUR HONOR JUST NOTED, THERE'S A PERIOD OF TIME BEFORE THE

11   LAUNCH DATE WHERE THE RESEARCH AND DEVELOPMENT INTO THE PRODUCT

12   OCCURS.  SO, FOR EXAMPLE, WITH LENSES LAUNCHING IN 2015, WE

13   WOULD ARGUE THAT WE SHOULD AT LEAST GET SOME PERIOD OF TIME

14   BEFORE THE LAUNCH BECAUSE WHAT SNAP KNEW ABOUT HOW THE LENSES

15   WOULD AFFECT SNAPCHAT USERS IS EXTREMELY RELEVANT TO OUR CASE.

16             THE COURT:  OKAY.  SO YOU WANT TO --

17             MR. RICE:  MAY I?

18             THE COURT:  GO AHEAD.

19             MR. RICE:  THANK YOU, YOUR HONOR.

20        I THINK, YOUR HONOR, OUR COUNTERPOINT TO THAT WOULD BE THE

21   PROPORTIONALITY CONSIDERATIONS YOUR HONOR HAS MENTIONED HERE IN

22   THAT WHILE SOME OF THESE FEATURES WERE RELEASED BEFORE 2015,

23   ALL OF THESE FEATURES WERE EMPLOYED IN THE PLATFORM AFTER 2015,

24   AND IN MANY CASES WHAT PLAINTIFFS HAVE POINTED TO AS THE KEY

25   ALLEGATIONS IN THEIR COMPLAINT ARE ALTERATIONS TO THOSE

1    FEATURES THAT WERE MADE AFTER 2015.

2         SO, FOR INSTANCE, WITH RESPECT TO THE STORIES FEATURE,

3    PLAINTIFFS HAVE FOCUSSED ON AN ALLEGED CHANGE TO THE WAY

4    STORIES OPERATED IN 2016 THAT THEY SAY IS SIGNIFICANT.

5         SO FOR ALL OF THESE FEATURES, THEY REMAIN PRESENT ON THE

6    PLATFORM AND HAVE BEEN CONSTANTLY UPDATED, AND SO WE BELIEVE

7    THAT POST -- THE DISCOVERY BEGINNING ON JANUARY 1, 2015 IS

8    PROPORTIONATE TO GIVE PLAINTIFFS ADEQUATE DOCUMENT DISCOVERY

9    INTO ALL OF THESE FEATURES THAT ARE AT ISSUE.

10        MR. BILSBORROW:  YOUR HONOR, WE DISAGREE WITH THAT.

11        SO THE EPHEMERAL MESSAGING, IT BASICALLY WORKS IN THE SAME

12   WAY AS IT DID WHEN IT LAUNCHED IN 2011.  THE SNAPSCORE

13   BASICALLY WORKS THE SAME WAY IT DID WHEN IT LAUNCHED IN 2011.

14        YES, SOME OF THESE FEATURES WERE UPDATED, SOME ASPECTS

15   HAVE CHANGED.

16        BUT WE NEED TO UNDERSTAND THE DESIGN DECISIONS THAT SNAP

17   UNDERSTOOD AND MADE WHEN THEY LAUNCHED THE FEATURE INITIALLY,

18   AND TO THE EXTENT THEY CHANGED THE FEATURE, OF COURSE WE WANT

19   DISCOVERY ON THAT AS WELL.

20        MR. RICE:  AND, YOUR HONOR, IF I MAY RESPOND?

21        THE ISSUE -- THE MAJORITY OF PLAINTIFFS IN THIS CASE, THE

22   VAST MAJORITY, BEGAN USING SNAPCHAT AFTER 2015, IN MANY CASES

23   MUCH LATER.  SO THE VERSION OF SNAPCHAT THAT PLAINTIFFS ARE

24   SEEKING, THE APPLICATION WAS LAUNCHED IN 2011 OR 2012, THAT'S

25   NOT THE VERSION THAT WAS EXPERIENCED BY THE PLAINTIFFS AT ISSUE

```
1        IN THIS CASE.
2              THE COURT:  YEAH, THAT -- I MEAN, I CAN ALREADY HEAR
3        THE OTHER SIDE WHEN THEY BRIEF THE ISSUE, WHICH IS IT GOES TO
4        ALTERNATIVE AVAILABLE FEATURES AND FEASIBILITY OF ALTERNATIVES;
5        RIGHT?
6          SO -- ADDRESS THE FACT THAT YOUR ALLEGATIONS FOCUS ON THE
7        CHANGES TO STORIES IN 2016.  DO YOU REALLY NEED DISCOVERY ON
8        STORIES BEFORE THOSE CHANGES?
9              MR. BILSBORROW:  YES, WE ABSOLUTELY DO, BECAUSE
10       STORY -- THE STORY FUNCTION AS IT WAS ORIGINALLY LAUNCHED WAS
11       ADDICTIVE, IT CAUSED COMPULSIVE USE.  THE WAYS THAT THEY
12       CHANGED STORIES MADE THAT WORSE, WE ARGUE.
13         BUT WE, WE NEED THE -- WE NEED TO UNDERSTAND WHAT SNAP
14       KNEW WHEN THEY INITIALLY LAUNCHED THE FEATURE AND, OF COURSE,
15       HOW IT CHANGED OVER TIME.  IT GOES TO THE CORE -- IT GOES TO
16       THE CORE OF OUR CASE, YOUR HONOR.
17             MR. RICE:  YOUR HONOR, FOR ALL OF THESE FEATURES,
18       PARTICULARLY FOR THE STORIES FEATURE, WHEN SNAP IS LOOKING BACK
19       AT A FEATURE AND MAKING CHANGES OVER AN EIGHT YEAR PERIOD,
20       CONSTANTLY UPDATING AND REVISING THIS APPLICATION, WE SUBMIT TO
21       YOUR HONOR THAT THAT PERIOD IS GOING TO COVER THE
22       PROPORTIONALITY PERIOD FOR DISCOVERY.
23         WE'RE TALKING -- THIS IS AN EIGHT YEAR PERIOD OF DESIGN,
24       YOUR HONOR, IN A COMPANY THAT'S ONLY EXISTED SINCE 2011.  AND
25       SO WHAT PLAINTIFFS PROPOSE IS, IN EFFECT, GOING BACK TO
```

```
 1        DISCOVERY TO THIS COMPANY'S CORPORATE EXISTENCE.

 2             THE COURT:  WELL, BUT ONLY AS TO -- NOT EVEN AS TO

 3        STORIES, BUT ONLY AS TO EPHEMERAL MESSAGING AND SNAPSCORE.

 4             MR. RICE:  BUT THE PROPOSAL WITH RESPECT TO

 5        CUSTODIANS AND SEARCH TERMS, THE PLAINTIFFS WANT US TO RUN

 6        SEARCH TERMS ACROSS ALL CUSTODIANS AND ALL PROPOSED SEARCH

 7        TERMS.

 8             AND WE DO DOCUMENT COLLECTION ON A CUSTODIAN-BY-CUSTODIAN

 9        BASIS, COLLECTING ALL OF THEIR DOCUMENTS, SO LIMITING THE TIME

10        PERIOD FOR ISOLATING THE NAMED FEATURES WILL STILL REQUIRE US

11        TO REVIEW A LARGE NUMBER OF DOCUMENTS AND FILTER OUT

12        NON-RESPONSIVE ONES.

13             THE COURT:  BUT I SAW THERE WAS SOME DISPUTE ABOUT

14        WHEN THE START DATE FOR CUSTODIAN SEARCHES SHOULD BE, AND IF --

15        WHAT ARE THE ODDS THAT A CUSTODIAN HAS A SIGNIFICANT NUMBER OF

16        DOCUMENTS THAT PREDATE THEIR EMPLOYMENT?

17             MR. BILSBORROW:  WELL, YOUR HONOR, NOT ONLY THAT, BUT

18        WE'VE ONLY IDENTIFIED A TOTAL OF SEVEN OR EIGHT CUSTODIANS THAT

19        EVEN PREDATE -- THAT THEIR EMPLOYMENT PREDATES 2017.

20             NOW, SNAP'S ONLY AGREED TO GIVE US ONE OF THOSE

21        CUSTODIANS, THE FOUNDER AND CEO, WHOSE DOCUMENTS WOULD BE

22        HIGHLY RELEVANT.

23             BUT EVEN IF WE GOT EVERYTHING WE WANTED, THERE'S STILL

24        ONLY SEVEN CUSTODIANS WHO PREDATE 2015.  THERE'S ONLY TWO TOTAL

25        CUSTODIANS THAT WE'VE IDENTIFIED THAT GO BACK TO 2011, AND THEY
```

1        ARE BOTH TWO OF THE FOUNDERS OF THE COMPANY.

2              MR. RICE:  YOUR HONOR, MAY I?

3              THE COURT:  OKAY.

4              MR. RICE:  I WOULD JUST ADD THAT IN ADDITION TO

5        BURDEN, IT'S DIFFICULT TO ASSESS THE PRECISE BURDEN HERE

6        BECAUSE THE PARTIES ARE AT AN IMPASSE, HAVE BEEN MEETING AND

7        CONFERRING AND ARRIVING AT AN IMPASSE REGARDING THE CUSTODIAN

8        ISSUE.

9              BUT IN ADDITION WHAT WE'RE TALKING ABOUT HERE GOES BEYOND

10        CUSTODIAL SEARCHES TO TARGET COLLECTIONS AS WELL, WHICH DOES

11        ENTAIL AN ADDITIONAL BURDEN THE FARTHER BACK WE HAVE TO GO IN

12        TIME, PERSONNEL LEAVE THE COMPANY, FILES ARE REORGANIZED,

13        DEPARTMENTS CHANGE.

14              IT IS ADDITIONAL WORK TO GO BACK OVER NOW 13 YEARS TO

15        IDENTIFY DOCUMENTS FROM 2011.

16              THE COURT:  BUT EVEN UNDER YOUR OWN PROPOSAL, YOU'RE

17        GOING BACK A SIGNIFICANT NUMBER OF YEARS AS WELL.

18              OKAY.  SO FOR PURPOSES OF BOTH ADDRESSING PROPORTIONALITY

19        PRIMARILY HERE, I'M GIVING YOU UNTIL JANUARY 1ST OF EACH OF THE

20        YEARS MENTIONED, WHICH SHOULD COVER SOME OF THE TIME PERIOD

21        BEFORE, FOR EXAMPLE, LENSES WAS ACTUALLY LAUNCHED.  ALL RIGHT?

22        PRESUMABLY SOME OF THEM MAY HAVE BEEN LAUNCHED EARLY IN THE

23        YEAR, SOME OF THEM MAY HAVE BEEN LAUNCHED TOWARDS THE END OF

24        THE YEAR.

25              IF YOU FIND IN THE DOCUMENT PRODUCTIONS, YOU KNOW,

1    REFERENCES TO EARLIER STUDIES, DOCUMENTS AND THINGS THAT ARE

2    RELEVANT, THERE'S NOTHING STOPPING YOU FROM SERVING FOLLOW-UP

3    DOCUMENT REQUESTS AND ASKING FOR THINGS AND THEN WORKING OUT

4    WITH THE OTHER SIDE FOR THINGS AT AN EARLIER TIME PERIOD.

5        BUT ON THE PRESENT RECORD, WE'RE GOING TO GO WITH

6    JANUARY 1 OF THE YEAR THAT THE FEATURE WAS LAUNCHED.  OKAY?

7        AND I THINK THAT ADDRESSES PROPORTIONALITY AND RELEVANCE

8    TO SOME EXTENT, TOO.

9        OKAY.  AND I DON'T THINK YOU SHOULD BE LIMITING CUSTODIAL

10   SEARCHES JUST BASED ON THEIR DATE OF EMPLOYMENT.  IF A

11   CUSTODIAN HAPPENS TO HAVE DOCUMENTS, IT'S PROBABLY UNLIKELY,

12   BUT IF THEY HAVE A LOT OF DOCUMENTS THAT PREDATE THEIR DATE OF

13   EMPLOYMENT AND THEY'RE RELEVANT, THEY SHOULD BE PRODUCED.

14   THERE'S NO REASON NOT TO.  I DON'T ANTICIPATE THERE WILL BE A

15   HUGE VOLUME OF THOSE ANYWAY.

16       OKAY.  ANY QUESTIONS, NEED FOR CLARIFICATION ON THIS

17   PARTICULAR ISSUE?

18           MR. BILSBORROW:  JUST IN PART, YOUR HONOR.

19       SO THERE ARE SOME REQUESTS THAT AREN'T SPECIFIC TO THE

20   NAMED FEATURES; RIGHT?  SO THERE ARE REQUESTS THAT GO TO SNAP'S

21   MARKETING AND BUSINESS STRATEGIES, WHICH WE CLAIM WERE

22   DEVELOPED PRIOR TO 2015.

23       SNAP WENT FROM 0 TO 100 MILLION USERS, MANY OF THEM

24   MINORS, FROM 2011 TO 2015.

25       AND SO SNAP'S POSITION HAS BEEN, YOU DON'T GET ANYTHING

1    BEFORE 2015.

2        OUR POSITION HAS BEEN, WE WOULD LIKE TO NEGOTIATE ON AN

3    RFP-BY-RFP BASIS.  WHERE RFP'S WOULD SEEK RELEVANT INFORMATION

4    THAT GOES FROM 2011 TO 2015, WE'D LIKE TO NEGOTIATE THAT.

5    THEY'VE SHUT US DOWN.

6        SO WHERE WE DON'T HAVE AN RFP THAT INVOLVES A NAMED

7    FEATURE, BUT SEEKS INFORMATION ON A PRACTICE, LIKE A MARKETING

8    PRACTICE THAT IS CLEARLY RELEVANT IN THE CASE, WE THINK IT'S

9    APPROPRIATE FOR US TO GO BACK BEFORE 2015.

10        MR. RICE:  MAY I RESPOND, YOUR HONOR?

11        THE COURT:  UM-HUM.

12        MR. RICE:  YOUR HONOR, DOCUMENT REQUESTS THAT DO NOT

13    ADDRESS THE NAMED FEATURES, WHEN WE TALK OF THE RELEVANCE AND

14    PROPORTIONALITY ANALYSIS, FALL EVEN FURTHER AFIELD, ESPECIALLY

15    WHEN WE LOOK AT THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT.

16        THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT ARE BASED

17    PRIMARILY ON RESEARCH DONE BY SNAP AND SNAPCHAT THAT OCCURRED

18    AFTER 2015, THAT OCCURRED IN 2019, 2020, 2021.

19        FOR INSTANCE, WITH RESPECT -- MY COLLEAGUE MENTIONED

20    MARKETING, FOR INSTANCE.  THE SCHOOL DISTRICTS' COMPLAINT

21    DISCUSSES THE SNAP TO SCHOOL CAMPAIGN AS A BIG POINT OF

22    CONTENTION.  THAT CAMPAIGN WAS IN 2021, YOUR HONOR.

23        SO WE DON'T BELIEVE IT'S PROPORTIONATE TO THE CASE FOR US

24    TO GO BACK AND LOOK FOR PRE-2015 DOCUMENTS ON THE SUBJECTS WHEN

25    THAT EIGHT YEAR PERIOD WOULD CAPTURE THE TYPES OF DOCUMENTS

```
 1          THAT PLAINTIFFS ARE LOOKING FOR.

 2               THE COURT:  GO AHEAD.

 3               MR. BILSBORROW:  I WAS GOING TO SAY TWO THINGS.

 4          FIRST OF ALL, AGAIN, THERE'S VERY FEW CUSTODIANS WE'VE

 5     IDENTIFIED THAT WOULD EVEN HAVE THOSE DOCUMENTS.

 6          BUT OUR COMPLAINT INCLUDES ALLEGATIONS ABOUT HOW SNAPCHAT

 7     WAS, WAS USED PRIOR TO 2015.  FOR EXAMPLE, ON PAGE 1 OF OUR

 8     BRIEF, WE TALK ABOUT HOW THE C-SUITE AT SNAP REALIZED THAT THE

 9     SNAPCHAT WAS BEING USED PRIMARILY IN SCHOOLS, BY HIGH SCHOOL

10     STUDENTS, AND THEY DECIDED TO TRY TO INCREASE USE BY HIGH

11     SCHOOL STUDENTS.

12          THAT GOES DIRECTLY TO OUR SCHOOL DISTRICT COMPLAINTS, AND

13     THAT'S A 2012 ALLEGATION DATE.

14          AND SO WE NEED, WE NEED TO BE ABLE TO GO BACK TO THAT TIME

15     PERIOD WITH APPROPRIATE RFP'S.

16               MR. RICE:  YOUR HONOR, FOR THE ALLEGATIONS AT ISSUE

17     HERE -- MR. BILSBORROW MENTIONED SCHOOLS.  THE SCHOOL DISTRICTS

18     ARE -- THE FOCUS IS ON THE CONDUCT THAT HAS HAPPENED RECENTLY.

19          FOR THE PLAINTIFFS, MR. BILSBORROW MENTIONED MARKETING.

20     THE MARKETING THAT THE VAST MAJORITY OF PLAINTIFFS WOULD HAVE

21     EXPERIENCED IS DATED AFTER 2017, AFTER 2018, AND SO IT'S

22     DISPROPORTIONATE FOR US TO GO BACK AND LOOK FOR -- TO IDENTIFY

23     A STRAY DOCUMENT THAT MAY OR MAY NOT BEAR ON PLAINTIFFS'

24     ALLEGATIONS WHEN WE'VE SELECTED ALREADY A LARGE -- AN EIGHT

25     YEAR PERIOD OF DISCOVERY IS A SIGNIFICANT PERIOD, YOUR HONOR,
```

```
1        THAT WILL LIKELY CAPTURE VERY WELL THE UNIVERSE OF DOCUMENTS

2        THAT PLAINTIFFS ARE LOOKING FOR.

3                 THE COURT:  OKAY.  SO MY RULING ON TIMEFRAME BY

4        FEATURES APPLIES TO MARKETING, OR I'LL CALL THEM BUSINESS

5        RELATED DOCUMENTS, NOT JUST TECHNICAL DOCUMENTS.

6            IN OTHER WORDS, IF THERE ARE SPECIFIC MARKETING DOCUMENTS

7        THAT DISCUSS, MENTION THE FEATURES THAT WE JUST -- WHATEVER 12

8        OR SO FEATURES THAT I RATTLED OFF AT THE TOP OF THE HEARING,

9        THEN THOSE ARE WITHIN THE TIMEFRAME AND THEY'RE DISCOVERABLE.

10           GENERAL MARKETING OR GENERAL ADVERTISEMENT THAT DOESN'T

11       TALK ABOUT THOSE FEATURES, YOU ONLY GET BACK TO JANUARY 1ST,

12       2015.

13           NOW, AGAIN, NOTHING IS STOPPING YOU FROM SERVING FOLLOW-UP

14       DOCUMENT -- IF THERE'S A SPECIFIC HOT DOCUMENT THAT YOU THINK

15       REQUIRES FOLLOW-UP DISCOVERY, NOTHING IS STOPPING YOU FROM

16       SERVING A DOCUMENT REQUEST SAYING, WE WANT ALL THE DOCUMENTS

17       RELATED TO THIS DOCUMENT, RIGHT, BEFORE THAT TIME.

18           SO I'M NOT STOPPING YOU FROM TAKING DISCOVERY ON MORE

19       SPECIFIC TOPICS BEFORE 2015.  BUT GENERALIZED MARKETING THAT

20       DOESN'T DISCUSS ANY OF THE NAMED FEATURES OR ANYTHING LIKE

21       THAT, OR THE TECHNICAL FEATURES THAT I LISTED, IT STARTS TO GET

22       NON-PROPORTIONAL AT SOME POINT.

23           NOW, IF YOU CAN SHOW RELEVANCE BY SHOWING ANOTHER DOCUMENT

24       FROM THAT TIME PERIOD OR SOMETHING REFERRING BACK, THAT'S FOR A

25       LATER DATE.
```

1          MR. BILSBORROW:  SO JUST ONE POINT OF CLARIFICATION.

2      IF WE HAVE SPECIFIC RFP'S AND WE ARE ABLE TO MAKE A

3   RELEVANCE SHOWING THAT WE WOULD LIKE SNAP TO SEARCH, PRIOR TO

4   2015, FOR THIS SPECIFIC RFP, MY UNDERSTANDING OF YOUR RULING IS

5   WE CAN APPROACH THEM AND SAY, FOR THIS SPECIFIC RFP, YOU SHOULD

6   SEARCH EARLIER THAN 2015, AND HERE'S WHY.

7      IS THAT RIGHT?

8          THE COURT:  YEAH.  WELL, I WOULD SAY AGAIN WHAT I'VE

9   SAID REPEATEDLY.  YOU SHOULD BE TALKING TO EACH OTHER, AND

10  THERE'S STILL -- I AM DISAPPOINTED WHEN I HEAR THAT PEOPLE ARE

11  REFUSING TO TALK ABOUT ISSUES OR WHATEVER, BECAUSE YOU DO NEED

12  TO COMMUNICATE, EVEN IF YOU DISAGREE, BECAUSE YOU CAN TRY TO

13  PROPOSE, YOU KNOW, COMPROMISES AND WAYS TO NARROW THE BURDEN

14  AND WAYS TO ADDRESS THE CONCERNS THAT BOTH SIDES HAVE, RIGHT,

15  WITHOUT BRINGING IT TO ME.

16          MR. RICE:  A QUESTION -- WE DO TALK.  WE HAVE BEEN

17  TALKING VERY FREQUENTLY, THE PARTIES HERE.

18          THE COURT:  GOOD.

19          MR. RICE:  I WILL SAY, WITH RESPECT TO

20  MR. BILSBORROW'S POINT ABOUT A SPECIFIC RFP, WE WILL OF COURSE

21  DISCUSS IT, BUT IF THE RFP CALLS FOR ALL MARKETING DOCUMENTS

22  RELATED TO SNAPCHAT, OR ALL MARKETING DOCUMENTS -- YOU KNOW,

23  THOSE, I THINK YOUR HONOR'S RULING WOULD APPLY HERE.

24          THE COURT:  WELL, AGAIN, THE BURDEN IS ON THEM TO

25  SHOW YOU, BECAUSE IF IT'S PRE-2015, I THINK I WAS VERY CLEAR,

1    THEY'RE GOING TO NEED TO SHOW SOME SPECIFIC RELEVANCE WHY

2    THERE'S SOME SUBSET OF DOCUMENTS SUBSUMED BY THAT RFP.

3        IT MAY BEHOOVE YOU TO SERVE ANOTHER RFP THAT TARGETS

4    EXACTLY WHAT YOU WANT AS OPPOSED TO A GENERAL ONE THAT SAYS ALL

5    DOCUMENTS GENERALLY ON MARKETING, FOR EXAMPLE.

6        MR. BILSBORROW:  UNDERSTOOD.

7        THE COURT:  BECAUSE YOU HAVE PLENTY OF TIME TO SERVE

8    ANOTHER RFP.  YOU'VE GOT TIME TO DO THAT.  OKAY?

9        MR. BILSBORROW:  JUST ONE MORE POINT OF CLARIFICATION

10   ON THE CUSTODIANS.

11       THE COURT:  YES.

12       MR. BILSBORROW:  DID I UNDERSTAND YOUR HONOR'S RULING

13   THAT THE CUSTODIAN SEARCHES SHOULD GO BACK TO --

14       THE COURT:  WHATEVER THE TIMEFRAME IS FOR THAT

15   FEATURE.

16       MR. BILSBORROW:  WELL, THE CUSTODIANS, THOUGH, WILL

17   HAVE DOCUMENTS THAT AREN'T NECESSARILY RELATED TO THE FEATURE;

18   RIGHT?  SO OUR PROPOSAL HAS BEEN TO START THE SEARCHES, START

19   THE CUSTODIAL SEARCHES FROM THE BEGINNING OF THE CUSTODIAN'S

20   EMPLOYMENT.

21       THE COURT:  PRESUMABLY SOME OF YOUR ESI SEARCH TERMS

22   CAPTURE THE FEATURES, THOUGH.

23       MR. BILSBORROW:  SURE.

24       THE COURT:  THAT SHOULD BE HOW IT'S DONE.

25       MR. BILSBORROW:  BUT OUR UNDERSTANDING IS SNAP IS

```
 1        PUTTING A DATE LIMIT ON THEIR SEARCHES FOR CUSTODIANS SO THAT

 2        THEY WOULD NOT CAPTURE DOCUMENTS PRIOR TO 2015.

 3             THE COURT:  I THOUGHT I WAS CLEAR.  YOU SHOULDN'T BE

 4        ARTIFICIALLY LIMITING THE SEARCHES, RESULTS OF SEARCHES FROM

 5        CUSTODIANS BASED ON THEIR EMPLOYMENT DATE, AND YOU CERTAINLY

 6        SHOULDN'T BE LIMITING IT BASED ON JUST ARTIFICIALLY BY 2015,

 7        EITHER.

 8        I MEAN, I'M TRYING TO BE GRANULAR HERE AND GIVE YOU

 9        GUIDANCE ON HOW TO -- YOU MAY HAVE TO TALK TO YOUR E-DISCOVERY

10        VENDOR IN HOW TO WORK THIS OUT, BUT EITHER USING THE NAMED

11        FEATURES OR ANALOGS FOR THEM IN THE ESI SEARCH TERMS.

12        NOW I HOPE I'VE GIVEN YOU GUIDANCE ON WHICH FEATURES GET

13        DISCOVERY GOING BACK TO WHICH TIMEFRAME.  OKAY?

14             MR. BILSBORROW:  UNDERSTOOD.  THANK YOU, YOUR HONOR.

15             MR. RICE:  THANK YOU, YOUR HONOR.

16             THE COURT:  ALL RIGHT.  THANK YOU.

17        OKAY.  NEXT IS YOUTUBE, I GUESS, DOCKET 825.

18             MS. TRUONG:  AN TRUONG FOR PLAINTIFF, YOUR HONOR.

19             MS. MACHOCK:  AND SAMANTHA MACHOCK FOR YOUTUBE.

20             THE COURT:  OKAY.  SO YOU'VE BOTH JUST HEARD ME WITH

21        RESPECT TO SNAP.

22        SO HERE ARE THE FEATURES THAT I SAW DISCUSSED IN THE

23        BRIEFING:  TRACKING AND ANALYSIS OF YOUTH ACCOUNTS; AGE

24        RESTRICTIONS AND TARGETING; GENERATING AND RECOMMENDING

25        CONTENT; WATCH TIME; TRUSTED FLAGGER; CUSTOMIZABLE CHANNELS;
```

1    SUBSCRIPTION-FILLED GUIDE; MOBILE OFFLINE VIDEO VIEWING AND

2    COMMENT FEATURES; AND YOUTUBE KIDS.

3        IT APPEARS THERE'S NO WRITTEN DISPUTE ON TIMEFRAME WITH

4    REGARD TO YOUTUBE SHORTS OR SUPER STICKERS.

5        SO THEN I COUNT EITHER NINE OR TEN FEATURES THAT ARE AT

6    ISSUE FOR THIS DISPUTE IN TERMS OF HISTORICAL DISCOVERY.  IS

7    THAT RIGHT?

8            MS. TRUONG:  CAN I CLARIFY SOMETHING?

9            THE COURT:  SURE.

10           MS. TRUONG:  THE LIST WE SET FORTH IN PAGE 1 OF OUR

11    BRIEFING IS INTENDED TO UNDERSCORE THE REASONABLENESS OF OUR

12    START DATE OF JANUARY OF 2011, WHICH WE THINK WAS A CATALYST

13    POINT FOR WHEN YOUTUBE BEGAN RECALIBRATING AND REDESIGNING ITS

14    RECOMMENDATION SYSTEM AND ITS FOCUS ON YOUTH AND CHILDREN ON

15    ITS PLATFORM.

16        SO TO THE EXTENT THAT YOUTUBE SHORTS AND CREATOR OR, YOU

17    KNOW, THE CHANGE TO THE LIVE BUTTON, WHICH HAPPENED IN 2009,

18    WAS NOT IN THIS LIST, IT WAS ONLY BECAUSE OUR ARGUMENT HERE WAS

19    2011 WAS THE RIGHT JUMPING POINT FOR THE TIMEFRAME.

20        IT WAS NOT MEANT TO BE AN EXCLUSIVE LIST IN TERMS OF ALL

21    POTENTIAL TARGETED FEATURES AT ISSUE.

22           MS. MACHOCK:  MAY I?

23           THE COURT:  SURE.

24           MS. MACHOCK:  AND THE OTHER POINT I WOULD MAKE IS

25    THAT THE LIST THAT YOU JUST ARTICULATED IS NOT -- MANY OF THOSE

```
1       ARE NOT ACTUALLY CHALLENGED FEATURES.  AS COUNSEL JUST

2       ARTICULATED, THEY WERE JUST CHANGES POTENTIALLY TO THE YOUTUBE

3       PLATFORM THAT MAY OR MAY NOT BE RELEVANT TO THIS CASE OR TO ANY

4       CLAIM IN THIS CASE, AND THAT'S PART OF THE PROBLEM.

5           SO I DO AGREE THAT THEY'RE NOT A COMPREHENSIVE LIST OF

6       FEATURES.

7               THE COURT:  OKAY.

8               MS. MACHOCK:  FOR EXAMPLE, TRUSTED FLAGGER PROGRAM,

9       THAT'S NOT A CHALLENGED FEATURE IN THIS CASE AS FAR AS I KNOW.

10      OR THE LAUNCH OF THE IPAD/IPHONE TOUCH APP.  THERE'S NO CLAIM

11      THAT RELATES TO THAT.

12              THE COURT:  OKAY.  I DON'T UNDERSTAND WHY YOU'RE

13      BRIEFING OR INCLUDING THOSE IN THE LIST THEN.

14              MS. TRUONG:  IF I CAN CLARIFY, YOUR HONOR?

15          OUR INTENT FOR THE DEFAULT RELEVANT TIME PERIOD WAS THAT

16      IT WOULD BE THE DEFAULT IN TERMS OF HOW IT WOULD APPLY ACROSS

17      THE BOARD TO RFP'S, AND THAT WHERE THE PARTIES DISAGREED OR

18      WANTED TO HAVE A MORE TARGETED DISCUSSION, WE WOULD HAVE A

19      TARGETED SUPPLEMENTATION.

20          THAT WAS OUR FRAMEWORK FOR THIS BRIEFING AND OUR FRAMEWORK

21      FOR HAVING A RELEVANT TIME PERIOD.

22              THE COURT:  BUT IS IT CORRECT THAT TRUSTED FLAGGER

23      AND THE IPAD MOBILE OFFLINE AND COMMENT FEATURES, THAT'S NOT

24      REALLY AT ISSUE IN THE CASE?

25              MS. TRUONG:  I DISAGREE, YOUR HONOR.
```

1          TRUSTED FLAGGER GOES TO OUR CORE ALLEGATIONS ABOUT THE

2     FAILURE TO IMPLEMENT APPROPRIATE SAFETY FEATURES ON THE YOUTUBE

3     PLATFORM.  TRUSTED FLAGGER, OUR UNDERSTANDING, IS ONE WAY THAT

4     YOUTUBE SOUGHT TO ADDRESS THAT BY HAVING, QUOTE-UNQUOTE,

5     TRUSTED PEOPLE THAT WOULD FLAG CONTENT.

6          LIKEWISE, YOUR HONOR, I THINK WITH RESPECT TO THE LAUNCH

7     OF IPHONE AND IPAD TOUCH APPS, I THINK IT IS RELEVANT.  WE ALL

8     KNOW THAT THE VAST MAJORITY OF CHILDREN OUT THERE USE IPHONE

9     AND IPAD APPS NOW TO ACCESS ALL MANNER OF PLATFORMS, INCLUDING

10    YOUTUBE.

11          THE COURT:  THEY ARE PART OF THE ALLEGATIONS OF THE

12    CASE, APPARENTLY.

13          MS. MACHOCK:  I WOULD ASK COUNSEL TO POINT TO

14    ANYWHERE IN THE COMPLAINT WHERE THERE'S ANY ALLEGATION ABOUT

15    THESE ISSUES.

16          I MEAN, WE -- TO ADDRESS SOME OF THE POINTS YOUR HONOR HAS

17    MADE WITH RESPECT TO CO-DEFENDANTS, WE AGREE WITH YOU THAT A

18    TARGETED APPROACH IS THE CORRECT APPROACH HERE.

19          AND THE -- THE REASON THAT YOUTUBE AND PLAINTIFFS ARE AT

20    AN IMPASSE IS BECAUSE, AS COUNSEL JUST ARTICULATED, THE

21    PROPOSAL HERE IS A DEFAULT DATE RANGE AND THERE HAS BEEN -- YOU

22    KNOW, TO THE EXTENT THAT PLAINTIFFS CAN SHOW THAT A PRE-2015

23    DISCOVERY IS RELEVANT AND PROPORTIONATE TO A SPECIFIC FEATURE

24    OR ISSUE, YOUTUBE IS OPEN TO ENGAGING IN THAT DIALOGUE.

25          BUT PLAINTIFFS HAVE NOT BEEN WILLING TO ENGAGE IN THAT

 1    DIALOGUE AND THEY HAVE RAISED THIS DISPUTE IN THE CONTEXT OF A

 2    DEFAULT DATE RANGE, AND THAT WOULD APPLY ACROSS THE BOARD TO

 3    EVERY SINGLE RFP AND HAVE NOT BEEN WILLING TO ENGAGE IN A

 4    TARGETED APPROACH.

 5          THE COURT:  OKAY.  SO, I MEAN, I'VE ALREADY

 6    INSTRUCTED YOU TO IDENTIFY THE SPECIFIC RFP'S THAT ARE AT ISSUE

 7    IN THE PREVIOUS DISPUTE.  THOSE WOULD ALSO BE IMPLICATED BY THE

 8    TIMEFRAME; RIGHT?  SO PRESUMABLY, AS PART OF YOUR DISCUSSION

 9    ABOUT THE RFP'S -- THIS GOES FOR EVERYONE -- WHEN YOU IDENTIFY

10    YOUR RFP'S THAT GO TO EACH DISPUTE, YOU'VE GOT TO TALK ABOUT

11    THEM AND SPECIFICALLY IDENTIFY WHICH ONES ARE AT ISSUE.

12          WELL, SO IT SEEMS TO ME THAT ALL THESE PRE-2015 FEATURES,

13    FROM WHAT I HEAR, THEY ARE AT ISSUE IN THE CASE.  I MEAN,

14    THE -- THEY'RE NOT -- I THINK -- THERE'S DISPUTE AS TO WHETHER

15    THERE'S BEEN, I DON'T KNOW, SOME INTERROGATORY OR SOMETHING IN

16    THE COMPLAINT OR PLEADING THAT'S IDENTIFIED SPECIFICALLY THE

17    THEORY, BUT WE'RE HEARING A REPRESENTATION FROM COUNSEL THAT

18    THEY'RE IN THE CASE NOW, SO MAYBE YOU NEED TO SERVE AN

19    INTERROGATORY FOR THEIR CONTENTIONS OR TAKE SOME OTHER STEPS TO

20    FLESH OUT WHAT EXACTLY THE THEORIES OF THE CASE ARE BEYOND THE

21    PLEADINGS.

22          MS. MACHOCK:  MAY I RESPOND TO THAT?

23          I GUESS, YOUR HONOR, TO THE EXTENT THAT SOMETHING NOT

24    ALLEGED IN THE COMPLAINT THAT HAS NOT BEEN LINKED TO ANY

25    SPECIFIC ALLEGATION BY ANY SPECIFIC PLAINTIFF IN THIS CASE IS

1    GOING TO PROVIDE THE BASIS FOR OPENING UP YEARS OF DISCOVERY, I

2    THINK THERE NEEDS TO BE MORE THAN JUST -- YOU KNOW, WE'RE

3    HEARING ABOUT, YOU KNOW, A THEORY ABOUT IPADS FOR THE FIRST

4    TIME IN A LETTER BRIEF THAT HAS NOT BEEN LINKED TO ANY

5    ALLEGATION IN THE COMPLAINT, THAT HAS NOT BEEN LINKED TO ANY

6    PLAINTIFF, ANY SPECIFIC CLAIM AGAINST YOUTUBE IN THIS CASE.

7              AND, I MEAN, JUST TO POINT OUT, YOUR HONOR, THAT THE ONLY

8    BELLWETHER CASE AGAINST YOUTUBE IN THIS CASE INVOLVES A

9    PLAINTIFF WHO STARTED USING YOUTUBE IN 2018.  THAT PLAINTIFF'S

10   EXPERIENCE -- THESE CHANGES THAT COUNSEL'S POINTING YOUR HONOR

11   TO HAVE ABSOLUTELY NOTHING TO DO WITH THE CLAIMS THAT ARE

12   ACTUALLY BEING ASSERTED AGAINST YOUTUBE IN THIS CASE.

13             THE COURT:  SO HELP ME OUT SINCE YOU KNOW THE

14   COMPLAINT BETTER THAN I DO.  OF THE 12 OR SO FEATURES THAT I'VE

15   READ INTO THE RECORD, IN ADDITION OR OTHER THAN TRUSTED FLAGGER

16   AND THE IPHONE TOUCH APP, ARE THERE ANY OTHERS THAT ARE NOT --

17   THAT YOU -- THAT UNTIL TODAY YOU DIDN'T KNOW WERE PART OF THE

18   CASE?

19             MS. MACHOCK:  WOULD YOUR HONOR MIND REPEATING THEM?

20             THE COURT:  YEAH, SURE.  SO WHEN I WENT THROUGH THE

21   LETTER BRIEFS, THIS IS WHAT I SAW:  TRACKING, COLLECTION, AND

22   ANALYSIS OF YOUTH ACCOUNTS; AGE RESTRICTIONS AND TARGETING;

23   GENERATING AND RECOMMENDING CONTENT; WATCH TIME; TRUSTED

24   FLAGGER; CUSTOMIZABLE CHANNELS; SUBSCRIPTION-FILLED GUIDE;

25   IPHONE TOUCH APPS; MOBILE OFFLINE VIDEO VIEWING AND COMMENT

1        FEATURES; AND YOUTUBE KIDS.

2            AND AGAIN, I MENTIONED IT LOOKED LIKE YOUTUBE SHORTS AND

3        THE SUPER STICKERS, THERE ARE NO DISPUTES BECAUSE THEY WERE

4        MORE RECENT.

5                MS. MACHOCK:  YES, BUT SEVERAL OF THOSE, AGAIN, I

6        HAVE NO IDEA HOW THEY RELATE TO THE CLAIMS.

7                THE COURT:  WHICH ONES?

8                MS. MACHOCK:  THE MOBILE --

9                THE COURT:  VIDEO OFFLINE?

10               MS. MACHOCK:  -- VIDEO OFFLINE, A SUBSCRIPTION TO

11       CHANNELS, THAT DOESN'T RELATE TO ANY SORT OF CLAIM THAT I'VE

12       HEARD ARTICULATED.

13           AND CUSTOMIZABLE -- I'M SORRY, I DIDN'T CATCH --

14               THE COURT:  CHANNELS.

15               MS. MACHOCK:  CUSTOMIZABLE CHANNELS, THE SUBSCRIPTION

16       TO CHANNELS, AND THEN THE ONE RIGHT BEFORE THAT ABOUT

17       CUSTOMIZING --

18               THE COURT:  TRUSTED FLAGGER, WATCH TIME, CUSTOMIZABLE

19       CHANNELS.

20               MS. MACHOCK:  YEAH, THAT MUST BE IT.

21               THE COURT:  OKAY.  FIRST TIME YOU'RE HEARING ABOUT

22       IT.  ANY OTHERS?

23               MS. MACHOCK:  I THINK THAT'S RIGHT.  THE WATCH TIME

24       IS NEW, TOO, BUT I THINK I UNDERSTAND THEIR THEORY THERE.

25               THE COURT:  OKAY.  AND IS IT CORRECT, YOUTUBE KIDS

```
 1        WAS LAUNCHED IN 2015?

 2                MS. MACHOCK:  THAT IS CORRECT, YES.

 3                THE COURT:  ALL RIGHT.  SO --

 4                MS. TRUONG:  MAY I RESPOND, YOUR HONOR?

 5                THE COURT:  SURE.

 6                MS. TRUONG:  WATCH TIME IS CLEARLY ALLEGED IN THE

 7        COMPLAINT.  THERE ARE SPECIFIC PARAGRAPHS IN THERE ABOUT THAT.

 8        I CAN GET THAT CITATION FOR THE COURT.  I BELIEVE IT STARTS AT

 9        PARAGRAPH 741 AND GOES FORWARD.

10            WITH RESPECT TO OFFLINE MOBILE VIEWING, THAT GOES TO OUR

11        ALLEGATIONS ABOUT YOUTUBE'S INTENT TO ENGAGE CHILDREN NOT ONLY

12        IN ONLINE ADDICTION, BUT ALSO OFFLINE ENGAGEMENT.

13            WITH RESPECT TO CUSTOMIZABLE CHANNELS, THAT AGAIN GOES TO

14        THE FEATURES, I BELIEVE THEY'RE CALLED INTERMITTENT VIEW

15        FEATURES THAT WE'VE ALLEGED IN THE REPORT WHICH ALL GOES TO

16        ENGAGING YOUNG USERS WITH POSITIVE REINFORCEMENT BY HAVING

17        PEOPLE SUBSCRIBE TO THEIR VIDEOS OR LIKE THEIR VIDEOS OR ENGAGE

18        IN ALL OF THESE FEATURES WHERE THEY CAN INTERACT AND GET THE

19        DOPAMINE RESPONSE FROM THEM.

20            I BELIEVE I HIT ALL OF THE ONES THAT COUNSEL LISTED.

21                THE COURT:  WHEN YOU SAY "RECORD," YOU MEAN THE

22        COMPLAINT?

23                MS. TRUONG:  THE COMPLAINT, YES, YOUR HONOR.  I

24        APOLOGIZE IF I MISSPOKE.

25                THE COURT:  I WANT TO MAKE SURE I'M CLEAR ON THIS.
```

1    SO ARE THERE ALLEGATIONS IN THE COMPLAINT, OR THAT YOU'VE MADE

2    OTHERWISE IN THIS CASE, IDENTIFYING TRUSTED FLAGGER AS PART OF

3    YOUR THEORY?

4            MS. TRUONG:  I DON'T BELIEVE TRUSTED FLAGGER WAS

5    SPECIFICALLY ALLEGED.

6        BUT WE ABSOLUTELY ALLEGED DEFICIENCIES IN YOUTUBE'S CSAM

7    RESPONSE AND ITS TOOLS, WHICH IS THE CHILD SEXUAL ABUSE IMAGERY

8    DETECTION PROGRAM, AND TRUSTED FLAGGER FELL WITHIN THAT.

9            MS. MACHOCK:  MAY I RESPOND TO THE CSAM POINT?

10           THE COURT:  SURE.

11           MS. MACHOCK:  AGAIN, THERE'S NOT A SINGLE PLAINTIFF

12   IN THE ENTIRE 47 NAMED PLAINTIFFS THAT'S ALLEGING ANY CLAIM

13   RELATED TO CSAM AGAINST YOUTUBE, WHETHER IT BE REPORTING,

14   WHETHER IT BE A VICTIM OF CSAM.  THERE IS NO ALLEGATION RELATED

15   TO CSAM AND ITS USE, AND THAT IS PART OF THE PROBLEM HERE.

16   THERE'S SWEEPING DISCOVERY ON ISSUES THAT ARE NOT ACTUALLY

17   TETHERED TO THE CLAIMS IN THIS CASE, AND THAT CERTAINLY

18   SHOULDN'T BE A BASIS FOR MOVING -- FOR ACCEPTING A DEFAULT

19   DATE, AS PLAINTIFFS ARE ADVOCATING FOR, THAT IS MORE THAN EIGHT

20   YEARS PRIOR TO THE FILING OF THE COMPLAINT.

21           THE COURT:  OKAY.  SO BASED ON WHAT I'M HEARING TODAY

22   AND THE RECORD THAT WAS PROVIDED TO ME, I DO THINK DISCOVERY ON

23   WATCH TIME GOING BACK TO 2011 IS JUSTIFIED ON THIS RECORD, AND

24   THE -- YOU DON'T GIVE IT A NAME, BUT THE FEATURE OF GENERATING

25   AND RECOMMENDING CONTENT AS WELL.

1          MS. TRUONG:  THE RECOMMENDATION SYSTEM, YOUR HONOR,

2     WAS STARTED IN 2008.

3          THE COURT:  OKAY.

4          MS. TRUONG:  AND THAT'S ALLEGED IN OUR COMPLAINT.

5          THE COURT:  ALL RIGHT.  SO FOR THAT, IT'LL GO BACK TO

6     JANUARY 1, 2011.  I DON'T THINK YOU NEED TO GO BACK TO 2008 ON

7     THAT, ESPECIALLY SINCE YOU PROPOSED 2011.

8         THE -- OKAY.  SO THERE'S NO INFORMATION GIVEN TO ME ON

9     WHEN THE TRACKING, COLLECTION, AND ANALYSIS OF YOUTH ACCOUNTS

10    STARTED.

11         MS. MACHOCK:  AGAIN --

12         THE COURT:  I'M NOT SURE WHAT THAT IS.

13         MS. MACHOCK:  I DON'T KNOW WHAT THAT IS, EITHER, TO

14    BE HONEST.

15         THE COURT:  WHAT IS IT, AND WHEN DID IT START?

16         MS. TRUONG:  WE DON'T KNOW EITHER, YOUR HONOR, BUT I

17    THINK WE PINGED THAT OFF OF WHEN YOUTUBE WAS TAKEN OVER BY

18    GOOGLE, WHICH I BELIEVE WAS IN ABOUT 2006, AGE VERIFICATION

19    BECAME PART OF THE ACCOUNT PROCESS.

20         THE COURT:  WELL, THAT'S NOT -- OKAY.  WHAT ABOUT AGE

21    RESTRICTIONS AND TARGETING?  IS THAT -- IS THERE A FEATURE

22    YOU'RE DISCUSSING, THAT YOU HAVE IN MIND?  OR YOU WROTE THAT

23    OUT?

24         MS. TRUONG:  THERE IS AN RFP REQUESTING DOCUMENTS AS

25    TO AGE RESTRICTION S AND FEATURES.  OUR PROPOSAL WAS THAT THAT

1     START IN 2011 BECAUSE WE DON'T HAVE INFORMATION ABOUT WHEN IT

2     SPECIFICALLY BEGAN.

3              THE COURT:  OKAY.  I'LL DO IT THE EASY WAY.

4          SO I DID WATCH TIME.  YOUTUBE KIDS, SINCE IT WAS LAUNCHED

5     IN 2015, I'M GOING TO GIVE YOU SIX MONTHS PRIOR TO THAT SO IT

6     PICKS UP AT LEAST SOME OF THE DEVELOPMENT PERIOD, SO JANUARY 1,

7     2014.

8          AND THEN THE RECOMMENDATION SYSTEM, I SAID YOU GET BACK TO

9     JANUARY 1, 2011, BECAUSE THAT WAS THE ORIGINAL PROPOSED START

10    DATE.

11             MS. MACHOCK:  MAY I RESPOND ON THAT POINT?

12             THE COURT:  SURE.

13             MS. MACHOCK:  AND MY COLLEAGUE DID MAKE THIS POINT AS

14    WELL, BUT I THINK THIS CASE IS FUNDAMENTALLY DIFFERENT, EVEN

15    FOR A FEATURE LIKE PERSONALIZATION THAT DIDN'T EXIST PRE-2015,

16    THIS IS FUNDAMENTALLY DIFFERENT THAN A TYPICAL PRODUCTS

17    LIABILITY CASE WHERE YOU HAVE A PRODUCT THAT'S ACTUALLY

18    MANUFACTURED AND THEN PUT IN THE STREAM OF COMMERCE AND NOT

19    MODIFIED, LIKE AN AIRPLANE OR LAWN MOWER TO USE THE EXAMPLES IN

20    SOME CASES.

21         HERE WE HAVE A CONSTANTLY EVOLVING FEATURE THAT'S OFFERED

22    AS PART OF THE SERVICE AND THAT'S CUSTOMIZED TO THE INDIVIDUAL

23    USER.

24         AND IF YOU LOOK AT THE STATUTE OF LIMITATIONS IN THIS

25    CASE, THEY RUN -- THEY VARY, AND THEY VARY BY STATE AND BY

1          CLAIM, BUT IT'S TWO TO FOUR YEARS.

2              SO OUR DATE OF 2015 IS ALREADY FOUR TO SIX YEARS PRIOR TO

3          SORT OF THE EARLIEST STATUTE OF LIMITATION THAT COULD APPLY IN

4          THIS CASE, AND SO WE THINK THAT THAT PERIOD COVERS ANY SORT OF

5          PRELAUNCH RESEARCH AND DEVELOPMENT, TESTING THAT WOULD HAVE

6          GONE INTO THE EXPERIENCE THAT ANY PLAINTIFF IN THIS CASE HAD

7          DURING THE RELEVANT TIME PERIOD TO THE CLAIMS IN THIS CASE.

8              SO -- AND I THINK THAT DOES -- AND EVEN PLAINTIFFS' OWN

9          CASE, FASSETT V. SEARS HOLDINGS CORP., RECOGNIZED THAT WHEN YOU

10         ARE DEALING WITH A COMPONENT OR DESIGN THAT MATERIALLY CHANGES

11         OVER THE RELEVANT TIMEFRAME, THEN A NARROWER PERIOD IS

12         JUSTIFIED.

13             AND IT'S --

14             THE COURT:  BUT WE'VE ALREADY HAD ARGUMENT, I'VE

15         HEARD -- I THINK I'VE BEEN CONVINCED THAT AS TO THE

16         AVAILABILITY OF ALTERNATIVE FEATURES, RIGHT, THE FEASIBILITY OF

17         ALTERNATIVE FEATURES AND THE KNOWLEDGE ISSUE, THAT -- THE

18         PRECEDING CHANGES, PLAINTIFFS MADE THE PROFFER THAT THOSE ARE

19         RELEVANT TO THEIR CLAIM, NOT JUST SIMPLY HOW THE PRODUCT OR

20         SERVICE WORKS TODAY, OR EVEN DURING THE STATUTE OF LIMITATIONS

21         PERIOD.

22             SO I HEAR YOUR ARGUMENT.  I'M NOT CONVINCED THAT IT'S

23         ENOUGH TO BLOCK --

24             MS. MACHOCK:  I HEAR YOU.

25             MY ONLY POINT IS THAT BY GOING BACK TO 2015, WE ARE

1    CAPTURING THAT EARLIER PERIOD BECAUSE THE STATUTE OF

2    LIMITATIONS IS ONLY TWO TO FOUR YEARS.  SO 2015 IS ALREADY FOUR

3    TO SIX YEARS BEFORE --

4            THE COURT:  YOU'RE GETTING TO WHAT I WAS GETTING TO

5    NEXT.

6            MS. MACHOCK:  OKAY.

7            THE COURT:  ON EVERY OTHER FEATURE THAT I LISTED FOR

8    WHICH EITHER THERE HASN'T BEEN, FROM WHAT WE CAN TELL, AT LEAST

9    BASED ON REPRESENTATIONS, CLEAR NOTICE THAT THEY'RE AT ISSUE IN

10   THE CASE, RIGHT, I'M ONLY GOING TO ALLOW DISCOVERY BACK TO 2015

11   BECAUSE THEY'RE NOT -- AT LEAST -- I'LL TAKE COUNSEL'S

12   REPRESENTATION THAT IF THEY'RE NOT IN THE COMPLAINT, THEY'VE

13   NOT SUFFICIENTLY BEEN PROVIDED NOTICE THAT THEY'RE PART OF YOUR

14   THEORY OF LIABILITY, RIGHT, THEN YOU HAVEN'T GIVEN ME A BASIS

15   TO FIND EXTENSIVE DISCOVERY PRIOR TO 2015, WHICH DEFENDANTS ARE

16   AGREEING TO FOR THOSE.

17           BUT IT WOULD BEHOOVE THE DEFENSE, I MEAN, I KNOW

18   CONTENTION INTERROGATORIES CAN BE PROBLEMATIC, BUT YOU MAY WANT

19   TO START ASKING CONTENTION INTERROGATORIES OF EACH SIDE -- IT

20   GOES BOTH WAYS -- SO THAT I DON'T HEAR ARGUMENTS, I DON'T KNOW

21   WHAT THEIR THEORIES ARE.  PART OF DISCOVERY IS TO FIND OUT WHAT

22   THE THEORIES ARE.

23           MS. MACHOCK:  AND I THINK WE HAVE OFFENSIVE DISCOVERY

24   TO THE BELLWETHER PLAINTIFFS, AND WE'RE IN THE BELLWETHER

25   SELECTION PROCESS RIGHT NOW, WHICH IS WHY WE CAN'T --

```
1            THE COURT:  THIS GOES BEYOND WHO THE BELLWETHERS ARE.

2    THEY HAVE THEORIES OF LIABILITY THAT GO TO ALL THE PLAINTIFFS.

3            THERE'S NOTHING STOPPING YOU FROM ASKING THEM, WHAT ARE

4    THE EXACT FEATURES OF OUR PRODUCTS THAT YOU ARE ACCUSING OF

5    INFRINGEMENT, AND WHY?

6            I DON'T WANT TO TELL YOU HOW TO DO YOUR JOB, BUT THERE ARE

7    WAYS, AGAIN, TO GET THE INFORMATION THAT YOU SAY YOU DON'T

8    HAVE.  AND IT'S NOT REALLY CONVINCING ME AT THE END OF THE DAY

9    TO THROW UP YOUR HANDS AND SAY, WE DON'T KNOW BECAUSE THEY

10   WON'T TELL US.  THERE ARE WAYS TO GET THEM TO TELL YOU.  THAT'S

11   MY POINT.

12           MS. MACHOCK:  I HEAR YOU, YOUR HONOR.

13           THE COURT:  YOU'VE GOT A CUTOFF DATE OF 2015 FOR ALL

14   BUT ONE, TWO, THREE, OR FOUR FEATURES.  AND I THINK THAT

15   ADDRESSES YOUR CONCERNS AS WELL ABOUT BOTH PROPORTIONALITY AND

16   RELEVANCE FOR THOSE.

17           BUT, AGAIN, PLAINTIFF HAS PUT YOU ON NOTICE AND/OR THEY'VE

18   SHOWN, BASED ON THE BRIEFING, TO BE -- THERE'S A BASIS THAT

19   GOES BACK TO EARLIER DATES FOR THOSE.

20           BUT, AGAIN, YOU REALLY DO NEED TO IDENTIFY WHICH DOCUMENT

21   REQUESTS SPECIFICALLY GO TO THESE, AND THEN PLEASE TALK TO EACH

22   OTHER ON THE LOGISTICS OF WORKING THIS OUT AND ALL THAT.  I

23   DON'T WANT TO HAVE TO HEAR YOU COME BACK AND SAY, WE CAN'T

24   FIGURE OUT HOW TO ACTUALLY IMPLEMENT THIS, BECAUSE IT'S JUST A

25   MATTER NOW OF GETTING INTO THE TRENCHES AND FIGURING OUT HOW TO
```

```
1         GET THESE DOCUMENTS.  OKAY?

2              MS. MACHOCK:  ON THAT POINT, YOUR HONOR, MAY I

3    CLARIFY THE SCOPE OF YOUR RULING ON PERSONALIZATION, WATCH

4    TIME, I BELIEVE, WHICH WAS THE ONE YOU SAID MAY GO BACK TO

5    2011?

6              THE COURT:  WATCH TIME --

7              MS. MACHOCK:  WHAT -- CAN I JUST -- WHAT DO YOU MEAN

8    IN TERMS OF -- DO YOU MEAN WATCH TIME IN THE SENSE OF YOUTUBE

9    USED IT FOR PURPOSES OF PERSONALIZATION?  DO YOU MEAN WATCH

10   TIME IN THE SENSE THAT YOUTUBE LOOKED AT IT?  I GUESS, WHAT'S

11   THE SCOPE?

12             THE COURT:  THEY'RE THE ONES WHO'VE ASKED THE

13   DOCUMENT REQUEST, BUT WHAT I'VE HEARD REPRESENTED IS THEY WANT

14   DOCUMENT REQUESTS ON THE DESIGN AND IMPLEMENTATION OF FEATURES,

15   AND PRESUMABLY MARKETING THAT GOES DIRECTLY TO THOSE FEATURES.

16             MS. TRUONG:  YES, YOUR HONOR, INCLUDING ANY STRATEGY

17   DISCUSSIONS AS TO WHY IT WAS INVESTIGATED, WHAT BENEFIT OR RISK

18   CAME WITH THAT INVESTIGATION AND THE IMPLEMENTATION OF WATCH

19   TIME.

20        I DON'T THINK THAT THAT'S CONTROVERSIAL AT ALL THAT WE'RE

21   ASKING FOR THAT.

22             THE COURT:  YOU CAN CERTAINLY TALK TO EACH OTHER MORE

23   ABOUT THAT SPECIFICALLY.

24        BUT I ENCOURAGE PLAINTIFFS, JUST BECAUSE THE DOCUMENT

25   REQUEST SAYS, WE WANT ALL DOCUMENTS ON X, Y, OR Z, YOU DO NEED
```

1    TO TALK TO THEM TO PUT SOME, YOU KNOW, DEFINITIONS AND MEAT ON

2    THE BONES AS TO WHAT EXACTLY YOU'RE GOING FOR, LIKE YOU JUST

3    DID.  OKAY?

4            MS. MACHOCK:  OKAY.

5            THE COURT:  I ENCOURAGE YOU TO TALK.

6        OKAY.  SO ANY OTHER CLARIFICATIONS OR ARGUMENTS ON THIS

7    ONE?

8            MS. TRUONG:  JUST ONE CLARIFICATION, YOUR HONOR.

9        AS WITH THE COURT'S RULING WITH RESPECT TO TIKTOK AND

10   SNAP, THIS IS, OF COURSE, OPEN TO PLAINTIFFS PROPOUNDING ANY

11   ADDITIONAL RFP'S AND DISCUSSING WITH YOUTUBE ANY ADDITIONAL

12   FEATURES THAT WE MIGHT COME ACROSS.  THAT'S MY UNDERSTANDING.

13   IS THAT CORRECT?

14           THE COURT:  I'M CERTAINLY NOT -- THEY HAVEN'T ASKED

15   FOR A PROTECTIVE ORDER, AND I'M NOT FORECLOSING FURTHER

16   DISCOVERY.

17       BUT, AGAIN, WITH THE GUIDANCE I'M GIVING YOU TODAY, I'M

18   HOPING YOU ALL WILL BE MUCH MORE TARGETED IN TERMS OF HOW THE

19   DOCUMENT REQUESTS ARE DRAFTED, WHAT SPECIFICALLY YOU'RE GOING

20   AFTER, WHAT FEATURES YOU'RE GOING AFTER AND WHY, AND PRESUMABLY

21   THE DEFENSE CAN WORK WITH YOU ON DOING A REASONABLE SEARCH IF

22   IT'S APPROPRIATE.  OKAY?

23           MS. MACHOCK:  ACTUALLY, I THINK THERE IS ONE MORE

24   ISSUE, AND THAT IS -- AND I THINK SOME OF MY COLLEAGUES MAY

25   HAVE THIS ISSUE AS WELL -- BUT THE END DATE.

1          THE COURT:  OKAY.

2          MS. MACHOCK:  WE HAVEN'T ADDRESSED THAT.

3          THE COURT:  OKAY.  SO I FORGET, IS THIS THE MOTION

4    WHERE THE END DATE WAS PROPOSED TO BE APRIL 1, 2024?

5          MS. TRUONG:  THAT'S CORRECT, YOUR HONOR.  IT'S THE

6    SAME END DATE THAT YOUTUBE HAS PROPOSED ON PLAINTIFFS.

7          THE COURT:  OKAY.  SO THAT'S YOUR END DATE, APRIL 1,

8    2024.  THERE'S STILL PLENTY OF TIME.  THERE'S NO, QUOTE -- I

9    MEAN, THERE'S A DUTY TO SUPPLEMENT IF YOU ACTUALLY RUN ACROSS

10   DOCUMENTS FROM THE DEFENSE SIDE, BUT THERE'S NO -- YOU'VE GOT

11   TIME TO SERVE FOLLOW-UP DOCUMENT REQUESTS IF THERE'S SOMETHING

12   THAT IS SPECIFIC THAT YOU NEED THAT YOU SEE IN THE PRODUCTION.

13   OKAY?

14        SO I DON'T WANT TO -- I'M NOT OPENING THIS UP TO, LIKE,

15   UNENDING DISPUTES OVER WHETHER THERE'S A NEED TO SUPPLEMENT

16   FURTHER OR NOT.  APRIL 1 IS THE DATE, AND IF THERE'S REALLY

17   SOMETHING SPECIFIC YOU WANT, SERVE FOLLOW-UP DOCUMENT REQUESTS.

18   OKAY?

19          MS. TRUONG:  UNDERSTOOD.

20          THE COURT:  OKAY.  SAME -- AND THEN THE SAME RULING

21   GOES ON START DATE FOR THE CUSTODIAL SEARCHES LIKE I DID IN THE

22   OTHER MOTION, THAT IS, NO ARTIFICIALLY CUTTING IT OFF BASED ON

23   EMPLOYMENT DATE OR THE STATUTE OF LIMITATIONS, OKAY?

24        I DID -- I WILL NOTE -- I KNOW WE DIDN'T PUT IT ON THE

25   CALENDAR TODAY, BUT THE DISCOVERY LETTER BRIEF, DOCKET

1    NUMBER 848, WHICH IS WHETHER YOUTUBE SHOULD DESIGNATE

2    ADDITIONAL DOCUMENT CUSTODIANS, FOOTNOTE 7 OF THAT LETTER BRIEF

3    ESSENTIALLY ASKS -- SAYS THAT THIS ISSUE TODAY ON TIME PERIOD

4    GETS RESOLVED -- IT IS AN ISSUE IN THAT FOOTNOTE.

5        SO FOR PURPOSES OF DOCKET 848, MY RULING HERE APPLIES TO

6    THAT LETTER BRIEF.  OKAY?

7            MS. MACHOCK:  SO JUST TO CLARIFY, DOES THAT MEAN THAT

8    IF A CUSTODIAN DOES NOT HAVE DOCUMENTS OR IS NOT RELATED TO THE

9    ISSUES, WATCH TIME, PERSONALIZATION, THEN THE 2015 TIMEFRAME

10   WOULD APPLY TO THAT CUSTODIAN?

11           THE COURT:  RIGHT.

12           MS. MACHOCK:  OKAY.

13           MS. TRUONG:  YOUR HONOR, CAN I CLARIFY?  I'M SORRY,

14   CAN I ASK FOR CLARIFICATION ON THAT?

15       MY UNDERSTANDING WAS THAT THE COURT HAD SAID THERE WOULD

16   BE SEARCH TERMS INVOLVED THAT WOULD APPLY TO THE CUSTODIAN

17   SOURCES AND THAT, ONE, THERE WOULD BE NO ARTIFICIAL TIMELINES

18   IMPOSED BY DEFENDANTS ON THAT; AND, TWO, THE SEARCH TERMS WOULD

19   APPLY TO THAT.

20           THE COURT:  WELL, THE TIMEFRAME FOR HISTORICALLY

21   WHEN, HOW FAR BACK, AGAIN, FOR THAT CUSTODIAN, IT GOES BACK TO

22   THE WATCH TIME TO 2011.

23       FOR THE CUSTODIANS FOR YOUTUBE KIDS, IT GOES BACK TO

24   JANUARY 1 -- JUNE 1, 2014, ET CETERA.

25           AND FOR THE OTHERS FOR WHICH I DIDN'T FIND A BASIS, RIGHT,

```
 1        IT ONLY GOES BACK FOR THOSE CUSTODIANS TO JANUARY 1, 2015.

 2                MS. TRUONG:  UNDERSTOOD, YOUR HONOR.

 3                THE COURT:  OKAY.  THERE'S A PUZZLED LOOK, OR NO?

 4                MS. MACHOCK:  NO.  JUST ONE OF THE CUSTODIANS LEFT

 5        THE COMPANY IN 2010, SO I THINK MAYBE THAT'S WHAT YOU'RE

 6        REFERRING TO.  SO FOR THAT PERSON, IT WOULD BE BEFORE ANY OF

 7        THESE TIMEFRAMES.

 8                THE COURT:  IF THEY HAVE NO DOCUMENTS AND HAVE LEFT

 9        THE COMPANY BEFORE ANY OF THESE TIMEFRAMES, THEY HAVE NO

10        DOCUMENTS.

11            NOW, AGAIN, IF PLAINTIFFS FIND SOMETHING FROM SOMEBODY

12        ELSE'S PRODUCTION THAT REFERS TO THAT FORMER EMPLOYEE, THERE

13        COULD BE FOLLOW-UP DISCOVERY.  I'M NOT FORECLOSING THAT.

14                MS. MACHOCK:  I HEAR YOU.  THANK YOU.

15                THE COURT:  ANY OTHER QUESTIONS, CLARIFICATION ON

16        THIS?

17                MS. TRUONG:  NONE FROM PLAINTIFFS YOUR HONOR.  THANK

18        YOU.

19                MS. MACHOCK:  THANK YOU, YOUR HONOR.

20                THE COURT:  OKAY.

21                MR. DRAKE:  MIGHT I RAISE ONE QUESTION ABOUT

22        SOMETHING THAT CAME UP IN THAT DISCUSSION?

23            GEOFFREY DRAKE, KING & SPALDING, FOR THE TIKTOK

24        DEFENDANTS.

25            YOUR HONOR MENTIONED AN EXCELLENT POINT, I THOUGHT, WHICH
```

1    RELATED TO THE ABILITY TO SERVE CONTENTION INTERROGATORIES, AND

2    IN MY EXPERIENCE THOSE CAN BE INCREDIBLY VALUABLE DURING

3    DISCOVERY.

4        OBVIOUSLY THE PARTIES ARE LIMITED TO TEN INTERROGATORIES

5    PER MINOR PLAINTIFF, WHICH NEED TO BE USED FOR CASE-SPECIFIC

6    ISSUES AND FOR SCHOOL DISTRICT PLAINTIFFS.

7        SO TO EFFECTUATE YOUR HONOR'S ORDER, I WANTED TO MAKE SURE

8    WE HAVE THE OPPORTUNITY TO SERVE A REASONABLE NUMBER OF

9    CONTENTION INTERROGATORIES THAT APPLY ACROSS THE BOARD TO

10   PLAINTIFFS SO THAT WE CAN FERRET OUT SOME OF THE ISSUES THAT

11   YOUR HONOR IDENTIFIED TODAY.

12        MS. HAZAM:  YOUR HONOR, THIS IS A BRAND NEW ISSUE

13   ABOUT WHICH WE HAVE NOT HAD AN OPPORTUNITY TO MEET AND CONFER.

14   IF WE COULD DO THAT?  BECAUSE WE MAY WANT TO DISCUSS THE TIMING

15   OF THIS AND WHICH DIRECTION IT GOES, ET CETERA, AND LIMITS ON

16   THEM.  SO WE'D LIKE THE OPPORTUNITY TO DO THAT.

17        THE COURT:  YEAH.  IT'S HYPOTHETICAL YET, SO WORK IT

18   OUT AMONGST YOURSELVES.

19        OBVIOUSLY CONTENTION INTERROGATORIES CAN GO BOTH WAYS, SO

20   IT BEHOOVES YOU TO HAVE AGREEMENT ON THIS.  I UNDERSTAND

21   BATTLES OVER CONTENTION INTERROGATORIES CAN TAKE AWHILE.

22        MR. DRAKE:  WELL, WE HAVEN'T ANSWERED YET, YOUR

23   HONOR, SO WE DON'T HAVE AFFIRMATIVE DEFENSES ON WHICH TO SERVE

24   CONTENTION INTERROGATORIES.

25        THANK YOU FOR RAISING THE ISSUE.

```
1              THE COURT:  AT SOME POINT YOU WILL HAVE CONTENTIONS

2     IN YOUR CASE, SO --

3              MS. HAZAM:  THANK YOU, YOUR HONOR.

4              THE COURT:  SO QUESTIONS?

5              MR. MURA:  ANDRE MURA, YOUR HONOR.

6         WITH RESPECT TO TIKTOK, THE COURT DID NOT ADDRESS THE

7     CUTOFF DATE THAT WE HAD RAISED IN OUR MOTION.  WE HAD ASKED FOR

8     THE SAME CUTOFF DATE THAT THE COURT JUST ORDERED FOR YOUTUBE,

9     SO I ASSUME IT'S THE SAME.

10             THE COURT:  YOU MEAN APRIL 1, 2024?

11             MR. MURA:  YES.

12             THE COURT:  THANK YOU FOR RAISING THAT.

13        SO, AGAIN, APRIL 1, 2024.  YOU CAN SERVE FOLLOW-UP

14    DISCOVERY.

15        OBVIOUSLY IF THERE'S SOMETHING SPECIFIC IN THE PRODUCTION

16    THAT COMES UP THAT DEFENDANTS HAVE ETHICAL OBLIGATIONS UNDER

17    THE RULES THAT REQUIRES SUPPLEMENTATION WITHOUT PROMPTING FROM

18    THE OTHER SIDE, I ASSUME ABLE COUNSEL WILL DO THAT.

19        BUT THERE'S STILL PLENTY OF TIME TO DO FOLLOW-UP DISCOVERY

20    IF YOU SEE SOMETHING.  FOR THE CURRENT SET OF DOCUMENT

21    REQUESTS, APRIL 1, 2024 IS THE CUTOFF.

22             MR. MURA:  THANK YOU, YOUR HONOR.

23             THE COURT:  OKAY.  ALL RIGHT.

24        WE'RE FINISHING THE LONG MARCH WITHOUT A BREAK.

25        WHO'S GOING TO ARGUE THE META 30(B)(6)?
```

1        MS. WALSH:  GOOD AFTERNOON, YOUR HONOR.

2      ALEXANDRA WALSH FOR PLAINTIFFS.

3        THE COURT:  GOOD AFTERNOON.

4        MR. CHAPUT:  GOOD AFTERNOON, YOUR HONOR.

5      ISAAC CHAPUT, COVINGTON & BURLING, FOR THE META

6  DEFENDANTS.

7        THE COURT:  FIRST QUESTION AFTER READING THE

8  BRIEFING, DID THE PARTIES AGREE OR NOT ON TOPICS 1, 2, 8, AND

9  36?  IS IT 36?

10        MS. WALSH:  YOUR HONOR, WE -- MR. CHAPUT AND I

11  DISCUSSED THAT BY EMAIL THIS MORNING AND I BELIEVE WE'RE

12  SETTLED ON THOSE POINTS.

13        MR. CHAPUT:  THAT'S CORRECT.

14      I WILL JUST THROW 9 IN THERE AS WELL, WHICH WAS RESOLVED

15  BY YOUR HONOR'S RULING ON PRIVILEGE LOG -- OR SORRY -- THE --

16        MS. WALSH:  LITIGATION HOLD.

17        MR. CHAPUT:  -- LITIGATION HOLD.

18        MS. WALSH:  YOUR HONOR, SORRY TO INTERRUPT, BUT KIND

19  OF IN THE VEIN OF A THEME THAT YOU'VE BEEN APPROPRIATELY

20  EMPHASIZING THROUGHOUT TODAY, MR. CHAPUT AND I ALSO HAD A

21  CHANCE TO MEET THIS MORNING BEFORE COURT AND TOUCH BASE ABOUT

22  THE ESI TOPICS OF THIS 30(B)(6) NOTICE, AND AS OFTEN HAPPENS

23  WHEN WE WERE TOGETHER IN PERSON, WE REALIZED THAT WE DO BELIEVE

24  THAT THERE'S ROOM FOR ADDITIONAL MEET AND CONFER ON THOSE

25  TOPICS, AND WE HAVE SCHEDULED A TIME TO DO THAT IN PERSON NEXT

```
1    WEEK HERE IN SAN FRANCISCO, WITH A GOAL OF EITHER ELIMINATING

2    OUR DISPUTES, OR CERTAINLY NARROWING THEM FURTHER SO AS NOT TO

3    BURDEN THE COURT WITH A SERIES OF COMPLEX ISSUES, WHICH WE

4    APPRECIATE.

5              THE COURT:  AND WOULD THAT COVER ESSENTIALLY, IS IT

6    THE LARGE, THE FOUR MAIN GROUPINGS OF TOPICS?  WOULD THAT COVER

7    GROUP 3 AND 4, THE DOCUMENT POLICIES AND THE INFORMATION ABOUT

8    THE REPOSITORIES, ET CETERA?

9              MR. CHAPUT:  THAT'S CORRECT, YOUR HONOR.  THAT'S

10   EVERYTHING FROM TOPIC 10 TO THE END OF THE NOTICE, 37.

11             THE COURT:  OKAY.  SO DO YOU HAVE A DATE WHEN YOU'RE

12   GOING TO MEET AND CONFER?

13             MR. CHAPUT:  NEXT WEDNESDAY, THE 29TH.

14             THE COURT:  NEXT WEDNESDAY.  AND --

15             MS. WALSH:  FURTHER, YOUR HONOR, TO FURTHER EXPEDITE

16   THIS --

17             THE COURT:  YES.

18             MS. WALSH:  -- MR. CHAPUT POINTED OUT TO ME THAT

19   TOPIC 7 IS ONE WHERE WE REACHED AN AGREEMENT THAT THE

20   PLAINTIFFS -- DEFENDANTS HAVE -- OR META DEFENDANTS HAVE

21   OFFERED TO MAKE A PRODUCTION OF WRITTEN INFORMATION AND, I

22   BELIEVE, SOME DOCUMENTATION, BUT IN ANY EVENT, SOME PRODUCTION

23   TO US OF INFORMATION REGARDING COMPENSATION, WHICH WE WILL

24   REVIEW.  WE, OF COURSE, RESERVE OUR RIGHTS TO SEEK TESTIMONY

25   REGARDING THOSE AFTER REVIEWING THAT INFORMATION.
```

1        BUT THAT HAS BEEN A MECHANISM THAT I KNOW OTHER OF THE

2    DEFENDANTS HAVE BEEN ABLE TO USE IN RESOLVING SOME OF THESE

3    30(B)(6) TOPICS, SO WE'RE GOING TO GIVE IT A SHOT FOR THAT ONE,

4    TOO.

5            THE COURT:  OKAY.  ANY OTHERS YOU'VE AGREED UPON?

6            MR. CHAPUT:  SO FOR PURPOSES OF THIS AFTERNOON, I

7    THINK OUR DISPUTES ARE LIMITED TO 3, 4, 5, AND 6, YOUR HONOR.

8            THE COURT:  OKAY.  SO ON 3, 4 -- OKAY.  SO I DID

9    SEE -- ESPECIALLY ON 3, 5, AND 6, MY UNDERSTANDING IS THEY --

10   THEY, META -- OFFERED TO GIVE YOU SOME DOCUMENTS TO SHOW

11   REPORTING LINES --

12           MS. WALSH:  CORRECT.

13           THE COURT:  -- AND EMPLOYEES AND ALL THAT, AND

14   HAVE -- BUT THAT WASN'T ACCEPTED?  OR WAS IT ACCEPTED?

15           MR. CHAPUT:  SO WE HAVE MADE THOSE PRODUCTIONS, YOUR

16   HONOR.  WE'VE PROVIDED EXTENSIVE REPORTING LINE DOCUMENTATION.

17       WE ALSO MET AND CONFERRED WITH PLAINTIFFS TO EXPLAIN WHAT

18   EACH OF THE COLUMNS MEANT AND HOW THEY COULD INTERPRET AND

19   UNDERSTAND THOSE DOCUMENTS.

20       WE ALSO, BEYOND JUST THAT, OFFERED TO PROVIDE WRITTEN

21   TESTIMONY REGARDING THE GENERAL CORPORATE STRUCTURE AND

22   RESPONSIBILITIES OF THE VARIOUS CORPORATE ENTITY META

23   DEFENDANTS SO THAT WE COULD EXPLAIN, YOU KNOW, FOR EXAMPLE, THE

24   DIFFERENCE BETWEEN INSTAGRAM LLC AND META PLATFORMS, INC., AND

25   WE FELT THAT THAT WAS FAIRLY RESPONSIVE TO WHAT PLAINTIFFS ARE

1    SEEKING, WHILE, YOU KNOW, REALLY REDUCING THE BURDEN TO

2    SOMETHING THAT IS MANAGEABLE FOR A COMPANY, AS OPPOSED TO

3    PROVIDING GRANULAR TESTIMONY ON EACH OF THE MANY INDIVIDUAL

4    TEAMS THAT PLAINTIFFS ARE ASKING FOR TESTIMONY ON.

5              THE COURT:  WHY WAS THAT NOT SUFFICIENT?

6              MS. WALSH:  SO, YOUR HONOR, WE APPRECIATE THE

7    PRODUCTION OF THESE CHARTS, AND I ACTUALLY HAVE SOME EXAMPLES

8    TO PROVIDE YOUR HONOR IF YOU'D LIKE TO LOOK AT THEM AND

9    UNDERSTAND WHAT THEY ARE.

10         UNDOUBTEDLY HELPFUL TO US IN UNDERSTANDING SOME OF THESE

11   ISSUES.

12         BUT ALSO, IN OUR VERY STRONG VIEW, DO NOT GO FAR ENOUGH IN

13   PROVIDING THE BASIC INFORMATION THAT WE'RE SEEKING IN THIS CASE

14   AND, FRANKLY, IS ROUTINELY SOUGHT IN CIVIL LITIGATION REGARDING

15   THE STRUCTURE, FUNCTION, AND OPERATION OF A CORPORATE

16   DEFENDANT.

17         SO WHILE WE APPRECIATE THAT INFORMATION AND IT HAS BEEN

18   HELPFUL, IT'S NOT A SUBSTITUTE FOR UNDERSTANDING MORE BROADLY

19   HOW THE COMPANY IS ORGANIZED AND HOW IT OPERATES, AND IT'S

20   CERTAINLY NOT A SUBSTITUTE FOR SWORN TESTIMONY TO WHICH WE'RE

21   ENTITLED UNDER 30(B)(6).

22         I'D NOTE, YOUR HONOR, A COUPLE OF THINGS.  FIRST OF ALL,

23   ON THESE PARTICULAR TOPICS THAT ARE AT ISSUE TODAY, THE OTHER,

24   I BELIEVE, BOTH TIKTOK AND YOUTUBE, THE DEFENDANTS, HAVE AGREED

25   TO PROVIDE TESTIMONY REGARDING THESE TOPICS.  AT LEAST ONE OF

1    THOSE DEPOSITIONS HAS GONE FORWARD.  SO FAR AS I'M AWARE, IT

2    WAS NOT -- THERE WERE NOT ISSUES REGARDING THE ABILITY TO

3    ADEQUATELY PREPARE A WITNESS TO ANSWER THESE QUESTIONS.

4         AND I WILL SAY THAT ONE OF THE ISSUES WE HAVE WITH NOT

5    HAVING SOMEONE AT A DEPOSITION UNDER OATH TO WHOM WE CAN ASK

6    QUESTIONS IS THESE CHARTS -- WHICH, AGAIN, I'M HAPPY TO HAND UP

7    TO YOUR HONOR SOME EXAMPLES -- THEY'RE QUITE COMPLEX.

8         THEY DO PROVIDE HELPFUL INFORMATION.  THEY RAISE A LOT OF

9    QUESTIONS.  WE HAVE ATTEMPTED TO GET ANSWERS TO THOSE QUESTIONS

10   FROM META.  AS IS ALMOST ALWAYS THE CASE, THERE HAVE BEEN

11   PRODUCTIVE CONVERSATIONS.

12        HOWEVER, WE'VE SORT OF REACHED AN END POINT WHERE THEY'VE

13   SAID, WE'RE NOT GOING TO PROVIDE ANY ADDITIONAL EXPLANATION

14   ABOUT THESE CHARTS UNLESS AND UNTIL YOU WITHDRAW THESE

15   DEPOSITION TOPICS, WHICH WE SIMPLY CAN'T DO.  WE CANNOT DO THAT

16   TO OUR CLIENTS AT THIS POINT, TO FORGO THE OPPORTUNITY TO HAVE

17   AN EMPLOYEE OF THIS COMPANY BE PREPARED TO ANSWER QUESTIONS

18   UNDER OATH REGARDING HOW THE COMPANY OPERATES AND FUNCTIONS.

19        WE'VE MADE EFFORTS TO -- WE'VE MADE SEVERAL OFFERS TO THE

20   DEFENDANTS, WHICH IS SET FORTH IN OUR MEET AND CONFER LETTERS,

21   ABOUT HOW WE MIGHT NARROW THIS.  WE'VE MADE ATTEMPTS TO EXPLAIN

22   WHAT EXACTLY WE ARE INTERESTED IN KNOWING MORE ABOUT AND HOW IT

23   PERTAINS TO THIS CASE.

24        I RECOGNIZE YOUR HONOR'S STANDING ORDER, HOW IT QUITE

25   WISELY DOES NOT ALLOW FOR ATTACHMENT OF MEET AND CONFER

1    CORRESPONDENCE.

2         BUT WE HAVE, IN WRITING, MADE EFFORTS TO, TO NARROW THESE

3    TOPICS.  WE THINK THEY'RE FINE AS DRAFTED, BUT IN AN ATTEMPT TO

4    TRY TO ADDRESS THE CONCERNS AND MOVE FORWARD AND GET THIS

5    TESTIMONY, WE HAVE DONE THAT.

6         AND WE'D VERY MUCH LIKE TO BE ABLE TO PROCEED ON THESE

7    BASIC TABLE SETTING TOPICS THAT ARE IMPORTANT AND WILL HELP US

8    TARGET AND STREAMLINE ADDITIONAL DISCOVERY AS WE GO FORWARD.

9              MR. CHAPUT:  YOUR HONOR, IF I MAY, A FEW POINTS.

10        FIRST OF ALL, THE TESTIMONY PLAINTIFFS ARE SEEKING WITH

11   TOPICS 3, 5, AND 6 AREN'T JUST ABOUT HOW THE COMPANY OPERATES

12   AND IS STRUCTURED.  IT'S ASKING FOR GRANULAR TESTIMONY ABOUT

13   PARTICULAR TEAMS, THE ORGANIZATION OF PARTICULAR TEAMS, WHO IS

14   RESPONSIBLE FOR THAT TEAM, FOR EACH TEAM THROUGHOUT THE

15   RELEVANT TIME PERIOD.  THAT IS SIGNIFICANT AND EXPANSIVE

16   TESTIMONY THAT WOULD BE VERY BURDENSOME FOR META TO PREPARE A

17   WITNESS TO TESTIFY ON.

18        AND, IN FACT, THERE'S JUST AS MUCH BURDEN THERE FOR META

19   AS THERE IS FOR PLAINTIFFS TO GO OUT AND DEPOSE THE ACTUAL

20   INDIVIDUALS WHO WORKED ON THOSE TEAMS AND FIND OUT BOTH THOSE

21   INDIVIDUALS' RESPONSIBILITIES AND HOW THEIR TEAMS WERE

22   STRUCTURED.

23        AND I WOULD POINT YOUR HONOR TO THE WILLY CASE THAT'S

24   CITED IN OUR BRIEF WHICH SAYS THAT, YOU KNOW, WHEN PERCIPIENT

25   WITNESSES ARE AVAILABLE TO TESTIFY, IT IS UNDULY BURDENSOME TO

1    EXPECT THE ENTITY TO INTERVIEW THEM AND THEN BIND ITSELF TO ANY

2    MISTAKES MADE IN RELAYING THEIR TESTIMONY SECONDHAND THROUGH A

3    30(B)(6) DEPOSITION.

4         THAT'S EXACTLY WHAT PLAINTIFFS ARE EXPECTING US TO DO HERE

5    IS GO OUT AND INTERVIEW A LARGE NUMBER OF PEOPLE TO UNDERSTAND

6    ALL OF THESE DIFFERENT TEAMS, AND THEN TRY AND CONVEY ALL OF

7    THAT INFORMATION THROUGH A SINGLE PERSON, WHEN PLAINTIFFS ARE

8    JUST AS ABLE TO DEPOSE THE ACTUAL INDIVIDUALS.

9         ADDITIONALLY, COUNSEL SAID THAT META HAD REFUSED TO ANSWER

10   FOLLOW-UP QUESTIONS ON THE WRITTEN DOCUMENTATION WE'VE ALREADY

11   PROVIDED.  THAT'S NOT QUITE CORRECT.  WE ACTUALLY DID OFFER TO

12   ANSWER PLAINTIFFS' FOLLOW-UP QUESTIONS AND SAID WE WOULD DO SO

13   IN WRITING AND UNDER OATH IF THEY WOULD ACCEPT THAT AS A

14   COMPROMISE TO DROP THESE 30(B)(6) TOPICS, AND THEY DECLINED TO

15   ACCEPT THAT OFFER.

16        THE COURT:  WHY ISN'T DOING THIS ON A WRITTEN

17   DEPOSITION THE WAY TO GO?

18        MS. WALSH:  BECAUSE, YOUR HONOR, WE -- I MEAN, FOR

19   ONE THING, WHAT 30(B)(6) PROVIDES IS -- WELL, LET ME -- MAY I

20   ADDRESS THE POINTS THAT MR. CHAPUT MADE REGARDING --

21        THE COURT:  ANSWER MY QUESTION FIRST.

22        MS. WALSH:  WHY ISN'T -- SO IT POTENTIALLY COULD BE.

23   THAT HAS NOT BEEN ON OFFER BY META, AT LEAST WITH RESPECT TO

24   THE SCOPE OF OUR TOPICS.

25        WHAT META HAS PROVIDED THUS FAR IS NOT, YOU SEND US

1    QUESTIONS, WE WILL PROVIDE ANSWERS.

2        WHAT META HAS PROVIDED IS -- AGAIN, WHAT I'M HAPPY TO

3    PROVIDE, YOU'LL NEED YOUR READING GLASSES (INDICATING) -- BUT

4    QUITE A COMPLEX CHART THAT'S PRETTY HARD TO DECIPHER.  IT TELLS

5    US NOTHING ABOUT THE ACTUAL STRUCTURE OF THE TEAMS.  IT SIMPLY

6    LISTS CUSTODIANS AND WHO THEY REPORT TO AND WHO REPORTS TO

7    THEM.

8        THEORETICALLY I SUPPOSE WE COULD GET OUT A GIANT WHITE

9    BOARD AND START WRITING ALL THESE NAMES DOWN AND TRY TO FIGURE

10   OUT THE STRUCTURE.

11       BUT EVEN THEN, IT WOULDN'T ALLOW US TO UNDERSTAND THE

12   TEAMS AND THE DEPARTMENTS AND HOW THEY FIT IN.

13       SO WE'VE GOT THAT.

14       WE'VE GOT THEIR OFFER TO PROVIDE, YOU KNOW, WRITTEN

15   INFORMATION ABOUT THE STRUCTURE OF THE THREE DIFFERENT, OR THE

16   DIFFERENT META DEFENDANT ENTITIES.

17       BUT, AGAIN, THAT'S NOT AN OFFER TO PROVIDE INFORMATION OR

18   ANSWER OUR QUESTIONS, THE QUESTIONS THAT WE HAVE ABOUT HOW THIS

19   COMPANY IS STRUCTURED AND HOW IT OPERATES.

20       WITH RESPECT TO SOME OF THE BURDEN ARGUMENTS, YOUR HONOR,

21   RESPECTFULLY, THIS IS WHAT CORPORATE -- THIS IS WHAT DISCOVERY

22   IS IN A CIVIL CASE.  HAVING PRACTICED ON THE DEFENSE SIDE FOR

23   MANY YEARS, I HAVE SPENT TIME INTERVIEWING CORPORATE EMPLOYEES

24   ABOUT INFORMATION THAT THEY KNOW, CONDENSING THAT INFORMATION,

25   PROVIDING IT TO A CORPORATE REP SO THAT A CORPORATE REP CAN

1    PROVIDE TESTIMONY UNDER OATH THAT DOES BIND THE COMPANY.  THAT

2    IS THE PURPOSE OF 30(B)(6).

3        IF A MISTAKE IS MADE, OBVIOUSLY THAT'S SOMETHING THAT CAN

4    BE CORRECTED, EITHER ON A BREAK OR AFTERWARDS.  THAT IS NOT --

5    THE POSSIBILITY OF A MISTAKE BEING MADE IS NOT A REASON TO

6    DEPRIVE PLAINTIFFS OF THE DISCOVERY THAT IS PERMITTED UNDER

7    30(B)(6).

8        FURTHER, REGARDING MR. CHAPUT'S CONCERN THAT WE'RE ASKING

9    HIM TO PROVIDE ALL OF THIS DIFFERENT INFORMATION ABOUT ALL OF

10    THESE DIFFERENT TEAMS OVER TIME, IN OUR LAST LETTER TO META --

11    WHICH WE HAVEN'T RECEIVED A RESPONSE YET, BUT I'M HAPPY TO TALK

12    TO MR. CHAPUT AND HIS COLLEAGUES MORE ABOUT IT -- WE WROTE TO

13    THEM, WE SAID, PLAINTIFFS UNDERSTAND THAT META DEFENDANTS'

14    INTERNAL STRUCTURES MAKES IT DIFFICULT TO IDENTIFY ALL THE

15    PERSONS RESPONSIBLE FOR THE FEATURES IDENTIFIED IN TOPIC 5 FROM

16    LAUNCH TO PRESENT DAY.  PLAINTIFFS ARE WILLING TO ACCEPT

17    TESTIMONY THAT IDENTIFIES WHICH TEAM, TEAMS, ARE RESPONSIBLE

18    FOR THE DEVELOPMENT OF THE LAUNCH OF EACH FEATURE, THE TEAM

19    MEMBERS INVOLVED IN THAT DEVELOPMENT AND LAUNCH, AND THE

20    PERSONS WITH DECISION-MAKING AUTHORITY REGARDING THAT LAUNCH.

21        SO THAT IS AN EXAMPLE OF OUR ATTEMPTING TO NARROW THIS TO

22    ADDRESS THE CONCERNS ABOUT BURDEN, NOTWITHSTANDING THAT I DON'T

23    THINK THAT THIS IS AN OVERLY BURDENSOME PROCESS.

24        WE HAVEN'T GOTTEN AN ANSWER TO THAT AND WHETHER THAT WOULD

25    HELP.

1     AND EVEN IF THAT INFORMATION WAS INITIALLY PROVIDED

2     THROUGH WRITTEN TESTIMONY, FRANKLY, I THINK THAT IT IS -- THAT

3     IT IS INEFFICIENT, BECAUSE WE DO OFTEN -- AND I KNOW YOUR HONOR

4     HAS TAKEN 30(B)(6) DEPOSITIONS -- THERE ARE FOLLOW-UP

5     QUESTIONS.  THERE'S ADDITIONAL INFORMATION THAT WE SEEK TO

6     OBTAIN.

7     AND TO BE REALLY CANDID, I -- GIVEN THE OTHER DEFENDANTS

8     HAVE SEEN FIT TO PUT SOMEONE IN A DEPOSITION, TO TAKE THE OATH,

9     TO PROVIDE THIS INFORMATION, THIS IS VERY BREAD AND BUTTER

10    TABLE SETTING KIND OF DISCOVERY, WE NEED IT TO HAPPEN SOON, WE

11    NEED IT TO HELP MANAGE THE REST OF THIS DISCOVERY PROCESS.

12    IF AND WHEN THEY FEEL THAT -- IF THEY HAVE SPECIFIC

13    CONCERNS ABOUT IT, OTHER THAN THE ONES THEY'VE ALREADY

14    ARTICULATED THAT WE'VE ATTEMPTED TO ADDRESS, WE WILL ATTEMPT TO

15    ADDRESS THEM.

16    BUT IT'S TIME TO MOVE FORWARD WITH THIS PROCESS NOW, YOUR

17    HONOR.

18         MR. CHAPUT:  SO STARTING WHERE MS. WELSH LEFT OFF, I

19    DON'T UNDERSTAND HOW THIS EXPANSIVE TESTIMONY THEY'RE SEEKING

20    WOULD POSSIBLY HELP THEM MOVE DISCOVERY FORWARD WHEN WE HAVE

21    AGREED ON CUSTODIANS, WE THINK WE'RE CLOSE TO LARGELY AGREEING

22    ON SEARCH TERMS.  THE PARTIES ARE VERY FAR ALONG IN DEFINING

23    THE SCOPE OF WRITTEN DISCOVERY IN THIS CASE.

24    ADDITIONALLY, THE REPORTING LINE INFORMATION THAT WE'VE

25    ALREADY PRODUCED INCLUDES, FOR EACH OF THE 127 CUSTODIANS THAT

1    WE'VE AGREED TO, THE DIRECT REPORTS OF EACH OF THOSE

2    INDIVIDUALS, SO ONE LEVEL DOWN, THE TEAM, THE NAME OF THE TEAM,

3    THE AREA OF THE COMPANY THAT TEAM IS ALLOCATED TO, THAT

4    INDIVIDUAL'S MANAGER, AND THEN ALL OF THE REPORTING LINE

5    INFORMATION UP TO THE CEO OF THE COMPANY.

6         SO THEY HAVE INFORMATION ABOUT WHO EVERYONE WAS REPORTING

7    TO, AND THAT ALLOWS YOU TO UNDERSTAND HOW THE PIECES FIT

8    TOGETHER WITH RESPECT TO THE CUSTODIANS THAT WE'VE AGREED TO

9    WITH PLAINTIFFS.

10        MS. WALSH:  YOUR HONOR, WHAT IT DOESN'T DO IS TELL US

11   WHO WAS RESPONSIBLE -- FOR EXAMPLE, IF YOU LOOK AT THE SUBPARTS

12   TO TOPIC 5, WHO WAS RESPONSIBLE FOR USER ACCOUNT CREATION AND

13   DEACTIVATION?  WHO WAS RESPONSIBLE FOR PARENTAL CONTROLS?  WHO

14   WAS RESPONSIBLE FOR USER ENGAGEMENT AND GROWTH?

15        AND THE WAY IN WHICH IT COULD HELP TARGET DISCOVERY IS

16   SOMETHING I WOULD THINK THE META DEFENDANTS WOULD WELCOME,

17   WHICH IS TO HELP US IN PRIORITIZING DEPOSITIONS, TO HELP US IN

18   TARGETING OUR DEPOSITION QUESTIONING, TO HELP US IN HAVING --

19   THE MORE INFORMATION WE HAVE BEFORE WE GO INTO THE PROCESS OF

20   TAKING DEPOSITIONS, THE MORE TARGETED WE CAN BE, WHICH IS VERY

21   MUCH IN PLAINTIFFS' INTERESTS FOR OBVIOUS REASONS, AND I WOULD

22   IMAGINE IS IN THE META DEFENDANTS' INTERESTS AS WELL.

23        THE COURT:  MR. CHAPUT, ARE YOU UNWILLING TO PROVIDE

24   IDENTITIES OF WHICH TEAM, TEAMS, ARE RESPONSIBLE FOR THE

25   DEVELOPMENT AND LAUNCH OF EACH FEATURE, THE TEAM MEMBERS

1    INVOLVED IN THAT DEVELOPMENT AND LAUNCH, AND THE PERSON WITH

2    DECISION-MAKING AUTHORITY REGARDING THE LAUNCH?  IS THAT

3    JUST -- JUST LET ME ASK YOU, IS THAT IMPOSSIBLE TO GIVE THEM?

4            MR. CHAPUT:  SO, YOUR HONOR, I DON'T BELIEVE IT WOULD

5    BE IMPOSSIBLE.

6        IT WOULD BE BURDENSOME TO DO SO, PARTICULARLY REQUIRING

7    SOMEONE TO MEMORIZE ALL OF THAT INFORMATION FOR ALL OF THE

8    DIFFERENT TEAMS --

9            THE COURT:  I -- I WAS ACTUALLY ASKING WHETHER YOU

10    DIRECTLY COULD JUST GET THAT INFORMATION AND GIVE IT TO THEM

11    AND CUT THROUGH ALL THIS.

12            MR. CHAPUT:  I THINK WE POSSIBLY COULD.  IF WE'RE

13    TALKING ABOUT PROVIDING A WRITTEN RESPONSE, THEN IF WE'RE

14    TALKING ABOUT THE NAMED FEATURES SPECIFICALLY, I THINK THAT

15    WOULD PROBABLY BE ACHIEVABLE.

16            THE COURT:  OKAY.  SO IF THAT'S WHAT YOU OFFERED,

17    THAT YOU WERE GETTING WHAT YOU WANTED FOR THIS DEPOSITION, THEN

18    WHY DON'T YOU DO THIS BY WRITTEN DEPOSITION QUESTIONS?  YOU CAN

19    MAKE THE QUESTIONS AS LONG AND AS DETAILED AND AS NUMEROUS AS

20    YOU WANT TO GET ALL THIS.

21            MS. WALSH:  I GUESS I WOULD ASK YOUR HONOR, WHY WOULD

22    WE DEVIATE FROM THE STANDARD PRACTICE OF --

23            THE COURT:  RULE 31 IS A STANDARD RULE IN THE FEDERAL

24    RULES OF CIVIL PROCEDURE.  I DON'T KNOW IF IT'S -- HOW OFTEN

25    IT'S USED, BUT IT'S A STANDARD RULE.

1          MS. WALSH:  BECAUSE I THINK THAT THERE IS -- I THINK

2    THAT THERE IS A DIFFERENCE BETWEEN HAVING SOMEONE UNDER OATH,

3    LIVE, ANSWERING QUESTIONS AND WE CAN ASK FOLLOW-UP QUESTIONS.

4          THE COURT:  THE DEPOSITION WRITTEN QUESTIONS IS UNDER

5    OATH, IT'S NOT LIVE, BUT IT'S UNDER OATH, AND IT GETS YOU THE

6    INFORMATION YOU WANTED PRESUMABLY IN A MORE DIRECT WAY BECAUSE

7    YOU GET IT IN WRITING WITHOUT HAVING TO -- I MEAN, IT'S UP TO

8    YOU TO WRITE THE QUESTIONS AS PRECISELY AS YOU WANT.

9          MS. WALSH:  WELL, YOUR HONOR, ANOTHER CONSIDERATION

10   THAT I THINK IS IMPORTANT HERE IS THAT OFTEN IN CASES SUCH AS

11   THIS, WE END UP CALLING THE COMPANY AS A WITNESS AT TRIAL AND

12   PLAYING PORTIONS OF A 30(B)(6) WITNESS TO A JURY.

13         THROUGH WRITTEN QUESTIONS, WE WOULD NOT BE ABLE TO DO

14   THAT.

15         THE COURT:  YOU WOULD PLAY TO THE JURY WHICH TEAM,

16   TEAMS, ARE RESPONSIBLE -- YOU'LL HAVE A DOCUMENT YOU CAN SHOW.

17         MS. WALSH:  WELL, YOUR HONOR, FOCUSSING ON THOSE

18   QUESTIONS IN PARTICULAR, PERHAPS WE WOULDN'T PLAY THAT.

19         BUT THERE ARE OTHER ASPECTS OF THINGS THAT WE ARE ENTITLED

20   TO HAVE THE COMPANY'S TESTIMONY ON THAT WE MAY WANT TO PRESENT

21   TO A JURY.

22         THE COURT:  SURE.  YOU GET THE TESTIMONY UNDER

23   RULE 31.

24         MS. WALSH:  YEAH.  I GUESS I WOULD SAY, YOUR HONOR,

25   THAT I DON'T THINK THAT THERE'S ANY REAL DISPUTE THAT WHAT

 1      WE'RE TALKING ABOUT AND WHAT WE'RE SEEKING TO OBTAIN IS

 2      RELEVANT.

 3           I'M NOT -- IT APPEARS THAT WHAT WE'RE TALKING ABOUT IS

 4      THAT META IS SUGGESTING IT WOULD BE TOO BURDENSOME TO TRY TO

 5      PREPARE A WITNESS, AS THE OTHER DEFENDANTS HAVE DONE, TO COME

 6      AND TO BE DEPOSED, AND I DON'T UNDERSTAND THE BASIS FOR SAYING

 7      THAT THAT'S TOO BURDENSOME.

 8           WHY IS IT THAT WE WOULD DEVIATE FROM WHAT THE OTHER

 9      DEFENDANTS ARE DOING HERE WITH RESPECT TO THESE TOPICS?

10             THE COURT:  OKAY.  BUT WHAT I'M TRYING TO DO IS

11      FIGURE OUT IF THERE'S A WAY TO JUST COMPLETELY MOOT THE ISSUE

12      BY DOING IT -- YOU GET THE INFORMATION YOU WANT, YOU GET THE

13      DISCOVERY YOU WANT, IT'S UP TO YOU TO WRITE THE QUESTIONS OUT

14      HOWEVER IS APPROPRIATE, AND THEN -- AS YOU SAID, IT'S TABLE

15      SETTING DISCOVERY.  I MEAN, YOU COULD DO THIS BY INTERROGATORY

16      AS WELL; RIGHT?

17           MY ONLY POINT IS YOU GET TESTIMONY UNDER OATH FROM --

18      IT'S -- 30(B)(6)S ARE DONE UNDER RULE 31.  IN OTHER WORDS, IT

19      IS UNDER OATH ON BEHALF OF THE COMPANY.

20           AND IT MOOTS ANY ARGUMENTS FROM THIS SIDE, I'M NOT GOING

21      TO HEAR ANY ARGUMENTS ABOUT BURDEN AND COMPLEXITY AND ALL THAT,

22      AND IT GETS YOU THE INFORMATION YOU WANT.

23           IF IT TURNS OUT, AND I DON'T BELIEVE IT'S GOING TO HAPPEN,

24      BUT IF IT TURNS OUT THAT META PROVIDES WHOLLY INADEQUATE

25      RESPONSES TO THE WRITTEN DEPOSITION QUESTIONS, I ASSUME YOU'LL

1    COME BACK TO ME ON A MOTION TO COMPEL AND I MAY AT THAT POINT

2    THINK THAT A LIVE DEPOSITION IS WARRANTED.

3           MS. WALSH:  YOUR HONOR, I GUESS WHAT I WOULD SAY IS A

4    COUPLE OF THINGS BEING -- I'M SORRY.  I'M BEING PASSED MULTIPLE

5    NOTES, SOME OF WHICH I CAN'T READ.

6        I GUESS WHAT I WOULD SAY IS IF WE CAN WRITE OUR QUESTIONS

7    AND --

8           THE COURT:  THAT'S WHAT RULE 31 ALLOWS.

9           MS. WALSH:  -- AND THERE'S NOT A PROTRACTED MEET AND

10    CONFER AND BACK AND FORTH WITH OBJECTIONS THAT WOULD INSANELY

11    PROLONG THIS PROCESS, AND --

12           THE COURT:  SHOW ME WHERE IN RULE 31 THERE'S A --

13    THEY GET TO OBJECT AND THEN -- THEY GET TO SOMEHOW DELAY THE

14    DEPOSITION BY MEET AND CONFER?  THEY DON'T GET TO DO THAT.

15           MS. WALSH:  I 100 PERCENT AGREE, AND I THINK AS LONG

16    AS META UNDERSTANDS THAT THAT'S TRUE, THAT THEY NEED TO ANSWER

17    THESE QUESTIONS DIRECTLY, AND IF WE FEEL THAT THE ANSWERS THAT

18    ARE BEING OBTAINED ARE NOT RESPONSIVE, ARE NOT CLEAR, ARE NOT

19    PROVIDING THE INFORMATION WE NEED, WE HAVE THE ABILITY TO COME

20    BACK TO YOUR HONOR --

21           THE COURT:  YOUR FIRST DUTY IS TO TRY TO TALK IT OUT

22    AND RESOLVE IT BEFORE YOU COME BACK TO ME; RIGHT?

23           MS. WALSH:  OF COURSE, YOUR HONOR, AND AS I HOPE

24    WE'VE DEMONSTRATED TO YOUR HONOR, WE ARE ABLE TO DO THAT AND WE

25    HAVE BEEN DOING THAT.

1    IF YOUR HONOR'S GUIDANCE IS THAT, WITH RESPECT TO ALL OF

2    THESE TOPICS, YOU'D LIKE US TO PROVIDE A DETAILED SET OF

3    QUESTIONS TO GET ANSWERS --

4         THE COURT:  SOME LAWYER'S GOT TO PREPARE THE

5    QUESTIONS FOR THE DEPOSITION IF IT WERE LIVE ANYWAY; RIGHT?

6         MS. WALSH:  I'M FAMILIAR WITH THAT PROCESS, YES.

7         THE COURT:  RIGHT.  SO IT'S NOT THAT MUCH EXTRA WORK,

8    AND YOU GET THE RESPONSE IN WRITING.

9         MR. CHAPUT, ASSUME THAT IS GOING TO BE FORTHCOMING AND

10   MAKE GOOD FAITH, YOU KNOW, EFFORTS TO BE FORTHCOMING WITH THE

11   INFORMATION RESPONSIVE TO THE QUESTIONS, AND DO NOT STAND ON

12   OBJECTIONS TO EACH QUESTION.

13        MR. CHAPUT:  WE WILL, YOUR HONOR, ASSUMING THE

14   QUESTIONS ARE WITHIN THE SCOPE OF WHAT YOUR HONOR JUST

15   DESCRIBED AND WHAT COUNSEL HAS BEEN DESCRIBING TODAY AS THE

16   INFORMATION THEY NEED.

17        OF COURSE, IF THE QUESTIONS GO FAR BEYOND THAT TO

18   ADDITIONAL TOPICS THAT WE HAVEN'T DISCUSSED, THAT HAVEN'T BEEN

19   THE SUBJECT OF BRIEFING, WE WOULD PROBABLY ASK TO HAVE A

20   CONVERSATION.

21        THE COURT:  JUST TALK.

22        JUST SO I'M CLEAR, WE'RE TALKING ABOUT QUESTION -- A

23   WRITTEN DEPOSITION ON TOPICS 3, 4, 5, AND 6.

24        MS. WALSH:  YES, AS THOSE TOPICS ARE PRESENTED IN OUR

25   NOTICE, CORRECT.

1          THE COURT:  RIGHT.

2          MR. CHAPUT:  CORRECT, AND AS COUNSEL HAS BEEN

3    DESCRIBING THE TESTIMONY THEY'RE SEEKING FROM THOSE TOPICS.

4          MS. WALSH:  WELL, I WANT TO BE CLEAR ABOUT THAT, YOUR

5    HONOR.  I -- THE TESTIMONY WE ARE SEEKING IS TESTIMONY

6    RESPONSIVE TO THE TOPICS IN OUR NOTICE.  THAT'S WHAT WE'RE HERE

7    ON TODAY.

8          THE EXAMPLE I GAVE REGARDING THE TEAMS, I LAID THAT OUT TO

9    SHOW PART OF THE MEET AND CONFER PROCESS IN WHICH WE ATTEMPTED

10   TO ALLEVIATE SOME OF META'S CONCERNS BY FOCUSSING ON SOME OF

11   THE INFORMATION THAT WE'RE LOOKING FOR.

12         BUT IT'S CERTAINLY NOT EXCLUSIVE OF THE INFORMATION.  THE

13   INFORMATION WE'RE LOOKING FOR IS THE INFORMATION THAT FALLS

14   WITHIN THE TOPICS SET FORTH IN OUR NOTICE.

15         THE COURT:  IS THAT CLEAR ENOUGH FOR YOU, MR. CHAPUT?

16         MR. CHAPUT:  IT IS IF THERE'S -- IF WE THINK THAT

17   TOPICS IN THE WRITTEN QUESTIONS WE GET ARE BEYOND THE SCOPE, WE

18   WILL, OF COURSE, CONFER WITH COUNSEL EXPEDITIOUSLY SO WE CAN

19   RESOLVE THOSE BEFORE SENDING THEM OUR ANSWERS.

20         THE COURT:  BUT THE PLAINTIFFS NEED TO WRITE THEIR

21   QUESTIONS IN A WAY THAT ARE TARGETED TO WHAT YOU REALLY NEED

22   OUT OF TOPICS 3, 4, 5, AND 6, OF COURSE.  IT'S NOT A 10,000

23   WRITTEN QUESTION DEPOSITION, I THINK.

24         MS. WALSH:  100 PERCENT AGREE, YOUR HONOR.

25         JUST TO BE VERY CLEAR, THERE HAVE BEEN LARGE, DRAMATIC

1    OBJECTIONS TO THE SCOPE OF THESE TOPICS, WHICH WE DO NOT AGREE

2    WITH, AND IT'S PART OF THE REASON WE'RE HERE TODAY.

3        I TAKE YOUR HONOR'S GUIDANCE TO BE THAT WE ARE TO WRITE

4    QUESTIONS THAT FALL WITHIN THE SCOPE OF THESE TOPICS AS SET

5    FORTH.

6            THE COURT:  MR. CHAPUT, YOU UNDERSTAND THAT UNDER THE

7    FEDERAL RULES, THERE ARE ONLY LIMITED SITUATIONS IN WHICH YOU

8    AS COUNSEL CAN INSTRUCT A WITNESS NOT TO ANSWER?

9            MR. CHAPUT:  I DO, YOUR HONOR, YES.

10           THE COURT:  SO YOU CAN MAKE OBJECTIONS, BUT THAT

11   DOESN'T RELIEVE YOUR CLIENT OF THE OBLIGATION TO ANSWER

12   QUESTIONS, SUBJECT TO SOMETHING LIKE PRIVILEGE OR ONE OF THE

13   EXCEPTIONS TO THAT.

14           MR. CHAPUT:  I UNDERSTAND, YOUR HONOR.

15           THE COURT:  OKAY.  SO HOPEFULLY YOU CAN WORK THIS OUT

16   AND THIS PROCEDURE WILL GET YOU THE INFORMATION, PLAINTIFFS THE

17   INFORMATION THEY WANT, ALLOW META TO COMPILE THE INFORMATION IN

18   A WAY THAT DOESN'T REQUIRE ONE PERSON TO MEMORIZE A WHOLE BUNCH

19   OF STUFF THAT I'M BEING TOLD IS DIFFICULT OR IMPOSSIBLE OR

20   IMPRACTICAL FOR ONE PERSON TO MEMORIZE, AND HOPEFULLY IF

21   THERE'S FOLLOW-UP ON IT, YOU WILL WORK OUT ANY FOLLOW-UP

22   REASONABLY AND RATIONALLY.

23           MS. WALSH:  YOUR HONOR, MAY I ASK THAT MR. CHAPUT AND

24   I CAN MEET AND CONFER ABOUT A QUICK TIMEFRAME FOR GETTING THIS

25   DONE?  WE HAD -- I THINK WE HAD AGREED, IN CORRESPONDENCE LAST

1    NIGHT, THAT WE WOULD -- THAT META WOULD FIND A WITNESS TO SIT

2    WITHIN TWO WEEKS OF YOUR ORDER ON THIS MOTION, AND I THINK

3    WE'VE GOT YOUR ORDER NOW, SO WE WOULD LIKE THIS PROCESS TO

4    OCCUR WITHIN THE NEXT TWO WEEKS.

5              THE COURT:  ANY PROBLEM WITH THAT?

6              MR. CHAPUT:  SO WHAT WE WERE SPEAKING ABOUT WITH THAT

7    TWO-WEEK TIMEFRAME WAS TWO WITNESSES THAT WE HAD PREVIOUSLY

8    SCHEDULED DEPOSITIONS FOR AND THEN TOOK DOWN BECAUSE PLAINTIFFS

9    INSISTED ON MOVING FORWARD WITH THIS MOTION INSTEAD.

10      THOSE TWO WITNESSES WERE NOT GOING TO COVER THE CORPORATE

11   STRUCTURE-RELATED TOPICS WHICH WE ARE DISCUSSING CURRENTLY.

12             THE COURT:  SO LET'S BACK UP.  SO JUST AT THE GENERAL

13   QUESTION, HOW MUCH TIME BEFORE YOU THINK YOU WOULD BE READY TO

14   DO THIS PROCESS?

15             MR. CHAPUT:  SO IT'S GOING TO DEPEND ON HOW MANY

16   QUESTIONS WE GET FROM PLAINTIFFS, YOUR HONOR.  I'M HAPPY TO

17   MEET AND CONFER PROMPTLY WITH PLAINTIFFS ONCE THEY CAN SERVE

18   THE QUESTIONS.  BUT WITHOUT HAVING SEEN THEM, I CAN'T SAY HOW

19   LONG IT'S GOING TO TAKE ME TO ANSWER THEM.

20             MS. WALSH:  I UNDERSTAND, YOUR HONOR.

21      BUT I THINK -- IMAGINE WE HAVE A LIVE WITNESS.  I THINK

22   THAT WE WOULD ASK THAT, GIVEN THE SCHEDULE AND GIVEN OUR NEED

23   TO MOVE FORWARD WITH THIS, THAT SOME WITNESS WHO WOULD PROVIDE

24   THIS TESTIMONY FOR THE TOPICS THAT WE'RE DISCUSSING WOULD

25   APPEAR FOR THAT DEPOSITION WITHIN THE NEXT FOUR WEEKS.

1          AND SO, LIKEWISE, WE WOULD LIKE TO HAVE -- I TAKE

2    MR. CHAPUT'S POINT REGARDING THE TWO WEEKS.  THAT'S VERY FAIR.

3          BUT WE JUST CANNOT AFFORD TO PROLONG THIS, SO I WOULD ASK

4    THAT THE WITNESS SIT FOR DEPOSITION BY PROVIDING ANSWERS TO OUR

5    QUESTIONS WITHIN FOUR WEEKS OF TODAY.

6          THE COURT:  OKAY.  SO -- THIS REMINDS ME.  SO YOU ARE

7    GOING TO MEET AND CONFER NEXT WEEK, AND THEN I'M GOING TO ORDER

8    YOU TO FILE A JOINT STATUS REPORT ON THE RESULTS OF THAT MEET

9    AND CONFER.  THIS GOES TO RESOLVING DISPUTES OVER GROUP 3 AND 4

10   TOPICS IN THE DEPO NOTICE, WHICH I THINK IS 10 AND UNDER.

11   THESE ARE THE DOCUMENT REQUESTS.

12         MR. CHAPUT:  THAT IS CORRECT, YOUR HONOR.

13         THE COURT:  IN THAT REPORT, I ALSO WANT YOU TO REPORT

14   ON THE STATUS OF WORKING OUT THE TIMING FOR THIS WRITTEN

15   DEPOSITION; RIGHT?  AND I DO THINK A MONTH IS PLENTY OF TIME TO

16   GET IT DONE, MR. CHAPUT.

17         MR. CHAPUT:  I WOULD JUST SUBMIT, YOUR HONOR, THAT IT

18   SHOULD BE A MONTH FROM WHEN WE GET THE QUESTIONS, AS OPPOSED TO

19   A MONTH FROM TODAY SINCE WE HAVEN'T YET SEEN THOSE QUESTIONS.

20         MS. WALSH:  WELL, YOU HAVE THE TOPICS.

21         THE COURT:  WELL, HOW QUICKLY DO YOU THINK YOU CAN

22   GET THEM THE QUESTIONS?

23         MS. WALSH:  WITHIN A WEEK.

24         THE COURT:  WELL, IT -- IF WE'RE AT THE NEXT CMC IN

25   JUNE AND THE DEPOSITION HASN'T EVEN BEEN SCHEDULED BY THAT

1    POINT, I'M GOING TO BE VERY UPSET WITH BOTH OF YOU.  OKAY?  SO

2    I'M ENCOURAGING BOTH OF YOU TO WORK OUT A SCHEDULE THAT IS

3    MUTUALLY AGREEABLE, EVEN IF YOU BOTH END UP BEING UNHAPPY ABOUT

4    IT, BECAUSE OFTEN COMPROMISE INVOLVES EVERYBODY BEING UNHAPPY,

5    WHICH IS SOMETIMES A GOOD COMPROMISE.

6        SO I'M NOT GOING TO SET A HARD DEADLINE OF A MONTH OR

7    30 DAYS, JUNE 20TH, BUT I'M GOING TO EXPECT THE DEPOSITION TO

8    HAVE BEEN SCHEDULED AND HOPEFULLY COMPLETED BY THEN; OR IF NOT,

9    SCHEDULED WITHIN THE NEXT COUPLE DAYS FROM THAT DMC, BECAUSE I

10   THINK THAT'S MORE THAN ENOUGH TIME IF SHE -- IF PLAINTIFFS ARE

11   GOING TO GET YOU THE QUESTIONS WITHIN A WEEK.

12       IF PLAINTIFFS DELAY GETTING THE QUESTIONS TO META, THEN

13   THAT'S ON YOU.

14           MS. WALSH:  OF COURSE.  OH, ABSOLUTELY, YOUR HONOR.

15   WE'RE WILLING TO WORK HARD ON THIS AND MOVE THINGS ALONG.

16           THE COURT:  PRESUMABLY SOMEBODY HAS ALREADY STARTED

17   WORKING ON THE DEPOSITION QUESTIONS.

18           MS. WALSH:  YES.

19           THE COURT:  ANY QUESTIONS ON HOW WE'RE -- AND THEN I

20   APPLAUD THE PARTIES AND THANK YOU FOR RESOLVING MOST OF THE

21   ISSUES HERE, EXCEPT FOR THESE LAST FEW.  SO THANK YOU FOR THAT.

22       ANY QUESTIONS ON RESOLUTION OF THIS PARTICULAR LAST

23   QUESTION?

24           MR. CHAPUT:  NO, YOUR HONOR.

25           MS. WALSH:  NO, YOUR HONOR.

```
 1              THE COURT:  OKAY.  I THINK THAT COVERS ALL THE

 2      MOTIONS THAT WERE ON CALENDAR FOR TODAY, BUT MS. HAZAM IS

 3      GETTING UP TO SAY SOMETHING.

 4              MS. WALSH:  THANK YOU, YOUR HONOR.

 5              MS. HAZAM:  LEXI HAZAM FOR PLAINTIFFS.

 6      IT DOES, YOUR HONOR.

 7              THERE'S A HOUSEKEEPING MATTER THAT WE WANTED TO ADDRESS

 8      WITH YOUR HONOR, IF WE COULD.

 9              YOUR HONOR HAD ISSUED AN ORDER WITH REGARDS TO COMPLETING

10      THE MEET AND CONFER ON SEARCH TERMS AND SUBMITTING DISPUTES TO

11      THE COURT.

12              THE PARTIES HAVE CONFERRED AND INTEND TO COMPLETE OUR

13      NEGOTIATIONS BY MAY 31ST, THAT WOULD BE THE DATE BY WHICH WE

14      WOULD EITHER HAVE AGREEMENT OR IMPASSE ON CERTAIN ISSUES, AND

15      THEN TO SUBMIT THE DISPUTES BY FIVE BUSINESS DAYS THEREAFTER,

16      WHICH IS JUNE 7TH.

17              SO WE WANTED TO REQUEST THE COURT ALLOW US TO PROCEED IN

18      THAT FASHION.

19              MS. SIMONSEN:  IF I MAY, YOUR HONOR, I DO NOTE THAT

20      THAT IS -- EXCUSE ME.

21              ASHLEY SIMONSEN OF COVINGTON & BURLING FOR THE META

22      DEFENDANTS.

23              THAT IS TRUE WITH RESPECT TO THE META DEFENDANTS.

24              I DON'T WANT TO SPEAK FOR THE OTHER DEFENDANTS.  I DO NOT

25      KNOW IF THAT AGREEMENT HAS BEEN REACHED.
```

```
 1              MR. DRAKE:  GEOFFREY DRAKE, KING & SPALDING, FOR

 2     TIKTOK.

 3          WE'RE FINE WITH THAT.  THANK YOU.

 4              MR. RICE:  ROWLEY RICE OF MUNGER, TOLLES & OLSEN FOR

 5     SNAP.

 6          WE'RE ALSO FINE WITH THAT, YOUR HONOR.

 7              MR. KRAMER:  ANDREW KRAMER FOR YOUTUBE.

 8          WE'RE ALSO FINE WITH THAT.

 9              THE COURT:  AND IS THAT CONSISTENT WITH YOUR

10     UNDERSTANDING OF THE STATE OF THINGS?

11              MS. HAZAM:  IT IS, YOUR HONOR.

12              THE COURT:  OKAY.  SO IF IT'S OKAY WITH EVERYBODY, IT

13     SOUNDS LIKE -- DO YOU NEED A STIPULATION, OR DO YOU NEED ME TO

14     VERBALLY SAY "SO ORDERED"?

15              MS. HAZAM:  PLAINTIFFS WOULD BE COMFORTABLE WITH

16     SOMETHING ON THE RECORD.

17              MS. SIMONSEN:  SAME FOR DEFENDANTS, YOUR HONOR.

18              THE COURT:  GIVEN AGREEMENT OF THE PARTIES, IT IS SO

19     ORDERED.

20              MS. HAZAM:  THANK YOU, YOUR HONOR.

21              MS. SIMONSEN:  THANK YOU, YOUR HONOR.

22              THE COURT:  OKAY.  THERE WAS ONE HOUSEKEEPING MATTER,

23     I'M NOT -- DOCKET NUMBER 848, WE NEED TO SET THE DATE FOR THAT.

24          (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE LAW

25     CLERK.)
```

119

1              THE COURT:  DOCKET 848, WHICH IS THE DISCOVERY LETTER

2    BRIEF ABOUT YOUTUBE CUSTODIANS, THERE WAS NO UNREDACTED VERSION

3    FILED ON THE DOCKET.

4              MS. HAZAM:  I BELIEVE THERE ACTUALLY NOW HAS BEEN,

5    YOUR HONOR, BUT I WOULD LIKE -- IF YOUTUBE COUNSEL COULD

6    CONFIRM, OR PERHAPS THOSE DEALING WITH IT COULD CONFIRM FROM

7    OUR SIDE.

8              MS. TRUONG:  YOUR HONOR, FOR PLAINTIFFS' SIDE, I'M

9    NOT SURE ABOUT THE OFFICIAL FILING, BUT I BELIEVE AN UNREDACTED

10   VERSION HAD BEEN SUBMITTED TO THE COURT.

11             THE COURT:  WE UNDERSTAND.  BUT FOR THE DOCKET -- I

12   HAVE AN UNREDACTED EMAILED VERSION, BUT WHAT'S NOT ON THE

13   DOCKET IS THE MOTION TO SEAL DIDN'T HAVE THE UNREDACTED VERSION

14   SO THAT IT CAN BE PART OF THE RECORD.  THAT'S ALL.

15             MS. MACHOCK:  I'LL DOUBLE-CHECK.  I BELIEVE WE FILED

16   AN UNREDACTED VERSION YESTERDAY.

17             THE COURT:  OKAY.  ALL RIGHT.  SO ANYWAY, TELL YOUR

18   TEAMS TO BE ON TOP OF THINGS THAT NEED TO BE FILED UNDER SEAL.

19             MS. MACHOCK:  ABSOLUTELY.

20             MS. HAZAM:  YES, YOUR HONOR.

21             MS. MACHOCK:  ABSOLUTELY.  I BELIEVE WE RETRACTED IT.

22   WE WERE GOING TO FILE A SEALING MOTION, AND WE RETRACTED IT.

23             MS. HAZAM:  I BELIEVE I SHARE THE SAME UNDERSTANDING,

24   YOUR HONOR.

25             MR. KRAMER:  YOUR HONOR, ANDREW KRAMER FOR YOUTUBE.

```
1          I BELIEVE THAT THERE WAS AN UNFILED VERSION OF THE LETTER
2     BRIEF RELATED TO THE RELEVANT TIME PERIOD THAT WAS FILED
3     UNREDACTED.
4          MY UNDERSTANDING WAS THAT THE MOTION TO SEAL FOR THE
5     CUSTODIAN-RELATED LETTER BRIEF IS DUE ON WEDNESDAY, THIS
6     UPCOMING WEDNESDAY.
7               THE COURT:  OKAY.  THAT'S FINE.
8          ANYWAY, JUST A REMINDER TO BE ON TOP OF THAT KIND OF
9     THING.
10              MS. WALSH:  YOUR HONOR, MAY I JUST CLARIFY ONE POINT?
11         MY LAWYERS TELL ME I NEED TO CLARIFY SOMETHING, WHICH IS
12    LOOKING FORWARD TO MEETING AND CONFERRING --
13              THE COURT:  YOU ARE A LAWYER.
14              MS. WALSH:  I KNOW.  THAT'S TRUE, I AM.
15         I'M LOOKING FORWARD TO MEETING AND CONFERRING WITH
16    MR. CHAPUT REGARDING THE TIMING OF THE DEPOSITION.
17         BUT TO BE CLEAR, WE'RE NOT MEETING AND CONFERRING OVER THE
18    QUESTIONS.  WE WILL BE PROVIDING THE QUESTIONS AND THEY WILL BE
19    ANSWERING THE QUESTIONS.
20              THE COURT:  THAT'S CORRECT.
21              MS. WALSH:  OKAY.  THANK YOU, YOUR HONOR.
22              THE COURT:  ANYTHING FURTHER FOR META?
23              MS. SIMONSEN:  JUST ONE HOUSEKEEPING ITEM, YOUR
24    HONOR.
25              ASHLEY SIMONSEN FOR THE META DEFENDANTS.
```

1   I SIMPLY WANTED TO NOTE THAT THERE'S BEEN ARGUMENT TODAY

2 ON RELEVANT TIME PERIOD.  I KNOW THAT PLAINTIFFS ARE NOT

3 PREPARED TO ARGUE THAT ISSUE AS TO META TODAY.  WE JUST FILED

4 OUR BRIEF TODAY, SO I'M NOT SUGGESTING TO ARGUE IT, RESPECTING

5 THAT THEY ARE NOT PREPARED TO ARGUE IT TODAY.

6   I DID SIMPLY WANT TO NOTE THAT WE DO WISH TO BE HEARD ON

7 THE RELEVANT TIMEFRAME, BOTH START AND END DATE.  THERE ARE

8 ARGUMENTS THAT WE BELIEVE ARE DISTINCTLY APPLICABLE TO THE META

9 DEFENDANTS SUCH THAT WHILE WE'LL, OF COURSE, TAKE INTO ACCOUNT

10 THE GUIDANCE THAT YOUR HONOR PROVIDED TODAY, WE DO BELIEVE THAT

11 WE SHOULD HAVE SORT OF A FRESH START AND HEARING FROM YOUR

12 HONOR ON THOSE ISSUES WITH RESPECT TO OUR LETTER BRIEF.

13   MS. WALSH:  WE AGREE WHOLEHEARTEDLY THAT THERE ARE

14 UNIQUE ISSUES THAT WE'LL WANT TO ADDRESS WITH THE COURT WHEN

15 YOUR HONOR HAS AN OPPORTUNITY TO REVIEW THE BRIEF.

16   THE COURT:  ONE OF THOSE RARE SITUATIONS WHERE YOU

17 AGREE, SO THANK YOU.

18   OKAY.  I UNDERSTAND, AND WE'LL -- WELL, IS THERE URGENCY

19 IN GETTING THAT ON CALENDAR FOR A HEARING?

20   MS. SIMONSEN:  I DON'T THINK THERE'S PARTICULAR

21 URGENCY, AND FRANKLY, I WOULD LIKE TO CONTINUE CONFERRING WITH

22 PLAINTIFFS' COUNSEL.

23   THE COURT:  THAT'S WHY I ASK, BECAUSE YOU'VE HEARD A

24 LOT OF GUIDANCE AND RULINGS ON SIMILAR ISSUES TODAY.  SO MY

25 SUGGESTION AND PROPOSAL IS THAT YOU MEET AND CONFER KIND OF IN

```
 1        LIGHT OF WHAT TRANSPIRED TODAY AND SEE IF YOU CAN EITHER REACH

 2        AGREEMENT OR AT LEAST NARROW THE DISPUTES.

 3                MS. WALSH:  PERHAPS WE CAN ADD IT TO OUR AGENDA FOR

 4        NEXT WEEK.

 5                MS. SIMONSEN:  THAT SOUNDS GREAT.

 6                THE COURT:  OKAY.  WHY DON'T YOU ADD THAT TO THE

 7        AGENDA FOR NEXT WEEK?

 8                MS. WALSH:  WE WILL.  THANK YOU.

 9                MS. SIMONSEN:  THANK YOU, YOUR HONOR.

10                THE COURT:  ANYTHING FURTHER FROM THE PLAINTIFFS?

11                MS. HAZAM:  NO, YOUR HONOR.

12                THE COURT:  ANYTHING FURTHER FROM THE DEFENSE?

13                MS. SIMONSEN:  NO, YOUR HONOR.

14                THE COURT:  ALL RIGHT.  WE'RE ADJOURNED UNTIL

15        PRESUMABLY THE NEXT DMC.

16                THE CLERK:  WE'RE OFF THE RECORD IN THIS MATTER.

17        COURT IS IN RECESS.

18            (THE PROCEEDINGS WERE CONCLUDED AT 3:51 P.M.)

19

20

21

22

23

24

25
```

1

2

3                     CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MAY 25, 2024

19

20

21

22

23

24

25