IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**JOINT STATEMENT RE: DEFENDANTS' REQUESTS FOR INSPECTION AND PRODUCTION OF FORENSIC IMAGES OF PLAINTIFFS' ROUTINE DEVICES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Plaintiffs and Defendants (hereinafter the "Parties") respectfully submit this Joint Statement regarding their outstanding dispute over Defendants' requests for inspection and production of forensic images of the devices within Plaintiffs' possession, custody and control that were used on a routine basis by the personal injury bellwether Plaintiffs to access Defendants' platforms. Pursuant to this Court's Standing Order for Discovery in Civil Cases and Civil Local Rule 37-1, the Parties attest that they met and conferred telephonically and discussed several proposed compromise positions before filing this Joint Statement.[1]  Specifically, they met and conferred on June 5, June 14, June 28, July 9, and July 10, 2024, on the issues that are the subject of this letter. Lead trial counsel for the parties involved in the dispute attended the June 28 conferral.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

The parties will be prepared to address this dispute at the Court's earliest opportunity.

 Dated:  July 10, 2024

Respectfully submitted,

/s/ Lexi J. Hazam
LEXI J. HAZAM
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor

---

[1] Pursuant to the Court's standing order, the Parties have equally divided 5 single-spaced pages between Defendants and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-Discovery-Standing-Order-v1.2-2023_06_01-1.pdf.

San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
Motley Rice LLC
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
Seeger Weiss, LLP
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
Andrus Anderson, LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
Beasley Allen Crow Methvin Portis & Miles, P.C.
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
Morgan & Morgan
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com
Federal/State Liaison Counsel
RON AUSTIN
Ron Austin Law
400 Manhattan Blvd.
Harvey, LA 70058
Telephone: (504) 227-8100
raustin@ronaustinlaw.com

MATTHEW BERGMAN
Social Media Victims Law Center
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
Watts Guerra LLP
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
Simmons Hanly Conroy, LLC
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
C.A. Goldberg, PLLC
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
Aylstock Witkin Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
Gibbs Law Group, LLP
1111 Broadway, Suite 2100
Oakland, CA 94607

3

Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
Levin Papantonio Rafferty
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
Baron & Budd, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
Walsh Law
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
Levin Sedran & Berman, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
Dicello Levitt
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
Hach & Rose LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030

4

jamesmarsh@marshlaw.com

*Attorneys for Plaintiffs*


**COVINGTON & BURLING LLP**

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*


**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Andrea R. Pierson*
Andrea Roberts Pierson, *pro hac vice*
 andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
 amy.fiterman@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

Geoffrey M. Drake, *pro hac vice*
 gdrake@kslaw.com
David Mattern, *pro hac vice*
 dmattern@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**MUNGER, TOLLES & OLSEN LLP**

By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler
Victoria A. Degtyareva
Laura M. Lopez
Rowley J. Rice
Ariel T. Teshuva
Faye Paul Teller
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: laura.lopez@mto.com
Email: rowley.rice@mto.com
Email: ariel.teshuva@mto.com
Email: faye.teller@mto.com

Lauren A. Bell (*pro hac vice*)
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
One Market Plaza, Spear Tower, Suite 3300

San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
Matthew K. Donohue
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**WILLIAMS & CONNOLLY LLP**

By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
680 Maine Avenue, SW
Washington, DC 20024
Tel.: 202-434-5000
Fax: 202-434-5029
Email: jpetrosinelli@wc.com
Email: ahardin@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-
weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and
Google LLC*

## ATTESTATION

I, Andrea R. Pierson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated:  July 10, 2024                                          _/s/Andrea R. Pierson_
                                                             ANDREA R. PIERSON

**Defendants' Position:** Plaintiffs contend that their purported "addiction" to Defendants' platforms—and *only* Defendants' platforms—caused their alleged injuries. Plaintiffs' own allegations, however, identify the use of their smartphones and similar devices as both the vehicles for their alleged addiction and potential alternative causes of their alleged injuries. Articles cited in the Master Complaint refer to smartphones as "the slot machine in their pocket"[2] and highlight how their features—such as texting, emailing, gaming, accessing cyber-pornography, video chatting, and internet browsing—are potentially addictive and harmful.[3] Countless non-Defendant applications were potentially accessed by Plaintiffs using these devices and share some of the same features Plaintiffs allege caused their addiction and harm (*e.g.,* nighttime notifications, no screen-time limits, filters). Plaintiffs have identified the devices they "used on a routine basis" to access Defendants' platforms ("Devices"), *see* PFS § XIII.A.1—these Devices contain unique data, files, and usage information that Defendants need to test Plaintiffs' theory and support their defenses.

To obtain this information, Defendants served requests to inspect the Devices routinely used by and in the possession, custody, or control of the personal injury bellwether Plaintiffs ("Plaintiffs"), or for forensic images of those Devices. *See* Defs' Second RFPs 1-2 (**Ex. 1**). Defendants proposed a protocol, modeled after one approved by Judge Gonzalez Rogers in *eHealthinsurance Svcs., Inc. v. Healthpilot Techs. LLC*, 2021 WL 3052918 (N.D. Cal. July 20, 2021) that balances the parties' respective rights of inspection and privacy. *See* Proposed Protocol (**Ex. 2**). Although Plaintiffs are willing to produce certain data from Devices they deem "primary," they refuse to produce data from all the Devices they routinely used, and, worse, demand that Defendants first identify specific data sources within the "primary" Devices and agree to search terms—a proposal that would shield critical information from discovery and lead to delay. Defendants' compelling need to understand Plaintiffs' Device usage outweighs Plaintiffs' privacy concerns, which are mitigated by the Proposed Protocol and Protective Order. The Court should order that the Plaintiffs' Devices be imaged and produced for Defendants' review and inspection.

<u>Legal standard</u>. When a requesting party's compelling interest in a device image outweighs the other party's privacy concerns and there is no alternative way to obtain the information sought, a court may order production of forensic images of a party's devices. In determining whether a compelling interest exists, courts consider whether plaintiffs "actively put their devices at issue when they chose to sue," because "a plaintiff cannot bring suit and then limit the defendant's discovery that is targeted at the subject matter of the plaintiff's claims." *In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *1 (N.D. Cal. Aug. 2, 2019) (affirming production of forensic images); *see also* Fed. R. Civ. P. 34(a)(2) & advisory committee's note to 2006 amendment; *In re Abilify Prods. Liab. Litig.*, 2017 WL 9249652 (N.D. Fla. Dec. 7, 2017) (ordering plaintiffs alleging drug-induced gambling addiction to produce devices for forensic imaging).[4]

<u>Defendants have a compelling interest in accessing Plaintiffs' Devices</u>. Defendants have a right to test Plaintiffs' claim that their alleged addiction to Defendants' platforms—which Plaintiffs admittedly accessed with their Devices—are a cause, or the sole cause, of their claimed

---

[2] SAC ¶¶ 63 (fn 26-27), 84 (fn 51) (citations omitted).
[3] SAC ¶¶ 16-18, 63, 84, 92-94 (fn 71-76), 100 (fn 86), 118-119 (fn 113-115), 121 (fn 117-118), 122, 133, 216 (fn 257), 450 (fn 600), 555 (fn 671), 703 (fn 770-771), 754 (fn 813).
[4] Plaintiffs' cited cases, including *Jones* and *Henson*, are inapposite because they did not involve allegations, like Plaintiffs' here, that put the entirety of plaintiffs' device usage squarely at issue.

injuries. *See Benson v. Saban Cmty. Clinic*, 2023 U.S. Dist. LEXIS 166739, at *7 (C.D. Cal. Sept. 18, 2023) ("[W]hen a Plaintiff seeks damages for emotional distress, discovery into potential alternative causes of emotional distress is permissible."). Plaintiffs' Devices are the most critical data source in their possession, and they have affirmatively put their Device usage at issue. Defendants are thus entitled to access all information on the Devices not logged by Plaintiffs pursuant to the Protocol to see how the Devices were used and to show whether Plaintiffs' use of other features or applications on the Devices may have caused their injuries.

        Forensic imaging is the only feasible way to obtain critical discovery. A forensic image is the only way to obtain a comprehensive view of how Plaintiffs used their Devices, including the features and services on them, because data and data sources vary, depending on the device and operating system. Forensic imaging will capture system logs that contain information concerning when applications, webpages, games, and other content were opened and closed. It will capture application-specific history files, which can provide insight into the historic use of platforms, including deleted platforms. And it will include data on posts, comments, likes, and internet browsing history—all necessary to challenge Plaintiffs' platform-specific theory.

        By way of example, Plaintiffs allege that "notifications" from Defendants' platforms, especially at night, cause the addictive behavior and injuries they claim. *See* SAC ¶¶ 3, 103. Forensic imaging would show how Plaintiffs interacted with notifications and whether they were received simultaneously with Plaintiffs' use of other platforms and device features. Notifications are addressed differently by different devices, operating systems, and applications. Some may be reflected in system data while others are app-specific. Further, device-specific settings dictate whether and how frequently a plaintiff receives notifications from Defendants' platforms. Without a complete forensic image, Defendants cannot know how a Plaintiff interacted with notifications.

        Forensic imaging is also necessary to understand how Plaintiffs used device-specific features and controls, and other non-Defendant applications. While Plaintiffs admit using other apps—including other social media, video game and streaming services—they have not disclosed the apps they used or the extent of their usage. Only forensic images can provide a comprehensive and accurate picture, including access to deleted application and account information.

        Plaintiffs' proposal would deprive Defendants of critical discovery. Plaintiffs' proposal—which only offers to produce information from a single "primary" Device and requires Defendants to identify data sources and search terms without visibility into the many ways in which Plaintiffs used it—would prevent access to critical discovery. Plaintiffs should be required to produce an image from each Device routinely used to access Defendants' platforms (and other apps)—not just one they label as "primary." Further, because Defendants lack access to the Devices, they have no way to determine what information exists. Providing Plaintiffs with a list of potential applications, files, and data sources would be a guessing game, in part because each Device and image is unique, with numerous potential user settings, applications, and customizations for each Device.

        Further, Plaintiffs' proposal to use search terms and narrow data sources, and to produce only what Plaintiffs deem relevant is insufficient because: (1) Defendants cannot predict each potential alternative cause that might be implicated on a Device, let alone capture that discovery, without examining the Device, by search terms or identification of databases; (2) search terms will not capture usage and performance data, patterns of usage and storage metrics over time, or even

all relevant communications or files on the Devices, such as images, memes, or slang or colloquial language;[5] (3) requiring Defendants to identify search terms/databases would unnecessarily reveal attorney work product; and (4) protracted back-and-forth discussions over search terms and data sources would be inefficient, delay depositions, and jeopardize the Court's scheduling order.

    *Defendants' Proposed Protocol mitigates potential privacy concerns.* Defendants' Proposed Protocol contemplates that (a) a neutral third-party vendor will generate forensic images of designated Devices using industry standard tools; (b) chain of custody will be documented; (c) the vendor will retain the Devices only long enough to confirm image integrity; and (d) images will be produced under the Protective Order. To ensure privilege/privacy protections, the Protocol allows Plaintiffs to identify, log, and withhold privileged or CSAM information. Defendants have offered that Plaintiffs can withhold non-responsive text messages or emails, as well as contact lists, passwords, and payment information. Defendants have even offered to consider additional reasonable protections, but Plaintiffs outright rejected the proposal. Defendants remain willing to confer with Plaintiffs on scope limitations and are not seeking to discover the entire contents of the Device to the extent that information constitutes CSAM or is subject to any other applicable protection or immunity from discovery. Regardless, considering the protections afforded by the Proposed Protocol and existing Protective Order, any remaining privacy concerns are far outweighed by Defendants' interest in accessing the Devices or Device images as discussed above.

    Defendants respectfully request that the Court order Plaintiffs to produce forensic images of all the Plaintiffs' designated Devices consistent with Defendants' Proposed Protocol.

    **Plaintiffs' Position:**

    Defendants' request for wholesale production of Plaintiffs' devices is overbroad and not proportional to the needs of this case. This Court has held that "[t]urning over the entirety of the cell phone's contents would be too broad and potentially include irrelevant information." *Jones v. Sunbelt Rentals, Inc.,* 2023 WL 10691302, at *9 (N.D. Cal. Nov. 16, 2023) (Kang, J.). The same is true here. Defendants seek the entire contents[6]—including internet browser histories, metadata, etc.—of Plaintiff's devices. Plaintiffs, in contrast, propose an appropriately tailored approach that would extract the relevant information. Specifically, Plaintiffs have or will perform a full-file forensic image (mirror image) of all BW Plaintiffs' primary device(s) that are in Plaintiffs' possession, from which they will produce relevant device and application usage data and files showing the frequency, length, and timing of their use across relevant applications, including Defendants' Platforms.[7] Such a targeted production is not only feasible, but it is also the usual and customary approach. Indeed, *In re Abilify Prods. Liab. Litig.*, a case cited by Defendants, confirms that wholesale collection is the exception—one that requires a showing of malfeasance or misfeasance by the non-moving party. *See* 2017 WL 9249652 *2 (N.D. Fla. Dec. 7, 2017) (ordering forensic examination because of non-moving party's "oversight, failure or inability to

_____

[5] Plaintiffs acknowledge that search terms are not appropriate for certain data, but the scope of that data remains unclear and may involve protracted disputes.

[6] Subject to a narrow exception for privileged information and a small subset of other information.

[7] Plaintiffs have also offered to meet with the Parties' respective ESI vendors to discuss what data could be produced and the format of those productions, which Defendants have declined.

produce this information"). Defendants' other case, *In re Apple Inc. Device Performance Litig.*, is inapposite. There, the plaintiffs' claims that Apple's iOS updates intentionally sabotaged device performance put the performance of the device squarely at issue. 2019 WL 3973752, at *1 (N.D. Cal. Aug. 2, 2019).

Moreover, Defendants admit to modelling their proposed inspection protocol on wholly inapposite protocol entered in *eHealthinsurance*, which governed the inspection of devices for allegedly stolen trade secrets. There, the court entered a forensic inspection protocol pursuant to a preliminary injunction against the defendants after at least one defendant admitted to sharing the plaintiff's confidential information in violation of trade secret laws and contractual obligations. *eHealthinsurance*, 2021 WL 3052918, at **1–3. The injunction required the defendants to make available devices containing electronic copies of confidential trade secrets and other proprietary information, and the forensic protocol governed the manner in which the plaintiff could "verify if the [defendants were] in possession, custody, or control of [the plaintiff's] Confidential Information," and "determine whether and how such information may have been copied, altered, used, or deleted." *Id.* at *3. Here, Plaintiffs are not trade secret thieves and there is no basis to treat them as such.

Defendants' proposed protocol would serve only to increase costs and delay. Under the agreed-upon ESI Protocol, Plaintiffs have already spent over $2M on industry-leading ESI and forensics across the JCCP and MDL to preserve and produce Plaintiffs' relevant ESI.[8] Defendants' proposal is also misleading, insofar as it implies that Plaintiffs will have the ability to review the contents of the device image for relevance before production, but Plaintiffs learned through the meet and confer process that Defendants' protocol allows for no such review.

In addition to being grossly overbroad, Defendants' demand "implicate[s] significant privacy concerns" with no legitimate countervailing benefit. *See, e.g., Henson v. Turn, Inc.,* 2018 WL 5281629, at *7 (N.D. Cal. Oct. 22, 2018) (denying defendant's request for complete forensic images of plaintiffs' devices, finding that that privacy interests were an appropriate part of the Rule 26(b)(1) proportionality analysis).[9] Given the intrusiveness of forensic examinations, courts are careful to safeguard privacy interests and generally require that there be evidence of misconduct involving electronically stored information from the non-moving party, and that discovery of the entire device not yield substantial irrelevant and personal information. *See, e.g.*, *Jones*, 2023 WL 10691302, at *9.[10] No such misconduct has occurred here. Defendants have failed

---

[8] This amount does not include school district Plaintiffs.

[9] *See also John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (overruling forensic imaging orders because it failed to "account properly for [] significant privacy concerns"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617 LHK (NC), 2016 WL 11505231, at *1 (N.D. Cal. Apr. 8, 2016) (finding "burden of providing access to each plaintiff's computer system greatly outweighs its likely benefit"); *In re 3M Combat Arms Earplugs Prods. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 6140469, at *3–5 (N.D. Fla. Oct. 15, 2020) (similar); *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-cv-30162-MGM, 2019 WL 3290346, at *2 (D. Mass. July 22, 2019) (similar).

[10] *See also Citizens Bus. Bank v. Mission Bank*, 5:22-CV-01473, 2024 U.S. Dist. LEXIS 47697, at *10 (C.D. Cal. 2024) (requiring evidence of misconduct, concealment, or destruction of evidence); *Moser v. Americor Funding, LLC*, No. 4:23-CV-10008, 2023 U.S. Dist. LEXIS 172260 at *1 (S.D.

to even articulate what, if anything, they believe would be missing or deficient in what Plaintiffs have offered to produce; mere skepticism "is not sufficient to warrant drastic electronic discovery measures." *Moser*, 2018 U.S. Dist. LEXIS 215901, at *16 (S.D. Cal. 2018) (citing *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008); *see Juul Labs, Inc. v. Chou*, 2022 U.S. Dist. LEXIS 100833, at *4 (C.D. Cal. 2022) (stating that, "[t]hough the Ninth Circuit has not articulated a standard for ordering a forensic examination, district courts across the country have consistently held that 'mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support' such an intrusive examination.").

      Defendants' request for all "routine" devices is overbroad and unreasonable. In response to the Plaintiff Fact Sheet, Plaintiffs checked pre-filled boxes to indicate what device they "used on a routine basis to access Defendants' platforms." *See* PFS, at § XIII.A.1. The PFS, however, did not define the phrase "routine basis" and the available options to check included devices that are not in Plaintiffs' possession, custody, or control (e.g., parents or guardian's phone, friend or sibling's phone). *See Genomics v. Song*, No. 21-CV-04507-JST (LJC), 2024 WL 2044627, at *6 (N.D. Cal. May 7, 2024), *motion for relief from judgment denied sub nom. BLUESTAR GENOMICS, Plaintiff, v. CHUNXIAO SONG, et al., Defendants.*, No. 21-CV-04507-JST, 2024 WL 3279511 (N.D. Cal. June 5, 2024) (Cisneros, J.) (confirming possession, custody, or control is defined in the Ninth Circuit as actual possession or "legal right to obtain the documents on demand").

      As a compromise, Plaintiffs agreed to forensically image Plaintiffs' primary device, defined as a device that: (1) is the Plaintiff's personal device; (2) is not anyone else's personal device or a family device; (3) has been the main device on which the Plaintiff accessed any social media platform during the relevant time period; and (4) is in the Plaintiff's possession custody or control. Plaintiffs' proposal strikes a reasonable balance between capturing relevant data proportional to needs of this case and protecting the privacy interests of non-parties.

---

Fl. 2023) (similar); *Johns v. Chemtech Services Inc.*, 2021 WL 4498651, at *1 (N.D. Ill. 2021) (similar).

# EXHIBIT 1

1    [*Counsel Listed on Signature Pages*]

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **NORTHERN DISTRICT OF CALIFORNIA**

10

| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, | Case No.4:22-MD-03047-YGR |
|---|---|
| | MDL No. 3047 |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' SECOND REQUESTS FOR PRODUCTION TO PLAINTIFF DYMAND MCNEAL.** |
| Dymand McNeal | |
| Member Case No.: 4:23-cv-01092 | |

17

PROPOUNDING PARTY:        Defendants listed below

RESPONDING PARTY:         Plaintiff Dymand McNeal

SET:                      2

DATE OF SERVICE:          May 22, 2024

22

23

24

25

26

27

28

1

2

**DEFENDANTS' SECOND REQUESTS FOR PRODUCTION TO**

**PLAINTIFF DYMAND McNEAL**

3

4

5

6

7

8

Defendants, TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok, LLC, Meta Platforms, Inc., Instagram, LLC, Facebook Payments, Inc., Siculus, Inc., and Facebook Operations, LLC, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby serve the following Second Set of Requests for Production to Plaintiff Dymand McNeal ("Plaintiff"). These Requests are continuing, and Plaintiff is required to seasonably supplement their responses.

9

**DEFINITIONS**

10

11

The following definitions, which have been included in alphabetical order for ease of reference, apply to each of the following instructions, and requests for production and inspection:

12

13

1.      The term DEFENDANT or DEFENDANTS means any of the parties against whom YOU have brought a claim in YOUR COMPLAINT.

14

15

16

17

18

19

2.      The term "DEVICE" or "DEVICES" means each and every smartphone, tablet, video game console, computer, laptop computer, desktop computer, server, and any and all similar tangible object, device, or box that includes an operating system that can hold, store, receive, and transmit data used by YOU during the RELEVANT TIME PERIOD to access any social media platforms, specifically including any DEVICE you identified in response to Plaintiff Fact Sheet Section XIII.A.1.

20

21

22

3.      The term "DEVICE CLONE" or DEVICE IMAGE includes the plural and means a digital duplicate (including for example, iCloud backup, Google One backup, or local DEVICE backup or copy) of any DEVICE.

23

24

25

26

27

28

4.      The term "DOCUMENTS" refers to each and every writing or record, however produced or reproduced, whether draft or final, original or reproduction, paper or electronic, signed or unsigned, that is in YOUR possession, custody, or control or to which YOU otherwise have access, regardless of where located (e.g. paper, DEVICE, thumb drive, external flash drive, compact disk, computer disk and drive, etc.), INCLUDING any communication (INCLUDING all

2

forms of information transference written, oral or electronic, INCLUDING meetings, conferences, conversations, discussions, proposals, solicitations, interviews, correspondence, messages, and notes, as well as memoranda and records of communications), correspondence, emails, electronic information, data, letters, cellphone data, screenshots, screen time data or information, location information, search histories, journals, photographs, tape recordings, video recordings, movies, other data compilations from which information can be obtained, all materials similar to any of the foregoing, and all other DOCUMENTS and things subject to production under Rule 34 of the Federal Rules of Civil Procedure. All copies and versions of any document, which contain any notation, erasure, obliteration, marking, or writing of any kind different from the original shall be treated as an original document.

5.     The terms "INCLUDING" or "INCLUDES" shall be interpreted so as to identify a non-exhaustive set of examples (i.e., "INCLUDING") and to expand the meaning or interpretation of a term or question rather than limit any request to the specified examples.

6.     The terms "APPLICATION" for purposes of these Requests means any websites and/or applications that enable users to create, share and view content, participate in social networking, or send and/or receive messages and/or interact with one another in any form (e.g., text, images, audio, videos, etc.).  This INCLUDES but is not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, YouTube Kids, Band, Discord, Facebook Facetime, FamilyApp, GameChanger, Google Chat, Google Messages, GroupMe, Heja, iMessage, Kik, LINE, Microsoft Teams, Oovoo, Pinterest, Reddit, Signal, Slack, Sportlyzer, SportsEngine, sportsYou, StackSports, Teamer, TeamsReach, TeamApp, TeamSnap Telegram, Threads, Tumblr, Viber, WeChat, X (formerly known as Twitter), Yik Yak, and  Zoom.

7.     "RELATING TO" shall refer to constituting, comprising, concerning, containing, reflecting, setting forth, showing, disclosing, describing, explaining, summarizing, referring to, supporting, contradicting, proving, disproving, or tending to prove or disprove, directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the discovery rules contained in the Federal Rules of Civil Procedure. These terms should be

construed to apply not only to the events to which they refer directly, but also to all meetings, discussions, contacts, and other communications concerning those events, either with or between YOU and third persons.

8.    The term "RELEVANT TIME PERIOD" refers to the period from the time you turned seven (7) years old to April 1, 2024.

9.    The terms "YOU," "YOUR," "YOURSELF," and "PLAINTIFF" refer to the answering named Plaintiff unless this LAWSUIT was filed on behalf of a minor or decedent, in which case "YOU," "YOUR," "YOURSELF," and "PLAINTIFF" shall refer to such minor or decedent.

10.    In these requests, whether or not these defined words are capitalized, the singular shall include the plural, and the plural shall include the singular; "AND" shall include "OR" and "OR" shall include "AND;" "ANY" shall include "ALL" and "ALL" shall include "ANY."

## INSTRUCTIONS

A.    If YOU object to or otherwise decline to comply with any portion of any request, YOU shall provide all information requested by that portion of the request to which YOU do not object or with which YOU do not decline to comply.  If YOU object to a request on the ground that the request is too broad, YOU shall provide all information that YOU concede is relevant or calculated to lead to the discovery of admissible evidence.  If YOU object to a request on the ground that to provide the requested discovery would constitute an undue burden, YOU shall provide all requested discovery that can be supplied without undertaking what YOU claim is an undue burden. Defendants hereby agree that any such partial production AND answer shall not be deemed to be a waiver of YOUR objection to the parts of the request to which answers have not been made.  As to those portions of any request to which YOU object or with which YOU decline to comply, YOU shall state the reason or reasons for YOUR objection or declination.

B.    Each DOCUMENT and thing produced in response to the following request for production shall be marked and organized so as to relate the DOCUMENT or thing to the request or requests that seek it.

C.    Each request extends to all DEVICES or DEVICE CLONES and all DOCUMENTS in YOUR possession, custody, or control, or the possession, custody, or control of anyone acting on YOUR behalf.

### REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants request that YOU produce or produce for inspection the items requested below to counsel for Defendants listed below at Faegre Drinker LLP, 300 N. Meridian Street, Suite 2500, Indianapolis, IN 46204, within thirty (30) days of service of these Requests.

1.    All DEVICE CLONES, DEVICE IMAGES, or backups for YOUR DEVICES created at any time within the Relevant Time Period.  Please provide any login credentials necessary to access and copy this electronic information or data.  In the event this DEVICE backup is not retained locally, please execute the accompanying Cloud Storage Access Authorization.

2.    All DEVICES, INCLUDING all DEVICES that are no longer used but are in YOUR possession and control.  In the event YOU want to retain YOUR DEVICES, Counsel will make arrangements to have a neutral third party make and retain a DEVICE CLONE to preserve the evidence that remains on YOUR DEVICES and return the DEVICES to YOU thereafter. Please provide any login credentials necessary to permit a neutral third party to access and copy this electronic information or data.  Please execute the accompanying Device Access Authorization.

3.    All DOCUMENTS, electronic information, or data RELATING TO the usage of YOUR DEVICE and all APPLICATIONS used therewith, whether stored locally or remotely, INCLUDING any and all electronic information, DEVICE IMAGES, or data stored locally or remotely in the form of a DEVICE backup or in the form of APPLICATION data.  Counsel will make arrangements to have a neutral third party make and retain a copy of this information to preserve this evidence.  Please provide any login credentials necessary to permit a neutral third party to access and copy this electronic information or data.

DEFENDANTS' SECOND RFP
4:22-MD-03047-YGR

4.     DOCUMENTS sufficient to show the International Mobile Equipment Identity (IMEI) number, the Mobile Equipment Identifier (MEID) number, and the Media Access Control ("MAC") address for any and all DEVICES YOU used to access Defendant's Platforms, as specified in response to Plaintiff Fact Sheet Section XIII.A.1, including any and all private MAC addresses used.

6

1
2

Respectfully submitted,

Dated: May 22, 2024

3

By: /s/ Andrea R. Pierson
Andrea Roberts Pierson, *pro hac vice*
andrea.pierson@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

4
5
6
7

Amy Fiterman, *pro hac vice*
amy.fiterman@faegredrinker.com
Faegre Drinker LLP
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402
Telephone: + 1 (612) 766-7000
Facsimile: + 1 (612) 766-1600

8
9
10
11
12
13

*Attorneys for Defendants TikTok Inc.,*
*ByteDance Inc., ByteDance Ltd., TikTok Ltd.,*
*and TikTok, LLC*

By:/s/ Geoffrey M. Drake
Geoffrey M. Drake, *pro hac vice*
David Mattern, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
gdrake@kslaw.com
dmattern@kslaw.com

14
15
16
17
18
19

*Attorneys for Defendants TikTok Inc.,*
*ByteDance Inc., ByteDance Ltd., TikTok Ltd.,*
*and TikTok, LLC*

20

By: /s/ Gregory L. Halperin
Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1166
Facsimile: (212) 841-1010
ghalperin@cov.com

Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, pro hac vice
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Instagram, LLC;*
*Facebook Payments, Inc.; Facebook*
*Operations, LLC; and Siculus, Inc.*

21
22
23
24
25
26
27
28

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on May 22, 2024, a true and correct copy of Defendants' Second Requests for

Production to Plaintiff Dymand McNeal were served upon the following by email:

Emanuella J. Paulos
Levin, Papantonio, Rafferty, Proctor, Buchanan
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Phone: (850) 435-7061
Facsimile: (850) 436-6009
epaulos@levinlaw.com

*Attorney for Plaintiff*

By: /s/ Andrea R. Pierson
Andrea Roberts Pierson, *pro hac vice*
andrea.pierson@faegredrinker.com

*Attorney for Defendants TikTok Inc., ByteDance
Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

8

# EXHIBIT 2

*[Submitting Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR<br><br>**[PROPOSED] FORENSIC INSPECTION PROTOCOL** |
| This Document Relates to:<br><br>ALL ACTIONS | |

- 1 -

In this litigation, Plaintiffs allege that they have accessed Defendants' Platforms using one or more electronic devices.  (*See generally* Response to Plaintiff Fact Sheet XIII.A.1.)  Those devices contain relevant information, including for example, information about Plaintiffs' usage of their devices and Plaintiffs' communications concerning their conditions.  This evidence is not available to Defendants except through an examination of Plaintiffs' devices.  In order to preserve that evidence, [Defendants propose or the Parties agree] that forensic images or copies of the contents of those devices and any backups be made pursuant to the Protocol set forth below, and that non-privileged documents responsive to Defendants' discovery be produced by any Plaintiff selected as a bellwether Personal Injury Plaintiff.

**FORENSIC PROTOCOL**

For the purposes of evidence preservation, forensic examination, and document production, the Court **ORDERS** the Personal Injury Plaintiffs selected as bellwethers to produce for inspection and copying all electronic devices used to access Defendants' platforms, see generally Plaintiff Fact Sheet XIII.A.1, (collectively "Devices") and any Device backups ("Backups") Plaintiffs' may have made, as specified in the following protocol:

1.    Forensic Imaging Firm.  The Parties have agreed to use the services of [JOINT VENDOR] (the "Third Party Neutral") to oversee this process in accordance with the terms of this Protocol ("Protocol").

2.    Privacy Designations.  The Parties' Stipulated Second Modified Protective Order (Dkt. No. 665) applies to documents, information, and data collected or produced pursuant to this Protocol.

3.    Prior Forensic Images/Copies of Devices and Backups.  For any and all Personal Injury Plaintiffs selected as bellwethers who have already forensically imaged or copied their Devices and Backups, Plaintiffs' counsel will provide all such images and copies and any PINs or

- 1 -

passwords needed to access same to the Third Party Neutral by [DATE].  Plaintiffs' counsel must also provide Defendants and the Third Party Neutral with the date on which the forensic imaging or copying was performed and a description of the tools and methodologies used for forensically imaging or copying each Device and Backup.

4.     Access to Devices and Backups.  Counsel for Plaintiffs will provide the Third Party Neutral with access to each Device, and any PINs or passwords needed to access same by [DATE] to facilitate the creation of forensic images or copies.

5.     Forensic Imaging & Chain of Custody.

      a.   The Third Party Neutral will image or copy all Devices and Backups in a forensically-sound manner using industry standard tools agreed upon by the Parties.

      b.   The Third Party Neutral will retain access to Devices and Backups for the time period necessary to create (and perform quality control checks on) forensic images or copies of the Devices and Backups. Chain of custody over Devices and Backups will be maintained and documented during the creation of forensic images or copies. The Third Party Neutral will also maintain and document chain of custody for the forensic images or copies created.

6.     Production of Data and Information.  Data or information collected from Devices or Backups will be produced in the following manner:

      a.   The Third Party Neutral will send complete forensic images or copies of Devices and Backups to Plaintiffs' counsel for review. Plaintiffs' counsel will

- 2 -

review for responsiveness to discovery, for privilege, and for Child Sexual

Abuse Material ("CSAM"),[1] which must not be produced to Defendants.

    b. Counsel for Plaintiffs must log documents, data, or information withheld for

privilege in accordance with the Privilege Log Protocol (ECF No. 740).

    c. All responsive documents, data, or information collected from Devices or

Backups by the Third Party Neutral and not withheld for privilege will be

produced to the Parties within 14 days of receipt by Plaintiffs from the Third

Party Neutral.

    d. Resolution of disputes regarding claims of privilege will be in accordance with

Section H of the Court's Standing Order for Discovery in Civil Cases and the

Privilege Log Protocol, or any amendments thereto by the Court.

    7.   <u>End-of-Matter Disposition of Files</u>.  The Third Party Neutral will retain forensic images or copies of a Plaintiff's Devices and Backups until final resolution of the litigation, including any appeals.

    8.   <u>Responsibility for Fees</u>.  With respect to the tasks and activities described in this Protocol, Plaintiffs and Defendants will evenly split the cost of the Third Party Neutral's time and any costs incurred by the Third Party Neutral.

---

[1] As used herein, the term "CSAM" refers to child sexual abuse materials, (i.e. any visual depiction of sexually explicit conduct involving a person less than 18 years old).

1

**IT IS SO ORDERED.**

2

3

Dated: May __, 2024

4

_____

PETER H. KANG

UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -