```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        OAKLAND DIVISION

 4

 5     IN RE: SOCIAL MEDIA ADOLESCENT   )  4:22-MD-03047-YGR
       ADDICTION/PERSONAL INJURY        )
 6     PRODUCTS LIABILITY LITIGATION    )  SAN JOSE, CALIFORNIA
                                        )
                                        )  AUGUST 30, 2024
 7                                      )
                                        )  PAGES 1-46
 8                                      )
                                        )
 9                                      )
       _____  )
10

11                TRANSCRIPT OF PROCEEDINGS VIA ZOOM
             BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
12                  UNITED STATES DISTRICT JUDGE

13     A P P E A R A N C E S:

14     FOR THE PLAINTIFF:      BY:  LEXI JOY HAZAM
                               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
15                             275 BATTERY STREET, 29TH FLOOR
                               SAN FRANCISCO, CA 94111
16

17

18     FOR THE PLAINTIFF:      BY:  PREVIN WARREN
                               MOTLEY RICE LLC
19                             401 9TH STREET NW, SUITE 630
                               WASHINGTON, DC 20004
20

21                APPEARANCES CONTINUED ON THE NEXT PAGE

22

23     OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1    APPEARANCES CONTINUED:

2    FOR THE PLAINTIFF:      BY:  BIANCA MIYATA
     STATE OF COLORADO       COLORADO DEPARTMENT OF LAW
3                            1300 BROADWAY, 6TH FLOOR
                             DENVER, CO 80203
4

5    FOR THE PLAINTIFF:      BY:  JOHN CHRISTIAN LEWIS
     COMMONWEALTH OF KY      KENTUCKY OFFICE OF THE ATTORNEY GENERAL
6                            OFFICE OF CONSUMER PROTECTION
                             1024 CAPITAL CENTER DRIVE, SUITE 200
7                            FRANKFORT, KY 40601

8    FOR THE PLAINTIFF:      BY:  MEGAN O'NEILL
     PEOPLE OF THE STATE     OFFICE OF THE ATTORNEY GENERAL
9    OF CALIFORNIA           455 GOLDEN GATE AVENUE, 11TH FLOOR
                             SAN FRANCISCO, CA 94102
10

11   FOR THE DEFENDANT:      BY:  PAUL WILLIAM SCHMIDT
     META PLATFORMA INC.     COVINGTON AND BURLING LLP
12                           ONE CITY CENTER
                             850 TENTH STREET, NW
13                           WASHINGTON, DC 20001

14   FOR THE DEFENDANT:      BY:  JONATHAN HUGH BLAVIN
     SNAP INC.               MUNGER, TOLLES AND OLSON LLP
15                           560 MISSION STREET, 27TH FLOOR
                             SAN FRANCISCO, CA 94105
16

17   FOR THE DEFENDANT:      BY:  JOHN H. BEISNER
                             SKADDEN ARPS SLATE MEAGHER & FLOM
18                           1440 NEW YORK AVENUE, N.W.,
                             WASHINGTON, DC 20005
19

20   FOR THE DEFENDANT:      BY:  GEOFFREY DRAKE
     META PLATFORMS INC.     KING & SPALDING LLP
21                           1180 PEACHTREE ST.
                             ATLANTA, GA 30309
22

23   FOR THE DEFENDANT:      BY:  LAUREN GALLO WHITE
     YOUTUBE LLC             WILSON SONSINI GOODRICH AND ROSATI, PC
24                           ONE MARKET PLAZA
                             SPEAR TOWER, SUITE 3300
25                           SAN FRANCISCO, CA 94105
```

1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT:        **BY:  ASHLEY WALL HARDIN**
     TIKTOK, INC.              WILLIAMS AND CONNOLLY LLP
3                             725 12TH STREET
                             WASHINGTON, DC 20005

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            SAN JOSE, CALIFORNIA              AUGUST 30, 2024

 2                        P R O C E E D I N G S

 3            (COURT CONVENED AT 10:00 A.M.)

 4                THE COURT:  IN TERMS OF THE PEOPLE WHO ARE HERE, AS

 5       ALWAYS, WE WILL JUST FILE THE NOTICE OF APPEARANCES, WE WON'T

 6       HAVE EVERYBODY INTRODUCE THEMSELVES.

 7            I WOULD ASK THAT WHEN YOU ARE NOT SPEAKING, PLEASE TURN

 8       OFF YOUR VIDEO, IT MAKES IT EASIER FOR THE COURT REPORTER.

 9            MR. CUENCO.

10                THE CLERK:  YES, YOUR HONOR.  THANK YOU.

11            GOOD MORNING, EVERYONE.  THESE PROCEEDINGS ARE BEING COURT

12       REPORTED BY THIS COURT.  ANY OTHER RECORDING OF THIS

13       PROCEEDING, EITHER BY VIDEO, AUDIO, INCLUDING SCREENSHOTS OR

14       OTHER COPYING OF THE HEARING, IS STRICTLY PROHIBITED.

15            YOUR HONOR, NOW CALLING THE CIVIL MATTER 22-MD-3047-YGR.

16       IN RE SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY

17       PRODUCTS LIABILITY LITIGATION.

18            APPEARANCES WILL BE POSTED AS MENTIONED BY HER HONOR.

19            THANK YOU, EVERYONE.

20                THE COURT:  THANK YOU.

21            OKAY.  SO I HAVE YOUR ADMINISTRATIVE MOTION WHICH WE WILL

22       DISCUSS.  I DO WANT TO JUST MAKE ONE POINT.  I THINK THIS IS

23       THE FIRST TIME, MR. BEISNER, THAT I'VE SEEN YOU AT A HEARING.

24       I JUST DOUBLE CHECKED, IT LOOKED LIKE YOU FILED A NOTICE OF

25       APPEARANCE BACK IN 2023, BUT I HADN'T NOTICED THAT, THERE ARE A
```

1     LOT OF LAWYERS AFFILIATED WITH THIS CASE.

2          EVERYBODY SHOULD KNOW THAT MR. BEISNER AND I SIT ON THE

3     ALI COUNSEL TOGETHER, SO I DO SEE HIM, BUT NOW THAT I AM FIRMLY

4     AWARE THAT HE'S IN THIS CASE, I WILL NO LONGER SIT WITH HIM AT

5     DINNER OR FOR DRINKS OR ANYTHING LIKE THAT, WHICH IS MY

6     PRACTICE.  I HAVEN'T SAT AT DINNER WITH ELIZABETH CABRASER FOR

7     YEARS, GIVEN THAT SHE'S ALWAYS IN THESE CASES.  BUT I DO SEE

8     THEM REGULARLY, SO YOU ALL SHOULD KNOW THAT.

9          OKAY.  IT SEEMS TO ME THAT WHAT YOU ARE ASKING FOR IS A

10    SUBSTANTIALLY LONG PERIOD OF TIME GIVEN THE LIMITS AND NUMBER

11    OF PLAINTIFFS AT ISSUE, GIVEN THE STRENUOUS ARGUMENTS THAT WERE

12    MADE BY THE PLAINTIFFS THAT THEY NEEDED THE EXPEDITED SCHEDULE

13    THAT I GAVE THEM, GIVEN JUDGE KUHL'S RELUCTANCE TO EXTEND DATES

14    IN HER MATTER, SO I'M NOT INCLINED TO DO IT.

15         NOW, I MAY GIVE YOU A LITTLE BIT OF RELIEF, GIVEN THAT YOU

16    ARE ASKING, AND YOU ARE SUPPOSED TO BE ALL DONE WITH YOUR

17    SUBSTANTIAL COMPLETION OF DOCUMENTS BY SEPTEMBER, BUT YOU CAN

18    EXPLAIN TO ME WHY IT IS THAT YOU HAVEN'T BEEN ABLE TO FULFILL

19    YOUR STRONG BELIEF THAT I GAVE YOU ALL THAT WAS NECESSARY --

20    AND BY THE WAY, OVER DEFENSE OBJECTION.

21         MR. WARREN:  SO YOUR HONOR, I TAKE IT THAT QUESTION

22     IS DIRECTED TO PLAINTIFFS AND SO I WON'T --

23         THE COURT:  WELL, UNLESS -- I MEAN, IT IS A JOINT

24     REQUEST, SO I DON'T KNOW WHAT IS GOING ON.  JUDGE KANG DOESN'T

25     THINK THAT IT NEEDS TO -- YOU NEED THAT MUCH TIME EITHER.  SO

1    I'M TRYING TO UNDERSTAND WHY YOU ARE ASKING FOR AS MUCH TIME AS

2    YOU ARE.

3              MR. WARREN:  SURE.

4              THE COURT:  THIS IS A SPRAWLING MDL, AND IF WE DON'T

5    GET THIS FIRST PHASE DONE IN AN EXPEDITED WAY, IT WILL BE WITH

6    ME FOR THE REST OF MY JUDICIAL CAREER.

7              MR. WARREN:  WELL YOUR HONOR, WE DON'T WANT THAT.

8              THE COURT:  NOR DO I.

9              MR. WARREN:  I'M HAPPY TO TAKE THE FIRST PASS AT

10   THAT, BUT OF COURSE THE AG'S AND THE DEFENDANTS SHOULD ALSO

11   WEIGH IN.

12        WE DID SPEND A LOT OF TIME ON THIS MOTION TRYING TO GET

13   AGREEMENT ON WHAT WAS NEEDED.  THERE ARE A LOT OF CONTRIBUTING

14   FACTORS TO WHAT HAS CAUSED THE PARTIES TO ALL, YOU KNOW, AGREE

15   TOGETHER THAT THIS EXTENSION IS WARRANTED.

16        I THINK ONE OF THEM IS THE VOLUME OF DOCUMENTS THAT STILL

17   REMAIN TO BE PRODUCED ON BOTH SIDES.  YOU KNOW, THE CURRENT

18   ESTIMATES ARE IN THE MILLIONS OF DOCUMENTS THAT WE DON'T YET

19   HAVE, AND WE, PLAINTIFFS I WILL BE THE FIRST TO ACKNOWLEDGE,

20   STILL HAVE PRODUCTIONS TO MAKE AS WELL.

21        SOME OF THAT HAS BEEN DUE TO THE TECHNICAL NATURE OF SOME

22   OF THESE COLLECTIONS, WHICH HAS INVOLVED ON THE PLAINTIFFS'

23   SIDE, FORENSIC IMAGING OF DEVICES, ENSURING THAT WE HAVE

24   APPROPRIATE VENDORS TO SCREEN OUT CHILD SEXUAL ABUSE MATERIAL

25   SO THAT WE ARE HANDLING THAT IN A SAFE WAY THAT DOESN'T TRIGGER

1   ANY POTENTIAL LEGAL CONSEQUENCES FOR OUR VENDORS OR FOR US OR

2   FOR DEFENSE COUNSEL WHEN THE PRODUCTIONS GET MOVED OVER.

3        WE ARE ATTEMPTING TO SCHEDULE THE DEPOSITIONS AS

4   EXPEDITIOUSLY AS WE CAN, BUT IT'S NECESSARY FOR US TO RECEIVE

5   THE DOCUMENTS AND HAVE A CHANCE TO REVIEW THEM BEFORE WE CAN

6   REALLY UNDERTAKE THAT IN EARNEST, ALTHOUGH WE ARE STARTING AND

7   TRYING, AND WE HAVE SEVERAL SCHEDULED, MORE THAN A DOZEN, I

8   BELIEVE, ACROSS DEFENDANTS OVER THE COMING COUPLE MONTHS.

9        THE COURT:  SO DO YOU HAVE THAT LIST?

10       MR. WARREN:  LIST OF DEFENDANTS?

11       THE COURT:  LIST OF THE DEPOSITIONS THAT ARE NOW

12   SCHEDULED.

13       MR. WARREN:  I DON'T HAVE IT RIGHT NOW.

14       THE COURT:  WHO HAS IT?  DOES ANYBODY HAVE THE LIST?

15       MR. WARREN:  THE LIST CERTAINLY EXISTS, I JUST DON'T

16   KNOW WHERE TO GO TO LOOK FOR IT ON THE FLY, BUT I --

17       THE COURT:  OKAY.  MAYBE SOMEBODY OF THE 50 LAWYERS

18   IN THIS CASE CAN LOOK FOR THAT AND TELL ME SO I HAVE A BETTER

19   SENSE OF WHEN THESE THINGS ARE STARTING, HOW MANY YOU ARE DOING

20   A WEEK, RIGHT?  THIS IS NOT LIKE I HAVE THREE LAWYERS ON EACH

21   SIDE.

22       MR. WARREN:  YES, YOUR HONOR.

23       I THINK ONCE THE DEPOSITIONS BEGIN, WE WILL BE EXPECTING

24   TO DO MULTIPLE A WEEK.  YOU KNOW, TWO -- POTENTIALLY TWO PER

25   DEFENDANT PER WEEK, WHICH COULD WIND UP BEING SIX OR SEVEN OR

1    EIGHT PER WEEK.  AND THAT'S NOT COUNTING THE DEPOSITIONS THAT

2    WILL BE TAKEN OF THE BELWEATHER PLAINTIFFS AND THEIR TREATERS

3    AND ALL THE REST OF IT.  SO --

4              THE COURT:  OKAY.  SO WHEN IS THE FIRST OF THOSE

5    SCHEDULED TO START?  MAYBE THAT'S AN EASIER QUESTION FOR YOU TO

6    ANSWER.

7              MR. WARREN:  SURE.

8         THE FIRST I'M AWARE OF THAT'S SCHEDULED RIGHT NOW IS

9    OCTOBER 16TH.  THAT'S THE FIRST I'M PERSONALLY AWARE OF BUT I

10   MAY BE MISSING SOMETHING BECAUSE THERE'S ALWAYS DISCUSSIONS

11   THAT ARE HAPPENING BETWEEN OTHER PLAINTIFF'S COUNSEL AND OTHER

12   DEFENDANTS THAT I JUST MAY NOT KNOW OF.  BUT I'M AWARE OF A

13   META COMPANY WITNESS DEPOSITION THAT IS ON THE BOOKS FOR

14   OCTOBER 16TH AND 17TH.

15             MR. DRAKE:  YOUR HONOR, EXCUSE ME, GEOFFREY DRAKE FOR

16   TIKTOK.

17        WE ARE PRESENTING A WITNESS OCTOBER 10TH.  THAT MAY BE THE

18   FIRST.  THERE MAY BE HAVE A COUPLE OF DEPOSITIONS THAT HAVE

19   ALREADY OCCURRED, SOME 30(B)(6) DEPOSITIONS AND THE LIKE.  OUR

20   FIRST FACT WITNESS DEPOSITION IS OCTOBER 10TH AND 11TH.

21             MR. SCHMIDT:  AND IF IT WOULD HELP TO GIVE -- ON THE

22   META SIDE, I CAN GIVE THAT DATA, YOUR HONOR.

23        MR. WARREN IS CORRECT, OUR FIRST DEPOSITION IS

24   OCTOBER 16TH.  WE HAVE 14 PRESENTLY SET THROUGH THE END OF THE

25   YEAR.  SO ONCE THEY START, WE WILL BE LOOKING AT A COUPLE A

1      WEEK.

2                  MR. WARREN:  THAT'S RIGHT.  THE NEXT ONE AFTER

3      OCTOBER 16TH IS OCTOBER 21ST TO 22ND, THEN THERE'S ONE THE 24TH

4      THROUGH THE 25TH.  I BELIEVE ONE THE 29TH TO THE 30TH, AND SO

5      ON AND SO FORTH.

6                  THE COURT:  OKAY.  AND SO THEN WHY CAN'T DISCOVERY

7      CLOSE?  YOU ALREADY HAVE THESE SCHEDULED, WHY IS IT THAT IT

8      CAN'T CLOSE BY THE END OF THE SUMMER?

9                  MR. WARREN:  WELL YOUR HONOR, THE DISCOVERY ORDER

10     THAT JUDGE KANG ENTERED AND THE PARTIES NEGOTIATED PERMITS US

11     240 HOURS OF DEPOSITIONS FOR THE NON META DEFENDANTS AND SOME

12     EXTRA TIME FOR THE META DEFENDANTS TO ACCOMMODATE THE ATTORNEYS

13     GENERAL WHO ARE PARTNERS IN PROSECUTING THAT ASPECT OF THE

14     CASE.

15         YOU KNOW, THAT WINDS UP BEING ABOUT A THOUSAND HOURS OF

16     LIABILITY DEPOSITION.  IT'S ACTUALLY A LITTLE BIT MORE THAN

17     THAT, AND THAT'S BEFORE CONSIDERING THE DEPOSITIONS OF THE

18     PLAINTIFFS THAT ALSO NEED TO BE ACCOUNTED FOR.

19         SO A THOUSAND HOURS OF DEPOSITIONS WINDS UP BEING, YOU

20     KNOW, IF YOU CONSIDER EACH TO BE A SEVEN-HOUR DEPOSITION DAY,

21     IT WINDS UP BEING WELL NORTH OF 100 DAYS THAT WE WOULD HAVE TO

22     SIT TO DO THAT.

23         AND I DON'T ACTUALLY THINK THERE'S ENOUGH TIME BETWEEN

24     WHEN WE ARE ANTICIPATED TO RECEIVE ALL THE DOCUMENTS TO WHEN

25     THE FACT DISCOVERY PERIOD CURRENTLY ENDS.  AND WE DO NEED TO

1    BUDGET IN SOME TIME TO REVIEW THE DOCUMENTS WHICH IS A

2    SUBSTANTIAL UNDERTAKING GIVEN THE VOLUME THAT WE ARE GOING TO

3    BE RECEIVING.

4         THE COURT:  SUBSTANTIAL COMPLETION OF DOCUMENT --

5    WELL, LET ME ASK, IT'S TWO PARTS BECAUSE I UNDERSTAND THAT THE

6    PLAINTIFFS -- AS I REVIEWED THE BACKGROUND, ALL FORENSIC DATA

7    FROM ALL OF THEIR PHONES WAS DUE TODAY.  IS THERE COMPLIANCE?

8         MR. WARREN:  YOUR HONOR, MY UNDERSTANDING IS ALL

9    FORENSIC DATA WAS DUE TO BE COLLECTED TODAY, AND I BELIEVE

10   THERE IS COMPLIANCE WITH THAT.

11        THE COURT:  AND WHEN IS IT THEN?  I MISREAD.  WHEN IS

12   IT GOING TO BE TURNED OVER TO THE PLAINTIFF -- TO THE

13   DEFENDANTS?

14        MR. WARREN:  I DON'T HAVE AN ANSWER ON THAT, I THINK

15   IT MAY VARY BY BELWEATHER, BUT WE ARE CERTAINLY GOING TO BE

16   ROLLING IT OUT AS FAST AS WE CAN.

17        I THINK ONE HICCUP SEEMS TO BE IN THE JCCP WHERE THE

18   PARTIES ARE NEGOTIATING THE CSAM-RELATED PROTOCOL.  I DON'T

19   BELIEVE THAT WE NECESSARILY NEED THAT IN THE MDL, BUT THAT

20   MAY -- THAT'S NOT A FUNCTION OF US TRYING TO SLOW ANYTHING

21   DOWN, BUT I THINK THE DEFENDANTS MAY HAVE ASKED FOR SOMETHING

22   LIKE THAT BEFORE WE HAND THEM OVER THE DEVICES BECAUSE THEY

23   DON'T WANT TO BE INADVERTENTLY IN POSSESSION OF THAT MATERIAL.

24        THE COURT:  MR. BEISNER?

25        OR WHOEVER IS IN CHARGE OF THAT ISSUE, YOU ARE THE ONLY

```
 1          DEFENSE LAWYER I WAS SEEING.
 2                 MR. SCHMIDT:  I CAN ACTUALLY SPEAK TO THAT,
 3          YOUR HONOR.
 4              I DON'T KNOW THAT WE ACTUALLY ARE DEMANDING A SIMILAR
 5          ORDER IN THE MDL, AND WE DON'T YET HAVE ANY OF THAT FORENSIC
 6          DATA.
 7                 THE COURT:  OKAY.
 8              SO WHAT IS -- AGAIN, I THOUGHT THAT ALL OF THIS WAS
 9          HAPPENING THIS MONTH, SO I MISREAD THE NOTES THAT I RECEIVED ON
10          THE DISCOVERY TOPIC.
11              I THOUGHT THAT -- YOU KNOW, THERE WERE THREE ROLLOUTS IN
12          AUGUST AND I THOUGHT THOSE ROLLOUTS WERE TO THE DEFENDANTS.  SO
13          IS THERE A DEADLINE TO ROLL IT OUT TO THE DEFENDANTS?  NOW THAT
14          YOU SAID THAT YOU HAVE COMPLIED WITH AT LEAST THIS FIRST PHASE,
15          AND THEN I WILL NEED TO KNOW FROM THE DEFENDANTS HOW MUCH TIME,
16          YOU KNOW, ASSUMING THAT I'VE GOT A DEADLINE FOR WHEN THEY ARE
17          GOING TO GET YOU THIS INFORMATION, WHEN ARE YOU GOING TO BE
18          PREPARED TO TAKE THOSE DEPOSITIONS?
19                 MR. WARREN:  SO YOUR HONOR, I DON'T BELIEVE WE HAVE
20          NEGOTIATED A PRODUCTION DEADLINE FOR THOSE OTHER THAN THE
21          COMPLETION -- BUT WE ARE HAPPY TO --
22                 THE COURT:  WELL FRANKLY, AT A MINIMUM, IT HAS TO BE
23          DONE BY SEPTEMBER 20TH, RIGHT?  I MEAN, YOU MAY WANT TO
24          NEGOTIATE SOMETHING BUT YOU HAVE AN ORDER TO DO IT BY NO LATER
25          THAN SEPTEMBER 20TH.
```

1          MR. WARREN:  CORRECT, YOUR HONOR.

2          THE COURT:  ONE WOULD HAVE EXPECTED IT WOULD HAVE

3    HAPPENED BEFORE THEN, BUT CERTAINLY AT A MINIMUM IT SHOULD HAVE

4    GOTTEN THERE BEFORE THAT.

5          SO ASSUMING OUTSIDE, AT THE WORST, IT'S SEPTEMBER 20TH,

6    WHEN ARE THE DEFENDANTS GOING TO BE ABLE TO PROCESS THAT

7    INFORMATION SO THAT YOU CAN TAKE THOSE DEPOSITIONS?  AND THE

8    PLAINTIFFS WILL MAKE THEMSELVES AVAILABLE.

9          ANY DEFENSE LAWYER WANT TO RESPOND?

10         MR. DRAKE:  I CAN RESPOND TO THAT, YOUR HONOR.

11         I THINK UNDER THE ORIGINAL EXISTING SCHEDULE, OF COURSE,

12   WHICH IS THE ONLY ONE THAT WE HAVE BEFORE US, SO UNDER THE

13   EXISTING ORDER, THE PLAN WAS TO PROCEED IN TAKING THE FACT AND

14   TREATER DEPOSITIONS IN THE PERSONAL INJURY CASES IN OCTOBER AND

15   NOVEMBER AND THE FIRST THREE WEEKS OF DECEMBER PRIOR TO THE

16   DECEMBER, PRIOR TO THE DECEMBER 20TH CUTOFF, OF COURSE.

17         WE ARE AWAITING NOT ONLY THE PRODUCTION OF THE FORENSIC

18   IMAGES, BUT THERE IS A LOT OF OTHER DISCOVERY GOING ON ON THE

19   PERSONAL INJURY SIDE.  I WILL PUT THE SCHOOL DISTRICT CASES TO

20   THE SIDE FOR A MOMENT, BUT JUST ON THE ISSUE THAT YOUR HONOR

21   INQUIRED ABOUT, THAT WAS THE INTENTION UNDER THE EXISTING COURT

22   ORDER.

23         THE COURT:  WELL THAT DIDN'T REALLY ANSWER MY

24   QUESTION.  THE QUESTION IS:  HOW MUCH TIME DO YOU NEED?  IS IT

25   YOUR REQUEST -- IS IT THE COLLECTIVE REQUEST FOR THE DEFENDANTS

1    TO ALSO HAVE FOUR EXTRA MONTHS?

2              MR. DRAKE:  YES, YOUR HONOR.

3              THE COURT:  WELL AGAIN, I FIND IT TO BE TOO LONG

4    UNLESS I HEAR SOME REASON TO KNOW OTHERWISE.

5         SO WHEN YOU GET THIS DATA THIS MONTH, WHY IS IT THAT YOU

6    NEED FOUR PLUS THREE, SEVEN MONTHS TO GET ALL THIS DONE, AT

7    LEAST WITH RESPECT TO THIS ISSUE?

8              MR. DRAKE:  WELL I DON'T THINK, YOUR HONOR, THAT WE

9    ARE SUBMITTING THAT WE NEED SEVEN MONTHS JUST TO DEAL WITH THE

10   FORENSIC IMAGING ON THE PHONES.

11             THE COURT:  I GET IT, THAT'S WHY I'M ASKING SPECIFIC

12   QUESTIONS, BECAUSE YOU HAVE SENT ME A THREE-PAGE DOCUMENT THAT

13   GIVES ALL THIS TIME AND I HAVE NO DATA TO EVALUATE THE CLAIM.

14             MR. DRAKE:  WELL, THE DEVICE IMAGING IS ONE

15   PARTICULAR ISSUE, YOUR HONOR, THAT ONCE WE RECEIVE THE IMAGING

16   AND THE INFORMATION FROM THE DEVICES, I DO BELIEVE THAT THE

17   DEFENSE CAN SYNTHESIZE THAT INFORMATION WITH OUR VENDOR IN A

18   RELATIVELY EXPEDIENT PERIOD OF TIME.

19        THERE ARE SEVERAL OTHER ISSUES.  JUST FOCUSING ON THE

20   PERSONAL INJURY CASES, THERE ARE STILL OUTSTANDING DISCUSSIONS

21   AROUND DOCUMENT REQUESTS, THERE'S OUTSTANDING WORK BEING

22   CONDUCTED, IN TERMS OF COLLECTING MEDICAL, EDUCATIONAL AND

23   OTHER SORTS OF RECORDS.  THE PARTIES ARE STILL ENGAGED IN

24   NEGOTIATING SEARCH TERMS THAT RELATE TO VARIOUS ASPECTS OF THE

25   FORENSIC IMAGING THAT WE ARE DISCUSSING RIGHT NOW.  THERE ARE

1    THIRD PARTY SUBPOENAS THAT HAVE BEEN ISSUED AND THAT ARE

2    PENDING.

3        SO THOSE ARE A FEW OF THE EXAMPLES IN PLACE ON THE

4    PERSONAL INJURY SIDE, AND MR. BEISNER I THINK MAY HAVE A FEW

5    OTHER ADDITIONS TO THAT LIST.  HE HAD HIS HAND --

6        THE COURT:  HE DID HAVE HIS HAND UP.  HE'S NOW GONE.

7        MR. SCHMIDT:  I WOULD ADD, IF I MAY, YOUR HONOR, JUST

8    A LITTLE BIT TO THAT.

9        THERE'S OBVIOUSLY THE SCHOOL DISTRICT CASES WHERE WE HAVE

10   NOT YET RECEIVED DOCUMENTS.  WE HAVE BEEN PUSHING FOR DOCUMENTS

11   WE HAVE NOT YET RECEIVED.  AND THEN IN THE STATE AG CASES THAT

12   ARE META ONLY, WE ARE PROGRESSING WITH DISCOVERY.

13       WE HAVE A DISPUTE THAT'S BEEN PENDING FOR SOME MONTHS THAT

14   PRETTY PROFOUNDLY IMPACTS DISCOVERY THAT WE ARE WAITING FOR A

15   RESOLUTION ON WHICH IS WHETHER THE STATE ATTORNEYS GENERAL HAVE

16   AN OBLIGATION TO COLLECT DOCUMENTS FROM VARIOUS STATE AGENCIES.

17   WE BELIEVE THEY DO, THEY BELIEVE THEY DON'T AND WE ARE WAITING

18   FOR THE COURT'S GUIDANCE ON THAT.

19       IN THE INTERIM WE HAVE BEEN --

20       THE COURT:  SO ARE YOU WAITING FOR ME ON THAT OR ARE

21   YOU WAITING FOR JUDGE KANG ON THAT?

22       MR. SCHMIDT:  FOR JUDGE KANG, YOUR HONOR.

23       AND I SHOULD SAY, IN THE INTERIM WE HAVE BEEN PRESSING

24   AHEAD WITH THIRD PARTY SUBPOENAS AS WE ATTEMPT TO GET THAT

25   INFORMATION, BUT THOSE ARE NARROWER, THIRD PARTY DISCOVERY IS

1    OBVIOUSLY DIFFERENT FROM PARTY DISCOVERY.

2              THE COURT:  NO, AND I CAN APPRECIATE THAT, BUT I WAS

3    UNDER THE IMPRESSION THAT THOSE SUBPOENAS WERE ISSUED MONTHS

4    AGO AND THAT WAS THE REASON WHY THESE PEOPLE WERE IDENTIFIED AT

5    SUCH AN EARLY, YOU KNOW, TIME IN THE WHOLE TRAJECTORY OF THIS

6    CASE, WAS TO TRY TO GET INFORMATION AND NARROW THE POOL SO THAT

7    PEOPLE COULD FOCUS.

8         I HAVE TO TELL YOU THAT, YOU KNOW, EXTENDING DEADLINES SO

9    YOU ALL CAN JUST NEGOTIATE MORE DOES NOT HELP YOU.  YOU MAY

10   THINK IT DOES, BUT IT DOESN'T.

11             PERHAPS NEGOTIATIONS ARE OVER, YOU GIVE YOUR -- YOU KNOW,

12   AND JUDGE KANG JUST HAS TO DECIDE AND SAY PRODUCE OR NOT

13   PRODUCE.  HE'S ALREADY TOLD YOU ALL OF THIS EVIDENCE REGARDING

14   THE OTHER EMOTIONAL ISSUES THAT THE PLAINTIFFS COULD HAVE BEEN

15   SUFFERING IS TOTALLY PROBATIVE AND RELEVANT TO THESE CASES.  SO

16   IF YOU ARE STILL NEGOTIATING THOSE -- AND I AGREE WITH HIM, BY

17   THE WAY -- IF YOU ARE STILL NEGOTIATING THAT, IT'S A WASTE OF

18   TIME.

19             MR. SCHMIDT:  IF I MAY SPEAK TO THAT FOR A MOMENT,

20   YOUR HONOR.

21             THE COURT:  YOU MAY.

22             MR. SCHMIDT:  I THINK THERE ARE PROBABLY DIFFERENT

23   BUCKETS OF ISSUES.  FROM META'S PERSPECTIVE, OUR BIGGEST BUCKET

24   IS OUR AFFIRMATIVE, OF THE DISCOVERY THAT WE ARE PROVIDING, WE

25   HAVE HAD VERY, VERY LENGTHY NEGOTIATIONS WITH THE PLAINTIFFS

1    OVER THAT.  SOME OF IT CONTESTED, A LOT OF IT WE HAVE BEEN ABLE

2    TO RESOLVE.  AND THROUGH THAT, WE HAVE MADE MATERIAL PROGRESS,

3    BUT THAT HAS STRETCHED THINGS OUT, FROM OUR PERSPECTIVE.

4        THE DISCOVERY WAS BROADER THAN WE ANTICIPATED AND I CAN

5    SPEAK TO THAT, IF USEFUL, BUT THERE IS A PLACE WHERE THERE'S

6    BEEN REAL PROGRESS, IT'S JUST BEEN LONGER.  WE ARE NOT ASKING

7    FOR AN EXTENDED PERIOD ON THAT TO CONTINUE THOSE NEGOTIATIONS,

8    I THINK WE'VE MADE SUBSTANTIAL PROGRESS ON THAT, JUST SLOWLY.

9        AND WE HAVE PRODUCED A MASSIVE VOLUME OF DOCUMENTS, WE

10    WILL BE PRODUCING FURTHER DOCUMENTS, IT'S JUST NOW SCHEDULING

11    THE DEPOSITIONS OF OUR COMPANY PEOPLE.

12        IT'S BEEN A LITTLE LONGER, I THINK FROM OUR PERSPECTIVE,

13    ON THE DISCOVERY FROM PLAINTIFFS, BUT IT'S NOT SIMPLY THAT WE

14    ARE SAYING WE NEED MORE TIME SO WE CAN NEGOTIATE, WE ARE TRYING

15    TO RIPEN ISSUES AS QUICKLY AS WE CAN.

16        AND I THINK WE BOTH EXPRESS FRUSTRATION WITH THE OTHER

17    SIDE ON THAT, BUT WE HAVE TRIED TO WORK ON THAT ACROSS THE TWO

18    SIDES.

19            MR. WARREN:  YOUR HONOR, MAY I BE BRIEFLY HEARD ON

20    THAT?

21            THE COURT:  YOU MAY.

22            MR. WARREN:  I THINK THAT MR. SCHMIDT IS RIGHT, I

23    THINK THAT WE HAVE HAD SOME VERY PRODUCTIVE NEGOTIATIONS, AND

24    AT THIS JUNCTURE HAVE LARGELY RESOLVED DISCOVERY DISPUTES WITH

25    META, BUT NOT ENTIRELY.

1         I THINK THE PURPOSE OF THE EXTENSION, FROM OUR

2    PERSPECTIVE, IS LARGELY TO INGEST AND REVIEW WHAT WE ANTICIPATE

3    TO STILL BE MANY MILLIONS OF DOCUMENTS.

4         TO DATE WE HAVE RECEIVED SOMEWHERE BETWEEN 500,000 OR

5    800,000 BUT WE HAVE COME TO UNDERSTAND FROM THE DEFENDANTS THAT

6    THAT IS A MINORITY OF THE DOCUMENTS THAT WILL ULTIMATELY BE

7    PRODUCED IN THIS CASE, NOT EVEN HALF.

8         NOW WE HAVE NOT BEEN GIVEN FIRM ESTIMATES FROM THE

9    DEFENDANTS AS TO WHAT THE VOLUME WILL BE, BUT TO THE BEST OF

10   OUR UNDERSTANDING IT COULD EXCEED FIVE MILLION DOCUMENTS IN

11   TOTAL.

12        IT IS A SUBSTANTIAL UNDERTAKING FOR PLAINTIFFS' COUNSEL,

13   NO MATTER HOW WELL RESEARCHED WE ARE AND HOW MANY FIRMS ARE

14   INVOLVED IN THE PSC TO REVIEW THAT AMOUNT OF MATERIAL, WE ARE

15   DOING OUR BEST TO UTILIZE TECHNOLOGY TO ASSIST US IN THAT

16   PROCESS AND BE AS EFFICIENT AS WE POSSIBLY CAN BE.

17        WE HAVE NOT HELD UP THE SCHEDULING OF DEPOSITIONS,

18   NOTWITHSTANDING THAT WE ARE STILL MISSING ALL THESE DOCUMENTS,

19   BUT WE HAVE TRIED TO WORK WITH DEFENDANTS INSTEAD TO PHASE

20   THEIR PRODUCTIONS SO THAT CERTAIN CUSTODIAL FILES GET PRODUCED

21   SOONER SO THAT WE CAN GET THOSE DEPOSITIONS TAKEN CARE OF

22   SOONER, AND IN FACT SOME CUSTODIAL FILES HAVE BEEN COMPLETED IN

23   THEIR PRODUCTION, OR AT LEAST SUBSTANTIALLY SO, AT LEAST AS

24   DEFENDANTS HAVE REPRESENTED IT.

25        SO WE HAVE REALLY TRIED OUR BEST TO MAKE THIS EFFICIENT,

1    AND IT HAS NOT GONE AS QUICKLY AS ANYBODY WOULD LIKE, BUT I DO

2    ANTICIPATE THAT WE ARE SWIFTLY EXITING THE PHASE OF LONG

3    PROTRACTED NEGOTIATIONS AND SWIFTLY ENTERING THE PHASE OF, YOU

4    KNOW, AN EXTREMELY HIGH VOLUME OF DEPOSITIONS THAT THE PARTIES

5    WILL BE WORKING TOGETHER TO SCHEDULE AND UNDERTAKE.

6         AND UNFORTUNATELY WE JUST -- YOU KNOW, WE, I THINK

7    COLLECTIVELY, FEEL LIKE THERE WAS SOME SLIPPAGE AND WE DO NEED

8    A LITTLE BIT MORE TIME TO GET THAT WORK DONE.  BUT WHAT WE

9    TRIED TO DO COLLECTIVELY ACROSS THE GROUPS WAS COME UP WITH A

10   SCHEDULE THAT WOULD BE ONE AND DONE SO THAT WE WILL NEVER HAVE

11   TO HAVE THIS CONVERSATION WITH YOUR HONOR AGAIN AND WE CAN HOPE

12   TO REALLY VIGOROUSLY ATTACK THESE DEADLINES AND MEET ALL OF

13   THEM WITHOUT HAVING TO SEEK ANY FURTHER EXTENSIONS WHICH I KNOW

14   WOULD BE POORLY RECEIVED.

15         THE COURT:  MR. SCHMIDT, WHEN ARE THESE FIVE MILLION

16   DOCUMENTS GOING TO BE PRODUCED?

17         MR. SCHMIDT:  WE WERE ON TRACK TO PRODUCE THE BULK OF

18   OUR DOCUMENTS BY THE SUBSTANTIAL COMPLETION DEADLINE, INCLUDING

19   FOCUSING ON THE CUSTODIANS.  THEY HAVE REQUESTED -- AS I

20   MENTION, WE HAD A VERY LONG PROCESS OVER SEARCH TERMS AND

21   CUSTODIANS AND CAME OUT WITH A POORLY CUSTODIAN-WISE SEARCH

22   TERM, A VERY BROAD SET OF DOCUMENTS.

23         SO WE HAVE BEEN WORKING TOWARDS THAT SUBSTANTIAL

24   COMPLETION DEADLINE AND WE ARE ON TRACK FOR IT IN SUBSTANTIAL

25   FORM, FOCUSING PARTICULARLY ON, THEY HAD -- THE PLAINTIFFS HAD

```
1        INITIALLY IDENTIFIED A LARGE NUMBER OF WITNESSES, WE HAD

2        STARTED SCHEDULING THEM AND PRODUCING DOCUMENTS FOR THEM AND

3        THEY TOOK DOWN SOME OF THE DEPOSITIONS AS WE WORKED THROUGH

4        DOCUMENT ISSUES, AND FOR THOSE PEOPLE, CERTAINLY WE WERE ON

5        TRACK FOR THE SEPTEMBER 20TH DEADLINE.

6            WE ARE BEHIND ON THE PLAINTIFFS' SIDE, TO THE QUESTION I

7        THINK YOUR HONOR ASKED AT THE BEGINNING ABOUT THE SCANNING FROM

8        THE PHONES.  WE HAD ASKED THAT WE BE ABLE TO DO THAT,

9        JUDGE KANG DENIED THAT, SO THAT IS WORKING THROUGH PLAINTIFFS,

10       WE DON'T HAVE THAT YET, I THINK WE ARE EVEN FURTHER BEHIND ON

11       THE SCHOOL DISTRICT CASES AND WE ARE WORKING ON THAT.

12            THE COURT:  OKAY.  SO WHAT IS GOING ON IN THE SCHOOL

13        DISTRICT CASES?

14            MS. HAZAM:  YOUR HONOR, IF I MAY, LEXI HAZAM FOR

15        PLAINTIFFS.

16            THE SCHOOL DISTRICTS HAVE ENTERED INTO AGREEMENT WITH THE

17       DEFENDANTS TO FINALIZE SEARCH TERMS PRIOR TO THE NEXT HEARING

18       WE HAVE WITH JUDGE KANG SO THAT IF THERE ARE ANY REMAINING

19       DISPUTES REGARDING THEM, THEY ARE TEED UP AND RESOLVED IN

20       SEPTEMBER.

21            AND THEN WE WOULD BE PROPOSING, THROUGH OUR ADMINISTRATIVE

22       MOTION, A SUBSTANTIAL COMPLETION DEADLINE OF NOVEMBER 5TH;

23       HOWEVER, WE HAVE ALSO BEEN OPEN AS TO THE SCHOOL DISTRICTS

24       PHASING PRODUCTIONS FOR PRIORITY CUSTODIANS IN THE MANNER THAT

25       DEFENDANTS ARE DOING FOR SOME OF THEIR WITNESSES AS WELL.
```

1       IN OTHER WORDS, EVEN THOUGH THE PROPOSED NEW SUBSTANTIAL

2    COMPLETION DATE WOULD BE IN NOVEMBER, WE ARE AGREEABLE TO

3    ADVANCING THAT DATE FOR CERTAIN CUSTODIANS SO THAT THEY CAN BE

4    DEPOSED SOONER.  SO BOTH PARTIES HAVE ENGAGED IN THAT KIND OF

5    CONVERSATION TO DATE.

6       I WILL ALSO JUST BRIEFLY NOTE AS TO THE PERSONAL INJURY

7    BELWEATHER CASES, THAT THOSE SEARCH TERMS, AT LEAST THE ONES

8    THAT CUT ACROSS ALL OF THE PERSONAL INJURY PLAINTIFFS ARE

9    RESOLVED, AND MOST OF THE PLAINTIFF SPECIFICS SEARCH TERMS ARE

10   NOW RESOLVED AS WELL, AND AS MR. WARREN EARLIER INDICATED, ALL

11   OF THE DEVICES HAVE BEEN IMAGED BY THE DEADLINE SET BY

12   JUDGE KANG.

13      SO NOW WE HAVE THE TERMS TO APPLY TO THE IMAGED DEVICES,

14   THE ONLY REMAINING PIECE IS TO NEGOTIATE WITH DEFENDANTS WHICH

15   APPS FROM THE DEVICES ARE RELEVANT.  AND WE HAVE REPEATEDLY

16   INVITED THAT CONVERSATION AND I BELIEVE IT HAS AT LEAST BEGUN

17   AND IS UNDER WAY.  THERE ARE REGULAR REPORTS TO JUDGE KANG ON

18   THE STATUS OF THE DEVICE ISSUE.

19      I WOULD ALSO NOTE FOR YOUR HONOR ONE OTHER FACTOR HERE,

20   AND THAT IS THE ACTIONS THAT ARE NOT PART OF THIS MDL OR PART

21   OF THE JCCP, THESE ARE ACTIONS BROUGHT BY ATTORNEYS GENERAL IN

22   THEIR STATE COURTS, AND UNDER THE ORDER ENTERED BY JUDGE KANG,

23   PLAINTIFFS HAVE THE OBLIGATION TO CROSS-NOTICE ANY SUCH

24   DEPOSITIONS IF THEY WISH TO TAKE THEM, AND IF WE DON'T

25   CROSS-NOTICE THEM, WE MAY THEN BE UNABLE TO NOTICE THEM SO THAT

1    THEY ARE SITTING FOR A DEPOSITION A SECOND TIME IN THE MDL AND

2    JCCP, AND WE HAVE GONE TO GREAT LENGTHS TO TRY TO COORDINATE

3    WITH OTHER STATE AG'S ON THAT PROCESS IN ORDER TO HAVE ALL OF

4    THOSE WITNESSES DEPOSED ONCE.

5        BECAUSE THERE ARE SO MANY GROUPS OF PLAINTIFFS INVOLVED,

6    THOSE DEPOSITIONS MAY EXTEND PAST SEVEN HOURS, THE LIMIT SET BY

7    JUDGE KANG IS 12.  SO THOSE COORDINATION EFFORTS HAVE BEEN

8    INTENSE, BUT THEY HAVE BEEN PRODUCTIVE.  THEY MAY HAVE CREATED

9    A SLIGHTLY LONGER RUNWAY ON THE FRONT END BUT I BELIEVE THE

10   PAYOFF WILL BE VERY LARGE WHEN THESE DEPOSITIONS ARE ACTUALLY

11   TAKING PLACE.

12       SO AS TO THE META DEPONENTS AT LEAST, THE DEPOSITIONS THAT

13   WE HAVE BEEN TALKING ABOUT ARE DEPOSITIONS THAT A NUMBER OF

14   THOSE STATE AG'S WILL BE PARTICIPATING IN AS WELL, AND WE AND

15   META, I BELIEVE, HAVE SOUGHT GENERAL ALIGNMENT ON THE FACT

16   DISCOVERY SCHEDULE AS WELL.

17           MS. MIYATA:  AND YOUR HONOR, BIANCA MIYATA FOR THE

18   MDL STATE AG'S, IF I COULD ADD JUST A LITTLE BIT OF TEXTURE TO

19   WHAT MS. HAZAM HAS ADDED.

20       THERE ARE APPROXIMATELY BETWEEN THREE AND FOUR DOZEN

21   DEPOSITIONS THAT ARE CURRENTLY BEING COLLABORATIVELY SCHEDULED,

22   COLLABORATIVELY PLANNED BY THE STATE AG'S, THE PISD PLAINTIFFS,

23   AS WELL AS THE STATE OF TENNESSEE AND THE STATE OF

24   MASSACHUSETTS.

25       SO GIVEN ALL THE PLAYERS IN THE ROOM, WE BELIEVE IT WILL

```
 1    ULTIMATELY INCREASE THE EFFICIENCY AND ALLOW FOR THESE

 2    WITNESSES FROM META TO SIT FOR A SINGLE DEPOSITION, BUT IT HAS

 3    TAKEN A LITTLE BIT OF TIME, AND AS MS. HAZAM NOTED, EXPANDED

 4    THE RUNWAY NEEDED FOR US TO GET THOSE SCHEDULED AND ON

 5    CALENDAR.

 6              THE COURT:  SO ARE THEY ON CALENDAR?

 7              MS. MIYATA:  RIGHT NOW -- I'M LOOKING AT MY LIST,

 8    YOUR HONOR, AND I BELIEVE WE CURRENTLY HAVE -- I THINK AS

 9    MR. SCHMIDT NOTED, I THINK HIS NOTES SAID 14, MY NOTES SAY 12

10    BUT I COULD BE A SMIDGE BEHIND THE TIMES, AND WE ARE CURRENTLY

11    DISCUSSING AN ADDITIONAL FOUR WITNESSES TO PUT ON CALENDAR

12    BEFORE THE END OF 2024.

13         THE ADDITIONAL WITNESSES WE ARE WORKING TO SCHEDULE, BUT I

14    BELIEVE WE HAD PUT A PIN IN THAT SCHEDULING PENDING THIS

15    COURT'S RESOLUTION OF OUR REQUEST ON THE SCHEDULE.

16              MR. SCHMIDT:  THAT'S CORRECT AS WELL FROM OUR

17    POSITION, YOUR HONOR.  WE HAVE 14 SCHEDULED.  THEY HAD COME TO

18    US FOR 37, THAT WAS THE NUMBER THAT WE HAVE BEEN PRODUCING --

19    PRIORITIZING IN TERMS OF OUR PRODUCTION, AND WE WERE ON TRACK

20    TO MEET OUR PRODUCTION OBLIGATIONS REGARDING THOSE 37.

21         I'M NOT SURE WE HAVE GIVEN PROJECTIONS AS TO HOW MANY MORE

22    DOCUMENTS WE HAVE FORTHCOMING, THAT'S OBVIOUSLY HARD TO

23    ESTIMATE WHEN WE HAVEN'T REVIEWED THE DOCUMENTS, ALTHOUGH WE

24    HAVE TRIED TO DO ESTIMATES AS BEST WE CAN.  TO DATE, WE HAVE

25    PRODUCED ABOUT 6.2 MILLION PAGES, I THINK THE HALF MILLION
```

1    DOCUMENT NUMBER MR. WARREN GAVE EARLIER.

2         WE HAVE BEEN PUTTING -- AND I THINK THIS IS TRUE ACROSS

3    THE DEFENDANTS -- WE HAVE BEEN PUTTING AN IMMENSE AMOUNT OF

4    TIME INTO MAKING THESE DOCUMENT PRODUCTIONS IN RESPONSE

5    PARTICULARLY TO THE PRIORITY DEPONENTS THE PLAINTIFFS HAVE

6    IDENTIFIED.

7         MS. MIYATA:  AND I BELIEVE WE HAVE CUSTODIAL FILES,

8    SUBSTANTIALLY COMPLETED AT THIS TIME FOR APPROXIMATELY A

9    HANDFUL OF THOSE DEPONENTS, BUT NOT FOR THE REMAINDER.

10        SO I THINK THAT'S ONE OF THE FACTORS THAT WE CONTINUE TO

11   NEGOTIATE AND DISCUSS WITH META AND META'S COUNSEL FOR HOW TO

12   GET THOSE THINGS CALENDARED IN AN APPROPRIATE WAY THAT'S

13   MEANINGFUL AND EFFICIENT.

14        THE COURT:  SO DOES THIS MEAN THOUGH THAT IF I GRANT

15   YOUR REQUEST, ALL OF THESE SCHEDULED DEPOSITIONS ARE GOING TO

16   BE PUSHED INTO 2025?

17        MS. HAZAM:  NO, YOUR HONOR.

18        MS. MIYATA:  NO, YOUR HONOR.

19        THE DEPOSITIONS THAT ARE CURRENTLY -- MY UNDERSTANDING,

20   AND I DON'T WANT TO SPEAK OUT OF TURN FOR ANY OTHER PARTY HERE,

21   BUT THE DEPOSITIONS THAT ARE CURRENTLY ON CALENDAR AS THE 14 --

22   I WILL GO WITH MR. SCHMIDT'S NUMBER -- THE 14 ON CALENDAR, AS

23   WELL AS THE ADDITIONAL HANDFUL THAT WE ARE TRYING TO PUT ON

24   CALENDAR NOW FOR 2024, THOSE WILL MOVE FORWARD.  AND WE ARE

25   LOOKING FOR MORE OPPORTUNITIES TO SCHEDULE ADDITIONAL

1      DEPOSITIONS AND GET THAT MOVING AND MAXIMIZE THIS TIME.

2            MS. HAZAM:  AND YOUR HONOR, THAT HOLDS TRUE WITH

3      REGARDS TO THE OTHER DEFENDANTS ALSO.  IN OTHER WORDS, THERE

4      ARE ALREADY WITNESSES AGREED UPON WHO WOULD BE DEPOSED THIS

5      FALL, WE WOULD NOT BE PUSHING DEPOSITIONS OUT, BUT THERE IS A

6      VERY LARGE NUMBER OF OVERALL HOURS OF DEPOSITIONS THAT NEED TO

7      BE TAKEN ACROSS THE FOUR DEFENDANTS BEFORE YOU EVEN GET TO THE

8      MULTIPLE DEPOSITIONS THAT DEFENDANTS WANT TO TAKE FOR EACH OF

9      THE 24 BELWEATHER PLAINTIFFS.

10           SO JUST ON THE LIABILITY SIDE, IT'S OVER A THOUSAND HOURS,

11     AND IT MAY WELL GET TO CLOSE TO THAT ON THE PLAINTIFF SIDE AS

12     WELL.  DEFENDANTS I THINK ARE INTERESTED IN INCREASING THE

13     AMOUNT OF DEPOSITIONS THEY MAY BE ABLE TO TAKE.  SO WHEN WE

14     WERE LOOKING AT A THREE-MONTH PERIOD BETWEEN SEPTEMBER 20TH AND

15     DECEMBER 20TH, MEANING BETWEEN SUBSTANTIAL COMPLETION AND WE

16     WOULD KNOW WE WOULD HAVE THE DOCUMENTS, AND THE DATE BY WHICH

17     WE HAD TO COMPLETE THE DEPOSITIONS, WE WERE LOOKING AT A

18     LIKELIHOOD OF MULTIPLE DEPOSITIONS PER DAY EVERY DAY OF THE

19     WEEK, INCLUDING WEEKENDS, ET CETERA.

20           MR. SCHMIDT:  AND YOUR HONOR, I APOLOGIZE, I JUMPED

21     IN ON THE META POINTS, I BELIEVE MS. HARDIN WAS GOING TO

22     ADDRESS THE SCHOOL DISTRICT POINTS, I DIDN'T MEAN TO KEEP HER

23     FROM DOING THAT.

24           MS. HARDIN:  THANK YOU, MR. SCHMIDT.

25           YES, AND I APPRECIATE MS. HAZAM'S RECITATION ABOUT THE

```
1    SCHOOL DISTRICT, SO I WANTED TO JUST GIVE A LITTLE MORE COLOR

2    ABOUT THAT, YOUR HONOR, ON THE DEFENSE'S SIDE.

3         (REPORTER CLARIFICATION.)

4         MS. HARDIN:  CERTAINLY.

5    I SAID I WOULD JUST LIKE TO PROVIDE A LITTLE MORE COLOR

6    FROM THE DEFENSE SIDE ABOUT THE STATUS OF THE SCHOOL DISTRICT

7    DISCOVERY.

8    WE WERE TALKING ABOUT PRIORITY DEPONENTS AND PRODUCTIONS

9    ON THE DEFENSIVE SIDE, BUT ON THE SCHOOL DISTRICT SIDE, NO

10   SCHOOL DISTRICT BELWEATHER PLAINTIFF HAS COMPLETED DISCOVERY ON

11   THEIR PRIORITY DEPONENTS, AND IN FACT WE HAVE BEEN REPEATEDLY

12   TOLD THAT THEY DID NOT WANT TO ENGAGE ON THAT.  WE GOT A

13   DIFFERENT E-MAIL FROM MR. WEINKOWITZ ABOUT THAT THIS MORNING,

14   BUT NO SCHOOL DISTRICT HAS PRODUCED THE FULL COLLECTIONS FOR

15   THEIR PRIORITY DEPONENTS, SOME OF WHICH WERE ORIGINALLY DUE ON

16   JULY 1ST AND WERE GRANTED AN EXTENSION UNTIL JULY 15TH AND WE

17   STILL DON'T HAVE COMPLETION OF THOSE DOCUMENTS.

18   WHEN WE TALK ABOUT THE VOLUME OF DOCUMENTS THAT HAD BEEN

19   PRODUCED ON THE SCHOOL DISTRICT SIDE, FOR SOME OF THE

20   PLAINTIFFS WE ARE TALKING ABOUT HUNDREDS OF DOCUMENTS, LIKE 115

21   DOCUMENTS, 133 DOCUMENTS.  SO WE HAVE GOTTEN VERY FEW

22   DOCUMENTS --

23         THE COURT:  SO --

24         MS.  HARDIN:  WE HAVEN'T EVEN GOTTEN SOME

25   INFORMATION -- SORRY YOUR HONOR.
```

```
 1              THE COURT:  NO.

 2              MS. HARDIN:  IT'S WOEFULLY BEHIND, FROM OUR POINT OF

 3     VIEW.

 4              THE COURT:  BUT WHY?  WHY?  WHERE IS MR. WEINKOWITZ?

 5              MS. HAZAM:  YOUR HONOR, I BELIEVE HE TRIED TO BE IN

 6     THE WAITING ROOM TODAY AND THEREFORE COULD NOT SPEAK, AND I'M

 7     NOT SURE THE WAITING ROOM IS HAPPENING, BUT NONETHELESS I WILL

 8     TRY TO ADDRESS THIS.

 9              JUDGE KANG CREATED AN ORDER THAT ALLOWED THE PARTIES TO

10     NAME PRIORITY DEPONENTS WITH A 60-DAY DEADLINE THEN TO DO

11     SUBSTANTIALLY COMPLETE CUSTODIAL PRODUCTIONS.  THE IDEA BEING

12     THAT IF THAT COULD HAPPEN IN ADVANCE OF THE OVERALL SUBSTANTIAL

13     COMPLETION DATE CURRENTLY SET FOR SEPTEMBER 20TH, THE

14     DEPOSITIONS COULD START SOONER.

15              BOTH PARTIES, IN OTHER WORDS ALL SIDES, HAVE GRANTED

16     SIGNIFICANT EXTENSIONS ON THAT TIME PERIOD BECAUSE IT HAS

17     BECOME VERY DIFFICULT TO TURN AROUND THE FULL SET OF DOCUMENTS

18     IN THOSE 60 DAYS.

19              SO FOR EXAMPLE, DEFENDANTS HAVE REQUESTED AND PLAINTIFFS

20     HAVE GRANTED EXTENSIONS OF 60 DAYS AND MORE FOR A NUMBER OF THE

21     CUSTODIANS THAT WE LISTED VERY EARLY ON THE SAME TIME FRAME

22     THAT MS. HARDIN INDICATED IN JUNE.

23              ALL THAT IS TO SAY, WE ARE REDOUBLING OUR EFFORTS ON THE

24     SCHOOL DISTRICTS, THEY FACE CERTAIN UNIQUE CHALLENGES,

25     INCLUDING FERPA, THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT
```

1    THAT REQUIRE CERTAIN KINDS OF REDACTIONS.  THE NEGOTIATIONS

2    ABOUT THEM HAVE BEEN INTENSE, THEY ARE SCHOOL DISTRICTS WHO

3    HAVE LESS STAFF OVER THE SUMMER MONTHS, BUT WE ARE PUSHING VERY

4    HARD ON THIS FRONT.

5        WE ARE OPEN TO PRIORITY CUSTODIANS TREATMENT.  WE ARE

6    ENGAGED AND WILL CONTINUE TO ENGAGE IN DISCUSSIONS ABOUT WHO

7    THOSE MIGHT BE.  IT MIGHT FRANKLY BE WHO CAN BE DONE SOONEST

8    BUT WE WILL OBVIOUSLY DISCUSS IT WITH THE DEFENDANTS.  BUT THAT

9    WAS ONE REASON THAT AN EXTENSION WAS NECESSARY ON THE

10   PLAINTIFFS' PRODUCTION SIDE.  I DO BELIEVE THERE ARE REASONS ON

11   THE DEFENSE SIDE AS WELL.

12       THE COURT:  AND I'M NOT EXACTLY SURE WHAT YOU MEANT

13   BY THE WAITING ROOM.  WE HAVE A LOT OF PEOPLE WHO ARE ATTENDEES

14   WHO ARE NOT PANELISTS.  SO THE LINK WAS GIVEN TO ALL OF THE --

15   I MEAN, HE COULD HAVE BEEN THERE, I COULD HAVE BROUGHT HIM IN.

16   I DON'T UNDERSTAND YOUR COMMENT.

17       MS. HAZAM:  I DON'T UNDERSTAND, YOUR HONOR.  I

18   APOLOGIZE.  I'M SIMPLY -- YOU ASKED WHERE HE WAS.  I BELIEVE HE

19   TRIED TO BE IN THE WAITING ROOM, BUT I UNDERSTAND HE DID NOT

20   SIGN UP AS A PANELIST AND THAT'S HOW HE WOULD BE ABLE TO SPEAK.

21   SO HE'S NOT AVAILABLE TO SPEAK AS A PANELIST.

22       THE COURT:  HE'S NOT EVEN WATCHING.  I KNOW THE LIST

23   OF PEOPLE WHO ARE WATCHING AND HE'S NOT THERE.

24       MS. HAZAM:  I'M ONLY SPEAKING FROM A TEXT I RECEIVED

25   FROM HIM THAT INDICATED HE WAS ATTEMPTING TO BE PART OF THAT

1    ROOM.  I DON'T HAVE FURTHER DETAIL.

2         BUT YOU ARE RIGHT, YOUR HONOR, HE IS NOT HERE AS A

3    PANELIST TO ADDRESS THE QUESTIONS SO I AM DOING SO.

4              MR. WARREN:  YOUR HONOR, MAY I BRIEFLY BE HEARD?

5              THE COURT:  YOU MAY.

6              MR. WARREN:  I DID JUST WANT TO MAYBE ZOOM OUT A

7    LITTLE BIT.  I KNOW THAT BOTH PARTIES ARE NOW ENGAGED IN A

8    LITTLE BIT OF A TIT FOR TAT ON WHO IS RESPONSIBLE FOR NOT

9    PRODUCING THINGS AND HOW MUCH IS LEFT OVER AND THEN ALL THE

10   WORK THAT HAS TO BE DONE.

11        I THINK WHAT WE HAD TRIED TO DO AND THE REASON THAT THE

12   FILING WAS SORT OF BEREFT OF EXPLANATION IS WE TRIED VERY HARD

13   TO WORK TOGETHER TO AGREE ON SOMETHING THAT WE ALL NEEDED FOR

14   DIFFERENT REASONS AND NOT ENGAGE IN FINGER POINTING EXERCISE

15   AND WORK COLLABORATIVELY TO GET THERE ON SOMETHING THAT WOULD

16   WORK FOR ANY NUMBER OF DIFFERENT REASONS AND CONSIDERATIONS.

17        SO THAT -- YOU KNOW, I THINK I CAN COLLECTIVELY APOLOGIZE

18   FOR EVERYONE THAT WE DID NOT, IN THE FIRST INSTANCE, GIVE

19   YOUR HONOR MORE CONTEXT, BUT THAT WAS THE RATIONAL FOR DOING

20   THAT IS WE WERE TRYING TO BE AS COLLABORATIVE AS WE COULD IN

21   OUR PRESENTATION.

22              THE COURT:  WELL, THIS IS WHAT I WANT.

23        IT SOUNDS LIKE THERE IS SOME BASIS FOR SOME MEASURE OF A

24   CONTINUANCE, BUT I WANT MORE DETAIL THAT I CAN HOLD YOU TO.

25        SO YOU WILL, TODAY, AND I WANT THIS BY, YOU KNOW, THE END

1    OF THE DAY TODAY, I'M NOT ASKING FOR -- I'M NOT ASKING FOR LONG

2    EXPLANATIONS, WHAT I WANT IS A MONTH-BY-MONTH CALENDAR THAT

3    TELLS ME IN BULLET POINT FASHION -- SO JUST USE A CHART -- WHAT

4    IS HAPPENING, WHAT IS GOING TO HAPPEN, SO THAT I CAN UNDERSTAND

5    BETTER THE JUSTIFICATION FOR DOING THIS, AND SO JUDGE KANG CAN

6    HOLD YOU TO OTHER THINGS AS WELL.  I AM NOT GOING TO GIVE YOU A

7    CARTE BLANCHE EXTENSION, I'M NOT GOING TO DO IT.

8         WE AREN'T DEALING WITH 300 PLAINTIFFS, RIGHT?  ARE WE

9    DEALING WITH EVERYBODY?  I THOUGHT WE WERE TRYING TO FOCUS

10   HERE, I THOUGHT THAT WAS THE POINT, WAS TO FOCUS.

11        AM I WRONG?

12        MS. HAZAM:  YOUR HONOR, IF I MAY, YOU ARE NOT WRONG

13   IN THE SENSE THAT THERE ARE ONLY A SUBSET OF PLAINTIFFS WHO

14   HAVE BEEN SELECTED AS BELLWETHERS, AND FOR THE DISCOVERY ON

15   THOSE PLAINTIFFS, IT IS ONLY ON THOSE 24.

16        THE OBLIGATIONS FOR THE REMAINDER OF THE PLAINTIFFS ARE

17   REALLY THE PLAINTIFF FACT SHEET AND THE PRODUCTION OF RECORDS

18   THAT ARE ASSOCIATED WITH THAT FACT SHEET AS WELL AS

19   AUTHORIZATIONS FOR THE DEFENDANTS TO GET MORE RECORDS.

20        HOWEVER, THE LIABILITY DISCOVERY THAT WE ARE CONDUCTING IS

21   OF COURSE FOR THE BENEFIT OF ALL THE PLAINTIFFS ACROSS THE MDL

22   AND THE JCCP.  SO WE DO HAVE TO TAKE THE FULL MEASURE OF

23   LIABILITY DISCOVERY FROM THESE FOUR DEFENDANTS.

24        THE COURT:  WELL YEAH, FROM THE DEFENDANTS, BUT NOT

25   FROM THE PLAINTIFFS.

30

1        AND THAT'S MY -- YOU KNOW, WHEN YOU HEAR FRUSTRATION, PART

2    OF IT IS BECAUSE WE DON'T HAVE STUFF FROM THE PLAINTIFFS AND WE

3    AREN'T TALKING ABOUT THAT MANY.

4        I WOULD ALSO BE INTERESTED TO KNOW HOW YOU ARE USING AI TO

5    HELP YOU SORT THROUGH THESE MILLIONS OF DOCUMENTS.  ARE YOU

6    USING AI?

7        MR. WARREN:  YES, YOUR HONOR, WE ARE USING WHAT WE

8    BELIEVE TO BE THE MOST CUTTING EDGE TECHNOLOGY AVAILABLE TO

9    ASSIST IN OUR REVIEW.

10        THE COURT:  AND WHAT IS THAT?

11        MR. WARREN:  WHAT IS THE NAME OF THE TITLE?

12        THE COURT:  YEAH.

13        MR. WARREN:  IT'S CALLED DISCO.  AND IT IS -- IT HAS

14    AI CAPABILITIES THAT, SO FAR AS I UNDERSTAND IT, ESSENTIALLY

15    ALLOW THE MACHINE LEARNING TO SHUFFLE THE ORDER IN WHICH THE

16    DOCUMENTS ARE PRESENTED SO THAT THE MOST HIGHLY RELEVANT ONES

17    ARE PRESENTED FIRST AND SO THAT WE WILL BE USING THAT SO THAT

18    WE DO NOT UNDERTAKE THE BURDEN OF REVIEWING EVERY LAST DOCUMENT

19    IN A LINEAR FASHION WHICH WOULD BE INEFFICIENT AND ULTIMATELY

20    WASTEFUL.

21        SO WE ARE --

22        THE COURT:  WELL I ALSO THOUGHT, THOUGH, THAT AI WAS

23    CAPABLE THESE DAYS OF -- YOU KNOW, AND OBVIOUSLY I'M NOT

24    TALKING ABOUT CHATGTP OR ANYTHING LIKE THAT, BUT AI FOR YOUR

25    OWN PURPOSE, RIGHT, AN AI PLATFORM THAT COULD SUMMARIZE WHAT

1        WAS IN ALL OF THOSE DOCUMENTS.

2                MR. WARREN:  YOUR HONOR, I DON'T BELIEVE WE -- I

3        DON'T KNOW IF WE HAVE THAT CAPABILITY, AND IF WE DO, I DON'T

4        KNOW IF WE FEEL LIKE WE COULD TRUST THAT CAPABILITY GIVEN HOW

5        NEW THAT TECHNOLOGY WOULD BE.  I THINK IF WE WERE --

6                THE COURT:  IT'S ALWAYS JUST A FIRST STEP.  THAT'S

7        REALLY -- I MEAN OBVIOUSLY YOU WANT TO REVIEW THEM, I'M NOT

8        SUGGESTING THAT YOU DON'T.

9                MR. WARREN:  RIGHT.

10               THE COURT:  BUT THERE ARE WAYS -- I THOUGHT THAT

11       THERE WERE WAYS, RIGHT, TO SHORTCUT, BECAUSE --

12               MR. WARREN:  -- RIGHT.

13               THE COURT:  BECAUSE DATA TODAY IS OVERWHELMING.

14               MR. WARREN:  YES.  I COULD NOT AGREE MORE,

15       YOUR HONOR.

16           AND I DO WANT TO EMPHASIZE THAT PLAINTIFFS HAVE EVERY

17       INCENTIVE TO BE AS EFFICIENT AS WE CAN, NOT JUST FOR THE

18       BENEFIT OF THE COURT BUT FOR THE BENEFIT OF OURSELVES.  IT'S A

19       MASSIVE AMOUNT OF WORK AND LABOR TO HAVE EYES PUT ON EVERY

20       SINGLE LAST DOCUMENT WITHOUT ANY ASSISTANCE FROM TECHNOLOGY.

21       AND WE ARE HIGHLY MOTIVATED AND INCENTIVIZED TO LEVERAGE

22       WHATEVER CAPABILITIES WE CAN GET, BUT THERE IS SOME IRREDUCIBLE

23       AMOUNT OF WORK AND THAT IRREDUCIBLE AMOUNT REMAINS PRETTY

24       MASSIVE GIVEN THE VOLUME WE ARE EXPECTING.

25           AND TO MR. SCHMIDT'S POINT, WE STILL DON'T KNOW WHAT THE

1    ESTIMATE LOOKS LIKE.  I MEAN, I GAVE YOU A FIVE MILLION

2    DOCUMENT FIGURE, BUT I DON'T KNOW THAT WITH ANY DEGREE OF

3    CERTAINTY BECAUSE DEFENDANTS HAVEN'T TOLD US.  SO WE ARE SORT

4    OF GROPING IN THE DARK HERE ON WHAT WE WILL NEED TO EVEN REALLY

5    DO.

6         YOU KNOW, CERTAINLY IF DEFENDANTS COULD PROVIDE AN

7    ESTIMATE THAT THE COURT COULD HOLD THEM TO, THAT WOULD ALLOW US

8    TO MAKE MORE PRECISE CALCULATIONS AS TO THE TIME WE NEED, BUT

9    WE ARE -- YOU KNOW, WE ARE WORKING WITH THE BEST INFORMATION

10   THAT WE CURRENTLY HAVE.

11           THE COURT:  SO WHEN ARE WE GOING TO KNOW, MR.

12   SCHMIDT?

13           MR. SCHMIDT:  I DON'T THINK WE ARE GOING TO KNOW WITH

14   CERTAINTY UNTIL WE PRODUCE THE DOCUMENTS.  WE HAVE BEEN TRYING

15   TO GIVE ESTIMATES OF SIZE FOR CUSTODIANS AS WE GO ALONG.  WE

16   HAVE DONE THAT BASED ON DIFFERENT SETS OF SEARCH TERMS WE HAVE

17   BEEN GIVEN.  WE HAVE BEEN WRONG ON SOME OF THEM BECAUSE THEY

18   ARE PREDICTIONS, THEY ARE NOT ANYTHING OTHER THAN PREDICTIONS.

19   WE HAVE HAD COMPLAINTS ABOUT BEING WRONG ON THEM.  WE HAVE BEEN

20   TRYING TO DO THE BEST WE CAN, IN TERMS OF ESTIMATING, BUT UNTIL

21   THE POINT WHEN WE PRODUCE THE DOCUMENTS, WE DON'T KNOW BECAUSE

22   THEY GO THROUGH OUR REVIEW PROCESS.

23        BUT I DON'T THINK IT'S THE CASE THAT WE HAVE ROUGHLY

24   DOUBLE THE DOCUMENTS -- THAT WE ARE GOING TO DOUBLE OUR

25   PRODUCTION GOING FORWARD.  I DON'T HAVE THAT UNDERSTANDING.

1          MR. WARREN:  WELL YOUR HONOR, THAT IS NOT MY

2     UNDERSTANDING, I BELIEVE THAT'S WHAT META PREVIOUSLY ESTIMATED

3     IN THOSE ESTIMATES, AS MR. SCHMIDT POINTED OUT, FOUND IT NOT TO

4     BE ACCURATE FOR THE CUSTODIANS PRODUCED TO DATE.

5          FOR ONE, THEY ESTIMATED DOUBLE, IT TURNED OUT TO BE EIGHT

6     TIMES WHAT HAD BEEN PRODUCED UP UNTIL THAT POINT IN TIME.

7          SO I DON'T KNOW IF WE ARE GOING TO WIND UP GETTING A FULL

8     PRODUCTION THAT'S DOUBLE OR EIGHT TIMES ACROSS ALL THE

9     CUSTODIANS.  AND I JUST, I DON'T KNOW --

10         MR. SCHMIDT:  IT PROBABLY GOES WITHOUT SAYING,

11    YOUR HONOR, THAT WE WOULD BE QUITE HAPPY TO PRODUCE FEWER

12    DOCUMENTS AND LITIGATE IT AND PRODUCING FEWER DOCUMENTS.  WE

13    ARE DOING THE BEST WE CAN, AND I DON'T THINK IT'S A FAIR

14    COMPLAINT TO SAY YOU DID YOUR BEST AND YOU GAVE US EVEN MORE

15    THAN WE ASKED FOR.

16         THE COURT:  YEAH.  NO, I UNDERSTAND, YOU CAN'T WIN

17    FOR LOSING SOMETIMES.

18         MR. WARREN:  NO.  WE DON'T MEAN TO BE COMPLAINING, WE

19    ARE JUST TRYING TO EXPLAIN THE REASON FOR THE EXTENSION

20    REQUEST.

21         MR. SCHMIDT:  IN TERMS OF THE SUBMISSION, YOUR HONOR,

22    MAY I ASK A QUESTION ABOUT THAT?

23         THE COURT:  YOU MAY.

24         MR. SCHMIDT:  AM I CORRECT IN UNDERSTANDING YOU WANT

25    A JOINT SUBMISSION FROM THE PARTIES?

```
1              THE COURT:  OF COURSE, MR. SCHMIDT.

2              MR. SCHMIDT:  THAT'S WHAT I HAD ASSUMED.

3          I HAVE NOT HAD LUCK ON THIS IN THE PAST, BUT I WILL MAKE

4     THE ASK, DOING THAT BY THE END OF THE DAY BETWEEN THE TWO SIDES

5     IS PRETTY CHALLENGING, COULD WE HAVE INTO NEXT WEEK, UNTIL

6     TUESDAY?

7              THE COURT:  WELL AS LONG AS YOU ARE NOT GOING TO

8     FIGHT ABOUT IT.  THAT WAS MY POINT.  I ACTUALLY DON'T WANT YOU

9     TO SPEND -- I'M NOT SUGGESTING THAT YOU SPEND A TON OF TIME,

10    I'M SUGGESTING THAT, YOU KNOW, I NEED SOMETHING MORE THAN I

11    HAVE, AND MY CONCERN ABOUT GIVING YOU TOO MUCH TIME IS THAT IT

12    GIVES YOU MORE TIME TO FIGHT ABOUT IT.

13         NOW I KNOW WE ARE GOING INTO A LONG WEEKEND, SO I DON'T

14    MEAN TO WRECK PEOPLE'S WEEKEND, AND IT'S ALREADY IN THE

15    AFTERNOON ON THE EAST COAST, BUT THAT WAS THE REASON FOR MY

16    QUICK TURNAROUND.

17             MR. SCHMIDT:  AND THAT MAKES SENSE, I THINK WE

18    OBVIOUSLY THINK THERE'S WISDOM FOR THAT.  IF IT WAS TWO WEEKS,

19    WE WOULD HAVE EXACTLY WHAT YOU SAID.  I WOULD BE CURIOUS TO

20    HEAR FROM THE PLAINTIFFS' COUNSEL IF THEY AGREE.  I THINK WE

21    COULD AVOID THAT SPIN IF WE RUN INTO TUESDAY OR WEDNESDAY.

22             MS. HAZAM:  I THINK WE AGREE, YOUR HONOR.

23         IT MIGHT BE HELPFUL TO HAVE A LITTLE ADDITIONAL TIME TO

24    COME UP WITH THE KIND OF PLAN THAT YOUR HONOR IS REFERRING TO

25    SO THAT IT'S AS HELPFUL AS IT CAN BE.
```

1          WE VERY MUCH AGREE WITH YOUR HONOR THAT WE SHOULDN'T BE

2     FIGHTING OVER THIS AND SO WE WILL DO OUR VERY BEST NOT TO.

3          IS IT ACCURATE TO SAY, JUST TO SEEK A LITTLE FURTHER

4     GUIDANCE FROM THE COURT, THAT YOU WISH US TO PLOT OUT WHAT WILL

5     HAPPEN BY MONTH WITH THE SCHEDULE THAT WE HAVE PROPOSED?  DO

6     YOU WANT US TO MAKE DIFFERENT ASSUMPTIONS IN DOING THAT?

7          THE COURT:  SO BOTH, RIGHT.

8          SO I WANT TO KNOW IN SEPTEMBER, RIGHT, SO IN SEPTEMBER,

9     YOU ARE SUPPOSED TO HAVE ALREADY HAD SUBSTANTIAL COMPLIANCE IN

10    TERMS OF DOCUMENTS.  AND SO I WOULD EXPECT THAT, YOU KNOW,

11    THERE WOULD BE A BULLET THAT SAYS ALL OF THE FORENSIC DATA FROM

12    ALL OF THE PLAINTIFFS WILL BE PRODUCED.

13         THAT'S ALL I NEED, RIGHT, IS THAT FOR SEPTEMBER, THAT'S

14    GOING TO HAPPEN.  AND EVERYTHING ELSE THAT'S GOING TO HAPPEN IN

15    SEPTEMBER, JUST A BULLET POINT.  AND YOU CAN EVEN PUT IN PAREN,

16    ANTICIPATED.

17         FOR OCTOBER, YOU ALREADY HAVE DEPOSITIONS.  JUST A BULLET

18    POINT THAT TELLS ME, YOU KNOW, HOW MANY DEPOSITIONS PER WEEK

19    ARE ALREADY SCHEDULED.  IF YOU'VE GOT ONE HUNDRED DAYS MORE OF

20    DEPOSITIONS, THEN I WOULD LIKE TO KNOW WHAT THE PLAN IS.

21    TWENTY OF THE HUNDRED IN NOVEMBER, -- THE NEXT TWENTY OF THE

22    HUNDRED IN DECEMBER.  WHATEVER IT IS, I JUST WANT SOME KIND OF

23    OUTLINE OF A PLAN THAT I CAN SEE HOW THIS MAPS OUT.

24         JUDGE KUHL DOESN'T WANT TO CHANGE HER DEADLINES, AND WE

25    ARE TRYING TO COORDINATE.  NOW SHE HAS -- HERS IS NOT AS

1    SPRAWLING AS MINE, AND SO I WOULD ALSO LIKE TO UNDERSTAND WHERE

2    THERE ARE POINTS OF DIVERSION SO THAT WE CAN FIGURE OUT -- TO

3    THE EXTENT THAT THERE IS OVERLAP WITH THE JCCP, THAT SHOULD

4    TAKE PRIORITY BECAUSE I CAN PUT THE SCHOOL DISTRICTS ON A

5    SEPARATE TRACK IF THAT'S A PROBLEM AND THAT WON'T AFFECT THE

6    JCCP, IF WE ARE GETTING ALL OF THE INFORMATION FROM THE

7    DEFENDANTS.

8         IF THE DEFENDANTS AREN'T THE HOLDUP, THEN I NEED TO KNOW

9    WHERE THE POINTS OF TENSION ARE SO THAT I KNOW WHERE TO SQUEEZE

10   YOU.  OR UNLESS -- IF YOU'VE JAMMED IT ALL IN AND I CAN SEE

11   THAT YOU HAVE JAMMED IT ALL IN AND THERE'S NO PLACE I CAN

12   SQUEEZE, THEN I WON'T.

13        BUT RIGHT NOW, I COULD JUST -- OR I COULD JUST SAY, YOU

14   KNOW WHAT, I WILL GIVE YOU TWO MONTHS, THAT'S ALL YOU GET, GO

15   FIGURE IT OUT.  I MEAN, I COULD DO IT THAT WAY.  I WILL GIVE

16   YOU TWO MONTHS, I WILL NOT GIVE YOU FOUR, WITHOUT MORE.

17           MS. HAZAM:  SO IF I UNDERSTAND CORRECTLY, YOUR HONOR,

18   JUST TO CONFIRM, IF WE ARE PROPOSING ANYTHING MORE THAN TWO

19   MONTHS, YOU WOULD LIKE TO SEE THE MONTH-BY-MONTH BREAKOUT SO

20   THAT YOU CAN ASSESS WHAT IT IS WE ARE DOING AND WHETHER WE

21   SHOULD BE PERMITTED TO HAVE THAT KIND OF AN EXTENSION OR SHOULD

22   BE DOING IT MORE QUICKLY; IS THAT ACCURATE?

23           THE COURT:  WELL YOU ARE ASKING FOR MORE THAN FOUR

24   MONTHS.  IF YOU'VE REVISED YOUR REQUEST DOWN TO TWO, THEN WE

25   ARE DONE.

1          MS. HAZAM:  I DON'T THINK WE HAVE AS OF NOW, WE WILL

2    DISCUSS IT, WHICH IS ONE REASON A LITTLE MORE TIME MAY BE

3    USEFUL.

4          ALSO WITH REGARDS TO THE JCCP, OUR CURRENT UNDERSTANDING

5    IS THEY DO NOT YET HAVE MANY OF THE DATES THAT HAVE BEEN SET BY

6    THIS COURT SET FOR THEIR COURT.  I BELIEVE JUDGE KUHL YESTERDAY

7    INSTRUCTED THEM, THE PARTIES IN THE JCCP, TO COME BACK IN TWO

8    WEEKS FOR FURTHER DISCUSSIONS REGARDING A SCHEDULE, AND GAVE

9    SOME GUIDANCE REGARDING A FACT DISCOVERY CUTOFF AND PERHAPS

10   EXPERT REPORTS, BUT I DON'T THINK WE HAVE PARALLEL DATES FOR

11   MANY OF OUR DATES.

12         THE COURT:  WE COMMUNICATE.

13         MS. HAZAM:  UNDERSTOOD.  I'M SIMPLY TRYING TO RESPOND

14   TO YOUR HONOR ON WHAT YOU WANT FROM US.

15         THE COURT:  NO, I KNOW WHAT THEY DO NOT HAVE.  I'M

16   TELLING YOU THAT SHE DOES NOT WANT TO MOVE HER DATES.  SO I AM

17   AGAIN TRYING TO GET MORE INFORMATION SO THAT OUR COORDINATION

18   EFFORTS ARE ALIGNED.

19         MR. WARREN:  THANK YOU, YOUR HONOR.

20         AND I WILL JUST ADD THAT WE VERY MUCH APPRECIATE THE VALUE

21   OF COORDINATING WITH THE JCCP AND ARE TRYING TO LINE UP CERTAIN

22   DATES TO CREATE EFFICIENCIES, FOR EXAMPLE SUBMISSION OF EXPERT

23   REPORTS, THAT'S AN IMPORTANT ONE FOR THE MDL PLAINTIFFS SO THAT

24   WE CAN JUST GET THOSE DONE AS ONE --

25         THE COURT:  -- AND HERE'S THE OTHER THING, WHICH IS

1    THAT IT COULD IN FACT BE, RIGHT, THAT AT LEAST WITH RESPECT TO

2    EXPERTS, YOU KNOW, THERE DOESN'T HAVE TO -- EVERYTHING DOESN'T

3    HAVE TO BE CLOSED FOR EXPERTS TO DO THEIR WORK.  YOU WOULD LIKE

4    IT THAT WAY, BUT GAIN, IF THE REAL -- IT COULD BE THE SCHOOL

5    DISTRICTS NEED A LITTLE MORE TIME GIVEN THE UNIQUE CHALLENGES

6    THAT NO ONE ELSE HAS.  THINGS CAN MOVE FORWARD WITHOUT BEING

7    DELAYED BECAUSE ONE -- YOU KNOW, ONE TRACK IS -- HAS ISSUES.

8         MR. WARREN:  YOUR HONOR, WE DEFINITELY TAKE THE

9    POINT.  I THINK OUR PERSPECTIVE ON THAT IS THAT WE WILL BE

10   GETTING AS MUCH GROUND WORK LAID WITH OUR EXPERTS AS WE CAN

11   DURING THE FACT DISCOVERY PERIOD, IN TERMS OF THE SCIENCE, IN

12   TERMS OF THE MEDICAL LITERATURE, IN TERMS OF ALL THE ARGUMENTS

13   THAT AREN'T PREMISED AND DON'T REQUIRE RELIANCE ON THE FACT

14   DISCOVERY, BUT THERE WILL BE AN EXTENT TO WHICH EVERY EXPERT

15   WILL BENEFIT FROM A FACT DISCOVERY RECORD ON WHICH TO RELY AND

16   PRESENT THEIR OPINIONS.

17       SO FOR THAT REASON, YOU KNOW, IT IS AN IMPORTANT PRINCIPLE

18   FOR US AS PLAINTIFFS THAT THE EXPERT REPORT GO IN AFTER THE

19   CLOSE OF FACT DISCOVERY.  NOW HOW LONG THAT PERIOD IN BETWEEN

20   NEEDS TO BE, OF COURSE WE CAN GO BACK AND SHARPEN OUR PENCILS

21   ON THAT, BUT YOU KNOW, IT'S OUR CURRENT EXPECTATION THAT WE

22   WOULD BE TAKING DEPOSITIONS ALL THE WAY UP TO THE VERY LAST DAY

23   OF THE FACT DISCOVERY PERIOD.  IF THE EXPERT REPORTS HAVE TO GO

24   IN BEFORE THEN, THEN OF COURSE THOSE EXPERTS WOULD NOT BE ABLE

25   TO RELY ON WHATEVER WAS SAID IN THOSE DEPOSITIONS.

1          MR. SCHMIDT:  AND YOUR HONOR, JUST ON THE META SIDE,

2    IF I MAY, WE AGREE WITH WHAT YOUR HONOR SAID THAT YOU DON'T

3    HAVE TO HAVE EVERYTHING PERFECTLY DONE BEFORE YOU CAN DO

4    EXPERTS.  WE AGREE WITH WHAT MR. WARREN SAID THAT THERE IS REAL

5    VALUE IN COORDINATION OF AT LEAST THE GENERAL EXPERT DISCOVERY

6    PROCESS ACROSS THE TWO JURISDICTIONS AND THAT'S SOMETHING THAT

7    ON OUR SIDE IS REALLY, REALLY IMPORTANT.

8          JUDGE KUHL YESTERDAY RAISED THE POSSIBILITY OF HER DOING

9    EXPERTS A LITTLE EARLIER.  FROM OUR PERSPECTIVE, WE WOULD LIKE

10   TO KEEP THOSE ALIGNED, AND THAT'S SOMETHING THAT'S BEING WORKED

11   OUT WITH JUDGE KUHL.  BUT WE WOULD ALSO LIKE TO KEEP AN EYE ON

12   THAT IN TERMS OF PROPOSALS TO YOUR HONOR, BUT THAT DOESN'T

13   CHANGE I THINK WHERE WE ARE IN THE IMMEDIATE MOMENT IN TERMS OF

14   PUTTING TOGETHER THE WORK PRODUCT YOUR HONOR ASKED FOR.

15          THE COURT:  OKAY.

16          WELL MY -- THE DEFENSE CASE IN MY TRIAL STARTS ON TUESDAY

17   AND THEN WE MOVE TO CLOSINGS, SO I WILL BE A LITTLE MORE

18   FLEXIBLE ONCE I AM NOT IN TRIAL EVERY DAY.

19          THE ORDER ON THE PENDING MOTIONS IS COMING TOGETHER, VERY,

20   VERY LONG, BUT YOU WILL BE GETTING THAT HOPEFULLY BY THE END OF

21   SEPTEMBER SO THAT WE CAN KEEP THIS THING MOVING ALONG.

22          MR. SCHMIDT:  THANK YOU, YOUR HONOR.

23          THE COURT:  ALL RIGHT.

24          MS. MIYATA:  YOUR HONOR, IF I MAY?

25          THE COURT:  YOU CAN HAVE UNTIL TUESDAY.

```
 1            MS. MIYATA:  YOUR HONOR?

 2            THE COURT:  CLOSE OF BUSINESS, NOT MIDNIGHT.

 3            MS. MIYATA:  APOLOGIES, YOUR HONOR, I DIDN'T MEAN TO

 4    INTERRUPT.

 5         IF I MAY, SINCE THE PARTIES ALREADY HAVE A JOINT

 6    SUBMISSION DUE ON FRIDAY FOR THE CASE MANAGEMENT STATEMENT,

 7    WOULD THERE BE THE POSSIBILITY FOR US TO PERHAPS PREPARE THIS

 8    AND SUBMIT AT THE SAME TIME AS THAT, GIVEN SOME OF THE -- I

 9    KNOW THERE'S SOME FOLKS WHO WILL BE OUT FOR THE LONG WEEKEND

10    AND JUST TO MAKE SURE WE HAVE ENOUGH TIME TO PUT THAT TOGETHER,

11    NOT TO USE ANY OF THAT TIME FOR FIGHTING, SIMPLY TO SMOOTH THE

12    LOGISTICAL PATH.

13            MS. HAZAM:  YOUR HONOR, WE WOULD JOIN IN THAT

14    REQUEST, IN PART BECAUSE I BELIEVE THAT THE JCCP WILL BE

15    SOLIDIFYING IT'S POSITION FURTHER IN THE COMING DAYS IN ORDER

16    TO REPORT BACK TO JUDGE --

17            THE COURT:  IT'S NOT GOING TO ENTIRELY SOLIDIFY UNTIL

18    I MAKE SOME DECISIONS AND THEN COMMUNICATE WITH JUDGE KUHL.  SO

19    I DON'T WANT TO WAIT.  I WILL GIVE YOU UNTIL WEDNESDAY.  NOON.

20            MS. MIYATA:  THANK YOU, YOUR HONOR.

21            MR. SCHMIDT:  YOUR HONOR, I'M SORRY TO ASK ONE MORE

22    CLARIFYING QUESTION.

23         AS I UNDERSTAND THE SUBMISSION WE HAVE BEEN MAKING, IT

24    WOULD FOCUS SOLELY ON THE DISCOVERY -- ON THE FACT DISCOVERY

25    PERIOD; IS THAT CORRECT?
```

1          THE COURT:  WELL, MY SENSE IS THAT AS I LOOKED AT

2     YOUR REQUEST, EVERYTHING ELSE TRACKS THE -- I DIDN'T DOUBLE

3     CHECK, BUT THAT THE INTERVALS THAT HAD BEEN PREVIOUSLY

4     ESTABLISHED, IT LOOKS LIKE YOU TRACKED THAT GOING FORWARD.

5          MR. WARREN:  NOT QUITE, YOUR HONOR.  I THINK THERE

6     WERE AREAS WHERE THERE WAS A LITTLE BIT OF AN EXPANSION IN SOME

7     OF THOSE DEADLINES AND SO THAT THE OVERALL SIX-MONTH EXTENSION,

8     IT DOES NOT COME ENTIRELY FROM THE FACT DISCOVERY PERIOD, I

9     THINK ACTUALLY IT'S FOUR MONTHS OF EXTRA FACT DISCOVERY AND TWO

10    MONTHS OF EXTRA OTHER STUFF THAT IS JUST KIND OF SQUEEZED INTO

11    VARIOUS DEADLINES TO CREATE A LITTLE BIT OF WIGGLE ROOM.

12         MR. SCHMIDT:  AND IF I MAY, YOUR HONOR, WE PUT IN

13    MORE TIME ON EXPERT DISCOVERY, AND THE THINKING WAS JUST

14    LOOKING AT HOW COMPLEX THE CASE WAS GOING TO BE, THAT SEEMED TO

15    MAKE SENSE.

16         JUST AS ONE ILLUSTRATION OF THAT POINT, UNDER THE

17    PROTECTIVE ORDER, THE PLAINTIFFS HAVE TO IDENTIFY WHEN THEY ARE

18    GIVING EXPERTS, HIGHLY CONFIDENTIAL INFORMATION, I THINK WE ARE

19    UP TO ABOUT 30 EXPERTS THEY HAVE IDENTIFIED THROUGH THAT

20    PROCESS, AND I DON'T KNOW IF ALL OF THOSE WILL BE CALLED, IF

21    OTHERS WILL BE CALLED, BUT IT IS GOING TO BE A BIGGER PROCESS I

22    THINK THAN WE ANTICIPATED AT THE ORIGINAL SCHEDULING.

23         THE COURT:  WELL THEN I PROBABLY NEED MORE

24    INFORMATION.  OKAY.

25         MS. HAZAM:  IN THAT CASE, YOUR HONOR, IS IT FAIR TO

1    SAY YOU WOULD LIKE US TO CONTINUE OUR PROJECTED SCHEDULE

2    THROUGH THOSE DATES THAT ARE ALSO --

3            THE COURT:  ANYTHING WHERE YOU'VE ASKED FOR MORE, I

4    NEED MORE.

5            MS. HAZAM:  UNDERSTOOD.

6        THANK YOU, YOUR HONOR.

7            THE COURT:  AND, YOU KNOW, NUMBERS DO HELP.  THAT IS,

8    YOU KNOW, HAVING THE NUMBER OF EXPERTS IN THERE HELPS ME

9    UNDERSTAND THE SCOPE.  AND YOU KNOW, WHETHER THEY ARE -- TO THE

10   EXTENT THAT IT'S NOT JUST -- LIKE I SAID, THE CHALLENGE IN THIS

11   CASE IS DIFFERENT FROM THE JCCP WHICH IS -- WHICH ONLY HAS THE

12   INDIVIDUALS, THAT THE AG'S, YOU KNOW, COMPLICATE THINGS.

13       SO IT'S HELPFUL TO UNDERSTAND WHERE SOME OF THIS IS DRIVEN

14   BY THE DIFFERENCE IN THE NATURE OF THE BEAST, AND THAT WAY I

15   DON'T SOUND LIKE I'M WISHY WASHY TO JUDGE KUHL.

16           MR. SCHMIDT:  I THINK THAT'S AN APT OBSERVATION.  WE

17   WOULD CROSS SOME PRETTY CLEAR LINES BETWEEN WHERE WE ARE WITH

18   PERSONAL INJURY AND AG, SO WE WILL TAKE THAT INTO ACCOUNT IN

19   WORKING WITH THE AG'S AND THE INDIVIDUAL PLAINTIFFS IN DRAFTING

20   OUR STATEMENT.

21           THE COURT:  YOU SHOULD ALSO KNOW I HAVE BEEN WORKING

22   WITH THE VARIOUS CHIEFS ON THE LEXICON ISSUES AND I RECEIVED

23   VERY GOOD RESPONSES, NOTHING IS FORMALIZED YET, THESE

24   APPOINTMENTS ARE SIX-MONTH APPOINTMENTS AND THERE ARE A LOT OF

25   DIFFERENT MOVING PARTS THAT HAVE TO BE IN PLACE, BUT I AM

1     GETTING INFORMAL AGREEMENTS FROM THE VARIOUS JURISDICTIONS.

2              MR. WARREN:  YOUR HONOR, MAY I ASK ONE FINAL

3     QUESTION?  FROM ME ANYWAY.

4              THE COURT:  SURE.

5              MR. WARREN:  TO THE EXTENT THAT WE USE THIS TIME TO

6     TRY TO SQUEEZE OURSELVES AND KNOCK THIS DOWN A LITTLE BIT TO BE

7     MORE ACCEPTABLE TO YOUR HONOR, ARE THERE ANY PARTICULAR DATES

8     THAT WE OUGHT TO BE MINDFUL OF ON THE COURT'S CALENDAR TO

9     AVOID, EITHER IN TERMS OF WHEN THE TRIAL MIGHT START OR

10    ANYTHING ELSE?

11             THE COURT:  2026 IS PRETTY CLEAR.  SO IF IT WAS 2025,

12    THAT WOULD BE MORE OF AN ISSUE, BUT 2026 IS LOOKING LIKE IT'S

13    IN GOOD SHAPE.

14             MR. WARREN:  THANK YOU.

15             THE COURT:  SO THERE ARE CERTAIN TIMES OF THE YEAR

16    WHERE IT'S JUST MORE DIFFICULT, GIVEN SOME STANDING

17    COMMITMENTS.  LIKE, MAY IS DIFFICULT, OCTOBER IS DIFFICULT, SO

18    THERE'S -- I SIT ON TOO MANY COMMITTEES, I'M TRYING TO EXTRACT

19    MYSELF.

20             MR. WARREN:  I UNDERSTAND.  THANK YOU.

21             THE COURT:  OKAY.  ANYTHING ELSE?

22             MR. WARREN:  NOT FROM THE PISD PLAINTIFFS,

23    YOUR HONOR.

24             MS. MIYATA:  NOT FROM THE AG'S.

25             THE COURT:  OKAY.  NOTHING FROM THE DEFENDANTS THEN?

1          ALL RIGHT.  WELL HAVE A GOOD LABOR DAY WEEKEND.  I LOOK

2      FORWARD TO YOUR SUBMISSION, AND I WILL SEE YOU IN A COUPLE

3      WEEKS.

4              MR. SCHMIDT:  THANK YOU, YOUR HONOR.

5              MR. WARREN:  THANK YOU, YOUR HONOR.

6              MS. MIYATA:  THANKS YOUR HONOR.

7              THE COURT:  OH, WAIT, WAIT, WAIT.

8          RIGHT NOW WE ARE SCHEDULED -- I THINK IT'S GOING TO STAY

9      THE SAME -- WE ARE SCHEDULED NOW FOR THIS 16TH, IS IT, OR -- WE

10     ARE SCHEDULED FOR THE 13TH IN THE AFTERNOON?

11             MS. HAZAM:  YES, YOUR HONOR.

12             MS. MIYATA:  THAT'S RIGHT.

13             THE CLERK:  YES, YOUR HONOR.  THIS IS EDWIN.

14             THE COURT:  OKAY.  I KNOW A LOT OF YOU HAVE TO DEAL

15     WITH FLIGHTS, IS MONDAY THE 16TH BETTER?  OR WE WILL JUST KEEP

16     IT IN THE AFTERNOON.  I CAN'T DO THE MORNING OF THE 13TH.

17             MR. WARREN:  I CAN ONLY SPEAK ON MY OWN BEHALF,

18     YOUR HONOR, BUT THE AFTERNOON ON THE 13LTH MAY BE PREFERABLE,

19     AND MAY BE PREFERABLE FOR OTHER EAST COASTERS SO WE CAN KNOCK

20     IT OUT WHEN WE GET BACK HOME.

21             THE COURT:  OKAY.  WELL UNFORTUNATELY I CANNOT GIVE

22     YOU THE MORNING SLOT.  AND I HAVE ANOTHER PRETRIAL CONFERENCE

23     RIGHT BEFORE YOURS, SO ENJOY A DINNER IN SAN FRANCISCO.

24             MR. WARREN:  I WILL.  THANK YOU, YOUR HONOR.

25             THE COURT:  OKAY.  WE WILL SEE YOU IN SEPTEMBER.

1                THANK YOU.

2           (THE PROCEEDINGS WERE CONCLUDED AT 11:03 A.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                       **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 9/5/24