UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF ON WHETHER YOUTUBE MUST PRODUCE DOCUMENTS REGARDING ITS CORPORATE STRUCTURE AND HISTORICAL VERSIONS OF POLICIES CONCERNING ITS COMPLAINT PROCESS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

    Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendants Google, LLC and YouTube, LLC ("YouTube") respectfully submit this letter brief regarding a dispute as to YouTube's amended responses to Request Nos. 62, 69, 71, 72, 76, and 79 in Plaintiffs' Request for Production Set 4.[1]

    Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference before filing this brief. The final conferral was on October 29, 2024, and was attended by lead trial counsel for the Parties involved in the dispute. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

    This document is provisionally filed under seal, pursuant to the Order Granting Motion to File Under Seal: Setting Sealing Procedures. Dkt. 341.

    Attached as **Exhibit A** is YouTube's Amended Responses and Objections to Plaintiffs' Request for Production Set 4.

Dated: November 5, 2024                 Respectfully submitted,

                                                              */s/ Lexi J. Hazam*

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between YouTube and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-DiscoveryStanding-Order-v1.2-2023_06_01-1.pdf.

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY LLP**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100

Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333

Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/* Christopher Chiou
Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

Attorneys for Defendants YouTube, LLC, Google LLC

WILLIAMS & CONNOLLY LLP

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashely W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Fax: 202-434-5029

Attorneys for Defendants YouTube, LLC, Google LLC

MORGAN LEWIS & BOCKIUS, LLP

Brian Ercole (pro hac vice)
brian.ercole@morganlewis.com
Morgan Lewis & Bockius, LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
Morgan Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Attorneys for Defendants YouTube, LLC, Google LLC

## **ATTESTATION**

I, Christopher Chiou, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 5, 2024

By: */s/  Christopher Chiou*
      Christopher Chiou

**PLAINTIFFS' POSITION**

Plaintiffs move to compel production of responsive documents to RFP Nos. 62, 69, 71, 72, 76, and 79. These requests seek documents that are highly relevant to the central issues in this case. And YouTube's refusals are unreasonable: they either stand on either incomplete testimony and production in response to Plaintiffs' 30(b)(6) Notice or unsubstantiated claims of undue burden.

**A. Requests Relevant to YouTube's Corporate Structure and Compensation Incentives**

RFP Nos. 62 and 69 are relevant to Plaintiffs' claims that YouTube pursued its goal of maximizing engagement to drive profit despite its knowledge, and ever-increasing evidence, of the risk its products pose to young users. *See e.g.*, Dkt. 494 at ¶ 690 (social media products are about "maximizing revenue" by "maximizing engagement"); ¶ 773 (YouTube continues to manipulate users to enhance its bottom line despite evidence of harm); ¶ 16 (discussing 2021 U.S. Surgeon General advisory regarding dangers of social media); ¶¶ 96-124, 730 (describing nearly a decade of scientific and medical studies linking compulsive use of defendants' platforms to negative health outcomes); ¶¶ 372-379, 734, 768 (describing congressional investigations of social media platforms, including YouTube); ¶¶ 696-700 (describing how YouTube generates revenue by increasing engagement); ¶ 717 (YouTube continues to employ interrelated features to increase and maximize engagement); ¶¶ 724-726, 742, 745, 751-767, 770,, 771 (citing more than fifteen media articles between 2012 and 2022 concerning YouTube's addictive algorithm, addictive features, tracking of its users, and/or YouTube's effects on youth mental health); ¶ 709 (describing 2019 settlement with FTC related to COPPA violations); ¶ 735 (alleging YouTube's recent hire of TikTok employees to launch YouTube Shorts – one of its most addictive features).

RFP No. 62 seeks documents concerning YouTube's "crisis management or crisis communication structure and organization" and policies for responding to "investigations, lawsuits, media inquiries, or government inquiries" concerning the safety of minor users. Information regarding *how* YouTube handles crises, investigations, lawsuits, and media and government inquiries, including *who* is involved, and the *methods* of communication, are highly relevant to Plaintiffs' ability to demonstrate knowledge of relevant risks at YouTube's highest levels and in Plaintiffs' selection of deponents. In the interest of compromise, Plaintiffs agreed to limit this request to documents "sufficient to show" such information. YouTube rejected Plaintiffs' proposal on the sole basis that YouTube previously provided 30(b)(6) testimony on overlapping topics. But YouTube's 30(b)(6) testimony did not, and was not intended to, cover YouTube's crisis communication structure (or organization) or YouTube's *policies* for responding thereto. For example, YouTube objected to, and the witness had little knowledge regarding, ███████ ████████████████████████████████. The Ninth Circuit has noted that information concerning *how* a defendant "typically responded" to safety concerns when they are raised *may* be "invaluable" to establishing knowledge and effectiveness of responses. *Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 427 (9th Cir. 1992).

YouTube's unsubstantiated claims of burden do not provide a basis for its refusal to produce and do not excuse its failure to provide a code-compliant response specifying whether it is withholding documents and, if so, on what objections. Rule Nothing in the Rules permits a party to respond to a request for production by pointing to corporate deposition testimony. Plaintiffs are entitled to use multiple vehicles to conduct discovery. *See Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 622 (N.D. Cal. 2005) (holding deposition testimony did not preclude production of documents, and noting that "documentary evidence is often necessary to assist in the examination of a witness"); *In re Sailed Tech. (Beijing) Co., Ltd.*, 2023 WL 3568151, at *8 (W.D. Wash. May 18, 2023) (deposition subpoena not improperly duplicative of RFPs, where objector failed "to explain why discovery through multiple mechanisms is unduly intrusive or burdensome"). YouTube's cases in support of the contrary are inapposite. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 3523405, at *3 (N.D. Cal. June 4, 2015) (no *good cause* for *expedited* 30(b)(6) deposition; *Krause v. Hawaiian Airlines, Inc.*, 2019 WL 3731732, at *5 (E.D. Cal. Aug. 8, 2019) (denying motion to exceed standard limits interrogatories).

Request 69 seeks documents that "constitute, identify, or reflect" YouTube's "policies, process, and criteria…to evaluate or determine compensation" for employees working in or with units with responsibility for issues related to youth safety. As Plaintiffs have explained, information regarding compensation, performance bonuses, and other incentives that rewarded (or failed to reward) accomplishments by individuals responsible for youth safety are relevant to the issue of whether YouTube prioritized user growth and engagement over safety. YouTube's response to this request is that documents it produced in connection with Topic 7 of Plaintiffs 30(b)(6) deposition are "sufficient to show" its compensation policies for YouTube employees responsible for youth safety. But YouTube's production – consisting of five documents concerning *generic* Google-wide compensation policies – is plainly *not* "sufficient to show" its policies as applied to youth safety. Moreover, YouTube provides *no basis* for limiting its response to documents "sufficient to show." Contrary to YouTube's assertions, this request seeks YouTube's *policies* concerning compensation and *does not* seek information contained in personnel files. Recognizing compensation incentives as highly probative, courts permit the discovery of such information, where, as here, it is substantively tied to the alleged conducted at issues – *even* in sensitive personnel files. *See e.g.*, *Abilify Prod. Liab. Litig.*, 2017 WL 4399198, at *11 (N.D. Fla. 2017) ("information concerning financial incentives sales representatives received … is relevant and discoverable"); *Pradaxa Prod. Liab. Litig.*, No. 3:12-md-02385, ECF No. 166, at 5 (S.D. Ill. 2013) (compensation information "necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias."); *Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-cv-01748, ECF No. 1027 (N.D. Ill. 2015) (compelling production of salary and other compensation information). Accordingly, compensation *policies* are plainly discoverable.

### B. Request Related to YouTube's Policies Concerning User Complaints

RFP Nos. 71, 72, 76, and 79 seek documents concerning YouTube's policies for facilitating, documenting, processing, reporting, and retaining complaints related to the safety of youth users of its platform.[2] Discovery with respect to YouTube's user complaint policies goes directly to Plaintiffs' claims regarding YouTube's knowledge of the risks posed by its platform, its promotion of abusive behavior towards children, and its inadequate reporting mechanisms for reporting harmful user conduct. *See e.g.*, Dkt. 494 at ¶ 791, 809, 811. It is also relevant to anticipated defenses, including representations that YouTube has "strict policies and robust operations in place to tackle content and behavior that is harmful or exploitative to children. *Id.* ¶ 785. YouTube refuses to produce final historical versions of *internal* policies as to each request, and to produce final historical versions of its *public policies* for RFP 72, 76, and 79.[3]

YouTube's sole basis for withholding this relevant discovery is purported undue burden.

---

[2] RFP No. 71 seeks documents concerning policies for facilitation, documentation, review, analysis, discussion of, response, and address of complaints concerning the adverse effect of its platform on youth users; RFP No. 72 seeks documents concerning policies for intaking, processing, reviewing, investigating, and reporting to third parties, complaints involving youth users, and its consideration for such policies; RFP No. 76 seeks policies concerning the reporting of harassing and bullying conduct direct at youth users, including the mechanisms for reporting and consideration and response to such reports; and RFP No. 79 seeks policies concerning the retention of reports of violations of its terms of service, CSAM, sexual exploitation, predatory conduct, sex-trafficking, harassing, or bullying directed at youth.

[3] In the *three months*, Plaintiffs attempted to engage with YouTube's supposed offer to "meet and confer…to determine whether" YouTube would produce certain specific historical versions, YouTube failed to provide *any* information on the specific policies involved, their frequency of update, or the effort required for their production to enable a reasoned approach to identifying the versions to be produced. And while YouTube has agreed to produce historical versions *to the extent* they are located its custodial collections, it has not confirmed they are likely to be included therein. Moreover, custodial collections are limited by short retention policies. (████████████████████████████████████████████████████).

2

But YouTube provides no evidence to show that the production of historical versions will be *unduly* burdensome in timeframe or substance. On timeframe, this Court has already held that the current default time period in this case is reasonable and proportional to the needs of the case. *See* Dkt. 953. On substance, after over *three months* of meet and confers, YouTube has failed to substantiate any claims of burden, relying instead on vague and conclusory statements that "collection of historical versions of some webpages, like support.google pages, requires employees to undertake a multi-step process for each webpage." YouTube provides even *less* support for its refusal to produce historical *internal* policies, stating only that the burden is "even more pronounced" for internal policies. Thus, YouTube has not met its burden to "clarify[], explain[], and support[] its objections" that the requested discovery should not be allowed. *In re XF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 19425956 at *3 (C.D. Cal. Jul. 25, 2022); *see also Debeaubien v. California*, 2021 WL 1616111, at *2 (E.D. Cal. Apr. 26, 2021) (obligation to provide sufficient detail on burden in terms of time, money and procedure required).

Even had YouTube properly supported its objection, the requests are proportional to the needs of the case, considering the relevance of the request, YouTube's sole access to the evidence, and YouTube's financial resources minimizing burden of compliance. *See* Fed. R. Civ. P. 26(b)(1) (proportionality considerations include importance of the issues, parties' relative access to the information, and parties' resources). Any difficulty associated with YouTube's decision not to maintain historical versions in complete form is of its own making; a party's choice to keep ESI in a manner that requires it to incur heavy expenditures to produce requested information does not provide a basis to withhold highly relevant materials. *See e.g.*, *Micron Tech, Inc. v. Factory Mut. Ins. Co.*, 2022 WL 3083713, at *4 (N.D. Cal. Aug. 3, 2022) ("burdens that result[] from [company's] own record-keeping practices cannot be used to shield it from discovery"); *Wagoner v. Lewis Gale Med. Ctr., LLC*, 2016 WL 3893135, at *3 (W.D. Va. July 14, 2016) (holding that a party's decision to keep ESI in non-searchable format was irrelevant to proportionality calculus).

## YOUTUBE'S POSITION

### RFPs for Which YouTube Has Provided Extensive 30(b)(6) Testimony (RFP Nos. 62 and 69)

Plaintiffs are engaging in a fishing expedition into theoretical documents that would be duplicative of and less helpful than the documents, information, and testimony YouTube has already provided, to the extent additional documents even exist. YouTube has granted Plaintiffs extraordinary access to information regarding the intricacies of YouTube's corporate structure and compensation policies. And YouTube has agreed to produce compensation information for high-level employees who are deponents in this case. Plaintiffs' demand that YouTube search for still more documents should be denied. *See* Fed. R. Civ. P 26(b)(2)(C) *et seq.* ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative").

**RFP No. 62** seeks "All Documents concerning any crisis management or crisis communication structure, organization, or Policy considered or developed by You to respond to investigations, lawsuits, media inquiries, or government inquiries related to the Safety of Children, Teens, and Youth who use Your Platform, including the Persons involved in or responsible for such functions." Plaintiffs' only justification for this overbroad request is that these documents supposedly "demonstrate knowledge of relevant risks at YouTube's highest levels" and aid in Plaintiffs' selection of deponents.

YouTube has already provided 30(b)(6) testimony, produced documents, and served an interrogatory response that together provide Plaintiffs with the information sought by this request in the most reliable and comprehensive form in which it is available.[4] Plaintiffs elicited over four hours of testimony regarding YouTube's corporate structure during YouTube's May 9, 2024 30(b)(6) deposition, including testimony regarding the structure of six different teams responsible for responding to lawsuits, government investigations and inquiries, and media inquiries—in other words, the teams directly responsible for related crisis management or communications—as well as testimony regarding the individuals within those teams and their roles.[5] YouTube produced documents showing the structure of those relevant teams and subteams. And YouTube prepared and provided a detailed summary of the reporting lines for each of YouTube's custodians in response to Interrogatory No. 1. Moreover, Plaintiffs can readily ascertain the individuals involved in crisis management and communications from documents that YouTube has already produced reflecting the substance of that decision making, which are also the most complete sources of information regarding "knowledge of relevant risks." Plaintiffs' insistence that YouTube search for still more documents—which may not exist and which at a minimum would be less comprehensive and helpful than that already provided—amounts to a fishing expedition.

Plaintiffs have not articulated a theory of relevance that justifies the burden of searching for more documents reflecting the same information already provided. *See, e.g., Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 3523405, at *3 (N.D. Cal. June 4, 2015) (denying request for additional discovery because the targeted party would be "unduly burdened" and because the topic "can be addressed through already propounded interrogatories

---

[4] Plaintiffs' citations to *Tennison*, 226 F.R.D. 615 (N.D. Cal. 2005) and *In re Sailed Tech. (Beijing) Co., Ltd.*, 2023 WL 3568151 (W.D. Wash. May 18, 2023) are inapposite. YouTube has ***already produced*** documents providing Plaintiffs with the information sought ***in addition*** to other forms of discovery.

[5] Plaintiffs misconstrue the testimony of YouTube's 30(b)(6) witness regarding "███████" and falsely state that the witness lacked knowledge. As the witness testified, ███████████████████████████████████████████████████████████████████████ The witness testified knowledgeably about that term, how it is used, and why ███████████████ ██████.

4

and requests for production"); *Krause v. Hawaiian Airlines, Inc.*, No. 2:18-CV-00928 JAM AC, 2019 WL 3731732, at *5 (E.D. Cal. Aug. 8, 2019) (denying plaintiff's request for additional interrogatories because they are "unreasonably duplicative" of defendant's expert report and Amended Response to a previous interrogatory).

Even if there were additional documents that were not duplicative, insofar as Plaintiffs seek policies on crisis management and the handling of investigations, lawsuits, or government inquiries, those policies are highly likely to be privileged documents to which Plaintiffs are not entitled regardless. Plaintiffs' demand should be denied.

**RFP No. 69** seeks "Documents that constitute, identify, or reflect the Policies, process, and criteria used by You during the Relevant Time Period to evaluate or determine compensation for employees working in or with Unit(s) responsible in whole or part for issues related to Safety, addiction, and/or problematic use by Youth, Teens, and Children."

Plaintiffs assert that these documents go to whether YouTube prioritized user growth and engagement over safety. Plaintiffs have no explanation for how policies regarding compensation generally are relevant to the claims or defenses in this case. In any event, YouTube has *already produced* documents sufficient to show the policies and other information sought by this request in connection with YouTube's May 9, 2024 30(b)(6) deposition on corporate structure. YouTube's "generic" compensation policies *are* the compensation policies responsive to this request. YouTube has not produced compensation policies specific to youth safety because *no such policies exist*.

Plaintiffs nevertheless continue to insist that YouTube must produce *all* documents "reflecting" the policies, process, and criteria used to evaluate or determine compensation—a sweeping demand that would encompass not only materials duplicative of those already produced but also effectively include every document related to compensation or performance evaluation within the company, including sensitive and irrelevant personnel files.[6] Plaintiffs' demand should be denied.

**Historical Internal Policies (RFP Nos. 71, 72, 76, and 79)**

YouTube has agreed to search for and produce an array of policies relevant to the issues in this case, including historical versions of those policies to the extent they are located in YouTube's custodial collections using the agreed upon search terms. But outside of custodial collections, as YouTube has repeatedly informed Plaintiffs, *such historical versions do not exist in complete form in the ordinary course of business.* Plaintiffs nevertheless demand that YouTube retrieve the individual fragments of historical versions of every responsive policy over the near-decade long relevant time period from non-custodial sources. Plaintiffs' demand is unjustified and should be denied.

**RFP Nos. 71, 72, 76, and 79** seek various categories of policies for facilitating, documenting, reviewing, analyzing, discussing, responding to, and addressing user complaints.[7] In response, YouTube has agreed to produce current non-privileged final versions of responsive policies. YouTube has also agreed to produce non-privileged historical versions of those policies—both final and non-final—from the Relevant Time Period to the extent it locates them in its custodial

---

[6] Plaintiffs seemingly recognize the sensitivity of documents of this nature, agreeing to exclude lower-level employees from their separate requests for compensation records in deposition notices.

[7] RFP No. 71 seeks documents concerning policies for "facilitating, documenting, reviewing, analyzing, discussing, responding to, and addressing User Complaints." RFP No. 72 seeks documents concerning policies for "intaking, processing, reviewing, investigating, and reporting to third parties" complaints involving the use of YouTube by minors. RFP No. 76 seeks policies concerning the reporting of harassing and bullying conduct directed at minors. RFP No. 79 seeks policies concerning the retention of reports of violations of YouTube's terms of service, CSAM, sexual exploitation, predatory conduct, sex trafficking, harassing, or bullying directed at minors.

collections using the agreed-upon search terms. YouTube has also ***already produced historical versions*** of its Terms of Service and a variety of other policies relevant to this case, including YouTube's: child safety policy; harassment and bullying policies; harmful or dangerous content policy; policy for reporting inappropriate videos, channels, and other content; suicide, self-harm, and eating disorders policy; and age-restricted content policy from the relevant time period. Yet Plaintiffs continue to demand that YouTube search for and produce ***all*** historical versions of ***all*** policies from non-custodial sources. The burden of producing such non-custodial historical versions is substantial: employees must undertake a time-consuming, manual, multi-step process to collect individual portions of each individual webpage (i.e., they cannot be retrieved on even a page-by-page basis).[8] Plaintiffs' demand that YouTube nevertheless retrieve still more portions of historical pages is unjustified given the significant burden YouTube has already undertaken in response to these requests and the irrelevance of those additional policies. For example, given the nature of YouTube's business, policies related to user complaints can encompass a wide array of policies not relevant to the claims or defenses of this litigation, such as policies related to reports of terrorist content.

Although the burden of retrieving additional historical page pieces is unwarranted, in the interest of compromise, YouTube has offered to consider requests for any additional specific historical versions of policy pages where Plaintiffs believe those versions are necessary (and not already within YouTube's production). But Plaintiffs have not been willing to engage in this process, instead maintaining their broad and untargeted demands for historical versions. Plaintiffs' demands are "vastly disproportionate to the needs of the case," particularly given YouTube's existing production. *See Ramirez v. Bank of Am., N.A.*, No. 22-CV-00859-YGR (RMI), 2024 WL 388123 at *3-4 (N.D. Cal. Feb. 1, 2024), motion for relief from judgment denied, No. 4:22-CV-00859-YGR, 2024 WL 3550393 (N.D. Cal. Apr. 3, 2024) (denying plaintiffs' motion to compel where defendants had already made productions responsive to the subject matter sought by the requests and the court agreed that document requests at issue were "vastly disproportionate to the needs of the case"). Plaintiffs' demand should be denied.

---

[8] Contrary to Plaintiffs' assertion, YouTube has explained the burden of this process repeatedly, both in meet and confer and in correspondence.