UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF ON SCHOOL DISTRICT PLAINTIFFS' REQUESTS FOR PRODUCTION (SET A) AS TO META DEFENDANTS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to: *Baltimore County Board of Education v. Meta, et al.,* Case No. 24-cv-01561 <br><br> *Board of Education Harford County v. Meta, et al.,* Case No. 23-cv-03065 <br><br> *Board of Education of Jordan School District v. Meta, et al.,* Case No. 24-cv-01377 <br><br> *Breathitt County Board of Education v. Meta, et al.,* Case No. 23-cv-01804 <br><br> *Charleston County School District v. Meta, et al.,* Case No. 23-cv-04659 <br><br> *Dekalb County School District v. Meta, et al.,* Case No. 23-cv-05733 <br><br> *Irvington Public Schools v. Meta, et al.,* Case No. 23-cv-01467 <br><br> *Saint Charles Parish Public Schools v. Meta, et al.,* Case No. 24-cv-01098 <br><br> *School District of the Chathams v. Meta, et al.,* Case No. 23-cv-01466 <br><br> *Spartanburg 6 School District v. Meta, et al.,* Case No. 24-cv-00106 <br><br> *The School Board of Hillsborough County, Florida v. Meta, et al.,* Case No. 24-cv-01573 <br><br> *Tucson Unified School District v. Meta, et al.,* Case No. 24-cv-01382 | |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the School District Plaintiffs ("Plaintiffs") and the Meta Defendants ("Meta") respectfully submit this letter brief regarding a dispute about the MDL Bellwether School District Plaintiffs' Requests for Production (Set A).

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On October 31, 2024, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

Dated: November 7, 2024                          Respectfully submitted,

*/s/Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE, LLC**
401 9th St, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
Email: pwarren@motleyrice.com

Co-Lead Counsel for Plaintiffs

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR

NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087

Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North

Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*


**COVINGTON & BURLING LLP**

By: */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
           pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**Plaintiffs' Position**: Throughout this litigation, the Parties have endeavored to cooperatively negotiate search terms and custodians when one side serves a request for production seeking electronically stored information from the other. That spirit of collaboration did not, however, extend to Meta's responses to the MDL Bellwether School District Plaintiffs' ("SD Plaintiffs") Requests for Production, Set A. The SD Plaintiffs served Set A on July 2, 2024, after this Court explicitly granted Plaintiffs leave "to propound one set of bellwether-specific RFPs on Meta directed at discrete discovery issues for those bellwether cases." ECF No. 969 at 3. Meta has refused to identify relevant custodians for these RFPs or to add any search terms or custodians beyond those agreed to in response to earlier sets of Requests, even though Plaintiffs served this Court-approved set of RFPs after those agreements were reached. Meta's refusal is unjustified.

**Custodians**: The Court should reject Meta's effort to limit its responses to RFPs Set A to those custodians the Parties finalized on May 3, 2024. As discussed above, Plaintiffs only served bellwether-specific discovery at the end of June, following discussion of that topic at the June DMC and this Court's subsequent order granting Plaintiffs leave to serve the RFPs. Judge Gonzalez Rogers did not even make initial bellwether selections until the April 15, 2024 case management conference, ECF No. 780 at 4, and it was not until the May 17, 2024 case management conference that the Parties confirmed to Judge Gonzalez Rogers that there was "a full complement of . . . school district bellwether plaintiffs." May 17, 2024 CMC Tr. 49:13–15. Plaintiffs could not possibly have spent the first quarter of 2024 negotiating custodians for bellwether plaintiffs who did not yet exist and whose identity was not finalized until *after* the deadline to agree on custodians for existing requests. Given these realities of the case schedule, the Court should overrule Meta's objection to adding custodians for the Set A RFPs.

In addition, Meta must identify if there are additional custodians who possess relevant information. Meta, as the party responding to these RFPs, "is best situated to preserve, search, and produce its own ESI." *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 118 (2018). Meta's steadfast refusal to state whether additional employees interacted with the Bellwether Plaintiffs or had unique responsibilities relevant to school districts—thereby making these individuals proper custodians—is at odds with its discovery obligations. *Cf. Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *4 (N.D. Cal. Sept. 29, 2022) (citing *The Sedona Principles* and denying request to expand list of custodians after responding party already "identified" custodians with responsive information).

**Search Terms**: Meta's refusal to add SD bellwether-specific search terms is also unjustified. The Parties finalized their initial list of search terms for pending requests on June 26, 2024. As with the custodians, these negotiations did not include SD bellwether-specific terms because Plaintiffs had not yet served the Set A RFPs. Indeed, this Court confirmed in DMO 6 that these earlier negotiations pertained only "to Plaintiffs' *already served* Requests for Production." ECF No. 875 at 1 (emphasis added).

Meta's refusal to add Plaintiffs' proposed search terms is particularly unwarranted given the obvious relevance and low burden of the terms. Plaintiffs have asked Meta to run 12 additional text strings, one for each SD bellwether plaintiff. These proposed strings contain nothing more than the name of each bellwether school district and its associated URL (e.g., **Breathitt OR !breathitt.kyschools.us**). Meta, as the party resisting discovery, bears the burden of "specifically

1

explain[ing]" why these search terms are disproportionate to the needs of this case. *Rubke v. ServiceNow, Inc.*, 2024 WL 4540756, at *3 (N.D. Cal. Oct. 21, 2024) (Kang, J.). It has not even attempted to do so here, a lack of effort that should doom its attempts to resist this highly relevant discovery. *Cf. Humanmade v. SFMade*, 2024 WL 3378326, at *3 (N.D. Cal. July 10, 2024) (Kang, J.) (finding that "requiring [defendant] to run additional search terms, if appropriately drafted, and produce responsive ESI documents and materials would be proportional to the needs of the case" and ordering additional meet-and-confer efforts because of the purportedly high hit count of plaintiff's proposed search terms).

**Plaintiffs' Reply**: Meta premises its refusal to perform an adequate search on one supposition: that the SD Plaintiffs, *before* serving the RFPs at issue, agreed to close the door on additional search terms or custodians. Meta's representations are incorrect and omit important context.

First, Meta is wrong that the SD Plaintiffs agreed in early 2024 not to seek additional custodians or search terms even if the situation required it. Meta refers to a May 3, 2024 email relating to what it characterized as a "global deal on custodians." At that point in time, not only had the SD Plaintiffs not served the Set A RFPs, but there was not even confirmation from Judge Gonzalez Rogers on the full complement of bellwether SD Plaintiffs. In addition, Meta omits a crucial line from this email, in which Meta acknowledged as part of this "global deal" that "Plaintiffs may seek to add a limited number of additional custodians . . . only upon a showing of good cause to the Court." Such good cause exists here, given the discrete nature of the RFPs, the timeline with respect to early negotiations, and the fact that they were authorized by this Court.

Likewise, Meta says it received email confirmation that the Parties' earlier agreements on search terms encompassed "already-served and to-be-served requests for production." As with the custodians, it would make no sense for any agreement to preclude subsequent developments. Indeed, in correspondence memorializing this accord, the Parties reserved the right to seek additional search terms if good cause warranted it, including a statement that "The Parties will reserve rights on what constitutes 'good cause.'" Meta points to this Court's desire "to make the search term negotiation as complete as possible." The Court made that statement to counsel for the State AGs, and the surrounding context was clear that any reference to future RFPs pertained to the AGs. June 20, 2024 DMC Tr. 42:21 –22 ("I'm going to encourage the AGs to minimize the number of additional search terms . . . ."). The SD Plaintiffs' future RFPs, which the Parties addressed earlier in the conference, were not under discussion at that point.

Second, Meta faults the SD Plaintiffs for not identifying additional custodians. This defense rings hollow given that the SD Plaintiffs have asked Meta during meet-and-confer discussions if the SD Plaintiffs could resolve this dispute by designating relevant custodians, current or additional. Meta has said no. In addition, the SD Plaintiffs have repeatedly asked Meta to identify custodians who are likely to have information responsive to the Set A RFPs. Meta has stonewalled even though it is in the best position to identify any such individuals.

Finally, Meta has not come close to substantiating any supposed "undue burden" (*infra* at 4) of complying with its discovery obligations. Under Section 9 of the ESI Order, a party that "claims burden with respect to modified and/or additional search terms" must "provide a hit report for the terms at issue." ECF No. 690 at 4. Meta has not done so. Meta's desire to "shift[] its attention

2

away from document production" (*infra* at 4) is not an undue burden. The SD Plaintiffs served the Set A RFPs well before Meta's deadline for substantial completion of document production, and the Parties have been negotiating over the search terms and custodians since August. Notably, the SD Plaintiffs served similar RFPs on the other Defendants on roughly the same timeline, and Snap and YouTube agreed to add search terms to capture a sufficiently responsive universe of documents. The Court should not allow Meta to run out the clock through its months-long refusal to perform an adequate search for responsive documents.

**Meta's Position.** Earlier this year, the Parties engaged in extensive negotiations over custodians and search terms and reached global, final agreements on both, with the full participation of counsel for Bellwether School District ("BW SD") Plaintiffs. SD Plaintiffs now seek improperly to reopen those negotiations, on the eve of substantial completion, to add an unspecified number of additional, unnamed custodians, and a dozen new search strings consisting of the names of each BW SD. SD Plaintiffs' demands are contrary to the parties' prior agreements and this Court's orders, and would impose an undue burden on Meta at this late stage.

*Custodians.* Plaintiffs and Meta agreed as of May 3 to a "global deal on custodians," as described in contemporaneous correspondence. Specifically, they agreed to a 127-custodian cap, absent a showing of good cause to the Court. The Parties agreed as of May 3 to 95 custodians, with Plaintiffs having the option to add "27 more custodians of their choice by no later than May 7" plus "5 more custodians of their choice by no later than August 30" in light of later discovery "for a total of 127 custodians." Plaintiffs subsequently identified the 32 additional custodians they had the option of selecting—27 on May 7, and their final 5 on August 28. Significantly, the BW SDs were finalized by mid-May; and the SD Plaintiffs served their Bellwether Set A Requests (which are at issue on this motion) on July 2—approximately three and two months, respectively, *before* Plaintiffs selected their final 5 custodians on August 28.

The SD Plaintiffs fully participated and were represented in the negotiations, as the correspondence confirms. When the negotiations concluded, co-lead counsel for the PI/SD Plaintiffs, Mr. Warren, responded to Meta's summary of the agreement, confirming that "[t]he PI/**SD** and AG Plaintiffs agree to these terms" (emphasis added). Given the SD Plaintiffs' full participation and prior agreement, they should not be able to evade the agreed custodial cap, particularly via requests unrelated to new factual developments. If the SD Plaintiffs believed their Set A Requests warranted additional custodians, they could have included them in the 5 custodians they had the option to add by August 28. Instead, two days *after* Plaintiffs added 5 custodians, they wrote a letter to Meta stating for the first time their position that Meta's Set A productions should involve additional, unidentified custodians—with no attempt to show good cause for such additions. This gamesmanship should not be countenanced.

SD Plaintiffs' request also should be denied because, to date—more than two months after their request to add new custodians—Plaintiffs have never even identified any such requested custodians by name. Plaintiffs have nearly 72,000 Meta-produced documents (nearly 200,000 including families) hitting on search terms relating specifically to schools (see below). That is in addition to the over 1.8 million Meta-produced documents covering issues common to all three case types. Plaintiffs also have organizational spreadsheets identifying by team thousands of Meta employees. Plaintiffs' request for some unidentified "more" does not suffice, and falls far short of meeting the good-cause showing required under the Parties' agreement.

*Search Terms.*  Regarding search terms, the Parties ultimately agreed to 317 terms to be run against all custodians, and 107 feature-specific terms to be run against 26 custodians.  The Parties were negotiating under the admonition of this Court on June 20 (following selection of the SD BWs in May) "to make the search term negotiation as complete as possible so when it's done next week" the Parties "never have to come back to me on that issue."  6/20/24 DMC Tr. at 45:18–22.  At the same DMC, the Court set limits on further RFPs, granting SD Plaintiffs leave to serve "one set of bellwether plaintiff-specific RFPs" by June 26, *id.* at 30:19-31:17, and instructing the Parties not to limit search term negotiations "to just what's been served," *id.* at 45:18-22.  The Court ultimately ordered "the Parties to complete their meet and confers on any search terms remaining in dispute by no later than June 26, 2024," which applied to "Meta and the PI/SD Plaintiffs (or any sub-group of PI/SD Plaintiffs)."  ECF No. 969 at 2.

The correspondence and agreed-upon terms show that the interests of the SD Plaintiffs were fully represented.  Mr. Warren's colleague, Mr. Drake, wrote on May 20, "Attached is a revised list of search terms based on the RFPs the PI/**SD** Plaintiffs served on Friday" (emphasis added).  Nine days later, Mr. Warren sent Meta a proposal on behalf of "[t]he PI/**SD** Plaintiffs" (emphasis added).  When the negotiations were near conclusion, Meta's counsel, Ms. Simonsen, asked for confirmation that the agreed terms "encompass all of the PI/**SD** and State AG Plaintiffs' already-served ***and to-be-served requests for production***" (emphases added).  Bianca Miyata, co-lead counsel for the State AGs so confirmed on behalf of all of "the MDL Plaintiffs."

Indeed, the agreed search terms include not only scores of terms relating to youth, but also dozens of terms relating to students, schools, classrooms, and teachers, including: kindergarten; "k-12"; ("first grade" OR "1st grade") and ("twelfth grade" OR "12th grade") (and every grade between); elementary; "grade school"; "middle school"; "high school"; freshman; freshmen; sophomore*; "school time"; "class time"; "school day"; classroom*; "lesson plans"; "teaching methods"; grades; [location targeting terms] AND (*school* or classroom* or student*); interrupt w/3 school; "after-school"; PTA OR (Parent w/3 Teacher); "public education"; teachers; superintendent; counseling; counselors; absenteeism; "skipping class"; and truan*.

The names of the specific SDs selected as BWs in May (which Plaintiffs now request as new terms) could have been requested with these other terms during the Parties' negotiations in May and June.  In any event, the broad youth- and school-related search terms otherwise agreed to should capture any discussion of the SD BWs in relevant contexts.  Indeed, as of November 4 there were 1,654 documents in Meta's productions hitting on Plaintiffs' proposed SD BW terms.

Finally, SD Plaintiffs' belated demand would place an undue burden on Meta, when Meta should be shifting its attention and resources away from document production and toward depositions and expert discovery.  In reliance on the Parties' agreements regarding the 127 custodians whose files would be pulled, and the fixed search terms that would be used to cull those collections, Meta already has extracted millions of documents from its systems and undertaken their review, and has produced in the range of 2 million documents, with an enormous expenditure of resources.  There should be closure on this phase of the case and, Meta should not absent a showing of good cause to the Court be required to pull, search, and review additional documents, from additional custodians, using additional search terms.

**Meta's Reply.**  Plaintiffs are incorrect that Meta bears the burden of explaining why the SD BWs' new proposed search terms are disproportionate.  The cases *Rubke* and *Humanmade* cases did not involve a situation where the parties had reached a global agreement on search terms that required plaintiffs to make a showing of good cause.  Plaintiffs make no effort to satisfy that material term of the Parties' agreement here; they simply observe that "initial bellwether selections" were not made until April 15 or finalized until May 17.  But Plaintiffs did not need to know the identity of the specific SDs selected as BWs in order to request in the Parties' negotiations custodians knowledgeable about issues relevant specifically to school districts.  Indeed, the Parties' agreed-upon list of 127 custodians includes at least two custodians, D.G. and L.C., who are involved in Meta partnerships in the education space and/or had interactions with educators.  In any event, Plaintiffs selected 5 Meta custodians after SD BWs were chosen, and thus had a clear chance to include custodians who they believe are important to SD BW claims.

The timing of the BW selections (April 15 and May 17) also does not explain SD Plaintiffs' failure to propose BW-specific terms during the Parties' negotiations, which concluded in June.  They could have included search terms targeting the names of each BW SD with the scores of other school-related terms they requested.  Indeed, PI/SD Plaintiffs' lead counsel told the Court at the June 20 DMC that SD Plaintiffs' then-forthcoming Set A RFPs would be targeting "communications defendants may have had specific to that district," 6/20/24 DMC Tr. at 30:21-31:7.  At the June 20 DMC, the Court granted the SD Plaintiffs leave to serve those RFPs (and the State AGs leave to serve their Set 3 RFPs), ECF No. 969 at 3-4, and instructed the Parties to include *all* search terms in their negotiations—including terms related to not-yet-served RFPs—so that "you'll never have to come back to me on that issue."  6/20/24 DMC Tr. at 45:10-19.  Plaintiffs cite a May 20 recitation by the Court of the Parties' then-pending request to "set a deadline for the Parties to finalize search terms relating to Plaintiffs' already served [RFPs]," ECF 875 at 1, but this excerpt ignores the Court's subsequent, repeated instructions to include all search terms, for both already-served and future RFPs, in the Parties' negotiations.

Finally, the SD Plaintiffs' "low burden" argument is incorrect.  The collection, processing, review, and production of additional documents would incur a burden upon Meta and this burden would be magnified by the timing of the requests.  The BW SDs should have requested these terms as part of the initial search term negotiation process.

5

## ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 7, 2024                                              */s/Lexi J. Hazam*