UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

MDL No. 3047

Case Nos.:  4:22-md-03047-YGR-PHK

**JOINT LETTER BRIEF ON
PLAINTIFFS' REQUESTS FOR
COMPENSATION
DOCUMENTATION FOR SUBSET
OF META DEPONENTS**

This Filing Relates to:

*Baltimore County Board of Education v. Meta,
et al., Case No. 24-cv-01561*

*Board of Education Harford County v. Meta,
et al., Case No. 23-cv-03065*

*Board of Education of Jordan School District
v. Meta, et al., Case No. 24-cv-01377*

*Breathitt County Board of Education v. Meta,
et al., Case No. 23-cv-01804*

*Charleston County School District v. Meta, et
al., Case No. 23-cv-04659*

*Dekalb County School District v. Meta, et al.,
Case No. 23-cv-05733*

*Irvington Public Schools v. Meta, et al.,
Case No. 23-cv-01467*

*Saint Charles Parish Public Schools v. Meta,
et al., Case No. 24-cv-01098*

*School District of the Chathams v. Meta, et al.,
Case No. 23-cv-01466*

*Spartanburg 6 School District v. Meta, et al.,
Case No. 24-cv-00106*

*The School Board of Hillsborough County,
Florida v. Meta, et al., Case No. 24-cv-01573*

*Tucson Unified School District v. Meta, et al.,
Case No. 24-cv-01382*

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Dear Judge Kang:

       Pursuant to the Court's Standing Order for Discovery in Civil Cases, the Personal Injury and School District Plaintiffs ("Plaintiffs") and the Meta Defendants ("Meta") respectfully submit this letter brief regarding a dispute about the Plaintiffs' requests that Meta produce documentation sufficient to show the compensation, bonus, and stock awards/options for eleven deponents.

       Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On November 4, 2024, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

Dated: November 11, 2024              Respectfully submitted,

                                 */s/Lexi J. Hazam*
                                 LEXI J. HAZAM
                                 **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                 275 BATTERY STREET, 29TH FLOOR
                                 SAN FRANCISCO, CA 94111-3339
                                 Telephone: 415-956-1000
                                 lhazam@lchb.com

                                 PREVIN WARREN
                                 **MOTLEY RICE, LLC**
                                 401 9th St, Suite 630
                                 Washington, DC 20004
                                 Phone: (202) 386-9610
                                 Email: pwarren@motleyrice.com

                                 Co-Lead Counsel for Plaintiffs

                                 CHRISTOPHER A. SEEGER
                                 **SEEGER WEISS, LLP**
                                 55 CHALLENGER ROAD, 6TH FLOOR
                                 RIDGEFIELD PARK, NJ 07660
                                 Telephone: 973-639-9100
                                 cseeger@seegerweiss.com

                                 Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR

NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**ANAPOL WEISS**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@anapolweiss.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**ANAPOL WEISS**
130 North 18th Street | Suite 1600
Philadelphia, PA 19103
Telephone: 202-773-0381
PBoldt@anapolweiss.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087

Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North

v

Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*


**COVINGTON & BURLING LLP**

By:  */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
          pschmidt@cov.com

*Attorney for Defendants Meta Platforms,
Inc. f/k/a Facebook, Inc.; Facebook
Holdings, LLC; Facebook Operations,
LLC; Facebook Payments, Inc.; Facebook
Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

**Plaintiffs' Position:** At the September 12, 2024 conference, Your Honor provided clear guidance on how the Parties should approach requests for personnel file and compensation documentation with respect to party deponents. Plaintiffs were to seek performance reviews and self-evaluations for a targeted "subset" of deponents and were to seek documentation on compensation/bonuses from Defendants' accounting records, which the Court observed would avoid any "personnel file issue" under California law. 2024.09.12 Tr. at 75:4-09, 79:4-11, and 82:2-8.

Plaintiffs have done that. Of the 39 Meta witnesses identified for deposition, Plaintiffs and Meta have agreed Meta is to produce performance reviews and self-evaluations for just 11 specific witnesses. That agreement is not in dispute here. What is in dispute is Plaintiffs' parallel offer to limit their request for compensation, bonus, and stock options/awards documentation to those same 11 witnesses. Unlike YouTube (which has agreed to produce evaluations/reviews <u>and</u> compensation/bonus information for an agreed subset of its deponents and is still negotiating as to others),[1] Meta steadfastly refuses to query its accounting systems and records to produce the requested documentation.

There is no legitimate basis for Meta's position.

Meta does not dispute that information about a witness' compensation, bonus, and stock options/awards is relevant. Plaintiffs intend to prove at trial that Meta prioritized user engagement and business growth over safety—and that it targeted children to achieve those goals. As discussed at the September 12 conference, an important part of this story is tying together performance review/self-evaluations with the history of how Meta compensated the witness—including bonuses/stock awards/stock options. If a witness was criticized in one year for not focusing enough on user engagement or being too concerned with child safety, but praised the next year for improvements on these issues (from Meta's perspective), it is highly relevant to know whether and how the witness' compensation changed too. More generally, a witness' compensation and stock holdings are relevant to probing their motivations and bias.[2]

Meta also cannot show that privacy protections for personnel records preclude producing the requested documentation. As Your Honor observed at the September 12 conference, the

---

[1] Plaintiffs are still in negotiations with Snap over these issues and will resume discussions with TikTok, for which depositions have been postponed while TikTok completes its production.

[2] *See*, *e.g.*, *In re Abilify Prod. Liab. Litig.*, 2017 WL 4399198, at *11 (N.D. Fla. 2017) ("information concerning financial incentives sales representatives received … is relevant and discoverable"); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-cv-01748, ECF No. 1027 (N.D. Ill. 2015) (compelling production of salary and other compensation information); *In re Tylenol Marketing, Sales Practices and Prod. Liab. Litig.*, No. 2:13-md-02436, ECF No. 123, at fn. 3 (E.D. Pa. F2014) (ordering production of compensation information for executives); *In re Pradaxa Prod. Liab. Litig.*, No. 3:12-md-02385, ECF No. 166, at 5 (S.D. Ill. 2013) (performance reviews and compensation information "necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias."). *Accord United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999) (a witness' pecuniary interest, including the amount of money at issue, is relevant to show bias "because the jury may reasonably believe that the willingness of a witness to lie or shade testimony would be affected, not only by whether the results may benefit him, but also by how much.").

1

information requested can be produced from accounting records and systems and does not implicate any "personnel file issue.' 2024.09.12 Tr. 75:4-9. While Plaintiffs intended to probe these issues with all deponents, we seek actual documentation for the 11 witnesses for whom we will be getting self-evaluations and performance reviews. Producing actual documentation will ensure that Plaintiffs' efforts to tie compensation/bonus/stock history to a witness' evaluations and reviews are not left to be done on the fly at deposition, nor dependent on the accuracy of the witness' memory for numbers over a period of several years in the past—or their willingness to testify to such matters.

**Meta's Position.** The Court should deny Plaintiffs' late requests for compensation information for 11 of Meta's anticipated deponents, for three reasons. First, the specific compensation any particular Meta employee received is irrelevant to Plaintiffs' claims and theories as they have articulated them, and any probative value is outweighed by the invasion of privacy its production would entail. Second, Meta agreed months ago to produce generally applicable compensation policies in order to resolve an RFP that encompassed the compensation information they now seek again, with Plaintiffs agreeing that production of those policies would satisfy the RFP. Third, Plaintiffs began serving these requests in July—one month after they committed not to serve additional RFPs, with two exceptions that do not apply here. ECF 969 at 2-3.

First, the California Constitution grants a right of privacy to personal, confidential financial information, including an individual's compensation. *See* Cal. Const., art. I, § 1; *Valley Bank of Nevada v. Super. Ct.*, 15 Cal. 3d 652, 656 (1975) (recognizing that this right "extends to one's confidential financial affairs"). Plaintiffs are not entitled to probe into witness' sensitive financial information without even a showing of relevance. *Miranda v. First Reliance Standard Life Ins. Co.*, No. CV 09-4452 RS (NJV), at *9 (N.D. Cal. June 15, 2011) (holding that "discovery into compensation information for the supervisors of the individuals identified … is not relevant and outside the scope of permissible conflict discovery."). Thus, in *Johnson v. Hewlett-Packard Company*, the court denied the plaintiffs' motion to compel compensation information to show bias, reasoning that "employment with HP already implies bias, and thus, exact information as to amounts of compensation is unnecessary for such a purpose." 2010 WL 4510345, at *2 (N.D. Cal. Nov. 1, 2010). The court emphasized the privacy interests at stake, concluding that the plaintiffs "failed to demonstrate a compelling need for this Court to require disclosure of [the witness's] financial affairs, given [his] reasonable expectations of privacy." 2010 WL 4510345, at *2; *see also Shaffer v. Super. Ct.*, 33 Cal. App. 4th 993, 999 (1995) (denying request for irrelevant financial information implicating privacy interests).

Here, Plaintiffs have said they are seeking compensation information to understand the extent to which 11 Meta deponents' compensation was tied to increasing user engagement or user growth, potentially at the expense of user wellbeing or safety. *See also* ECF 1157 (DMO 10) at 6 (noting this same proffered basis for Plaintiffs' personnel file demands for all TikTok deponents). But the specific salary or bonus amount a particular Meta deponent earned in a particular year says nothing about why those amounts were earned,. The latter would instead be reflected, if anywhere, in applicable compensation policies, which Meta has already produced.

Those policies do not substantiate the connection Plaintiffs are hoping to draw between the Meta deponents' compensation and increasing user engagement. So in July, Plaintiffs started serving RFPs attached to deposition notices, seeking each deponent's full personnel file (among other

things).  Meta agreed to resolve disputes over the RFPs by producing relevance-redacted performance reviews and self-evaluations—that is, for the 11 Meta deponents Plaintiffs determined are sufficiently senior to justify the invasion of privacy such productions entail.  *See id.* (finding Plaintiffs' request for lower-level TikTok employees' personnel files "unnecessarily duplicative and/or disproportionate to the needs of the case," weighing privacy interests).  Requiring Meta to *also* produce annual salary and bonus information for these 11 individuals would only work a further invasion of their constitutionally-protected right to financial privacy, while adding nothing of probative value under Plaintiffs' articulated theory of relevance.  *Cf. Shaffer*, 33 Cal. App. 4th at 999 ("In ruling on discovery motions, the court must balance competing rights—the right of a litigant to discover *relevant* facts and the right of an individual to 'maintain reasonable privacy.'").  The Court should deny their requests.

Second, the Parties resolved months ago a prior RFP (No. 123) that encompassed Plaintiffs' July requests for compensation information.  RFP 123 sought "[d]ocuments that constitute, identify, or reflect the Policies, process, and criteria used by You during the Relevant Time Period to evaluate or determine compensation for employees working in or with Unit(s) responsible in whole or part for issues related to Safety, addiction, and/or problematic use by Youth, Teens, and Children."  In conferrals, Meta identified documents reflecting compensation policies generally applicable to all but one of the 122 Meta custodians agreed-to as of that time, as well as an SEC filing describing a unique plan applicable to one custodian.  During negotiations, Plaintiffs said that if Meta refused to produce such policies (or if such policies did not exist), they would need to demand specific compensation information for each custodian.  Meta ultimately agreed to produce the generally applicable policies (and the unique compensation plan for the one custodian), with Plaintiffs agreeing that would satisfy RFP 123 and resolve the Parties' disputes.  It is improper for Plaintiffs to now be revisiting the Parties' negotiated resolution of RFP 123.

Third, in June Plaintiffs "committed that they would limit their right to serve additional RFPs with two qualitative exceptions"—namely, (1) "for materials that fall outside the Relevant Time Period" and (2) "to obtain materials concerning new developments, facts, or issues that may come to light."  ECF 969 (DMO 7) at 2-3.  Meta agreed to this approach in lieu of the numerical limit on further RFPs it was seeking, *see* ECF 967 at 19, and ***the Court "accept[ed] the PI/SD Plaintiffs' qualitative limitations on further RFPs,"*** ECF 969 at 3.  Neither of Plaintiffs' enumerated exceptions applies here.  Plaintiffs are seeking compensation information for Meta deponents *during*, not *outside of*, the Relevant Time Period; and this information does not concern new developments, facts, or issues that have come to light.  To the contrary, Plaintiffs had by April already identified all 11 of these individuals as anticipated deponents.  Plaintiffs could have served an RFP seeking compensation information for those or other anticipated deponents at that time.  Instead, they waited until July to begin serving their latest requests for compensation information as attachments to deposition notices.  Plaintiffs should be held to their June 20 commitment, "accept[ed]" by the Court—not rewarded for breaking it.

**Plaintiffs' Reply:** None of Meta's arguments in opposition to Plaintiffs' requests for deponent-specific discovery have merit.

First, as shown above, the actual amounts Meta chose to pay or not pay someone are highly relevant to Plaintiffs' claim that the defects in Meta's platforms are due, in part, to the goals, priorities, and outcomes Meta chose to pursue and incentivize. Plaintiffs and Meta have agreed

that Meta will provide self-evaluation and performance reviews for 11 specific witnesses to allow Plaintiffs to explore this theory. Documentation showing what Meta chose to pay these same 11 witnesses over time—in compensation (and raises), bonuses (or denial of bonus), and stock holdings/options—will paint a complete picture. Meta's claim that its compensation policies refute Plaintiffs' theory simply assumes away the conclusion a jury would reach—and cannot be a basis to deny discovery for Plaintiffs to test their theory against the actual facts.

Second, the cases Meta cites are wholly inapposite. *Miranda* found compensation of supervisors who were <u>not involved</u> in the claim decision at issue was not relevant to the plaintiff's assertion that her insurance claim was impacted by a conflict of interest. Here, by contrast, the witnesses being deposed <u>were involved</u> in the conduct at issue—namely Meta's design, testing, operation, advertising on, or marketing of its platforms and Meta's representations to the public about its platforms and/or child safety—and their incentives and motivations are relevant and discoverable. *Johnson* concerned only generalized claims of witness "bias" due to compensation, whereas Plaintiffs seek documents to understand <u>Meta's conduct</u>, namely what Meta did or did not do to reward these individuals, including in light of their performance on key metrics and alignment with Meta's goals. Finally, *Schaffer* found the amounts a law firm paid its staff attorney was irrelevant to the plaintiff's claims that Gibson Dunn overbilled the plaintiff. But here, how and why Meta incentivized its employees with respect to engagement and child health and safety are relevant to Plaintiffs' claims.

Third, Plaintiffs have never waived their ability to seek the discovery at issue here. Meta's focus on <u>other</u> discovery requests is misdirection. Meta points to the agreements reached in June concerning service of additional RFPS. But those agreements were made in the context of, and to address limits on, general RFPs that required Meta to identify and search through custodial and non-custodial sources on a company-wide basis. The requests at issue here are not of that type and raise none of the potential burden concerns that the general RFPs did. They are targeted, deponent-specific requests—akin to a demand for documents in a deposition subpoena—following this Court's suggestion in September about the least burdensome and intrusive way to seek compensation documentation. Likewise, Meta misconstrues the parties' discussions concerning a general RFP that sought Meta's bonus and compensation policies. Plaintiffs did not agree to forever forego discovery of actual compensation documents. To the contrary, production of such information was a compromise that Plaintiffs suggested when Meta objected to producing the policies—which compromise Meta then <u>rejected</u>. Plaintiffs waived nothing by the fact that Meta ultimately agreed to produce the policies as called for by that RFP.

**Meta's Reply.**  Meta does indeed dispute the relevance of a witness's numerical compensation, bonus, and stock options/awards.  Plaintiffs speculate that *if* performance reviews show certain patterns of written criticism and reward, *then* information regarding changes in compensation would be relevant.  But Plaintiffs have not pointed to any such pattern in any performance evaluations Meta has produced to date.  The deponents' privacy rights should not be cast aside on the theory that hypothetical content in performance reviews might demonstrate relevance.[3]

Plaintiffs misconstrue the Court's comments at the Sept. 12 DMC.  There, the Court asked if Plaintiffs had "asked whether [TikTok] has [a] ***policy or practice***" of awarding "bonuses based

---

[3] Any compromise resolution of these RFPs offered by YouTube has no bearing on the instant dispute between Meta and Plaintiffs.

on user engagement metrics … ***outside the scope of personnel files***."  9/12/24 DMC Tr. at 74:3-4.  The Court observed that Plaintiffs "could" ask for "***the accounting on the bonuses***" "in other ways that don't necessarily implicate the personnel files."  *Id.*  At most, these comments suggest the Court believed compensation and bonus policies—which Meta already has produced—are discoverable.  The Court did not direct Defendants to produce bonus information, said nothing about salaries and stock options/awards, and did not have before it a Defendant who already had agreed to produce both compensation policies and 11 deponents' performance evaluations.  The Court separately directed TikTok to redact "for privacy purposes" from any evaluations "truly confidential and personal information"—which specific compensation figures *are*.

Plaintiffs' cited authorities all were resolved outside of the context of California privacy rights.  *Abilify* determined that, where public communication was mediated by non-employee providers, financial incentives for *sales representatives* provided relevant context.  2017 WL 4399198, at *11.  The deponents here are not salespeople.  The *Testosterone* minute order limited discovery to witnesses whose compensation the court already had determined to be producible.  The *Tylenol* order's reasoning is contradicted by *Johnson v. Hewlett-Packard*.  *See* 2010 WL 4510345, at *2.  Contrary to *Pradaxa*, California litigants are not automatically entitled to all private information needed to form a "complete picture" of witness motivations.  "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed."  Instead, "[t]he scope of any disclosure must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner."  *Davis v. Super. Ct.*, 7 Cal. App. 4th 1008, 1014, (1992).  *Harris* involved a Confrontation Clause right to cross-examine witnesses for bias—a right not extending to civil plaintiffs.  185 F.3d at 1008.  In civil cases, California courts balance the need for relevant information against privacy interests.  Where relevance is minimal, privacy prevails, as should be the case here.

## ATTESTATION

I, Jennifer Scullion, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 11, 2024                          */s/Jennifer Scullion*