*ORIGINAL*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | |
|---|---|
| IN RE: SOCIAL MEDIA ) | **Further Case Management** |
| ADOLESCENT ADDICTION/ ) | |
| PERSONAL INJURY PRODUCTS ) | |
| LIABILITY LITIGATION ) | NO. C 22-03047 YGR |
| ) | |
| ) | |
| ALL ACTIONS ) | Pages 1 - 40 |
| ) | |
| _____) | Oakland, California |
| | Friday, November 22, 2024 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:           Lieff, Cabraser, Heimann &
                            Bernstein
                          275 Battery Street, 30th Floor
                          San Francisco, California  94111
                    BY:   LEXI J. HAZAM, ATTORNEY AT LAW

                          Seeger Weiss LLP
                          55 Challenger Road, Sixth Floor
                          Ridgefield Park, New Jersey  07660
                    BY:   AUDREY SIEGEL, ATTORNEY AT LAW


              (Appearances continued next page)



Reported By:          Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1                 A P P E A R A N C E S (CONT'D.)

 2

 3    For Plaintiffs:        Motley Rice LLC
                             401 9th Street NW Suite 630
 4                           Washington, DC  20004
                        BY:  PREVIN WARREN, ATTORNEY AT LAW
 5

 6                           Gibbs Law Group
                             1111 Broadway, Suite 2100
 7                           Oakland, California  94607
                        BY:  ANDRE MURA, ATTORNEY AT LAW
 8

 9                           Kessler Topaz Meltzer Check LLP
                             280 King of Prussia Road
10                           Radnor, Pennsylvania  19087
                        BY:  MELISSA L. YEATES, ATTORNEY AT LAW
11

12    For Plaintiff Abraham:  Boies Schiller Flexner LLP
                             44 Montgomery Street, 41st Floor
13                           San Francisco, California  94104
                        BY:  NICHOLAS A. SANTOS, ATTORNEY AT LAW
14

15

16    For Plaintiff State    California Department of Justice
      of California:         1515 Clay Street, 20th Floor
17                           Oakland, California  94612-0550
                        BY:  EMILY KALANTHI,
18                           JOSHUA E. OLSZEWSKI-JUBELIRER,
                             BRENDAN RUDDY,
19                             DEPUTY ATTORNEYS GENERAL

20

21    For Plaintiff State of  Colorado Department of Law
      Colorado:              1300 Broadway, 6th Floor
22                           Denver, Colorado  80203
                        BY:  KRISTA BATCHELDER,
23                             DEPUTY SOLICITOR GENERAL

24

25
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
1                    A P P E A R A N C E S (CONT'D.)

2

3      For Plaintiff           Office of the Kentucky Attorney
       Commonwealth of           General
4      Kentucky:               1024 Capital Center Drive, Suite 200
                               Frankfort, Kentucky  40601
5                      BY:   MATTHEW COCANOUGHER,
                               ASSISTANT ATTORNEY GENERAL
6
       For New Jersey          New Jersey Office of the Attorney
7      Plaintiffs:              General, Division of Law
                               124 Halsey Street, 5th Floor
8                              Newark, New Jersey  07101
                       BY:   THOMAS HUYNH,
9                            VERNA J. PRADAXAY,
                               DEPUTY ATTORNEYS GENERAL
10
       For Plaintiff State of  Office of the Indiana Attorney
11     Indiana:                 General Consumer Protection
                               302 W Washington Street
12                             Suite IGCS, 5th Floor
                               Indianapolis, Indiana  46204
13                     BY:   CORINNE GILCHRIST, SECTION CHIEF
                               CONSUMER LITIGATION
14
       For Plaintiff State     Office of the Attorney General
15     of South Dakota:         South Dakota
                               1302 E. Highway 14, Suite 1
16                             Pierre, South Dakota  57501
                       BY:   AARON SALBERG,
17                             ASSISTANT ATTORNEY GENERAL

18

19     For Plaintiff State of  Office of the Arizona Attorney General
       Arizona:                Consumer Protection and Advocacy
20                              Section
                               2005 N. Central Avenue
21                             Phoenix, Arizona 85004
                       BY:   NATHAN WHELIHAN,
22                             ASSISTANT ATTORNEY GENERAL

23

24

25
```

```
1                    A P P E A R A N C E S (CONT'D.)

2

3    For the Meta          Covington & Burling LLP
     Defendants:           One City Center
4                          850 Tenth Street, NW
                           Washington, DC  20001-4956
5                     BY:  MICHAEL X. IMBROSCIO,
                           PAUL W. SCHMIDT,
6                          ASHLEY M. SIMONSEN, ATTORNEYS AT LAW

7                          Covington & Burling LLP
                           620 Eighth Avenue
8                          New York, New York  10018
                      BY:  GREGORY L. HALPERIN, ATTORNEY AT LAW
9
                           Davis Polk & Wardwell LLP
10                         450 Lexington Avenue
                           New York, New York  10017
11                    BY:  JAMES P. ROUHANDEH, ATTORNEY AT LAW

12

13   For Defendant Snap    Munger, Tolles & Olson
     Inc.:                 560 Mission Street, 27th Floor
14                         San Francisco, California  94105
                      BY:  JONATHAN H. BLAVIN, ATTORNEY AT LAW

15

16   For Defendant TikTok  King & Spalding LLP
     Inc.; ByteDance, Inc.: 1180 Peachtree Street, N.E.
17                         Suite 1600
                           Atlanta, Georgia  30309-3521
18                    BY:  GEOFFREY M. DRAKE, ATTORNEY AT LAW

19                         O'Melveny & Myers LLP
                           1625 Eye Street NW
20                         Washington, DC  20006
                      BY:  MARTHA F. HUTTON, ATTORNEY AT LAW
21
     For Defendant Alphabet Wilson, Sonsini, Goodrich & Rosati
22   Inc.; Google, LLC;    953 East Third Street, Suite 100
     YouTube, Inc.:        Los Angeles, California  90013
23                    BY:  MATTHEW K. DONOHUE, ATTORNEY AT LAW

24

25
```

1                    **A P P E A R A N C E S (CONT'D.)**

2


3    For Defendant Alphabet   Williams & Connolly LLP
     Inc.; Google, LLC;        680 Main Avenue, SW
4    YouTube, Inc.:            Washington, DC  20024
                         BY:   JOSEPH G. PETROSINELLI,
5                                ATTORNEY AT LAW

6

7

8

9

10                           --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    Friday, November 22, 2024                          9:00 a.m.

2                        P R O C E E D I N G S

3                 (Reported remotely via Zoom Webinar)

4                             --o0o--

5         THE CLERK:  Morning, everyone.  These proceedings are

6    being court-reported by this Court.  Any other recording of

7    this proceeding, either by video, audio, including screen

8    shots or other copying of the hearing is strictly prohibited.

9         Your Honor, now calling the civil matter 22-MD-3047-YGR,

10   In Re: Social Media Adolescent Addiction Personal Injury

11   Products Liability Litigation.

12        Today's appearances will be included in posting of the

13   minutes.

14        Thank you.

15        THE COURT:  All right.  Good morning.

16        Okay.  So let's start with your agenda, and then we can

17   move to other miscellaneous issues that -- that I have as

18   well.

19        So -- I don't care.  Anybody at the mic?  Just one of you

20   on each side.

21        The first issue with respect to the expert certification

22   language, we'll put it in the formal order, but so ordered.

23   And thanks for doing that.

24        We'll -- you know, we'll see if we think it makes a

25   difference.  Lawyers always tell me that of course they're
```

```
 1    doing this.  But, you know, sometimes I wonder.  But we'll
 2    see.
 3        But yes, so ordered.  Okay?
 4            MR. BLAVIN:  Thank you, Your Honor.
 5            MR. WARREN:  Thank you, Your Honor.
 6                    (Off-the-record discussion.)
 7            MR. BLAVIN:  John Blavin on behalf of Snap from
 8    Munger Tolls.
 9            THE COURT:  Thanks, Raynee.  Sorry about that.  We'll
10    make sure to have everybody confirm.
11        A new leadership change with the Colorado AG office?
12            MS. BATCHELDER:  Yes, Your Honor.  Krista Batchelder
13    appearing for the State of Colorado.
14            THE COURT:  Okay.
15            MS. BATCHELDER:  I will be replacing Bianca Miyata.
16            THE COURT:  Okay.  And is Ms. Miyata okay?
17            MS. BATCHELDER:  She's perfectly fine.  She's
18    exploring other opportunities.
19            THE COURT:  Okay.  Well, give her my best.
20            MS. BATCHELDER:  Okay.  Thank you.
21            THE COURT:  Thank you.
22        Okay.
23        You're still working on -- as I understand it, you're
24    still working on narrowing issues on bellwethers?
25            MS. HAZAM:  Yes, Your Honor.  Lexi Hazam for
```

```
 1    plaintiffs.

 2        We have been meeting and conferring with defendants on

 3    this issue.  And we'll continue to do so and report back to

 4    the Court at the next opportunity.

 5            THE COURT:  Okay.  So that's -- that's fine.  I mean,

 6    if there's nothing to talk about, then I'll just wait and see.

 7    So thanks for that update.

 8            MS. HAZAM:  You're welcome.

 9            THE COURT:  Thanks for doing the background search on

10    the vendor obligations.  I appreciate you following up on

11    that.

12        We have already at this point linked your website to -- to

13    our website, so I think the more we can give people

14    information and options for getting information is a good

15    thing.

16        Let's see.  We will address the problems with some of the

17    State AGs not following orders in a moment, not right this

18    second.

19        Montana AG and Meta.

20            MR. SCHMIDT:  Good morning, Your Honor.  Paul Schmidt

21    for Meta.

22            THE COURT:  Good morning.

23            MR. HUYNH:  Morning, Your Honor.  Thomas Huynh for

24    the State of New Jersey but also speaking for Montana on this

25    matter.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1          **THE COURT:**  Okay.  So what's the update here?

2          **MR. HUYNH:**  With regards to Montana, I've spoken with

3     them.  They said that they're resting on their papers for the

4     order to show cause.

5          **MR. SCHMIDT:**  We've actually conferred with Montana

6     yesterday and have agreement with Montana, both on a process,

7     if it's acceptable for the Court, and timing, if it's

8     acceptable for the Court.

9          The process would be -- I think the parties have no

10    interest in -- we don't want to burden the Court with

11    relitigating issues the Court has already spoken on, which

12    covers a lot of the issues with respect to Montana.  Section

13    230 is an example in both directions.  The COPPA venue issue

14    is an example.

15         And so as to those issues, what the parties propose is to

16    submit a stipulation agreeing to be bound by the Court's prior

17    rulings on those issues but preserving their appellate rights

18    on those issues.

19         And if that's acceptable to the Court and preserves their

20    rights, then we can go ahead and do that.

21         **THE COURT:**  Yeah, absolutely.

22         **MR. SCHMIDT:**  Okay.

23         And then as to -- there are -- I think we flagged this.

24    There are unique issues that Montana asserts that other states

25    don't assert.  One prominent example is they challenge the age

```
 1    designation for Instagram and the Apple App Store.  That's not
 2    an allegation other states have brought.
 3        For those allegations, we propose a target briefing
 4    schedule, and I can read that in the record for Your Honor's
 5    reaction, if -- if that makes sense.
 6             THE COURT:  Sure.  Go ahead.
 7             MR. SCHMIDT:  We would propose to follow the Court's
 8    local rules on lengths, so 25 pages for the opening brief, 25
 9    opposition, 15 reply.  And tracking the rough dates and
10    recognizing the holidays, we would propose that we Meta move
11    on December 20th, the State, Montana, respond on January 24th,
12    and we reply on February 7th.
13             THE COURT:  Yeah, those dates work for me.  That's --
14    and then -- let's see.  February -- well, I don't know that
15    I'll have an answer for you on February 12th, which is just
16    five days later at our first -- at our February CMC.
17             MR. SCHMIDT:  I don't think we'd be asking for one.
18             THE COURT:  But I think that briefing schedule works.
19             MR. SCHMIDT:  Okay.
20             THE COURT:  And so so ordered.
21             MR. SCHMIDT:  Thank you, Your Honor.
22             MR. HUYNH:  Thank you, Your Honor.
23             MR. SCHMIDT:  We'll submit the stipulation.
24             THE COURT:  Okay, great.
25             MR. SCHMIDT:  Thank you.
```

```
 1          THE COURT:  Okay.
 2      As I'm sure you saw from the docket, I did decide to
 3  relate the TikTok case, so that's done.
 4      I had a question on two pages now of your case management
 5  statement.  So let me ask this as a prelude to a question that
 6  I'll ask at the end.
 7      Anybody want to say anything else that's in this -- that
 8  wasn't in this two pages that you fought about or didn't fight
 9  about it, or -- you know, I said -- as I told you before, I
10  don't need a lot of back-and-forth in these statements.
11      But now is your opportunity to say whatever else you would
12  have wanted to say on expert certification, website, vendor
13  obligations, narrowing, discovery pools, TikTok.  Anything
14  else you wanted to say or are we good?
15          MR. RUDDY:  Morning, Your Honor.  Brendan Ruddy on
16  behalf of the People of the State of California in the action
17  People v. TikTok, Inc.
18      Since Your Honor mentioned the related action, there are a
19  couple logistical housekeeping issues that we would like to
20  address.
21          THE COURT:  Okay.
22          MR. RUDDY:  The people had already filed a motion to
23  remand before the case was related, and it needs to be re- --
24  re-noticed.
25      My understanding is the Court prefers --
```

```
 1              THE COURT:  So it needs to be re-noticed typically in
 2    my typical cases.
 3         Is it -- remind me.  Is it fully briefed?
 4              MR. RUDDY:  No.  The -- the opening brief and motion
 5    was filed on Monday.
 6              THE COURT:  Okay.  So do you want -- I would
 7    typically go by the regular -- the regular 35-day schedule,
 8    but given the holidays, we don't have to do that.
 9         Do you want to follow the schedule that -- that the others
10    just proposed?
11              MR. RUDDY:  We would propose a hearing date of the
12    12th of -- a February 12th CMC, if that's Your Honor's
13    preference.  Otherwise, we could schedule it for a Tuesday
14    general civil motions calendar.
15              THE COURT:  No, it would be on that day.  You just
16    have to make sure that I get it in advance.  So --
17              MR. RUDDY:  We had done a briefing schedule
18    previously and I think would be able the reach one -- is 14
19    days in or more in advance sufficient?
20              THE COURT:  Well, we're here.  We'll do it right now.
21         So it's been filed.
22              MR. RUDDY:  Yes.
23              THE COURT:  I need an opposition.
24              MR. DRAKE:  Good morning, Your Honor.  Geoffrey Drake
25    from King & Spalding on behalf of the TikTok defendants.  I
```

1    wanted to introduce Your Honor to my colleague Mattie Hutton

2    from O'Melveny & Myers.  They're handling the Attorney General

3    litigation for TikTok.

4          **THE COURT:**  Okay.

5          **MR. DRAKE:**  I'll let her address that.  Thank you,

6    Judge.

7          **MS. HUTTON:**  Good morning, Your Honor.  As my friend

8    mentioned, the parties had, prior to transfer, reached a

9    stipulation on briefing this motion.  And it would have had

10   the opposition to the remand motion due on January 13th right

11   after the holidays.

12       That would continue to work for TikTok, and I think it

13   would push it to perhaps the following case management

14   conference, but --

15         **THE COURT:**  Well, January 13th, then -- so that was

16   the opposition.

17       And the reply was due when?

18         **MR. RUDDY:**  The 10th of February.

19       So our -- our suggestion would be a opposition due on the

20   6th or 7th, and reply on January 27th or 28th.  That would be

21   two weeks in advance of the 12th on [sic] February.

22         **THE COURT:**  Okay.  Thoughts.

23         **MS. HUTTON:**  We would prefer to keep the earlier

24   agreement on --

25                   (Simultaneous colloquy.)

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1              THE COURT:  Typically -- look, motions for remand, I
 2    never even give argument on motions for remand.  There is a
 3    very -- you know, the -- the rule's not debatable.  It's --
 4        Is there something -- is there something wildly different
 5    in this case than every other case we have to deal with?
 6              MR. RUDDY:  Absolutely not.  In fact, I mean, the
 7    motion is for remand and for just costs and expenses for
 8    having had to bring the motion.
 9        The -- out of respect for counsel's holiday schedule as
10    ours, is the only reason why we'd push briefing back into
11    January.  The motion's ten pages already filed.
12              THE COURT:  It's November 22nd.  You really need 60
13    days to file an opposition to a motion for remand?
14              MS. HUTTON:  Your -- Your Honor, we'll be happy to do
15    it on the earlier schedule if Your Honor prefers.
16              THE COURT:  All right.  You said January 6?
17              MR. RUDDY:  Yes, Your Honor.
18              THE COURT:  You want to file it sooner than
19    January 6th so you don't have to worry about it?
20              MS. HUTTON:  The -- Your Honor, the 6th would be
21    welcome.
22              THE COURT:  All right.  So January 6th, and then I'm
23    going to get a -- a reply on the 13th?  It's typically one
24    week, or do you want more time?  So you want the 20th?  I'll
25    give you the 20th.
```

1      **MR. RUDDY:**  The 20th would be appreciated.  Thank

2  you, Your Honor.

3      **THE COURT:**  All right.  And then I'll hear it on the

4  12th.

5    Okay?

6      **MR. RUDDY:**  Two other housekeeping items.  A motion

7  to seal -- administrative motion to seal had been filed before

8  the case was related, as well as opposed so that has been

9  briefed.  It was briefed under the local rules, not the MDL

10  procedure.  But our understanding -- well, we wanted to check

11  with the Court, if that was okay and that it may be heard as

12  briefed.

13      **THE COURT:**  It's already fully briefed?

14      **MR. RUDDY:**  Yes.

15      **MS. HUTTON:**  Yes, Your Honor.

16      **THE COURT:**  Okay.

17    That's fine.  You don't need to re-brief it.

18      **MR. RUDDY:**  And then the other logistical issue is

19  somewhat of a question about the procedural posture of this

20  case.

21      **THE COURT:**  Which case?

22      **MR. RUDDY:**  The *People v. TikTok Inc.*, the recently

23  related and removed case.

24      **THE COURT:**  Okay.

25      **MR. RUDDY:**  This -- in part, yesterday at the

1    discovery management conference, Judge Kang raised the

2    question of whether or not discovery is active in that case

3    and if there's anything for him to do.

4        Parties have been conferring regarding those.  We

5    previously stipulated regarding a extension of the deadline to

6    respond to the complaint.

7        The focus now needs to be on jurisdiction.  The issue of

8    jurisdiction has been raised.  There is an absence of

9    jurisdiction here.  Removal is presumed invalid especially in

10   a state law enforcement action like this.

11       So our understanding is whether it's a phrased as

12   discovery has not opened or is stayed, that the focus for all

13   judicial action here is on the motion to remand and the -- the

14   administrative motion to seal, of course.

15       **MS. HUTTON:**  Your Honor, my understanding is that at

16   yesterday's conference, there was a request to discuss this

17   issue at the next discovery management conference, and we

18   think that would be an appropriate step to take.

19       We are just getting up to speed on -- on how discovery

20   might relate to this action and would prefer to have the

21   benefit of a little more time to think -- to understand that

22   before taking or getting an order on that.

23       **MR. RUDDY:**  We'd prefer not waste any party or

24   judicial resources while the issue of jurisdiction is

25   undecided.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1            THE COURT:  Well, then I suspect that you'll make
 2    that argument to Judge Kang.
 3            MR. RUDDY:  Okay.
 4            THE COURT:  Yeah.  He's in charge of discovery.  I
 5    have plenty of things that I have to do for you all.
 6        All right?  Understood?
 7            MS. HUTTON:  Yes, Your Honor.
 8            THE COURT:  Take it to him.
 9            MS. HUTTON:  One -- one more item on this issue.  It
10    is our understanding that pursuant to the Court's case
11    management orders, a motion to dismiss deadline is stayed in
12    this matter, and we just wanted to confirm that.
13            THE COURT:  Well, let's -- unless it is -- are the
14    same arguments going to be made with respect to remand as the
15    motion to dismiss?
16            MS. HUTTON:  No -- no, Your Honor.  The remand
17    motion's -- I'm sorry.  It is my friend's motion, but we would
18    understand there to be differences.
19            THE COURT:  So there aren't going to be
20    jurisdictional issues that are going to be raised somehow?
21            MR. RUDDY:  I -- we don't believe there will be --
22    the case will be remanded to state court, and there will be no
23    motion to dismiss.  There is no jurisdiction.
24            THE COURT:  And all of that's already raised in your
25    motion.
```

```
 1              MR. RUDDY:  Yes.

 2              THE COURT:  Yes.  Motion to dismiss is stayed.

 3         Or any -- any response.  I mean, I'm assuming you're going

 4    to do a motion to dismiss --

 5              MS. HUTTON:  Yes, Your Honor.

 6              THE COURT:  -- if I keep it.

 7              MS. HUTTON:  (Nods head.)

 8              THE COURT:  Okay.

 9         What else?

10              MR. RUDDY:  Thank you, Your Honor.  That's it.

11              MS. HUTTON:  Thank you, Your Honor.

12              THE COURT:  Okay.  The joint JCCP update.  At

13    lines 19 through 21 of your statement, the depositions that

14    are scheduled, the 56 depositions, is that just for the JCCP

15    cases, or do that -- do those involve this case as well?

16              MS. HAZAM:  Lexi Hazam for plaintiffs, Your Honor.

17         Those are just JCCP bellwether-related depositions.  There

18    are discussions underway regarding scheduling of MDL

19    bellwether depositions.  I believe we are close to having some

20    scheduled at this point.

21              MR. DRAKE:  Geoffrey Drake for TikTok.

22         Nothing to add to that, Your Honor.

23              THE COURT:  Okay.

24         With respect to the issue of causation and the arguments

25    on causation, how, if any, is there overlap with this case?
```

1          **MS. HAZAM:**  Your Honor, I believe you are referring

2     to arguments regarding general causation under --

3          **THE COURT:**  You've identified -- and I'm looking at

4     page 5 of your brief, lines 1 through 3 -- that in the JCCP,

5     people are filing briefs on jury instructions for causation.

6          **MS. HAZAM:**  Yes, Your Honor.  That is occurring in

7     the JCCP.  Those would be instructions on causation under the

8     law applicable in the JCCP to the various bellwethers there.

9          The issue of general causation in the JCCP would be under

10    the *Sargon* standard in state court, so there certainly is some

11    overlap in the issues that will arise with regards to general

12    causation between the two jurisdictions.

13         The plaintiffs may be from different states to the extent

14    that state law comes into play.  And the standard is somewhat

15    different under the case law as well, but, certainly, there is

16    overlap.

17         **MR. DRAKE:**  Can I add just a -- some clarification of

18    that, Your Honor?

19         **THE COURT:**  Sure.

20         **MR. DRAKE:**  What we're doing right now in the JCCP

21    per Judge Kuhl's instructions is we submitted and today we'll

22    be submitting briefing regarding proposed instructions under

23    only California law and only certain instructions, causation,

24    negligence.

25         And that also includes some briefing on a proposed 230

```
1    instruction, the idea there being that Judge Kuhl wanted to

2    get a handle on what the instructions would be before we got

3    into expert discovery, so that's going to be heard at a

4    hearing in December.

5        There will be some overlap on some of those subjects,

6    obviously, as they interact with what's going on in this

7    court.

8        230, for example, causation, although we're only doing it

9    for one state under just California law in the JCCP.  And

10   we're also using the -- it's also based on the CACI

11   instructions, which would potentially differ from what the

12   Court here may adopt and adapt depending on what the case is

13   that's being tried, et cetera.

14           THE COURT:  Okay.

15       So other things that you might want -- have wanted to say

16   on the JCCP update that you didn't put in the statement?

17           MS. HAZAM:  We have none for plaintiffs, Your Honor.

18           MR. DRAKE:  Nothing else here, Your Honor.  Thank

19   you.

20           THE COURT:  Okay.  Great.  Thank you.

21       And I'll -- I'll give Judge Kuhl a call after -- after her

22   meeting today, see how she's doing.

23           MR. DRAKE:  Thank you, Judge.

24           THE COURT:  One thing to keep in mind with respect to

25   that proceeding, to the extent the experts are the same -- and
```

```
 1      I don't know if they will be -- it may make sense to have

 2      joint hearings on technical hearings or -- I don't -- I don't

 3      know 'cause who it is that you're --

 4              MS. HAZAM:  Right.

 5              THE COURT:  -- using.  But both she and I are open to

 6      that possibility.

 7              MR. DRAKE:  Thank you, Your Honor.

 8          That's certainly something we've had in our minds and been

 9      pondering since the inception of the litigation, so it's

10      helpful to hear that.

11              THE COURT:  Okay.

12              MS. HAZAM:  And the same applies for plaintiffs, Your

13      Honor.  We have contemplated that ourselves and are open to

14      the prospect.

15          It may depend on the scheduling order that I believe is

16      now pending with Judge Kuhl.  I believe she intends to enter

17      one shortly that would include deadlines for expert discovery

18      and briefing that would tell us how closely the schedules

19      align between the two jurisdictions.

20              THE COURT:  Well, even if they -- even if they're

21      not -- well, I should say it differently.

22          Even if there are differences, whoever is there first, and

23      it may be her because she has fewer cases that she's dealing

24      with.

25          That doesn't mean that we can't still do a -- a joint
```

```
 1    hearing.  I mean, in patent cases, we do Markmans well
 2    before -- very early in the litigation just to understand the
 3    technology or to understand what the issues are.
 4        So joint proceedings with respect to experts, even if it's
 5    earlier, may not be a bad idea.
 6            MS. HAZAM:  We will take under advisement, Your
 7    Honor, and discuss it.  Happy to do so.
 8            THE COURT:  Okay.
 9            MR. DRAKE:  Yes, thank you.
10            THE COURT:  Great.
11        I did read the discovery management conference statement,
12    and I did talk to Judge Kang at length.  And I'm sure he told
13    you what I told him to tell you, which is that he's in charge
14    of discovery.  I don't think clarity is required.
15        One of the reasons that I gave the order that I did was to
16    ensure that he had every single tool possible to make sure
17    that discovery was proceeding as expeditiously as possible.
18        There may be inconsistencies.  There may be
19    inefficiencies, but he's in charge, period.
20        So I'm actually not looking for comments.  I guess you
21    could if you wanted, but he's in charge.
22        Is there any clarity that you need with that statement?
23            MR. SCHMIDT:  None here, Your Honor.
24            MR. OLSZEWSKI-JUBELIRER:  No, Your Honor.
25        Josh Olszewski-Jubelirer for -- on behalf of the state
```

```
1    AGs.

2        No, Your Honor.

3            THE COURT:  Great.

4            MR. SCHMIDT:  Paul Schmidt for Meta.  Sorry, Your

5    Honor.

6            THE COURT:  Thank you.

7            MR. OLSZEWSKI-JUBELIRER:  Thank you.

8            MR. SCHMIDT:  We appreciate the clarity.

9            THE COURT:  Okay.  That took up most of your

10   statement.

11       All right.  Is there anything else that anybody wanted to

12   put in this statement?

13       Oh, look, they're coming to the microphones.

14           MS. HAZAM:  Your Honor, Lexi Hazam for plaintiffs.

15       The item I have is not any kind of a dispute between the

16   parties, and it is related to an item in the statement that we

17   reported on with regards to a potential PSE [sic]

18   ombudspersman [phonetic] -- obmudsperson -- excuse me -- for

19   the personal jury and school district plaintiffs.

20       We have learned that there will be some members of our

21   current plaintiffs' leadership who are stepping down from

22   their positions; in other words, not submitting

23   reapplications.

24       And we wanted to inquire with the Court as to whether it's

25   acceptable to the Court to have plaintiffs' counsel who have
```

```
 1    cases currently in the MDL apply as part of the court ordered
 2    application process in December to fill those slots.
 3              THE COURT:  Yes.
 4              MS. HAZAM:  Thank you, Your Honor.  That was the only
 5    item we had.
 6              THE COURT:  Okay.  And people step down for lots of
 7    different reasons.  And they could -- that could include they
 8    didn't like my rulings, and that's fine, too.
 9         To the extent there are other issues going on, I welcome
10    them to file something for the Court to review, and I'm happy
11    to talk to them about their reasons for stepping down to the
12    extent it gives me information about how to manage this
13    better.
14              MS. HAZAM:  Thank you, Your Honor.
15         They are few in number, and our understanding is -- is
16    that they are simply reasons unique to those people and their
17    circumstances.  But they, obviously, will submit their letters
18    with any explanation they may offer as part of that process.
19              THE COURT:  Okay.  Great.  Thank you.
20              MS. SIMONSEN:  Good morning, Your Honor.
21         Ashley Simonsen, Covington & Burling, for the Meta
22    defendants.
23         Just one administrative item that was not in our case
24    management statement.  As Your Honor knows, based on the
25    motion to dismiss order with respect to the school district
```

1   complaint, the defendants will have an answer due.

2       And we have discussed with plaintiffs and they've agreed

3   that, particularly in light of the active discovery that we

4   are in the midst of, defendants may file a general answer to

5   the school district complaint, along with affirmative defenses

6   by December 6th, subject to Your Honor's views.

7           **THE COURT:**  Okay.  So ordered.

8           **MS. SIMONSEN:**  Thank you, Your Honor.

9           **THE COURT:**  Okay.  We're at the end of your list.  I

10  have other things.

11      So talk to me about this new process with the statements.

12      Did it achieve what we hoped to achieve.

13          **MS. SIMONSEN:**  Ashley Simonsen for the Meta

14  defendants.  I would say that it did.  I would say that it was

15  very helpful guidance.  Your Honor may have seen that we

16  actually cited your guidance to Judge Kang in asking for a

17  streamlined DMC statement that I think also work well although

18  we got some feedback from Judge Kang on that yesterday that

19  we'll implement going forward.  But, yeah, I think it was

20  tremendously helpful.

21          **MR. WARREN:**  Previn Warren for the plaintiffs.

22      And I would second everything Ms. Simonsen said.  It has

23  been very helpful.

24          **THE COURT:**  Great.  Then we'll keep moving forward on

25  that -- in that lane.

```
 1          Okay.  So a couple of other things that I need to talk to
 2     you about.  And looks like today will be a short conference so
 3     you can all -- hopefully won't get delayed with all the rain
 4     leaving the Bay Area.
 5          Two of the MDL bellwether cases that were chosen where
 6     Lexicon objections were asserted were direct-filed cases.  And
 7     these two cases, one is the personal injury case McNeal.  This
 8     is in the Eastern -- it would be if -- if returned, it would
 9     have been in the Eastern District of Pennsylvania.  That's
10     23-1092.  And one of the school district cases, the one for
11     DeKalb County in Georgia, 23-5733.
12          Here is my problem:  Because they were direct filed, the
13     process that I'm trying to get authorization to try these
14     cases in these districts actually can't work because it's --
15     they aren't pending in those districts so at this point, there
16     is no sending them back.  And unless there was a pending case
17     there, then the circuit chief can't give authorization to me
18     to go and try the case in their district.
19          So I would -- you know, I'll ask you all to meet and
20     confer on this -- again, we're just -- and I've told all these
21     chiefs.  I don't know that their case will actually be
22     selected, but we are -- it is a long process to get these
23     authorizations.  It has to go through many levels of review,
24     and so that's why we're trying -- to be ahead of the -- ahead
25     of the curve here.
```

1    So perhaps what needs happen is that a case needs to be

2    filed there with a stipulation by the parties that it will be

3    transferred in and perhaps that gets -- that case gets

4    substituted for the one that's currently sitting here.  I

5    don't know.

6        But if we wait -- if it's chosen and -- and I don't

7    actually have a case there and then I remand it, it's going to

8    be months before I can get potential authorization to -- to

9    try it there.

10           **MR. WARREN:**  Understood, Your Honor.  That's a very

11   helpful flag and, of course, a procedural issue we -- I don't

12   think either party had foreseen.  So what I would suggest we

13   do is the counsel for those two particular bellwethers and

14   leadership can meet and confer with defendants about whether

15   there are creative solutions that we can come up with to try

16   and sort that out and -- and avoid headaches for Your Honor.

17           **MS. SIMONSEN:**  Likewise.  Ashley Simonsen for the

18   defendants.

19           **THE COURT:**  Go ahead.

20           **MR. DRAKE:**  Geoffrey Drake for the TikTok defendants.

21   I agree.  We'll look at that.  I think -- I think we'll

22   also want to look at -- although I haven't consulted with my

23   colleagues about that -- some of the confusion may come

24   from -- it's not -- not clear to me exactly how the *Lexicon*

25   objection works for a case that was filed directly before Your

1  Honor or in this Court, so -- want to look at as well.

2          THE COURT:  I -- I agree?

3          MR. DRAKE:  Agree.  Okay.

4          THE COURT:  But -- anyway, we -- it is -- again, I'm

5  glad we're ahead of the curve on this, because it's -- it's

6  put the issue at the forefront, so --

7          MR. DRAKE:  Yes.

8          THE COURT:  -- we just need to sort through it.

9          MR. WARREN:  Thank you, Your Honor.  We will do that

10 expeditiously.

11          THE COURT:  Okay.

12     Okay.  So let's talk about the -- do I have anybody here

13 from -- who's prepared to speak on the eight California

14 agencies that are refusing to comply with the order, or South

15 Carolina or South Dakota?

16          MS. KALANTHI:  Yes, Your Honor.  Good morning.  Emily

17 Kalanthi for the People of the State of California.

18          THE COURT:  Hold on just a minute.

19          MR. SCHMIDT:  Paul Schmidt again for Meta.

20          THE COURT:  And, Ms. Kalanthi, who do you represent?

21          MS. KALANTHI:  I represent the People of the State of

22 California.  I'm with the California Attorney General's

23 Office, so represent the party -- the plaintiff here.

24          THE COURT:  Okay.

25     So do you represent the School Finance Authority, the

```
 1    governor, the Governor's Office, the Department of Finance,

 2    the Department of Public Health, the Department of Consumer

 3    Affairs, the Business Consumer Services and Housing Agency,

 4    and the Office of Data and Innovation?

 5            MS. KALANTHI:  I do not, Your Honor.  I --

 6            THE COURT:  Is there anybody here who does?

 7            MS. KALANTHI:  I don't believe there's counsel for

 8    those agencies in the courtroom.  The agencies have been made

 9    aware of this Court's orders, the magistrate judge's orders on

10    state agency discovery.  I think they are clear as to what

11    those orders say.

12        And as an officer of the court, I can represent that the

13    position, as I understand it, is that they are not providing

14    the Attorney General's Office with access to their documents

15    for purposes of party discovery.

16        They are standing on well-settled California law which

17    holds that when the Attorney General brings a case in the name

18    of the People of the State of California, that state agency

19    documents are not proper for party discovery.  It's not --

20            THE COURT:  It is not as settled as they think it is.

21    Judge Kang has asked for specific people's information.

22            MS. KALANTHI:  That's correct, Your Honor.

23            THE COURT:  And you can tell them to expect that they

24    will be ordered into court.  And if necessary, contempt

25    proceedings will begin.
```

```
1         MS. KALANTHI:  I understand, Your Honor.  And just to
2    make it as clear as I can, this is, as far as I understand it,
3    not a decision that's being made idly.
4         THE COURT:  Believe me, I will not make my decisions
5    idly either.  If they would like to come in and begin those
6    proceedings, we can do that 2025.
7         MS. KALANTHI:  Understood.  By -- what I understand
8    to be the case is that this is the dual executive kind of
9    inaction so the Attorney General as a separate executive
10   officer from the governor's office --
11        THE COURT:  Arguments have been made.
12        MS. KALANTHI:  Understood, Your Honor.
13        THE COURT:  Right?
14        MS. KALANTHI:  Yes.
15        THE COURT:  Arguments have been made.
16     So I do not take lightly anybody's failure to comply with
17   a federal court order.  Something will happen.  I don't know
18   what.  But I guarantee you, I will not let this stand.
19        MS. KALANTHI:  Understood, Your Honor.
20     And I believe the reason these agencies have not thus far
21   appeared is simply because this has come up in the context of
22   party discovery.  They're not parties to this action, and
23   judge -- Magistrate Judge Kang's order didn't hold otherwise.
24     And, you know, to the extent they would be brought in via
25   a Rule 45 subpoena or another mechanism, you know, I'm -- I'm
```

1    certain they would appear.  So it's -- I just want to reassure

2    the Court that this is not an issue of lack of respect for the

3    rule of law or it's the -- the kind of very real sovereignty

4    issues that are now kind of at play with the federal court

5    order and the California precedent.

6            THE COURT:  Yeah, they have no California order.

7    There is no California order, so --

8        Mr. Schmidt?

9            MR. SCHMIDT:  Yes, Your Honor.  I'll just say simply

10   we appreciate the Court addressing this issue.  It is -- and

11   the broader issue of state Attorney General compliance with

12   Judge Kang's order is a pretty serious issue for us in terms

13   of our ability to fairly defend ourselves in these cases and

14   get fair discovery in these cases.

15       We've already been impaired in terms of the time -- the

16   delay that's already incurred.  We don't see how they can keep

17   to the schedule as it exists.  That's even more of a problem

18   as we go on.  So for all of those reasons, we appreciate the

19   Court addressing this.

20       We are -- we've had a very large number of states who are

21   noncompliant with Judge Kang's deadlines who now have new

22   deadlines.

23       We've committed to continuing to work with them, and we'll

24   continue to do so while seeking appropriate relief from Judge

25   Kang.

1    And we're open to talking further with California if

2    that's fruitful, but at -- at some point, I don't see how they

3    can proceed with their claims if they're not complying with

4    court rules.

5    **THE COURT:**  That is certainly one course.  So like I

6    said, I don't know what the remedy is yet.

7    I understand one of the complaints is that they believe

8    Meta is seeking discovery that is incredibly overbroad, and

9    that may be the case.  But, the -- the action is not to say

10   "it's overbroad and so we will do nothing."

11   The -- the response is to go to Judge Kang and say "this

12   is overbroad," so that he can narrow it to an appropriate --

13   to the appropriate scope.

14   I understand that this is complicated.  Refusing to comply

15   with a court order is not the appropriate response.  Period.

16   So they'll have to deal with that.  Or I'll throw you out

17   of the case.  Or I'll issue contempt.  There are -- I have

18   lots of options available to me, and I will not hesitate to

19   use them.

20   I hope they're watching.

21   **MS. KALANTHI:**  I understand, Your Honor.

22   And I appreciate my colleague's bringing in the concept of

23   what Meta has been looking for here and Your Honor also

24   mentioning that, and it is our belief that that has kind of

25   gotten lost in this back and forth, the fact that there is

```
 1    exceedingly broad party discovery that is now being required
 2    of these state agencies without any showing so far of
 3    proportionately and -- and --
 4         THE COURT:  There is a magistrate judge who has spent
 5    incredible -- hundreds of hours working on this.  They have a
 6    problem; that's the solution.  Not pretending that they can
 7    not comply with the court order.
 8         MS. KALANTHI:  Understood, Your Honor.  And I believe
 9    it was a decision that was not taken lightly --
10         THE COURT:  It doesn't matter to me.  The decision --
11    if that's the decision that's made, there will be
12    consequences, period.
13         MS. KALANTHI:  Understood, Your Honor.
14         THE COURT:  All right.  You're standing.  Who are
15    you?
16         MR. COCANOUGHER:  Good morning, Your Honor.  Matt
17    Cocanougher from the Kentucky Attorney General's Office.
18      I just wanted to let --
19         THE COURT:  Hold on.  Let me find your name, sir.
20         MR. COCANOUGHER:  It may be "Matthew."
21         MR. SCHMIDT:  Third page, Your Honor.  Third from the
22    bottom.
23         THE COURT:  Oh, I see it now.
24      Okay.
25         MR. COCANOUGHER:  I just wanted to let Your Honor
```

```
 1    know that South Dakota is on the line.

 2              THE COURT:  On the line what?  Oh, you mean someone

 3    from the South Dakota --

 4              MR. COCANOUGHER:  Attorney General's Office, Your

 5    Honor.

 6         They do not believe they fall within this group of states,

 7    and so there is an attorney from the South Dakota

 8    Attorney General's Office who is appearing either

 9    telephonically or by video.

10              THE COURT:  Okay.  You can let him in.

11         Do you have the name?

12              THE CLERK:  Could I have the name, Counsel?

13              MR. COCANOUGHER:  Aaron Salberg or Salsberg?

14    A-A-R-O-N S-A-L --

15              THE CLERK:  Yes, Your Honor.

16         (Mr. Salberg entered the hearing room via Zoom webinar.)

17              MR. SCHMIDT:  If I may, I'll just move over so I can

18    see Counsel.

19              THE COURT:  Mr. Schmidt, if you go to that -- oh, and

20    there's a microphone, too.  That's fine.  You can use that --

21                      (Simultaneous colloquy.)

22              THE COURT:  No, the middle one's fine.  Just make

23    sure to use the microphone.

24              MR. SCHMIDT:  Okay.

25              THE COURT:  So he's not on the platform yet.
```

```
 1                    (Pause in the proceedings.)

 2          MR. SALBERG:  Your Honor, can you hear me?

 3          THE COURT:  I can, sir.

 4          MR. SALBERG:  Having little bit of technical

 5   difficulties.

 6          THE COURT:  So do you have video or not?

 7          MR. SALBERG:  I -- I'm trying, Your Honor.

 8                    (Pause in the proceedings.)

 9          THE COURT:  I can see you.

10          MR. SALBERG:  Permission to speak, Your Honor?

11          THE COURT:  Yes.

12      I will let you know, that I visited your fair state in

13   June -- first time ever -- with the Defender Services

14   Committee.  It was a terrific week of meetings there.

15          MR. SALBERG:  Good to hear, Your Honor.

16          THE COURT:  Go ahead.

17          MR. SALBERG:  Thank you, Your Honor.  Aaron Salberg

18   representing the South Dakota Attorney General's Office.

19      The -- we're here today because Meta alleges that the

20   Bureau of Finance Management and the governor's office isn't

21   complying with the order.

22      Neither one has refused to cooperate.  And we're certainly

23   not thumbing their nose -- our nose at any agency.  They don't

24   have a attorney present today.  She -- we learned about this

25   last night.  She is out sick today, but I have been in contact
```

      1    with her.

      2        On November 13th, there was a meet-and-confer.  They had

      3    another attorney that was supposed to appear at that

      4    meet-and-confer.  He was out sick that day.

      5        We would be happy to have another meet-and-confer --

      6    nobody has refused to comply with the discovery.  In fact, the

      7    Bureau of Finance and Management has provided the

      8    Attorney General's Office with responses to their request for

      9    productions.  They've notified us today that they have

     10    completed their -- their searches using the proposed search

     11    terms and will start rolling production here shortly.

     12        The governor's office has advised us that they are almost

     13    complete with their searches.  And, again, nobody's refusing

     14    to comply with any order from South Dakota.

     15        Thank you.

     16            THE COURT:  Okay.  I appreciate the update,

     17    Mr. Salsberg.  I will --

     18        I'm not going to get into the minutia of this,

     19    Mr. Schmidt.  You've heard him.

     20        I'll let you all follow up, and if there are any issues,

     21    then let Judge Kang know.

     22            MR. SCHMIDT:  Yeah.  May I just say one thing on

     23    that, Your Honor?

     24            THE COURT:  Okay.

     25            MR. SCHMIDT:  Paul Schmidt for Meta.

```
 1          Some of that we're hearing for the first time in this
 2    hearing.
 3          THE COURT:  That's why it's good to have these
 4    hearings.
 5          MR. SCHMIDT:  Yes.  It is good to have these
 6    hearings.
 7          Some of that we were told I think either today or
 8    yesterday in the lead-up to the hearing -- other reason, it's
 9    good to have these hearings.
10          I've said with respect to California that we'll work with
11    them and take that to Judge Kang as appropriate.  But it does
12    highlight the struggles we have if we ever need to talk about
13    the schedule in terms of pushing these cases ahead.
14          THE COURT:  Okay.
15          Thank you, Mr. Salberg.
16          MR. SALBERG:  Thank you, Your Honor.
17          THE COURT:  Anything from South Carolina?  That would
18    be the last.
19          MS. KALANTHI:  Hello again.  Emily Kalanthi for the
20    People of the State of California.
21          My understanding is there's not the representative from
22    South Carolina either in the courtroom or on Zoom right now.
23    I do have a statement from last night that we received that
24    I'm happy to read into the record regarding this issue of
25    their governor's office.
```

```
 1              THE COURT:  All right.
 2              MR. SCHMIDT:  Apologize.  May I ask a question?
 3         Are we talking about South Dakota or South Carolina?
 4              MS. KALANTHI:  South Carolina.
 5              MR. SCHMIDT:  South Carolina, okay.
 6              THE COURT:  I thought that's what I had heard.  South
 7    Carolina.
 8              MR. SCHMIDT:  It's what I heard, too.
 9              MS. KALANTHI:  "The governor's office is not a party
10    to this litigation as defined by the state law that we
11    included in our briefing.  We sent the governor's office legal
12    counsel the briefings and order.  At this time, they have not
13    agreed to produce custodians.  We've sent Meta a letter
14    drafted by the governor's counsel outlining their position.
15    We believe that their position is that absent receipt of a
16    Rule 45 subpoena from Meta, the governor's office will not
17    engage in any direct communication or meet-and-confer process
18    with Meta related to the same."
19              THE COURT:  Okay.
20              MS. KALANTHI:  That's all I have, Your Honor.
21              THE COURT:  All right.
22         Okay.  More to come.
23         I will wait and hear from Judge Kang on some information.
24         I still have my order outstanding.  You'll get -- I guess
25    what I'll need to know from the defendants is what relief, if
```

```
 1    any, you're asking for.  So --
 2              MR. SCHMIDT:  On these issues, we've just been
 3    discussing?
 4              THE COURT:  Correct.
 5              MR. SCHMIDT:  Okay.
 6              THE COURT:  That would be helpful.
 7              MR. SCHMIDT:  Okay.  Thank you, Your Honor.
 8              THE COURT:  Okay.  Those were the -- the additional
 9    things that I wanted to discuss.
10        Is there anything else that anybody else wants to discuss
11    today?
12        (Clarification requested by the Official Certified
13    Stenographic Court Reporter.)
14              THE COURT:  I know.
15        Ms. Mercado, that was -- Ms. Hazam said, "no issues for
16    plaintiffs."
17              MR. SCHMIDT:  Paul Schmidt for Meta.
18        No issues for the defendants.
19              THE COURT:  Okay.
20        I let the liaison counsel know that I'm going to vacate
21    the December hearing, so it's here by vacated, and -- hold on
22    just a minute.
23        Something flashed up.  I want to just double-check before
24    I let you go.
25                    (Pause in the proceedings.)
```

```
 1            THE COURT:  Okay.  And -- I did see that the appeals
 2    were filed, but I'm assuming that we're still proceeding.  I
 3    mean, it's fine.  I expected appeals to be filed.  But we've
 4    nothing to discuss on that topic.
 5            MR. SCHMIDT:  I don't think so, Your Honor.
 6            MR. WARREN:  No, we don't believe so, Your Honor.  We
 7    think the case moves forward here, and we'll take it up in the
 8    Ninth Circuit.
 9            THE COURT:  Okay.
10        All right, then.  Well, if there's nothing else, then I
11    wish everybody a Happy Thanksgiving and a happy holiday.
12        And I'll see you in 2025.
13            MR. WARREN:  Thank you, Your Honor.
14            MR. SCHMIDT:  Thank you, Your Honor.  Happy
15    Thanksgiving.
16            MR. WARREN:  Thank you.
17            THE CLERK:  Court is adjourned.
18            (Proceedings were concluded at 9:48 A.M.)
19                          --o0o--
20
21
22
23
24
25
```

1

2

3                    **CERTIFICATE OF REPORTER**

4

5         I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled matter.

7    I further certify that I am neither counsel for, related to,

8    nor employed by any of the parties to the action in which this

9    hearing was taken, and further that I am not financially nor

10   otherwise interested in the outcome of the action.

11

12   _____

13         Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

14                    Sunday, November 24, 2024

15

16

17

18

19

20

21

22

23

24

25