[*Submitting Counsel on Signature Page*]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>People of the State of California, et al.<br>    v.<br>Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC<br><br>---<br><br>Office of the Attorney General, State of Florida, Department of Legal Affairs<br>    v.<br>Meta Platforms, Inc., Instagram, LLC., Meta Payments, Inc.<br><br>---<br><br>State of Montana, ex rel. Austin Knudsen, Attorney General<br>    v.<br>Meta Platforms, Inc., Instagram, LLC, Facebook Holdings, LLC, Facebook Operations, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Siculus, Inc. | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br>    4:23-cv-05448-YGR<br>    4:23-cv-05885-YGR<br>    4:24-cv-00805-YGR<br><br>**STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

1

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

**STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**NOTICE OF MOTION AND MOTION**

Please take notice that, at a hearing date and time to be determined in accordance with the Court's Case Management Order No. 5 (22-md-03047 Dkt. 164), before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street in Oakland, California, Plaintiffs the combined States Attorneys General ("State AGs") will and do move this Court, under 28 U.S.C. § 1292(b), for an order certifying for interlocutory review the Court's October 15, 2024 Order Largely Denying in Part Meta's Motion to Dismiss the Multistate Attorneys General Complaint But Limiting the Scope of Claims ("State AG Order") (22-md-03047 Dkt. 1214; 23-cv-05448 Dkt. 123).

2

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

**TABLE OF CONTENTS**

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................... 4
II. INTRODUCTION ............................................................................................................ 4
III. STATEMENT OF FACTS .............................................................................................. 5
IV. ARGUMENT ................................................................................................................... 8
    A. The order involves a controlling question of law. ........................................... 8
    B. There is substantial ground for difference of opinion concerning this question of law. .................................................................................................................. 9
    C. Certification may materially advance the ultimate termination of the litigation. .......... 11
V. CONCLUSION ............................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**
*Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) ...................................................... 11, 12
*Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568 (D. Ariz. 2024) ...... 13
*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1981). ................................................ 9
*In re Cintas Corp. Overtime Pay Arb. Litig.*, 2007 WL 1302496 (N.D. Cal. May 2, 2007) ......... 13
*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ..................................................... 9, 10

**STATUTES**
28 U.S.C. § 1292(b) ........................................................................................................... passim
47 U.S.C. § 230 .................................................................................................................... 4, 13

3

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should certify the State AG Order (22-md-03047 Dkt. 1214; 23-cv-05448 Dkt. 123) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), given the substantial grounds for difference of opinion on the following controlling question of law: Whether Section 230 of the Communications Decency Act shields Meta from liability for claims stemming from its own unfair and unconscionable acts and practices ("unfairness claims") to craft, disseminate, and promote (1) infinite scroll and autoplay features; (2) ephemeral content features; (3) disruptive audiovisual and vibration notifications and alerts; (4) quantification and display of "Likes"; and (5) algorithmic service of content according to "variable reinforcement schedules" ("Harmful Features").

## II. INTRODUCTION

As consumer protection actions proceed against social media companies in state and federal court, courts have taken differing approaches to evaluating Section 230's applicability to unfairness claims. The Ninth Circuit offers guidance but no direct answer. What is unique about this case is that the State AGs seek only to hold Meta accountable for *its own unfair conduct*, which the State AGs allege has caused harm independent of third-party content. This Court's detailed feature-by-feature analysis led to different conclusions than those reached in other parallel actions, and the Ninth Circuit's guidance is required to weigh in on this controlling question.

Meta has already conditionally asked this Court to certify the State AG Order (22-md-03047 Dkt. 1214; 23-cv-05448 Dkt. 123) for interlocutory review under 28 U.S.C. § 1292(b). (22-md-03047 Dkt. 1460). Specifically, Meta requests the Ninth Circuit review the question of whether Section 230 of the Communications Decency Act should bar the State AGs' deceptive acts and practices claims ("deception claims") as to the Harmful Features that this Court excised from the unfairness claims.

But Meta's question cannot be addressed without first seeking the Ninth Circuit's ruling as to whether those Harmful Features should have been excised in the first place. The State AGs ask this Court to certify for appeal the antecedent question of Section 230's applicability to the

4

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

1 State AGs' unfairness claims regarding the Harmful Features because the partial dismissal of the
2 State AGs' unfairness claims meets the requirements of § 1292(b).

3 **III.    STATEMENT OF FACTS**

4       The State AGs filed an enforcement action alleging that Meta had engaged in unfair business practices by designing its social media platforms to induce excessive use by young users, causing myriad health consequences while Meta profited, and that Meta had deceptively downplayed these health and safety risks, all in violation of the States' consumer protection laws. (23-cv-05448 Dkt. 1, ¶¶ 1-7). As relevant here, the State AGs alleged that Meta designed the Harmful Features to coerce young users to spend more time on its platforms despite negative impacts on health and well-being. (*Id. at* ¶¶ 847-850). Critically, these claims did not allege that Meta's illegal conduct was based on the content posted on its platforms by third-party users, nor do these claims seek recovery for any harm beyond that caused by Meta's own conduct. (*Id*). Rather, the claims were based on Meta's design, dissemination, and promotion of the Harmful Features. (*Id.*).

      After the State AGs filed their complaint, the Court issued an order granting in part and denying in part Meta's motion to dismiss the product liability claims brought by the personal injury and school district plaintiffs' ("PI/SD Plaintiffs'"). (22-md-03047 Dkt. 237). The Court dismissed several of the PI/SD Plaintiffs' design defect claims under Section 230 but allowed the PI/SD Plaintiff's failure to warn claims to proceed. (22-md-03047 Dkt. 430). The State AGs did not bring product liability or failure to warn claims.

      Meta moved to certify the Court's order for interlocutory review under 28 U.S.C. § 1292(b), arguing that the Ninth Circuit should immediately review whether the PI/SD Plaintiffs' failure to warn claims should have been dismissed under Section 230. (22-md-03047 Dkt, 473). The State AGs opposed certification, arguing that "[i]f the Court is inclined to allow an interlocutory appeal to address the Section 230 and First Amendment issues, it should do so after all motions to dismiss have been ruled on." (22-md-03047 Dkt. 526, p. 5). The Court denied certification, agreeing that "[c]ertifying an interlocutory appeal at this stage, prior to the conclusion of this motion practice, would provide the Court of Appeals with a partial record of

5

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

the legal issues, invite later piecemeal appeals, and disrupt coordination among parallel proceedings." (22-md-03047 Dkt. 590, pp. 1-2). Specifically, the Court noted that interlocutory review would not be appropriate until the following five tracks of motion to dismiss briefing were complete: (1) private plaintiffs' priority claims; (2) State AGs' claims; (3) private plaintiffs' remaining claims; (4) local government and school district plaintiffs' claims; and (5) claims asserted against Mark Zuckerberg in his individual capacity. (22-md-03047 Dkt. 590, pp. 2) All but one of those motions to dismiss have now been ruled on. (22-md-03047 Dkt. 430; Dkt. 1214, Dkt. 1267; Dkt. 1312). The motion to dismiss regarding the private plaintiffs' non-priority claims remains outstanding.

While its motion to certify was pending, Meta moved to dismiss the majority of the State AGs' claims. (22-md-03047 Dkt. 517; 23-cv-05448 Dkt. 83). As relevant here, Meta argued that the State AGs' unfairness and deception claims were barred by Section 230. (22-md-03047 Dkt. 517, pp. 19-23; 23-cv-05448 Dkt. 83, pp. 19-23). The Court largely denied this motion and allowed the State AGs' deception claims to proceed. (22-md-03047 Dkt. 1214; 23-cv-05448 Dkt. 123). However, the Court concluded that unfairness claims based on the Harmful Features were barred by Section 230. (22-md-03047 Dkt. 1214, pp. 21-31; 23-cv-05448 Dkt. 123, pp. 21-31). In reaching this conclusion, the Court held "that its prior analysis of Meta's platform features under a products liability theory leads to the same result under the States' unconscionability and unfairness theories for the purposes of Section 230." (22-md-03047 Dkt. 1214, p. 25, n. 21; 23-cv-05448 Dkt. 123, p. 25, n. 21).

In that prior analysis (Dkt. 430), the Court had reasoned that each of the Harmful Features[1] concerned Meta's role as a publisher of third-party content and therefore should be dismissed under Section 230. Specifically, the court held:

- Addressing the harm caused by infinite scroll "would necessarily require [Meta] to publish less third-party content." (Dkt. 430, p. 16).

---

[1] As the State AGs argued in their response to Meta's motion to dismiss, the Court's previous order did not specifically address whether claims regarding the quantification and display of "Likes" were barred by section 230. (22-md-03047 Dkt. 599, p. 18; 23-cv-05448 Dkt. 95, p. 18). However, in the State AG Order, the Court clarified that its prior ruling on notifications also covered "Likes." (22-md-03047 Dkt. 1214, p. 25, n. 21; 23-cv-05448 Dkt. 123, p. 25, n. 21).

6

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

- Section 230 bars claims that "products are allegedly defective because they provide short-form and ephemeral content" because "[e]ditorial decisions such as determining the length of content published and how long to publish content are 'traditional editorial functions.'" (Dkt. 430, p. 18 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009), as amended (Sept. 28, 2009))).

- "[W]here notifications are made to alert users to third-party content, Section 230 bars plaintiffs' product defect claims." (Dkt. 430, p. 18 (citing *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019))). The Court clarified that this holding "includes notifications that someone has commented on or liked a user's post." (Dkt. 430, p. 18).

- "[U]se of algorithms to determine whether, when, and to whom to publish third-party content" is a "traditional editorial function[] that [is] essential to publishing." (Dkt. 430, pp. 18-19).

Based on this reasoning, the Court dismissed the State AGs' unfairness claims with respect to these Harmful Features. The Court did not, however, conclude that the State AGs' deception claims based on these features must also be dismissed. (22-md-03047 Dkt. 1214, pp. 31–37; 23-cv-05448 Dkt. 123, pp. 31–37). The Court cited myriad cases showing why deception claims do not implicate Section 230 because, essentially, they address the defendant's own conduct rather than their publication of third-party content. (*Id.*, pp. 35–36).

Meta appealed the State AG Order to the Ninth Circuit, invoking the collateral order doctrine. (22-md-03047 Dkt. 1330; 23-cv-05448 Dkt. 140). The State AGs moved to dismiss Meta's appeal, disputing that the collateral order doctrine applies in this case.[2] (24-7265 Dkt. 26). In the alternative, the State AGs conditionally noticed their cross appeal. (22-md-03047 Dkt. 1386; 23-cv-05448 Dkt. 146). The parties are currently briefing the State AGs' motion to dismiss Meta's appeal.

After the State AGs moved to dismiss Meta's appeal, defendants filed several pleadings in this Court seeking interlocutory review. First, all defendants, including Meta, asked the Court to certify certain questions related to school district claims. (22-md-03047 Dkt. 1460). Second, all defendants, except Meta, asked the Court to certify the question of whether Section 230 bars a

---

[2] The State AGs did not argue that the Ninth Circuit should not consider the Court's Section 230 rulings before trial; rather, they argued only that the collateral order doctrine was an improper vehicle for such review.

7

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

failure to warn[3] claim where an underlying design defect claim has been dismissed under 230. (22-md-03047 Dkt. 1462). Third, Meta conditionally joined the non-Meta defendants' motion to certify as an independent basis for the Ninth Circuit to review the Section 230 issue, if the Ninth Circuit declines to hear Meta's collateral order doctrine appeal. (22-md-03047 Dkt. 1463).

## IV. ARGUMENT

To certify an order for interlocutory appeal under § 1292(b), the district court must find that three requirements have been met: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion concerning this question of law; and (3) certification may materially advance the ultimate termination of the litigation. The State AG Order meets all three requirements with respect to the partial dismissal of the unfairness claims.

### A. The order involves a controlling question of law.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation" as a whole. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

Here, Ninth Circuit resolution of Section 230 issues will likely materially affect the outcome of litigation in the district court. If the Ninth Circuit restores the State AGs' unfairness claims on the Harmful Features, the State AGs may obtain significantly broader relief. Were the Ninth Circuit to restore these claims in a post-trial appeal, a second trial on these claims would be necessary, creating significant burdens for the parties as well as this Court. Therefore, it will be more efficient for the Ninth Circuit to determine how narrow or broad the claims in this case are before the trial date.

---

[3] Though Defendants frame their question in terms of "failure to warn" claims, (22-md-03047 Dkts. 1462, 1463), the Court in the State AG Order analyzed the AGs' omission-based deception claims and the Private Plaintiffs' failure-to-warn claims jointly, referring to them all as "failure to warn" claims. (22-md-03047 Dkt. 1214, pp. 31–37; 23-cv-05448 Dkt. 123, pp. 31–37). The AGs, therefore, take the Defendants' question, and Meta's joinder, to encompass their deception claims. And because the AGs plead statutory deception claims and not common-law failure-to-warn claims, which are distinct, the AGs continue to refer to their claims as deception claims.

8

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

Further, addressing the State AGs' argument that their unfairness claims should not have been dismissed as to the Harmful Features could resolve Meta's argument that the State AGs' corresponding deception claims should be dismissed. The AGs argue that Section 230 does not require dismissal of unfairness claims based on certain product features. Meta, in turn, asks whether deception claims based on those features can proceed when underlying unfairness claims based on the same features have been barred. If the Ninth Circuit reverses this Court's dismissal of the State AGs' unfairness claims, Meta's arguments regarding the State AGs' deception claims would be moot, and these claims can also proceed. Accordingly, if this Court deems Meta's question appropriate to certify, the State AGs' predicate question must be addressed as well.

**B. There is substantial ground for difference of opinion concerning this question of law.**

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese*, 643 F.3d at 688. For multiple reasons, reasonable jurists might disagree on whether unfairness claims based on Harmful Features target Meta's role as a publisher of third-party content and therefore should have been dismissed under Section 230.

As an initial matter, the Court has already acknowledged that this case "implicate[s] novel questions of law." (22-md-03047 Dkt. 430, p. 23). And the Ninth Circuit has not squarely addressed the question of whether Section 230 protects a defendant from liability for unfairness claims when those claims allege that the defendant's social media platforms harm consumers regardless of the types of content the platform displays to users.

More specifically, as argued in the State AGs' response (22-md-03047 Dkt. 599; 23-cv-05448 Dkt. 95) to Meta's motion to dismiss, a reasonable jurist could find that the features in question did not target Meta's role as a publisher. The States AGs argued that their feature specific claims were not barred by Section 230 for the following reasons.

- Meta could change its infinite scroll and autoplay features without publishing less third-party content because eliminating these features would not prohibit any third-party user from posting an unlimited amount of content for all users to see immediately. The only difference is that users might see that content displayed over multiple pages in their feed or need to press the play button to start the videos.

- Meta could address the harm caused by the ephemeral design features without changing user-posted content or investigating the nature of the content. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851–52 (9th Cir. 2016). Rather, Meta could simply disable the automatic "disappearing" aspect of certain features, which would not require Meta to monitor or remove any content.

- Meta could address the harm caused by notifications by making settings easier to navigate so users could exercise more control over their notifications or adjusting the frequency with which it pushes notifications, neither of which would require changing user-posted content or investigating the nature of the content. *Internet Brands*, 824 F.3d at 851–52.

- The dangers created by Meta's recommendation algorithms, which detect material an individual is likely to engage with and then increasingly display that material to maximize time spent on the Platforms, do not depend on the type of content the algorithms suggest. Because the States' unfairness claims regarding the algorithms are based on their status as a content-neutral feature, Meta could "take reasonable measures to design" safer Social Media Platforms "without altering the content that [its] users generate." *Lemmon v. Snap*, 995 F.3d 1085, 1092 (9th Cir. 2021).

- The Ninth Circuit has not expanded the meaning of publication to include promoting, marketing, or boosting content as Meta does through its recommendation algorithms. Rather, "publication" is a strictly defined concept involving "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102.

The State AGs' ability to make these well-reasoned arguments supported by Ninth Circuit caselaw shows that reasonable jurists might disagree on the resolution of the Section 230 issues in this case.

Additionally, the Third Circuit recently held that claims based on recommendations made by a social media platform's algorithm are not barred by Section 230. *Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) ("Section 230 immunizes only information 'provided by another[,]' 47 U.S.C. § 230 (c)(1), and here, because the information that forms the basis of Anderson's lawsuit—i.e., TikTok's recommendations via its FYP algorithm—is TikTok's own expressive activity, § 230 does not bar Anderson's claims.").[4]

---

[4] A number of state courts have mirrored the Third Circuit's approach. Those decisions have been cited as supplemental authority in this case. *See*, *e.g.*, Dkt. 1045-2, pp. 13 (Vermont Superior Court held that because "[t]he State is not seeking to hold Meta liable for any content provided by another entity," but instead "seek[ing] to hold the company liable for intentionally leading Young Users to spend too much time on-line," "[t]he State's claims do not turn on content, and thus are not barred by Section 230."); Dkt. 1045-3, pp. 11-12 (Utah district court held that because "the Division's claims rest on [Meta]'s own acts: their use of features and practices to target children into spending excessive amounts of time on their platforms and their
(continued…)

The concurrence in *Anderson*, which included a thorough review of Section 230's legislative history, went even further, stating, "when § 230(c)(1) prohibits 'treat[ing]' [a social media company] as the 'publisher' of videos posted by third parties, that means [the social media company] cannot be liable for the mere act of hosting those videos." *Anderson*, 116 F.4th at 192. However, the concurrence noted that "§ 230(c)(1) does not immunize more." *Id.* Rather, "[i]t allows suits to proceed if the allegedly wrongful conduct is not based on the mere hosting of third-party content, but on the acts or omissions of the provider of the interactive computer service." *Id.* That is exactly what the State AGs allege here.

To the extent that the Ninth Circuit cases relied on by the Court to dismiss the State AGs' unfairness claims conflict with *Anderson*,[5] there is a circuit split on this issue, making it appropriate for interlocutory appeal. *See Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568, 585 (D. Ariz. 2024) (holding that "split decisions among circuit courts … on how to approach … issues … present the type of exceptional circumstances that warrant interlocutory appeal.").

**C. Certification may materially advance the ultimate termination of the litigation.**

Because interlocutory review can avoid or streamline costly proceedings, courts have recognized that it is "particularly appropriate in the context of MDL proceedings," *In re Cintas Corp. Overtime Pay Arb. Litig.*, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007). That is especially true in this MDL. Certifying the State AG Order would avoid a costly second trial should the Ninth Circuit find that Section 230 does not shield Meta from liability for the State

---

misrepresentations about the safety of those platforms" "Section 230 does not foreclose the Division's claims at this stage."); Dkt. 1140-1, p. 21 (D.C. superior court held that "Section 230 does not immunize Meta from liability for the unfair trade practice claims," which "allege[] that it is the addictive design features employed by Meta—and not any particular third-party content—that cause the harm to children complained of in the complaint."); Dkt. 1239-1, pp 10-11 (Massachusetts superior court held that because "the claims are based, not on Instagram's third-party content, but its features regardless of content," "Meta is not entitled to dismissal under Section 230.").

[5] The State AGs do not concede that *Anderson* is inconsistent with Ninth Circuit caselaw. To the contrary, *Anderson*'s holding is consistent with the Ninth Circuit's holding in *Lemmon*, 995 F.3d at 1093 (holding that claim did not seek to hold Snap responsible as a publisher or speaker, but merely sought to hold Snap liable for the creation of an unsafe feature). However, the State AGs acknowledge that this Court's narrower reading of *Lemmon*, and other Ninth Circuit caselaw, conflicts with the Third Circuit's holding in *Anderson*.

11

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

AGs' unfairness claims.

Further, as described above, addressing the State AGs' argument that their unfairness claims should not have been dismissed may also resolve Meta's argument that many of the State AGs' deception claims should be dismissed.

## V. CONCLUSION

Because (1) the State AG Order involves a controlling question of law, (2) there is substantial ground for difference of opinion concerning whether the State AGs' unfairness claims should have been dismissed under Section 230, and (3) certification may materially advance the ultimate termination of the litigation, this Court should certify the State AG Order for appeal under § 1292(b), with respect to the unfairness claims.

12

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

| | | |
|---|---|---|
| 1 | Dated: January 14, 2025 | Respectfully submitted, |
| 2 | | **PHILIP J. WEISER** |
| | | Attorney General |
| 3 | | State of Colorado |
| 4 | | |
| 5 | | */s/ Shannon Stevenson* |
| | | Shannon Stevenson, CO Reg. No. 35542, *pro hac vice* |
| 6 | | Solicitor General |
| | | Krista Batchelder, CO Reg. No. 45066, *pro hac vice* |
| 7 | | Deputy Solicitor General |
| 8 | | Elizabeth Orem, CO Reg. No. 58309 |
| | | Danny Rheiner, CO Reg. No. 48821 |
| 9 | | Assistant Attorney Generals |
| | | Colorado Department of Law |
| 10 | | Ralph L. Carr Judicial Center |
| | | Consumer Protection Section |
| 11 | | 1300 Broadway, 7th Floor |
| | | Denver, CO 80203 |
| 12 | | Phone: (720) 508-6384 |
| | | krista.batchelder@coag.gov |
| 13 | | |
| 14 | | *Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General* |
| 15 | | |
| 16 | | **ROB BONTA** |
| 17 | | Attorney General |
| | | State of California |
| 18 | | |
| 19 | | */s/ Megan O'Neill* |
| | | Nicklas A. Akers (CA SBN 211222) |
| 20 | | Senior Assistant Attorney General |
| | | Bernard Eskandari (CA SBN 244395) |
| 21 | | Emily Kalanithi (SBN 256972) |
| | | Supervising Deputy Attorneys General |
| 22 | | Nayha Arora (CA SBN 350467) |
| | | Megan O'Neill (CA SBN 343535) |
| 23 | | Joshua Olszewski-Jubelirer (CA SBN 336428) |
| 24 | | Marissa Roy (CA SBN 318773) |
| 25 | | Brendan Ruddy (CA SBN 297896) |
| | | Deputy Attorneys General |
| 26 | | California Department of Justice |
| | | Office of the Attorney General |
| 27 | | 455 Golden Gate Ave., Suite 11000 |
| | | San Francisco, CA 94102-7004 |
| 28 | | |

13

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice*
Section Chief, Deputy Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101

14

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorney for Plaintiffs Matthew J. Platkin, Attorney General for the State of New Jersey, and Cari Fais, Acting Director of the New Jersey Division of Consumer Affairs*

STATE AGS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
4:23-md-03047-YGR; 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR