UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF RE RFP NOS. 37 AND 50 (ACCOUNT SIGN UP AND CANCELLATION INTERFACES)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendants Google, LLC and YouTube, LLC ("YouTube") respectfully submit this letter brief regarding a dispute as to YouTube's amended responses to Request Nos. 37 and 50 in Plaintiffs' Request for Production Set 3.[1]

Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference before filing this brief. The final conferral was on October 29, 2024, and was attended by lead trial counsel for the Parties involved in the dispute. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

This document is provisionally filed under seal, pursuant to the Order Granting Motion to File Under Seal: Setting Sealing Procedures. Dkt. 341.

Attached as **Exhibit A** is YouTube's Amended Responses and Objections to Plaintiffs' Request for Production Set 3, Nos. 37 and 50.

Dated: January 14, 2025

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between YouTube and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-DiscoveryStanding-Order-v1.2-2023_06_01-1.pdf.

Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104

Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY LLP**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*By: /s/ Christopher Chiou*
Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Attorneys for Defendants YouTube, LLC, Google LLC

WILLIAMS & CONNOLLY LLP

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashely W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Fax: 202-434-5029

Attorneys for Defendants YouTube, LLC, Google LLC

MORGAN LEWIS & BOCKIUS, LLP

Brian Ercole (pro hac vice)
brian.ercole@morganlewis.com
Morgan Lewis & Bockius, LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
Morgan Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Attorneys for Defendants YouTube, LLC, Google LLC

**ATTESTATION**

I, Christopher Chiou, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: January 14, 2025

By: */s/ Christopher Chiou*
Christopher Chiou

## **PLAINTIFFS' POSITION**

Plaintiffs move to compel production of responsive documents to RFP 37 and 50; in particular, documents sufficient to show historical versions of YouTube's account sign-up and deactivation. YouTube refuses to produce based on unsubstantiated claims of undue burden.[2]

### A.   THE DISCOVERY IS RELEVANT TO THE CLAIMS AND DEFENSES

RFPs 37 and 50 seek documents that "demonstrate, reflect, or describe" YouTube's account sign-up process, "including the text and graphics made available for review" (RFP 50) and documents that "constitute, identify or describe…[p]olicies, instructions, manuals, tools, [and] mechanisms" for users to cancel or deactivate accounts (RFP 37). The current dispute is limited to production of historical versions of the relevant user interfaces.

There is no dispute that YouTube's account sign-up and cancellation processes are directly relevant and central to the claims and defenses in this case. As to sign-up, Plaintiffs allege YouTube's account sign-up process is defective because it (1) allows users to create an account without verifying age, (2) allows adolescent users to create multiple or sham accounts, (3) allows users to access YouTube even *without* creating an account, and (4) fails to provide any warning regarding the dangers posed by YouTube. *See e.g.* Dkt. 494 ¶ 141 ("parents are not notified when their minor child has opened an account"); ¶¶ 718, 721, 730 (age verifications are defective); ¶ 814 (Google's account sign-up "contains no warning labels, banners, or conspicuous messaging to adequately inform adolescent users of the known risks and potential physical and mental harms associated with usage of its product" and allows users to easily create multiple accounts or to access YouTube without an account); *see also* ¶¶ 692, 705, 719-720, 722, 772, 812, 817 and 845(a) and (b). As to account cancellation, Plaintiffs allege that adolescent users "face significant navigational obstacles and hurdles when trying to delete or deactivate their accounts." *Id.* at ¶ 774; *see also id.* at ¶ 776 (to delete an account, a user must also delete their entire Google account, and "Google explicitly threatens users with this consequence on the page where users can delete their account, listing every associated account Google will delete and providing examples of the kinds of content that will be deleted if a user does not back down"); ¶ 777 (to delete an account a user must locate and tap on six different buttons on six different pages and review a warning that their accounts will become unrecoverable shortly after deletion).

Plaintiffs must demonstrate causation based not on the *current* account sign-up and cancellation process, but on those that were in effect at the time the user signed up for an account or sought to delete of their account.[3] And, insofar as YouTube maintains that its account sign-up and cancellation processes were appropriate during the relevant time period it should produce evidence of that defense.[4] Courts in this district have ordered production of prior versions of a company's website where they are clearly at issue. *See e.g.*, *Microsoft Corp. v. Buy Cheap Software, Inc.*, 2016 WL 7444627, at *4 (C.D. Cal. May 26, 2016) (requiring production of current and prior versions of a website no longer publicly available); *Steril-Aire, Inc. v. First Light Techs., Inc.*, 2009 WL 10673336, at *3 (C.D. Cal. Dec. 8, 2009) (ordering production of printed documents and/or electronically stored information such as search engine optimization source codes, htmls, urls, screenshots, metadata, and establishing all relevant revisions to website); *Amerito v.*

---

[2] Plaintiffs began meeting and conferring about these discovery requests on July 17, 2024, and followed up consistently for over six months to obtain YouTube's final position. YouTube has had more than enough time to substantiate any claimed burden but has failed to do so.

[3] YouTube argues discovery regarding deletion is not relevant because no Bellwether Plaintiff has deleted/deactivated accounts. But this is, in fact, consistent with allegations that YouTube intentionally designs its platform to make is difficult for users to delete/deactivate their accounts.

[4] If YouTube is permitted to stand on its refusal to produce, then it should be precluded from arguing that account sign-up and deletion were reasonable in design across the entire time period.

*Millenium Laby's Clinical Supply, Inc.*, 2013 WL 5775116, at *8 (S.D. Cal. Oct. 25, 2013) (requiring production of previous versions of website); *see also See FTC v. DIRECTV, Inc*., 2016 U.S. Dist. LEXIS 176873, *15 (N.D. Cal. Dec. 21, 2016) (cited by YouTube below) (motion to compel denied because defendant *had produced* " information that would allow the FTC to compare website versions through documents, screenshots, and source data").

B.  **YOUTUBE'S REFUSAL TO PRODUCE HISTORICAL VERSIONS IS UNREASONABLE AND ANY CLAIMED UNDUE BURDEN IT UNSUBSTANTIATED**

On the basis of undue burden, YouTube seeks to limit its production of historical versions to only *existing* YouTube custodians and refuses to search any noncustodial sources. But production limited to YouTube-specific custodians is grossly deficient, and YouTube provides no evidence to show that production of historical versions from noncustodial sources will be *unduly* burdensome in timeframe or substance.[5]

On custodial sources, YouTube contends its *agreement* to produce historical versions to the extent available from custodial sources is sufficient. But YouTube has refused to confirm whether said versions *actually exist* (or are even likely to exist) in the current custodian files. Plaintiffs review of documents produced to date suggest that they *are not* (and YouTube has not pointed to any document to refute this finding). Moreover, while YouTube has insisted that custodial productions are sufficient, it has also conceded that account creation and deletion are managed by *Google* employees, whereas the agreed-upon custodians operate solely within YouTube. *See e.g*., GOOG-3047MDL-05380349. Finally, YouTube's custodial productions are limited by YouTube's short retention policies GOOG-3047MDL-00057706 (████████████████████████████████████████████████████████████████████████████████). YouTube's "agreement" on custodial sources is therefore wholly illusory and guaranteed to ensure that no relevant and responsive documents will be produced in this litigation. Plaintiffs request that YouTube identify the relevant *Google* employees whose custodial files are likely to contain the historical versions requested under RFPs 37 and 50, and that those files be searched and responsive documents produced. YouTube's belated representation that no such individual exists is suspect. There are individuals at Google who work on user interface design, likely specific to account creation and account deletion, and they should be identified.

On noncustodial sources, YouTube *concedes* that the information Plaintiffs seek is, in fact, available through historical source code; specifically, according to YouTube, it *can* recreate user interfaces from a pages' source code.[6] But despite acknowledging the existence and availability of the requested discovery, YouTube nonetheless seeks to withhold responsive documents based on conclusory statements of burden regarding the recreation *process*. However, YouTube has not produced *any* information on this, including refusing to provide (1) an estimate of employee hours and/or computer processing time required, (2) the name of the non-custodial source or sources where the required information is contained, (3) the name of the tool or tools used to pull and/or compile the interface, and (4) information regarding how YouTube provides historical versions of webpages and user interfaces to respond to subpoenas from law enforcement. In the absence of such information, YouTube has not met its burden to "clarify[], explain[], and support[] its objections" that the requested discovery should not be allowed. *In re XF-TRW Airbag Control Units Prod. Liab. Litig*., 2022 WL 19425956 at *3 (C.D. Cal. Jul. 25, 2022).

Even if YouTube *had* properly supported its objection, the proportionality factors set forth in Rule 26 support production. *See* Fed. R. Civ. P. 26(b)(1) (proportionality considerations include the importance of the issues, parties' relative access to the information, and parties' resources, the

---

[5] On timeframe, this Court has already found that the default time period is reasonable and proportional to the needs of the case. *See* Dkt. 953.

[6] Whereas Plaintiffs cannot given YouTube's refusal to produce the source code, *i.e.,* change logs.

2

importance of the discovery in resolving the issues, and whether the burden or expensive of the proposed discovery outweighs its likely benefit). *First*, as demonstrated above, the evidence at issue is critical to claims and defenses in this action. *Second*, YouTube has exclusive access to the information at issue, and there is no other reasonable alternative to obtain the requested information. *Third*, YouTube's significant financial resources minimize burdens of compliance. *Fourth*, any difficulty associated with production is of YouTube's own making, *i.e.,* a party's choice to keep ESI in a manner that requires it to incur heavy expenditures to produce requested information does not provide a basis to withhold. *See e.g.*, *Micron Tech, Inc. v. Factory Mut. Ins. Co.*, 2022 WL 3083713, at *4 (N.D. Cal. Aug. 3, 2022) (burdens resulting from company's own record-keeping practices cannot be used to shield it from discovery"); *Lou v. Ma Labs., Inc.*, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) ("that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information"), *clarified on denial of reconsideration*, 2013 WL 1615758 (N.D. Cal. Apr. 15, 2013); *Wagoner v. Lewis Gale Med. Ctr., LLC*, 2016 WL 3893135, at *3 (W.D. Va. July 14, 2016) (holding that a party's decision to keep ESI in non-searchable format was irrelevant to proportionality calculus).

YouTube now asserts that it "has produced, for example, technical and design documents demonstrating how creation or deletion flows have changed on the platform over time." To Plaintiffs' knowledge, this is not true, and YouTube has not identified any such documents to Plaintiffs in the more than six months of meet and confers.

Plaintiffs respectfully request that the Court compel YouTube to (1) identify relevant Google custodians, and search and produce responsive documents from their files, and (2) produce the source code/change logs, and produce historical versions responsive to the requests.

## YOUTUBE'S POSITION

***The historical versions of interfaces that Plaintiffs seek do not exist.*** Yet Plaintiffs have refused to accept the reality that no responsive documents can be located after an exhaustive and eminently reasonable search. Instead, they demand that YouTube scour nearly a decade of change logs to recreate historical versions of user interfaces, i.e., create documents that do not exist in the ordinary course of business through a process that would consume hundreds of engineering hours.[7] When it became clear to the parties that such a process would not result in recreations that accurately reflected the interfaces at any given point in time, Plaintiffs adopted the conflicting position that YouTube must identify new custodians to locate any custodial copies of interfaces (or fragments thereof) those individuals may have—beyond those ***already produced from existing custodians***— and which ***still*** could not be used to establish to any degree of certainty what an interface looked like at any point in time. Even if adding new custodians at this late stage were reasonable (which it is not), based on YouTube's reasonable investigation, YouTube is confident that ***there are no custodians*** who would possess final historical U.S. versions of past account creation and deletion interfaces. Plaintiffs' demands should be denied.

While YouTube disputes the relevance of the documents sought, in the spirit of cooperation, YouTube has already undertaken significant burden in searching for and producing documents responsive to these requests: (1) the current final version of the user interfaces for account creation; (2) the current final version of the user interfaces used to cancel, delete, and/or deactivate an account used to access YouTube; (3) documents that reflect or describe the account creation process; (4) current final versions of public-facing instructions and help pages related to account cancellation, deletion, and/or deactivation; (5) <u>historical</u> final versions of account creation policies, instructions, and user interfaces from the relevant time period to the extent they are located in YouTube's custodial collections; and (6) <u>historical</u> final versions of account cancellation-related

---

[7] Plaintiffs' demand for change logs and source code was added in the final exchange of position statements, after which YouTube was unable to make substantive edits to address this new position.

3

policies, instructions, and user interfaces from the relevant time period to the extent they are located in YouTube's custodial collections.

In addition to the documents YouTube has already agreed to search for and produce in response to these requests, YouTube has also agreed to search for and produce a variety of additional documents responsive to additional requests that enable Plaintiffs to track the evolution of the platform over time, including the account creation and deletion processes. For example, YouTube has agreed to produce: (1) documents describing or discussing YouTube's policies regarding account creation; (2) documents concerning the research, development, evaluation, approval, technical implementation, post-implementation testing or review, and consideration of disabling, restricting, or material alternative designs for at-issue features; (3) documents reflecting changes YouTube made to its platform as a result of research YouTube conducted concerning the potential or actual adverse effects of its platform on YouTube users in the United States who are minors; and (4) documents reflecting feature changes in the United States targeted at the safety of minor users on the YouTube platform.

YouTube has produced, for example, technical and design documents, ***including from existing custodians***, demonstrating how creation or deletion flows have changed on the platform over time. *See, e.g.* GOOG-3047MDL-05634956 ( ); GOOG-3047MDL-05518690 ( ); GOOG-3047-03289033 ( ). These documents are sufficient for Plaintiffs to understand changes to the interface over time. *See FTC v. DIRECTV, Inc.*, No. 15-cv-01129-HSG, 2016 U.S. Dist. LEXIS 176873, *15 (N.D. Cal. Dec. 21, 2016) (no prejudice where not all versions of website produced).

Non-custodial documents. Despite YouTube's expansive productions in response to both requests, Plaintiffs demand the ***recreation*** of ***all*** historical versions of the user interfaces for account creation and deletion dating back to 2015. This process is immensely burdensome and would not result in reliable recreations. ***The historical versions sought by Plaintiffs are not maintained in the ordinary course of business in a complete form and cannot simply be collected and produced.*** Engineers would have to manually sift through nearly a decade of source code, interpret each segment's impact, and reconstruct pages from scratch. This intricate process would then have to be completed for each page in the account creation or deletion interface flow, which can be dozens of separate pages each.[8] Plaintiffs offer no justification for imposing such a high burden. Even after completing this extraordinarily burdensome process, it would be impossible to know whether the reconstructed interfaces resulting from this process accurately represented every version of the interface given the engineering judgment necessary to manually recreate them, rendering the burden all the more unreasonable. The reconstructed historical versions would not be reliable to establish the appearance of the interface at any given time. After a reasonable investigation, YouTube is confident ***there is no alternative noncustodial source*** of the interfaces sought.

New custodians. Plaintiffs also now demand that YouTube identify ***new*** custodians to accommodate Plaintiffs' continued fishing expedition ***over six months*** after custodian negotiations were finalized and ***over a month*** after substantial completion of document production. Nothing has changed to justify that demand, and YouTube should not be unduly burdened with new custodial collections and review at this late stage as a result of Plaintiffs' shifting priorities. *See In*

---

[8] Plaintiffs' assertion that YouTube has not explained this is disingenuous. YouTube has done so for months. Plaintiffs' new request for more custodians—the only demand in the parties' H(2) conference—was driven by YouTube's explanation of this process and unverifiable output.

4

*re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, *1 (N.D. Cal. Oct. 21, 2021) ("[R]equiring a party to compel the designation of additional custodians requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated."). Although Plaintiffs suggest that the nature of YouTube's account creation interface necessitates new Google (as opposed to YouTube) custodians, the (public) relationship between creating a Google account and creating a YouTube account has remained the same throughout the entire relevant time period and custodian negotiations. Plaintiffs may now regret their decision not to seek Google custodians, but no additional information was required to inform Plaintiffs' positions in those negotiations.

Even if ordered to identify new custodians, based on YouTube's reasonable investigation, YouTube is confident that ***there are no custodians*** who would possess final historical U.S. versions of past account creation and deletion interfaces. But even if there were, it would be impossible to know whether any fragments of interfaces located in those additional custodial collections were accurate representations of the interfaces as they actually existed, for the same reason that it is not possible to simply collect and produce the historical versions noncustodially— the historical versions ***do not exist***.

The undue burden Plaintiffs' demand would impose is "vastly disproportionate to the needs of the case." *See Ramirez v. Bank of Am., N.A.*, No. 22-CV-00859-YGR (RMI), 2024 WL 388123 at *3-4 (N.D. Cal. Feb. 1, 2024), motion for relief from judgment denied, No. 4:22-CV-00859-YGR, 2024 WL 3550393 (N.D. Cal. Apr. 3, 2024) (denying plaintiffs' motion to compel where defendants had already made productions responsive to the subject matter sought by the requests and the court agreed that document requests at issue were "vastly disproportionate to the needs of the case"); *United States v. Lacey*, No. CR-18-00422, 2020 WL 85121, *4, 16-17 (D. Ariz. Jan. 7, 2020) (denying defendant's motion to compel requesting, among other things, that plaintiff "recreate the databases and systems to allow functional access to the data and information as it existed at the time of the [issue]" because "given the demonstrable functionality of the [] discovery at this point, Defendants fail to . . . justify the significant cost and delay fulfilling their request would incur.") This is particularly the case as to the account deletion interface, given that no bellwether plaintiff has actually deleted or deactivated their account based on the information available. Plaintiffs have the standard wrong in suggesting YouTube must produce unless it establishes undue burden: ***Plaintiffs*** bear the burden of establishing relevance and proportionality. *See Ramirez*, 2024 WL 388123 at *2. Plaintiffs have failed to do so.

Burden aside, YouTube cannot be compelled to create documents that do not exist in the ordinary course of business. *Williams v. Gyrus ACMI, LP*, No. 5:14-CV-00805, 2016 WL 7013042, at *1 (N.D. Cal. Dec. 1, 2016) ("Rule 34 only requires a party to produce documents that are already in existence.") (quoting *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000); *Ssee, e.g., Paramount Pictures Corporatione et al., v. Replay TV, et al.*, No. CV01-9358FMC, 2002 WL 32151632, at *3 (C.D. Cal. May 30, 2002) (holding that magistrate's order requiring defendants to "undertake a major software development effort, incur substantial expense, and spend approximately four months" to create materials that do not exist is contrary to law). While Plaintiffs claim no alternative exists, third-party representations of the interfaces are readily available online (e.g. video walkthroughs).

Plaintiffs' demands should be denied. YouTube respectfully requests that the Court limit the scope of RFP Nos. 37 and 50 to the categories of documents that YouTube has already agreed to search for and produce from existing custodial collections and deny Plaintiffs' requests for additional custodians and creation of documents that do not exist.