UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:  4:22-md-03047-YGR-PHK |
| This Filing Relates to: | **JOINT LETTER BRIEF REGARDING PRODUCTION OF MESSAGES FROM CURRENT AND FORMER EMPLOYEES' SNAPCHAT ACCOUNTS** |
| *All Actions* | |
| | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

       Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendant Snap Inc. respectfully submit this letter brief regarding a dispute regarding production of messages from current and former employees' Snapchat accounts.

       Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on January 7, 2025 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: January 14, 2025

Respectfully submitted,
*/s/      Lexis J. Hazam      *
LEXI J. HAZAM
**LIEFF    CABRASER    HEIMANN    & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER

**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW
CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**

700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY,
PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,
PSC**
600 West Main Street, Suite 100

iii

Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

iv

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER &
CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

/s/   Jonathan H. Blavin
Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**Plaintiffs' Position:** The central feature of Snapchat is ephemeral messaging, which can take two forms: snaps (photos or videos that may contain text) and chats (text-based messages that may contain photos or videos). Snap designed both snaps and chats to disappear, by default, after they are viewed or after a specified amount of time. A sender or recipient may, however, choose to save a snap or chat, meaning it is retained indefinitely. A user may also disable ephemerality on their chat messages, meaning those communications will never be deleted. Snap employees, including the custodians identified in this case, regularly communicated with one another for work purposes using Snapchat snaps and chats. Snap has acknowledged the relevance of this form of corporate communication, and has agreed to collect and produce responsive chats sent or received by current employee custodians; however, Snap refuses to collect responsive, work-related (i) chats sent or received by former employees unless granted express permission to do so by each former employee, and (ii) snaps sent or received from either current or former employee custodians. The refusal to collect, review and produce this method of communication that Snap employees regularly use to converse about their relevant, work-related responsibilities is unreasonable.[1]

Snap encourages its employees to use their Snapchat accounts for work responsibilities and communication. Indeed, Snap's employee handbook states, "***We also expect team members to use the Snapchat app to stay connected***, beta-test new features, and generally ensure we're delivering the best product to our users." SNAP0019765 (emphasis added). Most, if not all, Snap employees identify their Snapchat handle in the signature block of their business email.

Further, multiple Snap witnesses deposed thus far have testified that they regularly communicated via Snapchat about their work responsibilities, including with upper management and their project teams. *See, e.g.*, A. Tupper Dep. at 363:12-16; N. Yadegar Dep. at 187:22-188:24; M. Weissinger Dep. (rough) at 20:11-21:1; A. Osborne Dep. (rough) at 79-80. Snap's former Senior Product Manager explained that communicating via Snapchat was essential to fulfilling employees' work responsibilities because "certainly my job is to kind of use the product and test the product to make sure that it works properly." A. Osborne Dep. (rough) at 69.

The Snapchat chats that have been produced from current employee custodians are highly relevant to this litigation. For example, Snap's Director of Product Strategy and Operations sent chat messages to a product manager observing that lenses may cause "body dysmorphia" in teenage girls. *See* N. Yadegar Dep. at 205:4-207:20. Snap's Global Head of Trust & Safety described a Trust & Safety group chat that was used to alert Trust & Safety leads to "exigent circumstances" on the platform requiring immediate attention. M. Jackson Dep. at 408:15-409:13. Snap's former Senior Product Manager for Safety testified that several Snap employees, including multiple custodians in this case, were part of a Snapchat group chat that tested safety features on the platform and communicated via Snapchat about these tests; according to the witness,

---

[1] It is also not particularly burdensome because most chats and snaps were not preserved unless specifically saved by a user. For the current employees that have testified thus far, Snap has produced only a handful of responsive chat messages even though witnesses acknowledged they sent many more messages that were not preserved. Snap also failed to turn off ephemerality for messages sent by employees placed on litigation hold, meaning that even after a hold was implemented, employees' Snapchat chats and snaps were destroyed unless saved by the user. Thus, there are not many responsive snaps and chat preserved, though those that are saved tend to be highly relevant, as described above. Since Snap has not even attempted to collect responsive chats and snaps for former employees, it cannot claim burden.

1

employees had to use Snapchat to conduct the testing and communicate about the tests. A. Osborne Dep. (rough) at 79-80. These communications about safety testing are highly likely to be relevant.

Snap makes clear to its employees that when they communicate with one another for work purposes using Snapchat, ***these communications are the property of Snap, not the individual***. Snap's employee handbook states that "all electronic communications, including email, made by team members using Snap's devices, systems, or networks are considered company property." SNAP0019766. Snap further advises that it "may need to monitor team members' use of Snap's equipment, systems, or networks (including personal devices used for work purposes). This could include reviewing emails, internet usage, or other electronic messaging services such as SnapChat usage, instant messages and text messages." Snap advises that employees' "communications may not be private. ***They should also be mindful that internal and external messages are considered business records and may be subject to discovery in litigation***." *Id.* (emphasis added).

In short, Snap makes clear that it expects employees to use Snapchat to communicate with each other for work; Snap employees used Snapchat to engage in highly relevant work communications; and those communications are the property of Snap. Snap expressly tells its personnel that work-related chats and snaps sent via Snapchat are "business records [that] may be subject to discovery in litigation," not a "personal," private method of communication. Like emails and Slack messages sent in the course of their employment, Snapchat chats and snaps between employees, discussing Snapchat and its features, sent within the scope of their employment, are company documents under Snap's control; Snap therefore has no basis to refuse to collect, review, and produce responsive chats and snaps from its former employees.[2] *See, e.g.*, *Mercy Catholic Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (documents are in a party's control if it has the legal right to obtain the documents on demand); *see also Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 994 (C.D. Cal. 2012) (employee communications are under party's control).

Snap has refused to collect the Snapchat chats and snaps of former employees, arguing that it is not permitted to collect those communications without permission pursuant to the Stored Communication Act ("SCA"). The SCA does not apply to Snapchat chats and snaps sent and received by Snap employees during the course of their work; as Snap's employee handbook makes plain, these are Snap business records belonging to Snap, not the employee.[3]

The SCA protects the privacy of electronic communications stored or maintained by third-party service providers. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2003). In particular, the SCA prohibits an electronic communication service ("ECS") from disclosing "the contents of a communication while in electronic storage by that service," and prohibits a remote

---

[2] Snap now concedes that Snapchat chats are an enterprise channel used to communicate about work-related issues, *see infra* at 5, but argues snaps (unlike chats) are highly personal, include an user's "entire photo library," and should remain off limits. But Snap has not collected any snaps from its custodians, so this is speculative. Plaintiffs also are not seeking an "entire photo library," or any personal messages at all, but rather specific messages containing work-related information. Plaintiffs agree that Snap need not collect snaps sent or received from non-Snap employees.

[3] Snap also argues that production of its former employees' chats and snaps is not ripe because a former employee may consent to production of these messages. This is nonsensical. To date, Snap has not produced the chats or snaps of ***any*** former employee and there are several former employee depositions scheduled in the following weeks. Plaintiffs are entitled to responsive communications now and should not have to relitigate this issue before every former employee deposition.

computing service ("RCS") from disclosing "the contents of any communication which is carried or maintained by that service." 28 U.S.C. § 2702(a)(1)-(2). By definition, both an ECS and RCS provide services "to the public," *id.*, meaning that neither of these frameworks apply to an employee's work-related communications stored on their employer's servers. *See, e.g.*, *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-15 (3d Cir. 2003) (SCA not applicable to search of employee's email stored on employer's servers).

Instead, the SCA typically precludes third-party internet service providers such as Yahoo or Google from producing an individual's personal emails pursuant to a civil subpoena. *See, e.g.*, *Chasten v. Franklin*, 2010 WL 4065606, at *2 (N.D. Cal. Oct. 14, 2010) (precluding third-party Yahoo from producing personal emails of a prison guard in a suit against prison). Snap cites no authority in which the SCA prohibits a ***party*** in litigation from producing its employees' work-related communications transmitted via a regular work-related communication channel owned and controlled by the party. If the SCA precluded such discovery, parties in litigation like Snap, Meta, and Google would regularly refuse to produce communications of their employees transmitted via the internal communication channels built by each of these companies. The fact that Snap can point to no such authority is telling. Instead, the SCA applies only where an internet service provider stores third-party communications solely for backup or storage purposes; Snap, however, stores chats and snaps sent via Snapchat to analyze its users and monetize their behavior, thus removing any SCA protection over those communications. *See Snap, Inc. v. Superior Court of San Diego Cnty.*, 323 Cal.Rptr.3d 576, 598, 601-02 (Cal. App. 4th 2024). In sum, Snap cannot hide behind the SCA. Given that depositions are underway and discovery closes within three months, the Court should order Snap to produce these materials no later than January 24, 2025.

**<u>Snap's Position:</u>** Except for testing purposes, Snap employees do not maintain 'business' Snapchat accounts. Rather, employees have personal Snapchat accounts, which they use to communicate with their friends and family and which, in most cases, existed as personal accounts prior to the employee joining Snap. Snapchat allows users to send text-based messages (called "chats"), as well as to take and share photos and videos (called "snaps") that often include effects like puppy dog ears or showing the user as a cartoon character. Although employees' Snapchat accounts are predominantly used for personal communications, in the spirit of compromise, Snap agreed to collect employee-to-employee chats for current-employee custodians and to produce responsive, non-privileged work-related chats (and associated embedded images). Plaintiffs, however, now improperly demand even further intrusion into employees' personal accounts by requiring Snap to collect, review and produce their snaps—i.e., their personal Snapchat photo libraries, which contain things like photos of their children, family members, and non-employee friends—without *any* evidence business was conducted through snaps. This is akin to demanding that an employee who used their personal phone to send work-related text messages not only turn over those messages, but also submit the entire contents of their photos library for review—on the off chance that the employee might have once taken a photograph while at work. Snap should not be required to ask its employees to submit to such an egregious invasion of their privacy.

Plaintiffs also demand that Snap produce messages and snaps from *former* employee custodians, even when that former employee refuses consent to such collection. The Court need not address this not-ripe issue, as no former employee has at this time conclusively refused to consent to production of their Snapchat messages (one former employee, Alex Osborne, had initially declined to give his consent, but he has since consented, and Snap is still in discussions with others). Nonetheless, Plaintiffs have insisted that the Court resolve the hypothetical situation

where consent is declined by the former employee. Doing so would run afoul of the Stored Communications Act ("SCA") and, more broadly, would require invasive review of personal and private messages of individuals no longer associated with the company. Following the SCA here, moreover, would not mean that Plaintiffs have no way to access the Snapchat messages in question; it just means that they must seek them directly from the former employee via subpoena.

**Review of Snap Employees' Personal Photos Would Be An Unwarranted Invasion of Privacy Not Proportional to the Needs of this Case.** Snaps are a highly personal and private form of communication that are especially unlikely to be used in a business context. None of the testimony Plaintiffs cite makes reference to *snaps* sent for work-related purposes, and Plaintiffs have offered no other shred of evidence that Snap employees conduct business through snaps. Snap has confirmed with its employees that they do not, and if permitted to do so, Snap will submit declarations demonstrating the same. Snap employees have also testified that even as to snaps sent between employees who are friends, these snaps consist of highly personal material such as videos of their children. Osborne Tr. at 68:9-69:2. And at any rate, Snap has no technical way of limiting its collection for review to just snaps sent between employees. In these circumstances, collection and production of employees' personal photos and videos in the form of snaps is unwarranted.

Under Rule 26, any discovery sought must be "relevant to [a] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That standard applies equally and especially to private social media accounts. Even where some limited subset of private social media messages may be relevant, "digging into" employees' (and former employees') personal social media accounts more broadly would be "disproportional to the needs of the case[.]" *DeMartini v. Microsoft Corp.*, 2023 WL 7924716, at *1 (N.D. Cal. Nov. 15, 2023) (denying request for production of executives' personal social media accounts). Recognizing this balance, Snap has obtained current employees' consent to produce employee-to-employee chats on Snapchat, but extending this request to cover snaps (i.e., personal photographs) would be highly inappropriate. Snap employees do not lose their privacy rights over personal photos simply because someone decides to sue their employer. Plaintiffs do not carry their burden to justify discovery of snaps.

*First*, the nature of the Snapchat app–and of snaps in particular–means the discovery sought necessarily implicates intrusive review of custodians' personal and private messages. Courts have made clear that discovery into personal social media accounts implicates "privacy interests" that "should weigh heavily in a court's balancing equation" in determining whether discovery is justified. *Mujae Grp., Inc. v. Spotify USA Inc.*, 2021 WL 3417485, at *1 (S.D.N.Y. June 30, 2021); *see J.T. v. Cty. and Cnty. of S.F.*, 2024 WL 3834200, at *3 (N.D. Cal. Aug. 14, 2024) ("strong privacy interest in" social media data). Even in cases involving an employer's search of an employee's work computer, "courts have held that, under certain circumstances, employees have a reasonable expectation of privacy in the contents of their work computer." *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 560 (S.D.N.Y. 2008).

*Second*, Plaintiffs already have access to the same information (and much more) through the enterprise channels that employees primarily used to communicate about work-related issues: emails, shared Google docs and related comments, Slack messages, saved chats from the Snapchat app, and the variety of other sources from which Snap has agreed to produce responsive documents. *See* A. Tupper Tr. at 363:23-364:ll; K. Zicafoose Tr. at 153:18-154:4; N. Yadegar at 222:6-225:14, 311:18-312:4; and M. Weissinger Tr. at 19:24-20:9. And to the extent employees have sent work-related photos or screenshots from their phone's camera roll through Snapchat's chats function, those embedded images are already being produced where responsive. In short,

4

Plaintiffs have not provided "any narrowly tailored justification" for invading "[t]he privacy interests of innocent third parties." *Mujae Grp., Inc.*, 2021 WL 3417485, at *1.

 ***The SCA Prohibits Snap from Producing Former Employees' Snapchat Messages Absent Their Consent.*** As noted, this is at best a hypothetical dispute that need not consume the Court's time.  But if the Court were to reach this issue, the SCA prohibits electronic communication service ("ECS") providers like Snap from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 972 (C.D. Cal. 2010) (quoting 18 U.S.C. § 2702(a)(1), (b)). Plaintiffs cite a California case holding that the SCA does not apply to Snapchat (and Meta) private communications, *Snap, Inc. v. Superior Court of San Diego Cnty.*, 323 Cal.Rptr.3d 576, 598, 601-02 (Cal. App. 4th 2024). That decision is currently under review by the California Supreme Court, No. S286267 (Sept. 18, 2024), and even in California state courts, "has no binding or precedential effect[.]" Cal. Rule of Court 8.1115(e)(1).  Moreover, the case—which concluded that the SCA did not apply because Snap and Meta may also use content for their own business purposes and not purely for storage purposes—is inconsistent with federal authority, wrongly decided, and would substantially undermine the SCA's protections. Indeed, several federal courts have held that social media sites are ECS providers under the SCA. *E.g., Crispin*, 717 F. Supp. 2d at 980-82 (Facebook an ECS); *Rep. of Gambia v. Meta Platforms, Inc*., 588 F. Supp. 3d 1, 5-7 (D.D.C. 2022) (same).

 Plaintiffs further assert that the Act is inapplicable because provisions of Snap's Employee Handbook purportedly give the company "control" over employees' Snapchat accounts. But Plaintiffs' argument proves far too much: There is no 'control' exception to the SCA, and Plaintiffs cite no authority establishing that an employer cannot violate the SCA as to its employees. That is especially so for Snap's *former* employees who are no longer associated with the company *or even subject to the Handbook. Carson v. EmergencyMD, LLC*, 2023 WL1861053, at *4 (4th Cir. Feb. 9, 2023) ("nothing in the Policy that suggests an employee's use of the company's shared computer to access her Gmail account for work purposes authorizes [employer] to access and use emails created on a private Gmail account after the employee has been terminated"); *Pure Power*, 587 F. Supp. 2d at 561 (former employee had reasonable expectation of privacy in personal e-mail accounts where "nothing in [employer] policy suggest[ed] that it could extend . . . beyond the employment relationship"). And the Handbook does not otherwise extend to personal use. SNAP0019766 ("[I]nternal and external *email messages* are considered business records").

 Instead, absent an applicable exception, such as consent, Snap is prohibited from producing an employee's private messages or snaps under the SCA. *See* 18 U.S.C. § 2702(b). Snap has obtained consent for messages from all current-employee custodians, and has agreed to seek it from former employees who are being deposed.  If the former employees decline to provide it (which as of now has not happened), collecting, reviewing and producing their Snapchat messages without such consent would be a clear violation of the statute, which does not contain an exception for civil discovery. *Crispin*, 717 F. Supp. 2d at 975-76; *Doe v. City of San Diego*, 2013 WL2338713, at *2–4 (S.D. Cal. May 28, 2013) (SCA "prohibits Verizon from disclosing" text messages). The SCA similarly contains no applicable exceptions for communications on the basis of their content (such as work-related communications), 18 U.S.C. § 2702(b). Collecting and reviewing all Snapchat messages of former employees, the majority of which are very likely personal in nature, would necessarily require an impermissible "invasion . . . of the specific interests that the [Act] seeks to protect." *Chasten v. Franklin*, 2010 WL4065606, at *2 (N.D. Cal. Oct. 14, 2010).

# ATTESTATION

I, James Bilsborrow, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: January 14, 2025

By: /s/ James Bilsborrow_____