JAMES BILSBORROW
(jbilsborrow@weitzlux.com)
WEITZ & LUXENBERG, PC
700 Broadway
New York, New York 10003
Tel: (212) 558-5500

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, <br><br> This Document Relates to: <br><br> ALL ACTIONS | Case No. 4:22-MD-03047-YGR (PHK) <br><br> MDL No. 3047 <br><br> **DECLARATION OF JAMES BILSBORROW FILED PURSUANT TO THE ORDER OF COURT DATED JANUARY 16, 2025** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge: Hon. Peter H. Kang |

I, James Bilsborrow, declare and state as follows pursuant to 28 U.S.C. § 1746:

1. I am an attorney with the law firm Weitz & Luxenberg, P.C., counsel for Plaintiffs in the above-captioned matter. This declaration is based on my personal knowledge. If called upon to do so, I could and would competently testify as follows:

2. Since discovery commenced in this action, I have served as chair of the discovery committee prosecuting Plaintiffs' case against Defendant Snap Inc. ("Snap"). As a result, I have personally led or been closely involved in all aspects of discovery against Snap.

3. I believe I have developed a productive working relationship with several of Snap's litigation counsel, including Ms. Faye Paul Teller. Throughout the litigation, we have resolved many of the parties' disputes without seeking Court intervention and, where possible, I will endeavor to reach compromises to resolve the parties' future disputes.

4. Although the parties did not resolve their dispute over Snap's production of Quips,

1  I attempted to do so. I first learned Quips were not produced by the November 5 substantial
2  completion date on December 4, in a call with Ms. Teller. She and I spoke about the production of
3  Quips again on December 5 and December 8. During those calls, Ms. Teller informed me that Snap
4  intended to produce a large volume of Quips; that Quips were an important medium through which
5  product managers communicated about product changes; and that there may be approximately
6  10,000 Quips relevant to two product manager witnesses scheduled to be deposed the week of
7  December 13. Ms. Teller recommended that Plaintiffs adjourn those depositions to allow for
8  production of the Quips, which were likely to contain relevant communications involving both
9  witnesses. Plaintiffs reluctantly agreed and both depositions were rescheduled for the week of
10 January 13, 2025.

11     5.     In an effort to avoid further adjournments due to late Quip productions, on
12 December 8, 2024, I requested that Snap prioritize production of the Quips relevant to the two
13 product manager witnesses, as well as another product manager scheduled for January 10, 2025. I
14 requested that Snap produce the Quips for those three witnesses on or before December 20, 2024.
15 I further requested that Snap produce all remaining responsive Quips by the first week in January,
16 though I stated that Plaintiffs would be open to discussing a rolling production that prioritized
17 deponents scheduled for January depositions. I offered this option because Ms. Teller indicated
18 during our December 8 call that it would be difficult for Snap to produce all remaining Quips by
19 early January.

20     6.     On December 19, Ms. Teller and I spoke again and she informed me that Snap would
21 be unable to produce the priority Quips by December 20 but would aim to produce the Quips one
22 week before the scheduled depositions in early January. I knew this would create difficulties for
23 Plaintiffs because of the holidays and the anticipated size of the production, and I pushed for an
24 earlier production. The parties exchanged written correspondence on December 20, 22, 23, and 31.
25 In these communications, I requested a more concrete production schedule to avoid further last-
26 minute deposition adjournments. In my December 23 correspondence, I asked for the priority Quips
27 to be produced by December 30, with all remaining Quips to be produced by January 10.

28     7.     On January 3, 2025, Snap produced Quips in advance of the deposition of Alex

Osborne, scheduled for January 10, 2025, as well as the two rescheduled product managers, scheduled for January 14 and 15. The production was over 400,000 pages. Both the production volume, as well as the proximity to the upcoming depositions, made expedited review extremely difficult. In fairness and full disclosure, Snap's counsel provided a spreadsheet identifying the Quips that were custodial to each witness, which alleviated some of the burden of last-minute review.

8. The parties conducted a conferral pursuant to section H(2) of the Court's Standing Order on January 6, 2025. I led the conferral for Plaintiffs and did most, if not all, of the speaking for Plaintiffs' side. The conferral last roughly thirty minutes. At the conferral, I again conveyed that Plaintiffs needed a production schedule not just because the documents were overdue but also so we could plan for the review workflow with all other discovery obligations that were ongoing. At the H(2) conferral, counsel for Snap stated that they could not provide a production schedule but they would aim to substantially complete production by mid-February. Without a production schedule, I asked for a firm date for substantial completion on or before January 24. The parties agreed during this conferral to submit a joint letter brief on January 13, 2025.

9. Ms. Teller and I spoke again on January 7 and she indicated to me that Snap would try to roll documents out sooner than mid-February but that it was aiming to substantially complete the production by mid-February.

10. In summary, I personally spoke with lead counsel for Snap on the following dates: December 4, 5, 8, and 19, as well as January 6 and 7. Several of these calls touched on Quips, as well as other issues. In total, I estimate that I spoke with Ms. Teller one-on-one about the Quip production issue for a total of thirty minutes. I also spoke to Snap counsel for approximately 30 minutes during the H(2) conferral on January 6.

11. The parties also exchanged written correspondence on the following dates: December 20, 22, 23, and 31, as well as January 2, 5, 7, and 14.

12. Plaintiffs compromised on the proposed priority and substantial completion date for Quips several times. My initial request was that Snap complete production for the three priority witnesses on or before December 20, with the remaining Quips to be produced by the first week in

January; over the course of negotiations, Plaintiffs' requested substantial completion date gradually moved back to January 24. And while we repeatedly requested a concrete schedule and estimates of production volumes, Snap would not agree to either of these requests.

13. I regret that the parties' conferral process turned out the way that it did, though I am committed to continuing to work professionally with Snap's counsel to negotiate reasonable resolutions of discovery disputes going forward.

14. At or around the time the Court's Standing Order for Discovery became applicable to the case, I reviewed the Northern District of California's Guideline for Professional Conduct No. 3, as well as the Court's Standing Orders. I take the Court's governing orders very seriously and I have made best efforts to comply and abide by these orders throughout the litigation.

15. Pursuant to the Court's January 16, 2025 Order, I personally sent a copy of the Court's Order by email to the Personal Injury Bellwether Plaintiffs and their attorneys, as well as to representatives of the School District Plaintiffs and their attorneys.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: January 21, 2025            By:    /s/ James Bilsborrow
                                           Attorney for Plaintiffs