UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Filing Relates to: <br><br> *All Actions* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF REGARDING META'S DOCUMENT SUBPOENA TO FORMER EMPLOYEE VAISHNAVI JAYAKUMAR** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

      Pursuant to the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") and non-party Vaishnavi Jayakumar respectfully submit this letter brief regarding their dispute over Meta's subpoena for documents issued to Ms. Jayakumar on February 28, 2025.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, Meta and counsel for Ms. Jayakumar's attest that they met and conferred by phone call and email before filing this brief. The final conferral was attended by Meta's lead trial counsel and counsel for Ms. Jayakumar. Because Meta's lead trial counsel and counsel for Ms. Jayakumar were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via phone conference. Meta's lead trial counsel and counsel for Ms. Jayakumar have concluded that no agreement or negotiated resolution can be reached.

Dated: March 14, 2025                Respectfully submitted,

                                            **COVINGTON & BURLING LLP**

                                            */s/ Ashley M. Simonsen*
                                            Ashley M. Simonsen (State Bar. No. 275203)
                                            COVINGTON & BURLING LLP
                                            1999 Avenue of the Stars
                                            Los Angeles, CA 90067
                                            Telephone: + 1 (424) 332-4800

Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email:  ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**BAKER BOTTS LLP**

*Michael Ward*
MICHAEL WARD (SBN 146484)
michael.ward@bakerbotts.com
KARAN SINGH DHADIALLA (SBN 296313)
karan.dhadialla@bakerbotts.com
JACK R. BOOTH (SBN 347887)
jack.booth@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304
Phone: 650-739-7538
Fax: 650-739-7638

*Attorneys for Respondent VAISHNAVI JAYAKUMAR*

**Meta's Position.** Vaishnavi Jayakumar is a former Meta employee who served as Head of Youth Policy from January 2020 to May 2023. Ms. Jayakumar was deposed on January 30-31, 2025. Following this deposition, Meta served Ms. Jayakumar's counsel with a subpoena containing requests for production of documents ("RFPs") on Ms. Jayakumar. The parties later conducted a follow-up deposition on March 6. Meta now seeks to compel the production of certain categories of documents, addressed below, over Ms. Jayakumar's objections.

Communications with current and/or former Meta employees (RFP Nos. 1 and 2). Based on Ms. Jayakumar's testimony that she spoke with current and former Meta employees on issues related to this litigation, Meta requested Ms. Jayakumar's communications specifically about issues relevant to the litigation. Ms. Jayakumar objected to these requests as infringing on or having a chilling effect on her and "others' First Amendment rights to associate and discuss the subject of this request."

Meta's subpoena does not infringe upon Ms. Jayakumar's (or others') First Amendment rights and Ms. Jayakumar's sole cited case does not show otherwise. *Chevron Corp. v. Donzinger* involved a subpoena that infringed a First Amendment right to associate with an environmental advocacy organization. *See* 2013 WL 1402727, at *2-3 (N.D. Cal. Apr. 5, 2013). Here, Ms. Jayakumar does not purport to be in a political organization relevant to the subpoena, nor does she articulate how the subpoena would affect her associational rights or those of current and former Meta employees.

"Improperly Duplicative" Objections (RFP Nos. 1-3). Ms. Jayakumar also objects to Meta's RFPs as improperly duplicative. But, as the subpoenaed party, Ms. Jayakumar bears the burden of showing that Meta's RFPs are duplicative under FRCP 26(b)(2)(C)(i)-(iii), such as by providing examples of documents that have already been produced. *See Am. Broadcasting Cos., Inc. v. Aero Inc.* 2013 WL 1508894 at *3-4 (N.D. Cal. 2013). Ms. Jayakumar has proffered no such evidence. Ms. Jayakumar's disclosure of the fact of these communications in her testimony does not substitute for her production of the communications themselves. For example, Meta's RFPs seek communications between her and Mr. Bejar or Frances Haugen—communications she testified exist during her deposition but did not disclose the full content of. *See* Jayakumar Dep. Tr. at 546:11-16; 546:23-547:12. It is not duplicative to seek such underlying communications.

Overbreadth, Undue Burden, Proportionality (RFP Nos. 1-3). Lastly, Ms. Jayakumar objects to Meta's RFPs as overbroad, unduly burdensome, and not proportional to the needs of the case, but fails to meet her burden to resist the requests on these grounds. *See In re Subpoena to Apple Inc.*, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014) (subpoenaed party bears responsive burden to resist discovery). Meta's requests are carefully tailored to this litigation: they seek communications about teen mental health with Meta current and former employees, and counsel for plaintiffs. These requests are proportional and fit within the broad scope of discovery. Indeed, Meta requests documents that could corroborate or undercut Ms. Jayakumar's deposition testimony. *See* Fed. R. Civ. P. 26(b)(1). There is not any significant burden in asking for these communications and Ms. Jayakumar has not—and could not—articulate an undue burden in simply searching for and collecting responsive documents, which are presumably mainly emails,

4

text messages, and the like. *See Gilbert v. Citigroup, Inc.*, 2009 WL 10692463, at *6 (N.D. Cal. Apr. 2, 2009) (overruling objections where party "describes the nature of the burden" but "fail[ed] to describe how that burden is undue").

**Ms. Jayakumar's Position.** Defendant Meta's subpoena to nonparty Vaishnavi Jayakumar is overbroad, does not meet the proportionality standards under FRCP 26, and is unnecessary given that Ms. Jayakumar has already been deposed in this matter. The requests are specifically designed to identify current and former Meta employees who may have expressed critical views of Meta and its approach to youth-safety issues and their private communications—an improper purpose under the law and Meta's own policies. In seeking this material, the subpoena circumvents whistleblower and First Amendment protections. Meta has failed to explain the relevance of these requests to the litigation and their need for obtaining these documents *after* Ms. Jayakumar's two full days of deposition—where Meta had the opportunity to and did in fact ask her about each category of information—and *after* she gave Meta two, long-form, informal meetings prior to her deposition to answer its questions about her work product and communications at Meta. These requests are burdensome, serve to harass, and have a chilling effect on current and former employees who have critical opinions about Meta. This purpose is underscored by the fact that Meta has selectively issued similar subpoenas only to third-party witnesses that have rejected its offer of co-representation, retained Ms. Jayakumar's counsel at Baker Botts, and have delivered testimony critical of Meta.

The Court should thus sustain Ms. Jayakumar's objections and deny Meta's requests to have Ms. Jayakumar produce documents and communications with: (1) current and/or former Meta employees regarding *any* Social Media Platforms—including those platforms she previously worked for and those that are her current clients—on the widely defined topic of youth safety and well-being (the subject matter she has devoted her career and current business to); and (2) a specific list of witnesses including subpoenaed former Meta-employed witnesses in this current action who, like Ms. Jayakumar, rejected Meta's offer of co-representation and sought independent counsel through Baker Botts.

Ms. Jayakumar has made a career advising major companies (predominantly in tech) on policy decisions aimed at mitigating risks to the public—and especially youth. She was employed by other major tech companies prior to working at Meta and has started her own small business providing consulting services on product design for youth safety to technology companies after leaving Meta. She makes her living documenting and communicating risks posed to youth by social media platforms. Through her work, she communicates with countless people at countless tech companies about these issues. Even though Meta possesses the materials that formed her opinion on Meta while she was working there—Meta now essentially asks her to examine every communication she has in her career for the past thirteen years and assess whether any individual she has interacted with at her former employers or her current clients is a current or *prior* employee of Meta—a company which regularly staffs over or nearly 80,000 employees.

There is no practical way for Ms. Jayakumar to collect all her e-mails over a 13-year timespan, filter through them for conversations regarding any social media platforms and then determine if any of the individuals she has corresponded with are current or former employees, without incurring significant expense. Even if Meta were to narrow its request to certain search terms, certain dates, and certain social media platforms (like Meta), complying with these narrowed

requests would still require a formal collection and substantial review, which would be prohibitively expensive. This is particularly unjustified given that Meta already has access to all of Ms. Jayakumar's Meta-related communications and has had ample opportunity to talk to her informally and examine her about her work, opinions, and the bases for them.

Meta's intention here is abundantly clear—to identify current and former employees who may have critical views of Meta. As a nonparty, Ms. Jayakumar should not have to expend significant resources in support of Meta's fishing expedition, which is facially improper and not justified in the context of the litigation. Doing so would also have a negative impact on Ms. Jayakumar's—and others'—ability to freely discuss these issues without fear of retaliation, which in turn would also negatively impact her livelihood.

Meta cannot engage in post-employment blacklisting in retaliation for a former employee's post-termination deposition testimony on potential misrepresentations to shareholders. *See Kshetrapal v. Dish Network, LLC,* 90 F.Supp.3d 108, 114 (S.D.N.Y., 2015) (post-employment blacklisting in retaliation for post-employment deposition SOX claim adequately pled). And the First Amendment protects against discovery, which would chill associational rights and deter the exercise of protected activities. *See Chevron Corp v. Donzinger*, No. 13-mc-80038 CRB (NC), 2013 WL 1402727 at *2, *7 (N.D. Cal. Apr. 5, 2013). Meta lays the groundwork for this kind of retaliation by requiring Ms. Jayakumar to divulge every communication with other employee deponents and every communication she has had on the topic of youth safety with current and former employees that Meta retains the ability to retaliate against (including post-employment blacklisting of former employees). These requests send the message that Meta will root out anyone who has communicated with her, which prohibits her from fully engaging in her consulting work and outside reporting of issues. *Voice of San Diego v. Naval Criminal Investigative Service*, 2024 WL 4471146 at *19 (S.D.Cal., 2024) (barring disclosure of third-party information where there is a risk of embarrassment in the workplace or dissuading cooperation with future investigations).

**Meta's Reply.** Ms. Jayakumar contends that, in requesting these documents, Meta is retaliating against her for her deposition testimony and rooting out anyone who has communicated with her.

Meta's RFPs do not retaliate against or harass Ms. Jayakumar. Contrary to her argument, it is not infeasible or burdensome (but rather quite common) to search emails by recipient and utilize search terms to identify responsive communications within a specified timeframe. None of her cited authority states otherwise. And Meta's RFPs are focused on communications with current and former Meta employees solely on the topic of this litigation: the relationship between social media platforms and the mental health of teenagers.

On the retaliation point, Ms. Jayakumar cites to *Kshetrapal v. Dish Network, LLC*, a case about whistleblower retaliation under 18 U.S.C. § 1514A (Sarbanes-Oxley or "SOX"). *See* 90 F. Supp 3d 108, 114 (S.D.N.Y. 2015). Ms. Jayakumar did not assert whistleblower protections in her response to Meta's subpoena. In any event, Ms. Jayakumar has not, and could not, establish that she is a whistleblower under SOX. To support her claim that Meta's RFPs will somehow prevent her from engaging in her consulting work, Ms. Jayakumar points to *Voice of San Diego v. Naval Criminal Investigative Service*, an inapposite case about third-parties' privacy interests in protecting their names from disclosure in documents sought under FOIA—private third parties quite unlike Ms. Jayakumar, who has voluntarily offered quotes on social media in national

periodicals. *See* 2024 WL 4471146, at *19 (S.D. Cal. 2024). Ms. Jayakumar has further offered no authority for the notion that it is inappropriate to seek such communications after a witness's deposition, particularly when the witness confirmed that such communications existed during the course of that deposition but did not disclose their contents.

**Ms. Jayakumar's Reply.** Meta trivializes the burden of the Subpoena, which is apparent in context under Meta's own cited caselaw. The court in *In re Subpoena to Apple Inc.* held that a subpoena is burdensome if it is used to delay, used to "embarrass or harass," or if the requestor "fails to show need for the information." 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014). All are true here. First, the Subpoena was issued after Meta met with Ms. Jayakumar *twice* and well after her two-day deposition. Meta had forced a continuation of the deposition by asserting that questioning on a sensitive document was barred because of confidentiality designations. After that dispute was resolved, Meta issued the Subpoena a week before her continued deposition—demanding production on the date of the deposition. At the meet and confer, where Ms. Jayakumar's intervening travel was explained, Meta conditioned any modification to the response date for the Subpoena on the deposition (limited to testimony on the sensitive document) being further continued or being reopened based on any subpoena response. Thus, after failing to prevent Ms. Jayakumar from testifying on the sensitive document, Meta then tried to either delay or pressure her testimony on it with this Subpoena.

Second, Meta has not shown a legitimate need for the information, which is designed to uncover any communications related to her work over thirteen years with current and former Meta employees. The claims that these documents are needed *after* her deposition to "corroborate or undercut" her testimony or that her deposition suddenly revealed that she had communicated with Meta employees strain credibility. These requests are expansive, not narrowly tailored, and would require an immense amount of effort and expense for Ms. Jayakumar (an individual, non-party) to comply with. They ask her to look through thirteen years of her e-mails on a topic covering virtually her entire small businesses practice, to then identify every point of contact, and to then determine whether any of them ever worked for one of the largest tech companies in the world. This is the definition of burdensome—particularly given Ms. Jayakumar's two days of testimony, Meta's paltry explanation of its need for them, and the short time frame for compliance. *See Geller v. Von Hagens*, 2012 WL 1413461, at *3–4 (N.D. Cal. Apr. 23, 2012) (subpoena quashed where documents sought were not actually relevant and requests were broad, covered five years, and imposed significant costs on nonparty); *see Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal. 2005)(undue burden for nonparty to produce documents not limited in subject matter over a ten-year period); *Free Stream Media Corp. v. Alphonso Inc.,* 2017 WL 6209309, at *4 (N.D. Cal. Dec. 8, 2017) (quashing expansive subpoena that gave insufficient time to comply). The case Meta cites on burden is inapposite where, as here, a nonparty individual has demonstrated the difficulty in sorting through her entire practice. *See Gilbert v. Citigroup, Inc.*, 2009 WL 10692463, at *6 (N.D. Cal. Apr. 2, 2009) (finding "thousands of man hours" of review not actually burdensome because it constituted a "few hours" of review for each of defendant's branches).

Meta also trivializes the First Amendment considerations. This Subpoena is aimed at identifying anyone in the industry that Meta can still recommend or blacklist who has participated in or expressed support for former employee's protected activity of cooperating with post-employment depositions. The privacy and First Amendment issues here require assessing whether the non-

parties affected by this subpoenaed would face "harassment, stigma, or embarrassment" in "their workplace or greater communities" (i.e. their industry) in such a way that would "suggest an impact on, or chilling of" their ability to engage in political speech with former colleagues like Ms. Jayakumar. *Voice of San Diego*, 2024 WL 4471146 at *19; *Chevron,* 2013 WL 1402727 at *2. This Subpoena serves to put the industry on notice that those who associate with Meta's dissenters will be found out. Meta now should now "meet a higher standard of relevance, careful tailoring, and unavailability" to justify this chilling effect. *Chevron*, 2013 WL 1402727 at *7.

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 14, 2025

By: /s/ *Ashley M. Simonsen*

Ashley M. Simonsen