UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING META'S DOCUMENT SUBPOENA TO FORMER EMPLOYEE ARTURO BEJAR**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") and non-party (former employee) deponent Arturo Bejar respectfully submit this letter brief regarding their dispute over Meta's subpoenas for documents issued to Mr. Bejar on February 11.

Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, Meta and counsel for Mr. Bejar attest that they met and conferred by phone call and email before filing this brief. The final conferrals were attended by Meta's lead trial counsel and counsel for Mr. Bejar.  Because Meta's lead trial counsel and counsel for Mr. Bejar are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Meta's lead trial counsel and counsel for Mr. Bejar have concluded that no agreement or negotiated resolution can be reached.

Dated:  March 14, 2025                          Respectfully submitted,


**COVINGTON & BURLING LLP**

 */s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067

Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
David Sneed, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**BAKER BOTTS LLP**

*Michael Ward*
MICHAEL WARD (SBN 146484)
michael.ward@bakerbotts.com
KARAN SINGH DHADIALLA (SBN 296313)
karan.dhadialla@bakerbotts.com
JACK R. BOOTH (SBN 347887)
jack.booth@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304
Phone: 650-739-7538
Fax: 650-739-7638

*Attorneys for Respondent ARTURO BEJAR*

**Meta's Position:**  Arturo Bejar is a former Meta employee who worked at the company from 2009 to 2015 and, later, from 2019 to 2021.  Several years after his departure, Mr. Bejar testified before Congress and communicated with the media about his views of Meta's youth safety efforts.

Objections Invoking Protections for "Whistleblowers" (Bejar RFP Nos. 2 & 10).  Several former Meta employees testified that they spoke with Mr. Bejar before their depositions.  Following that disclosure, Meta requested Mr. Bejar's communications with current and former employees about issues relevant to the litigation.  Mr. Bejar objected that the RFPs constitute "harassing protected whistleblower activity . . . protected by both California Labor Code section 1102.5(b)(d) and 18 U.S.C.A. 1514A" (Sarbanes-Oxley or ("SOX")) and "violat[e] free-speech protections" of individuals who may have contacted him.  These objections fail.

*First*, Cal. Lab. Code § 1102.5(b) and Sarbanes-Oxley provide certain protections to **current** employees for their disclosures (if any) of potential illegal activity—they do not provide protections to **former** employees.  *See* Cal. Lab. Code § 1102.5(b) (proscribing "retaliat[ion] against **an employee** . . . ."); 18 U.S.C. § 1514A (similar).  Mr. Bejar, as a former employee, has no basis for objecting to Meta's subpoena on grounds of "retaliation."  *Hansen v. Cal. Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1546 (2008) ("[A] prerequisite to asserting a Labor Code section 1102.5 violation is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred."); *cf. Wright v. Eastman Kodak Co.*, 550 F. Supp. 2d 371, 380 (W.D.N.Y. 2008), *aff'd*, 328 F. App'x 738 (2d Cir. 2009) (rejecting plaintiff's "allegation of retaliatory employment action" where "he was subpoenaed for a deposition by [his former employer's] counsel").

*Second*, these statutes concern a current employee's disclosures **to a government body, agency, or workplace superior**; they do not reach communications that current or former employees may have had with a layperson outside the workplace, like Mr. Bejar.  *See* Cal. Lab. Code § 1102.5(b) (describing protections for "disclosing information . . . to a government or law enforcement agency"); 18 U.S.C. § 1514A(a)(1) (similar).

*Third*, the subpoenas do not infringe any First Amendment rights, and Mr. Bejar's only authorities—two inapposite, unpublished cases—fail to show otherwise.  *Chevron Corp. v. Donzinger* involved a subpoena that infringed a First Amendment right to associate with an environmental advocacy organization.  *See* 2013 WL 1402727, at *2-3 (N.D. Cal. Apr. 5, 2013).  Here, Mr. Bejar is not involved with any political association relevant to the subpoenas.  *Awtry v. Glassdoor, Inc.* involved a subpoena that infringed on a First Amendment right to post anonymously on an online review website by seeking to "unmask" those anonymous reviewers.  2016 WL 1275566, at *3, 11-12 (N.D. Cal. Apr. 1, 2016.  Meta's RFPs do not implicate any right to post anonymously online, but rather seek communications between Mr. Bejar and any current or former employees who may have contacted him or he may have contacted.

**Mr. Bejar's Position:**  Defendant Meta's subpoena to nonparty Arturo Bejar seeks documents and communications that are subject to whistleblower and First Amendment protections. In addition to having ownership of Mr. Bejar's most comprehensive work *while at Meta* on Meta's impact on teen safety, Meta has access to over six-hundred pages of his subpoenaed testimony, and nearly fifty pages of Mr. Bejar's public essays on the topic. Thus, Meta's subpoena is not a

3

good faith effort to seek material for cross-examination during his upcoming three-day deposition as claimed. Rather, these requests are designed to circumvent the protections afforded to whistleblowers and those who would help them—an improper purpose under the law and Meta's own policies. The requests seek to expose current and former Meta employees who have critical views of Meta and force them to divulge their private communications. If Meta was after inconsistent statements, it would not limit its requests to communications with *current* and *former* Meta employees. Meta seeks something else, with the result of chilling critical speech from anyone within Meta's sphere of influence.

The Court should thus sustain Mr. Bejar's objections and deny Meta's overbroad requests to have Mr. Bejar produce communications with: (1) current and/or former Meta employees regarding *any* Social Media Platforms and the safety and well-being of youth; (2) other nonparty former employee witnesses subpoenaed by the Plaintiff-Government-side who have each rejected Meta's offer of co-representation and have also retained Mr. Bejar's independent counsel of Baker Botts; and (3) anyone who has assisted in his efforts to create his website—ArturoBejar.org—or specific essays where he lays out recommendations on these issues. These same requests also have a retaliatory effect evidenced by their selective issuance. Mr. Bejar's subpoena is one of four third-party subpoenas that also target three former employees who rejected co-representation, hired Baker Botts at Mr. Bejar's referral, and have given truthful, but critical, testimony about Meta. This use of subpoena is far beyond the appropriate scope of discovery.

Mr. Bejar was an early and high-level employee of Facebook and returned as a contractor for Instagram—for the explicit purpose of advising its Well-being team on product design choices to improve its user's safety and experiences on its platform. He became a whistleblower when he realized that Meta was not taking sufficient measures to protect users, particularly children, from harm on its platforms and was also misrepresenting the level of harm that was occurring to the public. After careful research and documentation of his findings with each level of management, Mr. Bejar reported his conclusions and warnings in an e-mail to Mark Zuckerberg and the C-Suite. He did so out of concern for youth on its platforms—fully expecting that those he informed would work to improve the platforms and take remedial action in response to his warnings—as they had regularly done during his first stint at the company. When his contract ended at Instagram, he did not seek out public attention and was instead subpoenaed in subsequent investigations into Meta, first by the FTC, then by the Senate, and now here by attorney generals and plaintiff-side counsel.

Mr. Bejar is prepared to testify about his opinions expressed in his extensive work at the company (and in Meta's possession) and in his subsequent testimony. But conversations initiated with Mr. Bejar after his employment were made under the understanding of anonymity. Thus, current and former employees who assisted him in delivering information and his testimony to federal investigations are protected. Specifically, Mr. Bejar's communications with current and former employees should be withheld pursuant to whistleblower and First Amendment protections. Sarbanes-Oxley § 1514A ("SOX") protects whistleblowers like Mr. Bejar—***and those who assist them***—from retaliation and harassment, which includes preventing post-employment blacklisting. *See* 18 U.S.C.A. § 1514A(a)(1); *see also See Kshetrapal v. Dish Network, LLC,* 90 F.Supp.3d 108, 114 (S.D.N.Y., 2015) (post-employment blacklisting SOX claim adequately

4

pled). California Labor Code section 1102.5(b)(d) similarly prevents retaliation against an employee who discloses information to a government agency or investigatory public body. *See Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 985 (9th Cir. 2022). Forcing Mr. Bejar to disclose communications with those who have assisted in providing information to authorities sets them up for post-employment backlisting—a risk Meta cannot justify without showing a compelling need (which it cannot).

Exposing these individuals or communications with individuals who—via Mr. Bejar—cooperated in government investigations can subject them to "harassment, stigma, or embarrassment" in "their workplace or greater communities" and would have a chilling effect on the exchange of information, protected under the First Amendment. *Voice of San Diego v. Naval Criminal Investigative Service*, 2024 WL 4471146 at *19 (S.D. Cal. 2024) (withholding third party information where it was "reasonably foreseeable that the potential for such disclosure may dissuade other third parties from cooperating with future investigations."); *see also Chevron Corp v. Donzinger*, No. 13-mc-80038 CRB (NC), 2013 WL 1402727 at *2, 7 (N.D. Cal. Apr. 5, 2013) (First Amendment protects against activities that would deter association). Letting Meta root out current or former employees that it has an ability to recommend or blacklist undermines the policy of these laws, in circumvention of Meta's own requests to its employees to "come forward" and participate in investigations anonymously. *See* Meta, Harassment Policy, ABOUT.META.COM (last visited Mar. 11, 2025), https://about.meta.com/people-practices/harassment-policy/.

**Meta's Reply.**  Mr. Bejar's position both misstates his status and mischaracterizes the nature of Meta's requests, which merely seeks information on communications about which other witnesses have already testified—without objection—and the relevance of which he concedes.

*First*, Mr. Bejar is not a "whistleblower" under Sarbanes-Oxley.  To pursue a Sarbanes-Oxley whistleblower retaliation claim, a plaintiff must first initiate an administrative action by filing a complaint with the Secretary of Labor.  18 U.S.C. § 1514A(b)(1)(A); *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1083 (S.D. Cal. 2020).  Mr. Bejar has not alleged that he filed a complaint or sought remedies for a retaliation claim.  He cannot simply invoke SOX as grounds for resisting a subpoena without meeting the essential elements of the Act.

*Second*, Mr. Bejar argues that SOX prevents disclosure of communications with current employees because they *may* experience "post-employment blacklisting," citing *Kshetrapal v. Dish Network*.  But theoretical harm is insufficient to trigger whistleblower protections under SOX.  *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000 (9th Cir. 2009) ("[T]o trigger the protections of the Act, an employee must also have (1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable.").  Mr. Bejar cannot identify an act of discrimination or retaliation, against him or current employees, that resulted from his critiques of the company.  Mr. Bejar voluntarily left Meta in 2015, returned as a consultant, and voluntarily left again in 2021.  Mr. Bejar is not a whistleblower simply because he raised issues during his time at Meta and shared those concerns publicly after he left.

*Third*, Bejar contends that complying with the subpoena and disclosing his communications with current and former employees regarding this litigation *could* result in workplace harms and *potentially* impact the free exchange of information protected by the First Amendment.  Mr.

5

Bejar's cited authority fails to support this claim. *Voice of San Diego v. Naval Criminal Investigative Service* does not even mention the First Amendment. *See* 2024 WL 4471146, at *7-9 (S.D. Cal. Oct. 8, 2024). The case involved whether a journalist's FOIA request required the disclosure of summaries of interviews with the families, community, and members of law enforcement who knew or came into contact with the deceased servicemembers discussed in his article. *Id.* at *16. Meta's RFPs do not implicate any FOIA requests or related third party privacy interests, but rather seek communications between Mr. Bejar and any current or former employees who may have contacted him, or whom he may have contacted, regarding topics relevant to this litigation. He raises no relevance objection to this subject matter, about which others have already testified. *See, e.g.*, V. Jayakumar (Jan. 31, 2025); A. Lee (Feb. 6, 2025).

**Mr. Bejar's Reply.** Meta obscures the intent of their requests, while taking a myopic view of Mr. Bejar's objections and the purpose of the laws that undergird them. Meta has specifically focused its requests on communications Mr. Bejar has had with ***current*** and ***former*** Meta employees. This focus is significant. The statutory provisions Mr. Bejar cites exist to prohibit retaliation for the protected activity engaged in by Mr. Bejar and his colleagues—specifically, to encourage whistleblowers to speak out without fear of retaliation and/or to contribute to whistleblower activity anonymously. Meta's own reporting policies recognize the importance of safeguarding anonymity in the context of whistleblower activity.

In nevertheless continuing to seek the communications current and former Meta employees have had with Mr. Bejar, Meta ignores the fact that Mr. Bejar engaged in squarely protected whistleblower activity. He did so while working at Meta and *again* in post-employment depositions to federal authorities, which entitle him (and those who have helped him) to certain protections. *See Kschetrapal*, 90 F. Supp.3d at 113-114 (applying the implementing regulation 29 C.F.R. § 1980.101 to find that SOX covers post-employment protected activity such as post-employment depositions). Likewise, both former and current employees who "caus[ed] information to be provided, or otherwise assist[ed]" Mr. Bejar in providing information to Congress, the FTC, or the C-Suite also engaged in protected activity. *See* 18 U.S.C.A. § 1514A(a)(1). Meta's characterization of Mr. Bejar as merely a "layperson outside the workplace" ignores both his internal reporting and his testimony to the FTC and Senate. The broad requests would seek private communications with individuals in connection with both.

Further, it is well within the discretion of this Court to find that these requests stretch the permissible scope of discovery under FRCP 26(b)(1) and 45(d)(1) because—by outing all individuals who contributed or expressed support for his disclosures to authorities—the Subpoena violates the spirit of the whistleblower laws, without good justification to do so. *See Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 985 (9th Cir. 2022) (Recognizing Cal. Lab. Code § 1102.5(b)'s "broad remedial purpose… reflect[ing] the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation") This Court has previously found that similar requests that sought anonymous communication should not be compelled because the "First Amendment implications" of impinging on nonparties' right to speak anonymously "significantly outweighed" the party's interest in obtaining that information. *See Awtry v. Glassdoor, Inc.*, 2016 WL 1275566, *11-16 (N.D. Cal. April 1, 2016). The Court should deny Meta's request here too.

By fixating on whether Mr. Bejar is himself a political party, Meta similarly misses the point of his First Amendment objection. This Subpoena is aimed at identifying people who

6

assisted Mr. Bejar or expressed support for his testimony before political bodies such as the Senate on the major social and public policy issue of social media's impact on child safety. The privacy and First Amendment issues at stake here require assessing whether the nonparties affected by this subpoena would face "harassment, stigma, or embarrassment" in "their workplace or greater communities" (i.e. their industry) in such a way that would "suggest an impact on, or chilling of" their ability to engage in political speech with former colleagues like Mr. Bejar. *Voice of San Diego*, 2024 WL 4471146 at *19; *Chevron,* 2013 WL 1402727 at *2. The Subpoena puts the industry on notice that association and contribution to those who speak critically about Meta will be found out. Meta still has an ability to cause these individuals to be blacklisted, and it should thus "meet a higher standard of relevance, careful tailoring, and unavailability" to justify this chilling effect. *Chevron*, 2013 WL 1402727 at *7. It has not done so. Meta has no legitimate purpose in seeking communications from Mr. Bejar that would impede his and others' ability to speak freely on these issues.

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 14, 2025

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen